## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>        Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>        Debtor. | Case No.:  25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>        Plaintiffs,<br><br>   vs.<br><br>Red River State Bank,<br><br>        Defendant. | Adversary No.:  25-07009 |

## MOTION TO DISMISS

Defendant hereby moves to dismiss the Adversary Complaint for failure to state a claim upon which relief can be granted.  The argument and authorities in support of this Motion are contained in Defendant's Brief in Support of Motion to Dismiss, filed simultaneously with this Motion.

In light of the failure to state a sufficient claim in this action, Defendant respectfully requests this Court issue an order dismissing this action with prejudice, and granting Defendant all other relief to which it may be entitled.

Dated this 28th day of March, 2025.

**VOGEL LAW FIRM**


BY:*/s/ Drew J. Hushka*_____
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    Drew J. Hushka (#08230)
    dhushka@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR DEFENDANT

4909-6690-8207 v.1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re: <br><br> Generations on 1st LLC, <br><br>        Debtor. | Case No.:  25-30002 <br><br> Chapter 11 |
| In Re: <br><br> Parkside Place LLC, <br><br>        Debtor. | Case No.:  25-30003 <br><br> Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC, <br><br>        Plaintiffs, <br><br>    vs. <br><br> Red River State Bank, <br><br>        Defendant. | Adversary No.:  25-07009 |

**NOTICE OF MOTION TO DISMISS ADVERSARY COMPLAINT**

TO:    The United States Bankruptcy Court, Debtors, and Interested Parties:

        NOTICE IS HEREBY GIVEN that Red River State Bank has filed a Motion to Dismiss Adversary Complaint, a copy of which is herewith served upon you.

        NOTICE IS FURTHER GIVEN that written objections to said motion, if any, shall be filed with the Clerk of the United States Bankruptcy Court, whose address is 655 First Avenue North, Suite 210, Fargo, ND  58102-4932, with a copy mailed to counsel for Debtors, whose

name and address is listed below, <u>within twenty-one (21) days from the date of the mailing of</u>

<u>this Notice</u>.  Any objections not filed and served may be deemed waived.

Dated this 28th day of March, 2025.

**VOGEL LAW FIRM**


BY: <u>*/s/  Drew J. Hushka*</u> _____

Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR DEFENDANT

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

</div>

| | |
|---|---|
| In Re: <br><br> Generations on 1st LLC, <br><br>      Debtor. | Case No.:  25-30002 <br><br> Chapter 11 |
| In Re: <br><br> Parkside Place LLC, <br><br>      Debtor. | Case No.:  25-30003 <br><br> Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC, <br><br>          Plaintiffs, <br><br>     vs. <br><br> Red River State Bank, <br><br>          Defendant. | Adversary No.:  25-07009 |

<div align="center">

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

**<u>INTRODUCTION</u>**

</div>

At its core, Plaintiffs' theory of this adversary action is that Defendant Red River State Bank ("RRSB") should have denied Plaintiffs the loans that they sought from RRSB—*i.e.*, that RRSB should have saved Plaintiffs from themselves.  The law does not render RRSB liable for lending Plaintiffs the money that they sought.  Because Plaintiffs' Complaint fails to state a claim upon which relief can be granted, this Court should dismiss the same.

<u>LAW AND ARGUMENT</u>

## I.      Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6),[1] a court assumes all facts in a complaint to be true, and construes all reasonable inferences from those facts in the light most favorable to the complainant.[2]   But a court need not accept as true wholly conclusory allegations,[3] or legal conclusions.[4]  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."[5]   Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."[6]   As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster.[7]   In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."[8]

In addition to the pleading standard explained by the Supreme Court in *Twombly* and *Iqbal*, when pleading fraud, Federal Rule of Civil Procedure 9(b) requires "particularity."[9]

---

[1]    *Cf.* "Fed. R. Civ. P. 12(b)-(i) applies in an adversary proceeding."  Fed. R. Bankr. P. 7012(b).

[2]    *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).

[3]    *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999).

[4]    *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

[5]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6]    *Id.* at 555.

[7]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

[8]    *Twombly*, 550 U.S. at 556.

[9]    Fed. R. Civ. P. 9(b); *cf. also* Fed. R. Bankr. P. 7009 ("Rule 9 F.R.Civ.P. applies in adversary proceedings.").

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[10]   But Rule 9(b)'s particularity requirement otherwise requires particularity in the circumstances constituting the alleged fraud—"the complaint must plead the 'who, what, where, when, and how' of the alleged fraud."[11]   "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."[12]

Under these standards, Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

## II.   Plaintiffs fail to allege a claim for fraudulent transfer under the Bankruptcy Code.

In Count I, Plaintiffs seek to avoid transfers to RRSB under Section 548 of the Bankruptcy Code.[13]   More specifically, Plaintiffs seek to avoid any transfers made to RRSB through the Forbearance Agreement.   *See* Compl., Count I (seeking the "avoid[ance of] the Forbearance Agreement").

Section 548 of the Bankruptcy Code contains two related, but separate, causes of action. First, under Section 548(a)(1)(A), a transfer may be avoided for actual fraud.   *See* 11 U.S.C. § 548(a)(1)(A).   Second, even when a transfer is not made with actual fraudulent intent, a transfer may be avoided under Section 548(a)(1)(B) if constructively fraudulent.   *See* 11 U.S.C. § 548(a)(a)(B).   Plaintiffs fail to identify whether they seek to avoid the Forbearance Agreement

---

[10]   *Id.*

[11]   *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted).

[12]   *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted).

[13]   *See* Compl., ¶¶ 102-110.

as actually fraudulent, or as constructively fraudulent. *See* Compl., ¶¶ 103-110. RRSB assumes, however, that Plaintiffs attempted to allege a constructively-fraudulent transfer.[14]

As previously explained by this Court, "[u]nder the constructive fraud transfer provision of section 548 of the Bankruptcy Code, a trustee can avoid a debtor's transfers made within two years of the petition date if the debtor did not receive a reasonably equivalent value in exchange."[15] A constructive fraud claim requires proof— "(1) an interest of the debtor in property; (2) was voluntarily or involuntarily transferred; (3) within [two years] of filing bankruptcy; (4) where the debtor received less than reasonably equivalent value; and (5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof."[16] Plaintiffs failed to allege a claim for constructive fraud under Section 548 upon which relief can be granted.

A.    Ruins failed to allege a claim for fraudulent transfer upon which relief can be granted because it was not a party to the transaction sought to be avoided.

As outlined above, a transfer of an interest of the debtor is a necessary element for a claim under Section 548.[17] And while Plaintiffs' Complaint indicates the Forbearance Agreement constituted the transfer at issue, Plaintiff The Ruins, LLC ("Ruins") was not a signatory to the Forbearance Agreement.[18] In other words, Ruins did not transfer anything to

---

[14] *Cf. id.* at ¶ 106 ("A 103 day forbearance period was not—and is not—of a reasonably equivalent to the various concessions made by the Debtors in the Forbearance Agreement.").

[15] *Velde v. Morrison (In re McMartin)*, 599 B.R. 622, 626-27 (Bankr. D.N.D. 2019) (citing 11 U.S.C. § 548(a)(1)(B)).

[16] *Id.* at 627 (citations omitted).

[17] *See Velde*, 599 B.R. at 626-27.

[18] *See generally* Decl. of Charles Aarestad in Supp. Of Mot. to Dismiss Adversary Compl. ("Aarestad Declaration"), Ex. 1.

RRSB in the Forbearance Agreement because it was not a party to said agreement.  Absent a transfer, the Ruins fraudulent transfer claim against RRSB fails as a matter of law.

      B.     <u>Generations and Parkside failed to allege a claim for fraudulent transfer upon which relief can be granted.</u>

As for Debtor/Plaintiff Generations on 1st, LLC ("<u>Generations</u>"), and Debtor/ Plaintiff Parkside Place, LLC ("<u>Parkside</u>"), they also failed to allege a claim upon which relief can be granted.

      1.     *Generations and Parkside failed to allege that they were insolvent at the time of the alleged fraudulent transfer.*

As a threshold matter, Count I fails to allege a claim upon which relief can be granted with respect to Generations and Parkside because Plaintiffs failed to allege they were insolvent at the time of the transfer.[19]  Indeed, despite Plaintiffs' sweeping prose, the word "insolvent" never appears in Plaintiffs' Complaint.[20]  Nor do Plaintiffs otherwise factually allege that they were insolvent on February 17, 2023—the date Generations and Parkside entered into the Forbearance Agreement.[21]  Because a debtor's insolvency is an essential element for a claim under Section 548(a)(1)(B),[22] Plaintiffs' failure to factually allege their insolvency warrants dismissal of Count I.

---

[19]  *See* Compl., ¶¶ 103-110.

[20]  *See generally id.* at ¶¶ 1-158.

[21]  *Cf.* 28 U.S.C. § 3302(a) ("a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation"); *cf. also* Compl., ¶¶ 1-158 (not alleging that Plaintiffs' debts exceeded the value of its assets).

[22]  *See McMartin*, 599 B.R. at 627.

2.    *Generations and Parkside admission that RRSB granted forbearance from collection in exchange for the Forbearance Agreement establishes the exchange of reasonably equivalent value.*

Failure to allege insolvency notwithstanding, Generations and Parkside still failed to allege a claim upon which relief can be granted.  As consideration for the Forbearance Agreement, Plaintiffs concede that RRSB agreed to forbear collection on multiple defaulted obligations, including the foreclosure of RRSB's collateral.[23]  Accordingly, Count I would require this Court to determine that RRSB's admitted forbearance did not provide reasonably equivalent value for the release of claims—alleged claims neither specifically identified, nor valued, by Plaintiffs.[24]  Unfortunately for Plaintiffs, the law does not permit the *post hoc* reconsideration of the value of the forbearance actually provided by RRSB.

In *Thomas Family Trust v. Kalikow (In re Wade Park Land Holdings, LLC),*[25] debtors appealed the dismissal, with prejudice, of fraudulent transfers claims arising from a creditor's acquisition of real property through a deed-in-lieu agreement following the debtors' default on their loan obligations.[26]  Specifically, the debtors argued "'[t]he district court erroneously dismissed [their] fraudulent-transfer claims for failing to plausibly allege that the transfer of Wade Park [pursuant to the DIL Agreement] was for less than "reasonably equivalent value."'"[27]  Conversely, the creditor "argue[d] that the plaintiffs [we]re '[u]nhappy with the

---

[23]  *See* Compl., ¶ 104 ("The Forbearance Agreement provides a 103 day forbearance period[.]").

[24]  *Cf. id.* at ¶ 106 ("A 103 forbearance period was not—and is not—of a value reasonably equivalent to the various concessions made by [Plaintiffs] in the Forbearance Agreement.").

[25]  No. 23-591-bk, 2024 WL 3024648 (2d Cir. June 17, 2024).

[26]  *Id.* at *1-3.

[27]  *Id.* at *3 (alterations in original) (citation omitted).

consequences' of 'their decision to enter into the DIL' and have 'brought th[e] case in a brazen attempt to turn their failure to honor their obligations into a windfall.'"[28]  The Second Circuit agreed, finding "the plaintiffs ha[d] 'no ground to stand on.'"[29]  Instead, "[t]he district court correctly held that the plaintiffs did not plausibly allege that the transfer of Wade Park pursuant to the DIL Agreement was for less than reasonably equivalent value."[30]

That forbearance provides reasonably equivalent value can be true even if the transfer is more beneficial to a third party.  In *Pembroke Development Corporation v. Commonwealth Savings & Loan Association (In re Pembroke Development Corp.)*,[31] a debtor initiated an adversary action against its lender, seeking to avoid a modification agreement that it argued constituted a fraudulent conveyance.[32]  More specifically, "[t]he debtor assert[ed] that it did not receive any value from the creditor in exchange for the execution of the agreement[]" because "the consideration for the Modification Agreement was the creditor's forbearance of foreclosure on the loan between Pembroke Charter Corporation and the creditor[,]" and, "[t]herefore, the consideration, if any, was received by Pembroke Charter Corporation, which was a third party to the transaction."[33]

The court found that, generally, "transfers made solely for the benefit of third parties do not constitute 'reasonably equivalent value' for the purposes of [Section] 548 of the

---

[28]  *Id.* at *7 (third alteration in original).

[29]  *Id.* (citation omitted).

[30]  *Id.* at *4.

[31]  124 B.R. 398 (Banrk. S.D. Fla. 1991).

[32]  *Id.* at 399.

[33]  *Id.* at 400.

Bankruptcy Code."[34]  Nevertheless, the court also recognized "that an indirect benefit to the transferor may be sufficient to establish reasonably equivalent value where the debtor and third party 'are so related or situated that they share an identity of interests because what benefits one will, in such case benefit the other to some degree.'"[35]  The Court concluded that the debtor had received reasonably equivalent value because of direct and indirect benefits of the forbearance, explaining:

> In the case at hand, part of the consideration given by the creditor for the execution of the Modification Agreement was its forbearance of foreclosure on a loan that the creditor had made to Pembroke Charter Corporation.  However, the debtor and Pembroke Charter Corporation are wholly owned and controlled by the same person.  Additionally, the debtor guaranteed the loan between Pembroke Charter Corporation and the creditor.  Therefore, the creditor's forebearing [sic] of foreclosure on its loan with Pembroke Charter Corporation indirectly benefited the debtor since it was liable as a guarantor on the loan.
>
> The creditor also gave additional consideration for the execution of the Modification Agreement by deferring interest payments and extending the maturity date on the original loan between the debtor and the creditor.  Therefore, the Court finds that the debtor has received reasonably equivalent value in exchange for the execution of the Modification Agreement.  Based on the foregoing, the Modification Agreement may not be avoided as a fraudulent conveyance under 11 U.S.C. § 548.[36]

Here, that Plaintiffs are unhappy with the consequences of their decision to enter into the Forbearance Agreement does not entitle them to a windfall.[37]  Plaintiffs have "no grounds to stand on[]" to assert such a claim.[38] Without the Forbearance Agreement, RRSB could have

---

[34]  *Id.* (citing *In re Vadnais Lumber Supply, Inc.*, 100 B.R. 127 (Bankr. D. Mass. 1989); *In re Minnesota Utility Contracting, Inc.*, 101 B.R. 72 (Bankr. D. Minn. 1989)).

[35]  *Id.* (quoting *In re Minnesota Utility Contracting, Inc.*, 101 B.R. at 85) (citing *In re Ear, Nose & Throat Surgeons, Inc.*, 49 B.R. 316, 320 (Bankr. D. Mass 1985)).

[36]  *Id.* at 400-01.

[37]  *Thomas Family Trust*, 2024 WL 3024648, at *7.

[38]  *Id.*

simply foreclosed on its collateral in February of 2023.   RRSB's accommodation to Plaintiffs—that gave Plaintiffs the option of avoiding foreclosure and continuing operations by agreeing to the Forbearance Agreement, while also extending to Ruins $600,000.00 in additional financing—did not transform it into a fraudulent transfer.[39]   Generations and Parkside received reasonably equivalent value for the Forbearance Agreement.

## III.   Count II fails to state a claim upon which relief can be granted.

In Count II, Plaintiffs seek to avoid transfers to RRSB under Section 544 of the Bankruptcy Code.[40]   More specifically, Plaintiffs again seek to avoid any transfers made to RRSB through the Forbearance Agreement.   *See* Compl., Count II (seeking the "avoid[ance of] the Forbearance Agreement").

"Section 544(b) empowers a trustee to step into the shoes of an actual unsecured creditor and utilize whatever state or nonbankruptcy federal law remedies that particular creditor may have."[41]   As such, "to have standing under § 544(b), the [p]laintiff is required to plead the existence of a creditor that would have standing to pursue fraudulent transfer claims

---

[39]   *Id.* ("[T]he parties agree that if Gamma had simply foreclosed on the Wade Park property, the foreclosure would not have amounted to a fraudulent conveyance.  The accommodation—which gave Thomas the option of avoiding foreclosure and continuing operations by agreeing to transfer the deed in escrow—did not transform it into one." (citations omitted)); *cf. also In re Weiss Multi-Strategy Advisers LLC*, 664 B.R. 492, 535 (Bankr. S.D.N.Y. 2024) ("Generally, transfers made on account of an antecedent debt are presumed to have been made 'for value'" (citation omitted)).

[40]   *See* Compl., ¶¶ 111-119.

[41]   *Kelley v. Opportunity Fin., LLC (In re Petters Co., Inc.)*, 561 B.R. 738, 746 (Bankr. D. Minn. 2016) (citing *In re Walter*, 462 B.R. 698, 704 (Bankr. N.D. Iowa 2011)).

under state law."[42]  Plaintiffs failed to plead the existence of such a creditor.[43]  Accordingly,

Plaintiffs fail to state a claim upon which relief can be granted.  And even if this Court could

assume, *arguendo*, the existence of such a creditor, Plaintiffs still failed to allege a claim upon

which relief can be granted.

      A.    <u>Minnesota law governs Plaintiffs' Section 544 claim.</u>

Plaintiffs facially presume that North Dakota law undergirds their Section 544 claim.[44]

Yet the document at issue—the Forbearance Agreement—specifically provides that Minnesota

law applies.[45]  Plaintiffs' do not provide any explanation for why Minnesota law would not

dictate.  As such, RRSB will analyze Plaintiffs' potential claim under the controlling law of

Minnesota.

      B.    <u>Plaintiffs failed to allege a violation of the Minnesota Uniform Voidable
Transactions Act.</u>

Under Section 513.44(a)(2) of the Minnesota Uniform Voidable Transactions Act

("MUVTA"), transfers are voidable as constructively fraudulent if a debtor does not receive

reasonably equivalent value for the transfer.[46]  With respect to Count II, Plaintiffs allege that

RRSB's forbearance was not reasonably equivalent to: (1) the increased interest rate, (2) the

Generations assignment of rents contemporaneously executed with the Forbearance

---

[42]  *Id.* (citing 11 U.S.C. § 544(b); *In re Marlar*, 252 B.R. 743, 754 (8th Cir. BAP 2000), *aff'd*,
267 F.3d 749 (8th Cir. 2001)).

[43]  *Cf.* Compl., ¶¶ 111-119 (failing to allege such a creditor).

[44]  *See* Compl., Count II (citing N.D.C.C. § 13-02.1-04).

[45]  Aarestad Decl., Ex. 1, at 7 ("This Agreement shall be interpreted and construed in accord
with the laws of the State of Minnesota.").

[46]  *See* Minn. Stat. § 513.44(a)(2) ("A transfer made or obligation incurred by a debtor is
voidable as to a creditor if the debtor made the transfer or incurred the obligation . . . without
receiving a reasonably equivalent value in exchange for the transfer or obligation.").

Agreement, (3) acknowledgement of enforceability of Loan Documents, and (4) the release of claims received by RRSB.[47]  Such allegations fail to allege a claim upon which relief can be granted.

> 1.  *Ruins failed to allege a claim for fraudulent transfer upon which relief can be granted because it was not a party to the transaction sought to be avoided.*

Again, Plaintiffs' theory is that a fraudulent transfer occurred through the Forbearance Agreement.[48]  But Ruins was not a party to the Forbearance Agreement.[49]  In other words, Ruins did not transfer anything to RRSB in the Forbearance Agreement because it was not a party to the agreement.  Absent a transfer, Ruins fraudulent transfer claim against RRSB fails as a matter of law.

> 2.  *Generations and Parkside admission that RRSB granted forbearance from collection in exchange for the Forbearance Agreement establishes the exchange of reasonably equivalent value.*

As for Generations and Parkside, they also failed to allege a claim upon which relief can be granted.  Plaintiffs' theory is that RRSB did not provide reasonably equivalent value for the rights granted in the Forbearance Agreement.  However, as outlined above, and incorporated herein by reference, the forbearance granted by RRSB provided Plaintiffs reasonably equivalent value.[50]  Accordingly, even if there was a qualifying creditor, Plaintiffs fail to allege a claim upon which relief can be granted under Section 544.

---

[47]  *See* Compl., ¶¶ 113-115.

[48]  *See, i.e.*, Compl., ¶¶ 112-119.

[49]  *See generally* Aarestad Decl., Ex. 1.

[50]  *See* Sec. II(B)(2), *supra*.

11

**IV.    Plaintiffs fail to allege a claim for deceit under Minnesota law.**

In Count III, Plaintiffs seek to recover from RRSB under a theory of "Deceit."[51]   Under

Minnesota law, a claim for deceit is a subset of a claim for fraudulent misrepresentation.[52]   A

party asserting fraudulent misrepresentation must meet the heightened pleading standard of

Rule 9.02,[53] with the claim requiring eleven elements: (1) there must be a representation; (2)

that representation must be false; (3) that representation must have to do with a past or present

fact; (4) that fact must be material; (5) that fact must be susceptible to knowledge; (6) the

represener must know it to be false or, in the alternative, must assert is as of his own

knowledge without knowing whether it is true or false; (7) the represener must intend to have

the other person induced to act or justified in acting upon it; (8) that person must be so induced

to act or so justified in acting; (9) that person's actions must be in reliance upon the

representation; (10) that person must suffer damage; and (11) that damage must be attributable

to the misrepresentation, that is, the statement must be the proximate cause of the injury.[54]

Plaintiffs' allegations fail to give rise to a claim for deceit upon which relief can be granted.

A.    Generations and Parkside released their purported deceit claims against RRSB.

As a threshold matter, the deceit claims of Generations and Parkside fail because they

released the same against RRSB.  A release is a contract that will be enforced if it expresses

"the intent to release, discharge, or relinquish a right, claim, or privilege by a person in whom

---

[51]   *See* Compl., ¶¶ 120-128.

[52]   *Cf. Williams v. Tweed*, 520 N.W.2d 515, 517 (Minn. Ct. App. 1994) ("Three types of
misrepresentations fall under [the tort of fraudulent misrepresentation]: reckless
misrepresentation, negligent misrepresentation, and deceit." (citation omitted)).

[53]   *See Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000).

[54]   *Nave v. Dovolos*, 395 N.W.2d 393, 397 (Minn. Ct. App. 1986) (citation omitted).

the claim exists to a person who seeks to be released."[55]   Indeed, public policy favors the

settlement of claims.[56]   Accordingly, "[a] general release of all claims, known and unknown,

will be enforced by the court if the intent is clearly expressed."[57]   Here, the release in the

Forbearance Agreement provides that Generations and Parkside:

> waive[ed], abandon[ed], relinquish[ed,] and discharge[d] any and all claims,
> causes of action, suits, and demands for payment of money or performance,
> including those related to personal injury or property damage, against [RRSB],
> its affiliates, subsidiaries, shareholders, directors, officers, attorneys,
> employees, agents, assigns, predecessors and/or successors and without regard
> to whether said claims, causes of action, suits, and demands for payment of
> money or performance, relate to or arise from the Indebtedness and/or the Loan
> Documents.   In granting this release, [Plaintiffs] expressly waive[d] any
> provision of law precluding a release from applying to claims, causes of action,
> suits, and demands for payment of money or performance unknown to
> [Plaintiffs].  The terms of this release are contractual and not a mere recital.  In
> granting this release, [Plaintiffs] [we]re relying upon their own investigation and
> analysis and not upon any representations, or promises of [RRSB] or any third
> parties.[58]

This language is unambiguous because it is susceptible to only one reasonable interpretation—

that Generations and Parkside released RRSB from any claims they had or have against

RRSB.[59]

---

[55]   *Curtis v. Altria Grp.*, 813 N.W.2d 891, 902 (Minn. 2012).

[56]   *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 205 (Minn. 1986).

[57]   *Curtis*, 813 N.W.2d at 902.

[58]   Aarestad Decl., Ex. 1, at 6-7.

[59]   *Cf. Peterson v. Clark Lake Homes, Inc.*, A22-0398, 2022 WL 16910578, at *3 (Minn. Ct.
App. Nov. 14, 2022) ("The BIPA release clause provides that 'each party . . . releases the other
party from . . . claims . . . that party had or has . . . against the other party.'  This language is
unambiguous as it is susceptible to only one reasonable interpretation: the parties released each
other from claims that any party had or has against any other party.  Lynn's arguments to the
contrary are not reasonable." (omissions in original)).

Language that clearly expresses an intent to release known and unknown claims will be enforced—no specific language is required.[60] And courts are not to relieve parties of their bargained for obligations.[61] Here, the alleged false representations predate the signing of the Forbearance Agreement.[62] As such, Generations and Parkside fail to state a claim upon which relief can be granted.[63]

B. <u>Release notwithstanding, Plaintiffs still fail to allege a claim upon which relief can be granted.</u>

And even if Generations and Parkside had not alleged their potential claims against RRSB, Plaintiffs still fail to assert a claim upon which relief can be granted.

RRSB understands Plaintiffs Complaint as alleging that RRSB committed deceit by representing that it would provide funding to them when RRSB would not be able to complete the loans.[64] But an alleged representation to provide funding in the future cannot support a claim for deceit because it does not concern a past or present fact.[65] Moreover, even if a representation to provide future funding could provide a basis for a claim of deceit, Plaintiffs cannot show that they reasonably relied on such statement when the various loans between

---

[60] *Curtis*, 813 N.W.2d at 901-02.

[61] *See Metro. Sports Facilities Comm'n v. Gen. Mills, Inc.*, 470 N.W.2d 118, 125 (Minn. 1991) (reasoning that "sophisticated parties  . . . are accountable for the product of their negotiations").

[62] *See* Compl., ¶¶ 31-33.

[63] *Cf. Hoskin v. Krsnak*, A23-1275, 2024 WL 213674, at *11 (Minn. Ct. App. May 13, 2024) (district court correctly dismissed plaintiff's fraud claims when parties had entered into a release).

[64] Compl., ¶¶ 32-38 & 121-124.

[65] *Cf. Hoskin*, 2024 WL 213674, at *11 (a promise to secure additional financing did not provide a basis for a claim because representation was not a past or existing material fact susceptible to knowledge); *cf. also Nave*, 395 N.W.2d at 397 (a claim for fraudulent misrepresentation requires to do with a past or present fact).

14

RRSB and Plaintiffs included "Notice of Final Agreements" whereby they expressly acknowledged that RRSB was not committing to any additional financing.[66]  The alleged funding misrepresentations—even if accepted as true—do not provide a basis for Plaintiffs' deceit claims.

The alternative theory of Plaintiffs' alleged deceit claim is that RRSB made a misrepresentation by omission in failing to advise that the interest rate in the Forbearance Agreement differed from an earlier draft.  But, absent special circumstances—circumstances that Plaintiffs have not pleaded—one party to a business transaction has no duty to disclose material facts to the other party."[67]  Plaintiffs admit the interest rate was plainly identified in the Forbearance Agreement.[68]  And a party to an agreement cannot complain of the terms of an agreement when it failed to read an agreement.[69]  In that Plaintiffs do not allege that RRSB represented that the terms in the written agreement were different than what was provided therein, Plaintiffs fail to allege a claim upon which relief can be granted.

## V.   Plaintiffs fail to allege a claim for fraud under Minnesota law.

In Count IV, Plaintiffs seek to recover from RRSB under a theory of fraud.[70]  Under Minnesota law, to prevail on a theory of fraud, a party must prove:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the

---

[66]  *See* Aarestad Decl., Exs. 2(A), 2(B) & 2(C).

[67]  *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976).

[68]  *See* Compl., ¶ 71; *see also* Aarestad Decl., Ex. 1, at 5 ("Upon execution of this Agreement by the Parties, the interest rate on the Notes (Currently 4.350%) will be modified to 6.50%").

[69]  *See Greer v. Kooiker*, 253 N.W.2d 133, 140 (Minn. 1977) ("[A] party to a contract on which others have relied cannot avoid the duties of the document by showing he did not know its contents." (citations omitted)).

[70]  *See* Compl., ¶¶ 129-137.

representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.[71]

Plaintiffs' allegations fail to give rise to a claim for fraud upon which relief can be granted.

    A.    <u>Generations and Parkside released their purported fraud claims against RRSB.</u>

As a threshold matter, the alleged fraud claims of Generations and Parkside fail because they released the same against RRSB.  Because the analysis on this point coincides with the deceit claims, RRSB restates and incorporates herein by reference the same.[72]

    B.    <u>Release notwithstanding, Plaintiffs still fail to allege a claim upon which relief can be granted.</u>

And even if Generations and Parkside had not released their potential claims against RRSB, Plaintiffs still fail to assert a claim upon which relief can be granted.  Again, the primary thrust of Plaintiffs' alleged fraud claim is that RRSB represented that it would provide them funding when RRSB was unable to complete the loans.[73]  But an alleged representation to provide loans in the future cannot support a claim for fraud because it does not concern a past or present fact.[74]  Moreover, even if a representation to provide future funding could provide a basis for a claim of fraud, Plaintiffs cannot show that they reasonably relied on such statement when the various loans between RRSB and Plaintiffs included "Notice of Final Agreements"

---

[71]  *Hoyt Props., Inc. v. Prod. Res. Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007) (citation omitted).

[72]  *See* Sec. IV(A), *supra*.

[73]  Compl., ¶¶ 32-38 & 130-134.

[74]  *Cf. Hoskin*, 2024 WL 213674, at *11 (a promise to secure additional financing did not provide a basis for a claim because representation was not a past or existing material fact susceptible to knowledge); *cf. also Nave*, 395 N.W.2d at 397 (a claim for fraudulent misrepresentation must relate to a past or present fact).

whereby they acknowledged that RRSB was not committing to any additional financing.[75]  The alleged funding misrepresentations—even if accepted as true—do not provide a basis for Plaintiffs' fraud claims.

The alternative theory of Plaintiffs' alleged fraud claim is, again, that RRSB changed the interest rate in the Forbearance Agreement without disclosing the same to Plaintiffs. Again, absent special circumstances—circumstances that Plaintiffs have not pleaded—one party to a business transaction has no duty to disclose material facts to the other party."[76] Plaintiffs admit the interest rate was plainly identified in the Forbearance Agreement.[77]  And a party to an agreement cannot complain of the terms of an agreement when it failed to read the document.[78]  In that Plaintiffs do not allege that RRSB represented that the terms in the written agreement were different than what was provided therein, Plaintiffs fail to allege a claim upon which relief can be granted.

## VI.    Plaintiffs fail to allege a claim for negligence per se in Count V because Plaintiffs are not members of a particular class intended to be protected by relevant Minnesota banking law.

In Count V, Plaintiffs seek to recover from RRSB under a theory of "Negligence Per Se."[79]  Count V fails to identify the law relied upon by Plaintiffs to support the claim.  RRSB assumes, *arguendo*, that Plaintiffs generally rely on Minnesota law because of their

---

[75]  *See* Aarestad Decl., Exs. 2(A), 2(B) & 2(C).

[76]  *Sjogren*, 244 N.W.2d at 650.

[77]  *See* Compl., ¶ 71; *see also* Aarestad Decl., Ex. 1, at 5 ("Upon execution of this Agreement by the Parties, the interest rate on the Notes (Currently 4.350%) will be modified to 6.50%").

[78]  *See Greer*, 253 N.W.2d at 140 ("[A] party to a contract on which others have relied cannot avoid the duties of the document by showing he did not know its contents." (citations omitted)).

[79]  *See* Compl., ¶¶ 138-144.

identification of RRSB's charter under Minnesota law, and the general applicability of Minnesota law to RRSB.[80]

Negligence per se is not a separate cause of action.  Instead, "[i]n what is often referred to as 'negligence per se,' a legislature may impose a duty and standard of care beyond those that exist generally."[81]  As a creature of statute, "'[f]or a statutory violation to satisfy the duty and breach elements, the person harmed by the violation must be among those the legislature intended to protect, and the harm must be of the type the legislature intended to prevent by enacting the statute.'"[82]

Here, Plaintiffs fail to identify the Minnesota statute(s) they allege give rise to liability.[83]  Instead, Plaintiffs vaguely allege that RRSB violated unspecified "lending limit laws in extending credit to Debtors[.]"[84]  Even assuming, *arguendo*, that RRSB violated lending limit restrictions, such violation would not support a negligence per se claim by Plaintiffs because the purpose of lending limit restrictions is not to protect a particular borrower, but instead to protect the other customers of the bank by preventing concentration

---

[80]   *Cf. id.* at ¶ 139 ("RRSB, as a Minnesota chartered bank operating within the State of Minnesota, had a duty to adhere to the various Minnesota laws governing the conduct of depository institutions.").

[81]   *Dunnigan v. Fed. Home Loan Mortgage Corp.*, 184 F. Supp. 3d 726, 738 (D. Minn. 2016) (citing *Anderson v. State, Dep't of Nat. Res.*, 693 N.W.2d 181, 189-90 (Minn. 2005)).

[82]   *Id.* (quoting *Anderson*, 693 N.W.2d at 190).

[83]   *Cf.* Compl., ¶¶ 138-144 (failing to identify any statute).

[84]   *Id.* at ¶ 140.

of loans to any one business concern.[85]  Accordingly, Plaintiffs failed to allege a negligence

per se claim under state law.

**VII.   Plaintiffs fail to allege a claim for negligence per se in Count VI because the Bank Bribery Act does not provide a basis for negligence per se relief.**

In Count VI, Plaintiffs again seek to recover from RRSB under a theory of "Negligence

Per Se."[86]  Plaintiffs allege that RRSB's violation of Section 215(a)(2) of Title 18  of the US

Code gives rise to liability under a negligence per se theory.[87]  And while Plaintiffs aver—in

an entirely conclusory fashion—that they are members of the class this statute is intended to

protect,[88] RRSB has been unable to located even a single case where an alleged violation of

Section 215(a)(2) gave rise to a claim for negligence per se.[89]  The alleged violation of Section

215 does not give rise to a private cause of action for Plaintiffs.

---

[85]  *See, i.e.*, Minn. Op. Att'y Gen., 29a-20, Dec. 30, 1963; Minn. Op. Att'y Gen., 29-A-20, Oct. 31, 1957; *cf. also* Aarestad Decl., Ex. 3, at 17-20 (denying injunctive relief to stay foreclosure of real property because Craig Holdings, LLC failed to show that RRSB had violated Minnesota lending laws, or that Craig Holdings, LLC would have standing to assert a violation even if one had been proved); *Pankonin v. Neill*, No. C7-90-2392, 1991 WL 59825, at *1 (Minn. Ct. App. Apr. 23, 1991) ("As appellant is not a shareholder of the bank, he is not the proper plaintiff to assert a claim under Minn.Stat. § 48.08.").

[86]  *See* Compl., ¶¶ 145-154.

[87]  *Id.* at ¶ 146.

[88]  *See id.* at ¶ 147.

[89]  *See, e.g.*, *Higgins v. Spence & Spence, P.A.*, No. 5:07-CV-33-D, 2008 WL 506193, at *12 (E.D.N.C. Jan. 7, 2008) ("Here, plaintiff has not provided any authorities conclusively holding that RICO, the Bank Bribery Act, or RESPA qualify as public safety statutes which may form the basis for a negligence per se claim.  Nor has the court identified any such authorities."), overruled on other grounds 2008 WL 506187 (E.D.N.C. Feb. 21, 2008).

**VIII.  Plaintiffs fail to allege a basis for which they would be entitled to receive an equitable accounting under Minnesota law for Count VII.**

Finally, in Count VII, Plaintiffs seek an equitable accounting from RRSB.  Under Minnesota law, the ability of a party to seek an equitable accounting arises primarily in two circumstances: (1) when a fiduciary owes an equitable duty to account, and (2) when the accounts at issue are exceedingly complicated.[90]  Plaintiffs failed to allege a claim for which relief can be granted for equitable accounting.  Plaintiffs fail to allege a fiduciary relationship, nor an "exceedingly complicated" transaction between the parties.  Accordingly, Plaintiffs are not entitled to an equitable accounting.

## CONCLUSION

RRSB's loaning of money to Plaintiffs that they requested was not fraudulent.  Accordingly, and for the reasons outlined above, none of Plaintiffs' claims state a cause of action upon which relief can be granted.  This Court should dismiss Plaintiffs' Complaint.

Dated this 28th day of March, 2025.

**VOGEL LAW FIRM**

BY: */s/ Drew J. Hushka*
       Caren W. Stanley (#06100)
       cstanley@vogellaw.com
       Drew J. Hushka (#08230)
       dhushka@vogellaw.com
       218 NP Avenue
       PO Box 1389
       Fargo, ND  58107-1389
       701.237.6983
       ATTORNEYS FOR DEFENDANT

---

[90]  *See United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equipment, LLC*, 813 N.W.2d 49, 57 n.3 (Minn. 2012) (citation omitted).

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>          Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>          Debtor. | Case No.:  25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>          Plaintiffs,<br><br>   vs.<br><br>Red River State Bank,<br><br>          Defendant. | Adversary No.:  25-07009 |

## DECLARATION OF CHARLES AARESTAD IN SUPPORT OF
## MOTION TO DISMISS ADVERSARY COMPLAINT

Pursuant to 28 U.S.C. § 1746, I, Charles Aarestad, do hereby declare, under penalty of perjury, the following to the best of my knowledge, information, and belief:

1.     I am the Executive Vice President of Red River State Bank, the above-named Defendant ("RRSB").

2.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of the Forbearance Agreement dated February 17, 2023, by and between RRSB and Plaintiffs Parkside Place LLC and Generations on 1st, LLC, among others.

3.      Attached hereto as <u>Exhibit 2(A)</u> are copies of Notice(s) of Final Agreement for RRSB's loans to Plaintiff Parkside Place, LLC and to Mulinda Craig.

4.      Attached hereto as <u>Exhibit 2(B)</u> are copies of Notice(s) of Final Agreement for RRSB's loans to Plaintiff Generations on 1st, LLC.

5.      Attached hereto as <u>Exhibit 2(C)</u> are copies of Notice(s) of Final Agreement for RRSB's loans to Plaintiff The Ruins, LLC, among others.

6.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the Order and Memorandum Denying Temporary Injunction entered on December 9, 2024, in the case of *Craig Holdings LLC v. Charles Aarestad, Randall Aarestad, and Red River State Bank*, Court File No. 56-CV-24-2532, Otter Tail County District Court, Seventh Judicial District, State of Minnesota.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated this 28th day of March 2025.

_____
Charles Aarestad, Executive Vice President

2

# **EXHIBIT 1**

## **FORBEARANCE AGREEMENT DATED FEBRUARY 17, 2023**

<u>**FORBEARANCE AGREEMENT**</u>

THIS FORBEARANCE AGREEMENT ("Agreement") is made and entered into this *17ᵗʰ* day of *February*, 2023, by and between Red River State Bank, a Minnesota banking corporation ("Lender"), and Mulinda Sue Craig and Generations on 1ˢᵗ, LLC, (collectively, the "Borrowers"), and Parkside Place, LLC, Generations on 1ˢᵗ, LLC, and Craig Holdings, LLC (collectively, the "Mortgagors"), and Parkside Place, LLC and Generations on 1ˢᵗ, LLC (collectively the "Grantors"), and Jesse Robert Craig (the "Guarantor"). Lender, Borrowers, Mortgagors, Grantors, and Guarantor may be referred to individually as a "Party" and collectively as the "Parties". The addresses and contact information of the Parties are set forth in the attached **Exhibit 1**.

**RECITALS**

A.    The Borrowers are indebted to Lender as evidenced by various promissory notes and modifications executed by Borrowers in favor of Lender (collectively the "Notes"):

| Borrower | Date | Loan No. | Original Principal Amount | Maturity Date |
|---|---|---|---|---|
| Mulinda Sue Craig | 3/15/2021 | 41240 | $1,321,100.00 | 12/15/2022 |
| Mulinda Sue Craig | 4/26/2021 | 41206 | $1,477,500.00 | 12/15/2022 |
| Generations on 1ˢᵗ, LLC | 3/15/2021 | 41121 | $1,565,200.00 | 12/31/2022 |
| Mulinda Sue Craig | 6/22/2021 | 41258 | $1,652,500.00 | 12/15/2022 |
| Generations on 1ˢᵗ, LLC | 9/14/2021 | 51404 | $2,976,430.98 | 12/31/2022 |
| Generations on 1ˢᵗ, LLC | 10/14/2021 | 51425 | $1,094,025.15 | 12/31/2022 |
| Generations on 1ˢᵗ, LLC | 11/9/2021 | 51437 | $424,259.89 | 12/31/2022 |
| Generations on 1ˢᵗ, LLC | 12/8/2021 | 51449 | $843,168.59 | 12/31/2022 |
| Generations on 1ˢᵗ, LLC | 1/5/2022 | 51471 | $653,729.65 | 12/31/2022 |
| Generations on 1ˢᵗ, LLC | 2/3/2022 | 51488 | $274,043.60 | 12/31/2022 |

B.    To secure the obligations of Borrowers under the Notes, Mortgagors granted liens in real property in favor of Lender as follows (collectively, the "Mortgages"):

| Mortgagor(s) | Loan No. | Document(s) |
|---|---|---|
| Parkside Place, LLC Craig Holdings, LLC | 41240 | Mortgage dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 202107192 Assignment of Rents dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 202107195<br><br>Construction Mortgage dated 10.14.2021 and recorded on 10.25.21 as Doc. No. 202106256 |

| Parkside Place, LLC<br>Craig Holdings, LLC | 41206 | Mortgage dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 202107192<br>Assignment of Rents dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 202107195<br><br>Construction Mortgage dated 10.14.2021 and recorded on 10.25.21 as Doc. No. 202106256 |
|---|---|---|
| Generations on 1st, LLC | 41121 | Mortgage dated 03.15.2021 and recorded on 08.03.2021 as Doc. No. 202104517 |
| Parkside Place, LLC<br>Craig Holdings, LLC | 41258 | Mortgage dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 202107192<br>Assignment of Rents dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 202107195<br><br>Construction Mortgage dated 10.14.2021 and recorded on 10.25.21 as Doc. No. 202106256 |
| Generations on 1st, LLC<br>Craig Holdings, LLC | 51404 | Construction Mortgage dated 03.15.2021 and recorded on 08.03.2021 as Doc. No. 202104517<br><br>Construction Mortgage dated 10.14.2021 and recorded on 10.25.21 as Doc. No. 202106256 |
| Generations on 1st, LLC<br>Craig Holdings, LLC | 51425 | Construction Mortgage dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517<br><br>Construction Mortgage dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 |
| Generations on 1st, LLC<br>Craig Holdings, LLC | 51437 | Construction Mortgage dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517<br><br>Construction Mortgage dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 |
| Generations on 1st, LLC<br>Craig Holdings, LLC | 51449 | Construction Mortgage dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517<br><br>Construction Mortgage dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 |
| Generations on 1st, LLC<br>Craig Holdings, LLC | 51471 | Construction Mortgage dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517<br><br>Construction Mortgage dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 |
| Generations on 1st, LLC<br>Craig Holdings, LLC | 51488 | Construction Mortgage dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517<br><br>Construction Mortgage dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 |

The real property identified in the Mortgages is collectively referred to as the "Real Property Collateral".

2

C.    To further secure the obligations of Borrowers under the Notes, Grantors granted to Lender security interests in Grantors' personal property, including all assets and proceeds pursuant to various commercial security agreements executed by Borrowers and/or Grantors in favor of Lender as follows (collectively, the "Security Agreements"):

| Grantor | Borrower | Loan No. | Document(s) |
|---|---|---|---|
| Parkside Place, LLC<br>Generations on 1st, LLC | Mulinda Sue Craig | 41240 | Commercial Security Agreement dated 05.27.2021 UCC-1 for Parkside Place, LLC filed 04.27.2021 (ND) and 10.30.20 (SD) and Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) |
| Parkside Place, LLC<br>Generations on 1st, LLC | Mulinda Sue Craig | 41206 | Commercial Security Agreement dated 4.26.2021 UCC-1 for Parkside Place, LLC filed 04.27.2021 (ND) and 10.30.20 (SD) and Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) |
| Generations on 1st, LLC | Generations on 1st, LLC | 41121 | Commercial Security Agreement dated 3.15.2021 UCC-1 filed 04.27.2021 (ND) and 3.22.21 (SD) |
| Parkside Place, LLC<br>Generations on 1st, LLC | Mulinda Sue Craig | 41258 | Commercial Security Agreement dated 6.22.2021 UCC-1 for Parkside Place, LLC filed 04.27.2021 (ND) and 10.30.20 (SD) and Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) |
| N/A | Generations on 1st, LLC | 51404 | |
| N/A | Generations on 1st, LLC | 51425 | |
| N/A | Generations on 1st, LLC | 51437 | |
| N/A | Generations on 1st, LLC | 51449 | |
| N/A | Generations on 1st, LLC | 51471 | |
| N/A | Generations on 1st, LLC | 51488 | |

The Grantors' personal property secured by the Security Agreements is collectively referred to as the "Personal Property Collateral".

D.    Guarantor personally guaranteed the payment and performance of Borrowers under the Notes, Mortgages, and Security Agreements to Lender pursuant to personal guarantees as follows (collectively, the "Guarantees"):

| Guarantor | Borrower | Loan No. | Guaranty |
|---|---|---|---|
| N/A | Mulinda Sue Craig | 41240 | |
| N/A | Mulinda Sue Craig | 41206 | |
| Jesse Robert Craig | Generations on 1st, LLC | 41121 | Commercial Guaranty dated 3.15.2021 |

| N/A | Mulinda Sue Craig | 41258 | |
|---|---|---|---|
| Jesse Robert Craig | Generations on 1st, LLC | 51404 | Commercial Guaranty dated 9.14.2021 |
| Jesse Robert Craig | Generations on 1st, LLC | 51425 | Commercial Guaranty dated 10.14.2021 |
| Jesse Robert Craig | Generations on 1st, LLC | 51437 | Commercial Guaranty dated 11.9.2021 |
| Jesse Robert Craig | Generations on 1st, LLC | 51449 | Commercial Guaranty dated 12.8.2021 |
| Jesse Robert Craig | Generations on 1st, LLC | 51471 | Commercial Guaranty dated 1.5.2022 |
| Jesse Robert Craig | Generations on 1st, LLC | 51488 | Commercial Guaranty dated 2.3.2022 |

E.      The Notes, Mortgages, Security Agreements, Guarantees, and all other instruments, agreements and documents referenced in or executed and delivered in connection with any of the foregoing loans, including all amendments and renewals thereof and replacements thereto, are collectively the "Loan Documents". A summary of the Loan Documents and the loans is attached hereto as **Exhibit 2** and incorporated herein by reference.

F.      All of the obligations, debts, or liabilities of Borrowers to Lender arising under, or with respect to the Loan Documents are collectively referred to as the "Indebtedness".

G.      Borrowers, Mortgagors, Grantors, and Guarantor are in default with respect to the loans identified above and the Loan Documents, including, and without limitation, all of the loans have matured and Borrowers have failed to pay off the loans.

H.      Lender, Borrowers, Mortgagors, Grantors, and Guarantor are desirous of restructuring the Indebtedness without resort to litigation.

## AGREEMENT

NOW THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged, Lender, Borrowers, Mortgagors, Grantors, and Guarantor stipulate and agree as follows:

1.      Indebtedness to Lender. Borrowers', Mortgagors', Grantors', and Guarantor's statements, warranties, and representations contained in this Agreement are true and accurate. Borrowers, Mortgagors, Grantors, and Guarantor are indebted to Lender in accord with the terms of the Loan Documents and are bound by the Loan Documents. All representations contained in the Loan Documents are true and correct with the same effect as if made as of the date of this Agreement. The Loan Documents are enforceable in accord with their terms. Borrowers, Mortgagors, Grantors, and Guarantor are in default with respect to the Indebtedness and on the obligations due under the Loan Documents. Borrowers, Mortgagors, Grantors, and Guarantor have no defenses at law or equity, or waive, abandon and relinquish any defenses Borrowers, Mortgagors, Grantors, and/or Guarantor may have with respect to the Indebtedness, enforcement of the Loan Documents and enforcement of the rights provided to Lender therein and/or by law, said rights including but not limited to entry of a money judgment against Borrowers and Guarantor, and foreclosure by Lender with respect to the Real Property Collateral and Personal Property Collateral.

2.      Extension of Maturity Date on Notes. Lender will extend the maturity date on certain of the Notes as follows:

| Borrower | Date | Loan No. | Original Maturity Date | Extended Maturity Date |
|---|---|---|---|---|
| Mulinda Sue Craig | 3/15/2021 | 41240 | 12/15/2022 | 5/31/2023 |
| Mulinda Sue Craig | 4/26/2021 | 41206 | 12/15/2022 | 5/31/2023 |
| Generations on 1st, LLC | 3/15/2021 | 41121 | 12/31/2022 | 5/31/2023 |
| Mulinda Sue Craig | 6/22/2021 | 41258 | 12/15/2022 | 5/31/2023 |
| Generations on 1st, LLC | 9/14/2021 | 51404 | 12/31/2022 | 5/31/2023 |
| Generations on 1st, LLC | 10/14/2021 | 51425 | 12/31/2022 | 5/31/2023 |
| Generations on 1st, LLC | 11/9/2021 | 51437 | 12/31/2022 | 5/31/2023 |
| Generations on 1st, LLC | 12/8/2021 | 51449 | 12/31/2022 | 5/31/2023 |
| Generations on 1st, LLC | 1/5/2022 | 51471 | 12/31/2022 | 5/31/2023 |
| Generations on 1st, LLC | 2/3/2022 | 51488 | 12/31/2022 | 5/31/2023 |

Borrowers', Mortgagors', Grantors', and Guarantor's default under the terms of this Agreement or any of the Loan Documents will allow immediate acceleration of the Indebtedness by Lender.

3.  <u>Modification of Interest Rates</u>. Upon execution of this Agreement by the Parties, the interest rate on the Notes (currently 4.350%) will be modified to 6.50%.

4.  <u>Execution of Assignment of Rents</u>. Upon execution of this Agreement, Craig Holdings, LLC and Generations on 1st, LLC will execute and deliver to Lender a standard Assignment of Rents in recordable form in substantially the same form as attached as **Exhibit 3**.

5.  <u>Right of Lender to Recover on Indebtedness</u>. In the event of Borrowers', Mortgagors', Grantors', and/or Guarantor's default under the terms of this Agreement, Lender will have the right to proceed against Borrowers, Mortgagors, Grantors, and/or Guarantor and against the Real Property Collateral and Personal Property Collateral to recover on the Indebtedness.

6.  <u>Borrowers', Mortgagors', Grantors', and Guarantor's Representations and Warranties</u>. Borrowers, Mortgagors, Grantors, and Guarantor hereby represent and warrant to Lender as follows:

   a.  The representations and warranties contained herein are true and correct and the representations and warranties contained in the Loan Documents are true and correct with the same effect as though they had been made at the date hereof.

   b.  This Agreement, when executed and delivered, will be a valid and binding obligation of Borrowers, Mortgagors, Grantors, and Guarantor subject, however, to limitations imposed by bankruptcy and other similar laws affecting the enforcement of creditors' rights generally.

    c.      No default or event of default other than those stated herein has occurred and is continuing under the Loan Documents. No event, other than those stated herein, has occurred which, with the giving of notice or the passage of time, or both, would constitute such a default or event of default.

    d.      The financial statements and other financial information submitted to Lender with respect to each Borrowers, Mortgagors, Grantors, and Guarantor are true, correct and complete as of the date submitted.

    e.      Borrowers, Mortgagors, Grantors, and Guarantor represent and warrant he/she/it is authorized to execute, deliver and perform under the Loan Documents and all other such documents in existence executed in connection with the Indebtedness, and any other documents as may be deemed necessary or convenient to consummate the transactions contemplated by this Agreement without the joinder of any other Party.

7.      <u>Misrepresentation by Borrowers, Mortgagors, Grantors, and Guarantor</u>. Any material misrepresentation by Borrowers, Mortgagors, Grantors, and/or Guarantor respecting or relating to the Indebtedness and/or any conversion by Borrowers, Mortgagors, Grantors, and/or Guarantor of Lender's Real Property Collateral and/or Personal Property Collateral, will be grounds for Lender declaring this Agreement null and void, and proceeding to enforce the Loan Documents in accord with their terms. If Lender declares this Agreement null and void, Lender will retain all payments, benefits, compensation or consideration it has received under this Agreement with the same to be credited against the Indebtedness.

8.      <u>No Additional Forbearance</u>. Other than specifically stated herein, this Agreement does not provide that Lender shall extend additional credit or concessions to Borrowers, Mortgagors, Grantors, and/or Guarantor. Borrowers will not be permitted to make any advances or readvances under the Loan Documents. Borrowers, Mortgagors, Grantors, and/or Guarantor shall not be entitled to any additional forbearance or delay in the satisfaction of the Indebtedness other than specifically provided for herein. Other than as specifically provided for herein, all of the terms, provisions and conditions of the Loan Documents shall remain unaltered, in full force and effect and binding on Borrowers, Mortgagors, Grantors, and/or Guarantor and are incorporated and restated herein.

9.      <u>Lender Performance</u>. Lender has fully performed in accord with all the terms and conditions of the Loan Documents, is not in default thereunder, and no circumstances exist under which Lender may be deemed in default merely upon service of notice or passage of time, or both. Borrowers, Mortgagors, Grantors, and Guarantor acknowledge that Lender has pursued a course of fair dealing and has acted in good faith toward Borrowers, Mortgagors, Grantors, and Guarantor in connection with the making and servicing of the Indebtedness and in connection with the negotiation of this Agreement.

10.      <u>Borrowers', Mortgagors', Grantors', and Guarantor's Release of Claims</u>. Borrowers, Mortgagors, Grantors, and Guarantor waive, abandon, relinquish and discharge any and all claims, causes of action, suits, and demands for payment of money or performance, including those related to personal injury or property damage, against Lender, its affiliates, subsidiaries, shareholders, directors, officers, attorneys, employees, agents, assigns, predecessors and/or successors and without regard to whether said claims, causes of action, suits, and demands for payment of money or performance, relate to or arise from the Indebtedness and/or the Loan Documents. In granting this release, Borrowers, Mortgagors, Grantors, and Guarantor expressly waive any provision of law precluding a release from applying to claims, causes of action, suits, and demands for payment of money or performance unknown to Borrowers, Mortgagors, Grantors, and/or Guarantor. The terms of this release are contractual and not a mere recital. In granting

6

this release, Borrowers, Mortgagors, Grantors, and Guarantor are relying upon their own investigation and analysis and not upon any representations, or promises of Lender or any third parties.

11.     Entire Understanding, Amendment. This Agreement constitutes the entire understanding and agreement of the Parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the Party or Parties sought to be charged or bound by the alteration or amendment.

12.     Choice of Law. This Agreement shall be interpreted and construed in accord with the laws of the State of Minnesota.

13.     Severability. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstances, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

14.     Cooperation in Implementing Agreement. The Parties shall execute any and all documents necessary to carry out the terms of this Agreement.

15.     No Waiver. No Party shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by any Party. No delay or omission on the part of any party in exercising any right shall operate as a waiver of such right or any other right. A waiver by any party of a provision of this Agreement shall not prejudice or constitute a waiver of any party's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by any Party, nor any course of dealing between Lender, Borrowers, Mortgagors, Grantors, and/or Guarantor shall constitute a waiver of any of any rights or of any obligations of any of the Parties hereto. Whenever the consent of any Party is required under this Agreement, the granting of such consent by any Party in any instance shall not constitute continuing consent in subsequent instances where such consent is required, and in all cases such consent may be granted or withheld in the sole discretion of any Party.

16.     Time of the Essence. Time is of the essence in the performance of this Agreement.

17.     Review of Agreement by Attorneys and Accountants. Borrowers, Mortgagors, Grantors, and Guarantor acknowledge he/she/it has had the opportunity to have this Agreement reviewed by an attorney and an accountant and has been given adequate opportunity to have such review completed. In entering into this Agreement, Borrowers, Mortgagors, Grantors, and Guarantor are relying solely upon their own judgment and analysis and not upon any representations of Lender other than the representations specifically set forth herein.

18.     Confidentiality. Except as may be necessary to enforce the terms of this Agreement or as may be required by state or federal law, or disclosures that need to be or are required to be made to governmental or regulatory agencies or offices, the Parties, and their assigns or other representatives, will not disclose this Agreement or its contents with the exception that the Parties may disclose this Agreement to their legal and accounting representatives, lenders, and refinancers.

19.    <u>Notices</u>. Any notices required under this Agreement shall be provided at the addresses and emails as set forth on the attached **Exhibit 1**.

20.    <u>Rights Cumulative</u>. Except as may be prohibited by applicable law, all of the Lender's, Borrowers', Mortgagors', Grantors', and Guarantor's rights and remedies under this Agreement and/or the Loan Documents shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrowers, Mortgagors, Grantors, and/or Guarantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

21.    <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts. This Agreement may be signed by facsimile or other electronic means and such signatures shall be as binding on the party providing the same as original signatures.

Dated: 2 / 17 / 2023

**Red River State Bank - Lender**

By: Charles Aarestad
Its: EVP

Dated: _____

**Mulinda Sue Craig - Borrower**

Dated: 2 - 17 - 23

**Generations on 1st, LLC – Borrower, Mortgagor, and Grantor**

By:
Its: member

Dated: 2 - 17 - 23

**Parkside Place, LLC – Mortgagor and Grantor**

By:
Its: member

Dated: 2 - 17 - 23

**Craig Holdings, LLC – Mortgagor and Grantor**

By:
Its: member

Dated: 2 - 17 - 23

**Jesse Robert Craig - Guarantor**

5007111.1

Dated: 2 / 17 / 2023

**Red River State Bank - Lender**

By: Charles Ancestad
Its: EVP

Dated: 2.17.23

**Mulinda Sue Craig - Borrower**

Dated: 2 - 17- 23

**Generations on 1st, LLC – Borrower, Mortgagor, and Grantor**

By:
Its: member

Dated: 2 - 17- 23

**Parkside Place, LLC – Mortgagor and Grantor**

By:
Its: member

Dated: 2 - 17 -23

**Craig Holdings, LLC – Mortgagor and Grantor**

By:
Its: member

Dated: 2 - 17. 23

**Jesse Robert Craig - Guarantor**

5007111.1

## EXHIBIT 1

### Lender

Red River State Bank
ATTN: Charles Aarestad
300 2nd Ave W
PO Box 25
Halstad, MN 56548
Email: Charles.aarestad@redriverbank.com

### Borrower(s)

Mulinda Sue Craig, a North Dakota resident
1405 1st Ave N
Fargo, ND 58102
Email: mcraig@cpbusmgmt.com

Generations on 1st, LLC, a South Dakota limited liability company
ATTN:  Jesse Craig
1405 1st Ave N
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

### Mortgagor(s)

Parkside Place, LLC, a South Dakota limited liability company
ATTN: Jesse Craig
1405 1st Ave N.
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

Generations on 1st, LLC, a South Dakota limited liability company
ATTN: Jesse Craig
1405 1st Ave N
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

Craig Holdings, LLC, a North Dakota limited liability company
ATTN: Jesse Craig
1405 1st Ave N.
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

**Grantor(s)**

Parkside Place, LLC, a South Dakota limited liability company
ATTN: Jesse Craig
1405 1st Ave N.
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

Generations on 1st, LLC, a South Dakota limited liability company
ATTN: Jesse Craig
1405 1st Ave N
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

**Guarantor(s)**

Jesse Robert Craig
1405 1st Ave N
Fargo, ND 58102
Email: jcraig@craigprop.com and jcraig701@gmail.com

## **EXHIBIT 2**

**(Loan Summary)**

| Loan No. | Date of Loan | Original Amount | Borrower | Guarantor | Current Principal | Maturity Date | Primary Loan Documents | Collateral | Current Status | Payoff as of 01.27.2023 | Current Interest Rate | Per Diem |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 41240 | 2021.03.15 | $ 1,321,100.00 | Mulinda Sue Craig | NONE | $1,321,100.00 | Original 2022.12.15 | 1. Note dated 05/27/2021<br>2. Commercial Security Agreement executed by Parkside Place, LLC and Generations on 1st, LLC dated 05.27.2021<br>3. Business Loan Agreement dated 05.27.2021<br>4. Contemporanous Agreement dated 07.30.2021<br>5. Mortgage granted from Parkside Place, LLC dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 201107192<br>6. Assignment of Rents from Parkside Place, LLC dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 201107195<br>7. Construction Mortgage granted from Craig Holdings, LLC dated 10.14.2021 and recorded as Doc. No. 202106256<br>8. Modification dated 12.15.2021<br>9. UCC-1 for Parkside Place, LLC filed 04.27.2021 (ND) and 10.30.20 (SD) and Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) | Lot 1 of Parkside Place Addition to the City of Watertown, Coddington County, SD<br><br>26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 1,427,142.16 | 4.35% | $ 157.45 |
| 41206 | 2021.04.26 | $ 1,477,500.00 | Mulinda Sue Craig | NONE | $915,677.49 | Original 2022.12.15 | 1. Note dated 04/26/2021<br>2. Commercial Security Agreement executed by Parkside Place, LLC and Generations on 1st, LLC dated 04/26/2021<br>3. Contemporanous Agreement dated 07.30.2021<br>4. Mortgage granted from Parkside Place, LLC dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 201107192<br>5. Assignment of Rents from Parkside Place, LLC dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 201107195<br>6. Construction Mortgage granted from Craig Holdings, LLC dated 10.14.2021 and recorded as Doc. No. 202106256<br>7. Modification dated 12.15.2021<br>8. UCC-1 for Parkside Place, LLC filed 04.27.2021 (ND) and 10.30.20 (SD) and Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) | Lot 1 of Parkside Place Addition to the City of Watertown, Coddington County, SD<br><br>26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 1,011,096.02 | 4.35% | $ 109.13 |
| 41121 | 2021.03.15 | $ 1,565,200.00 | Generations on 1st, LLC | Jesse Robert Craig | $1,565,200.00 | Original: 2023.03.15<br>Current: 2022.12.31 | 1. Note dated 03.15.2021<br>2. Commercial Security Agreement executed by Generations on 1st, LLC dated 03.15.2021<br>3. Business Loan Agreement dated 3.15.2021<br>4. Contemporanous Agreement dated 07.30.2021<br>5. Commercial Guaranty executed by Jesse Robert Craig dated 3.15.2021<br>6. Construction Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded on 08.03.2021 as Doc. No. 202104517<br>7. Modification dated 09.30.2021<br>8. Modification dated 03.17.2022<br>9. UCC-1 for Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 1,712,605.10 | 4.35% | $ 186.54 |
| 41258 | 2021.06.22 | $ 1,652,500.00 | Mulinda Sue Craig | NONE | $1,652,500.00 | Original 2024.12.15<br>Current: 2022.12.15 | 1. Note dated 6/22/21<br>2. Commercial Security Agreement for Parkside Place, LLC and Generations on 1st, LLC dated 06.22.2021<br>3. Business Loan Agreement dated 06.22.2021<br>4. Contemporanous Agreement dated 07.30.2021<br>5. Mortgage granted from Parkside Place, LLC dated 12.13.2021 and recorded 12.15.2021 as Doc. No. 201107192<br>6. Assignment of Rents from Parkside Place, LLC dated 12.13.2021 as Doc. No. 201107195<br>7. Construction Mortgage granted from Craig Holdings, LLC dated 10.14.2021 and recorded as Doc. No. 202106256<br>8. Modification dated 12.15.2021<br>9. UCC-1 for Parkside Place, LLC filed 04.27.2021 (ND) and 10.30.20 (SD) and Generations on 1st, LLC filed 04.27.2021 (ND) and 3.22.21 (SD) | Lot 1 of Parkside Place Addition to the City of Watertown, Coddington County, SD<br><br>26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 1,777,513.99 | 4.35% | $ 196.94 |

| Loan No. | Date of Loan | Original Amount | Borrower | Guarantor | Current Principal | Maturity Date | Primary Loan Documents | Collateral | Current Status | Payoff as of 01.27.2023 | Current Interest Rate | Per Diem |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51404 | 2021.09.14 | $ 2,976,430.98 | Generations on 1st, LLC | Jesse Robert Craig | $2,976,430.98 | Original 2022.03.31 Extended 2022.12.31 | 1. Note dated 09/14/2021 2. Construction Loan Agreement dated 09.14.2021 3. Commercial Guaranty executed by Jesse Robert Craig dated 9.14.2021 4. Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded on 08.03.2021 as Doc. No. 202104517 5. Construction Mortgage from Craig Holdings, LLC dated 10.14.2021 and recorded on 10.25.21 as Doc. No. 202106256 6. Modification Dated 03.17.2022 | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 3,163,793.63 | 4.35% | $ 354.73 |
| 51425 | 2021.10.14 | $ 1,094,025.15 | Generations on 1st, LLC | Jesse Robert Craig | $1,094,025.15 | Original 2022.03.31 Extended 2022.12.31 | 1. Note dated 10/14/2021 2. Construction Loan Agreement dated 10.14.2021 3. Commercial Guaranty from Jessee Robert Craig dated 10.14.2021 4. Construction Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517 5. Construction Mortgage from Craig Holdings LLC dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 6. Modification Dated 03.17.2022 | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 1,165,305.53 | 4.35% | $ 130.38 |
| 51437 | 2021.11.09 | $ 424,259.84 | Generations on 1st, LLC | Jesse Robert Craig | $424,259.84 | Original 2022.03.31 Extended 2022.12.31 | 1. Note dated 11/09/2021 2. Construction Loan Agreement dated 11.09.2021 3. Construction Guaranty from Jesse Robert Craig dated 11.9.2021 4. Construction Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517 5. Construction Mortgage from Craig Holdings LLC dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 6. Modification Dated 03.17.2022 | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 456,709.57 | 4.35% | $ 50.56 |
| 51449 | 2021.12.08 | $ 843,168.59 | Generations on 1st, LLC | Jesse Robert Craig | $843,168.59 | Original 2022.03.31 Extended 2022.12.31 | 1. Note dated 12/08/2021 2. Construction Loan Agreement dated 12.08.2021 3. Commercial Guaranty from Jesse Robert Craig dated 12.8.2021 4. Construction Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517 5. Construction Mortgage from Craig Holdings LLC dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 6. Modification Dated 03.17.2022 | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 894,770.28 | 4.35% | $ 100.49 |
| 51471 | 2022.01.05 | $ 653,729.65 | Generations on 1st, LLC | Jesse Robert Craig | $653,729.65 | Original 2022.12.31 | 1. Note dated 01/05/2022 2. Construction Loan Agreement dated 1.5.2022 3. Commercial Guaranty from Jesse Robert Craig dated 1.5.2022 4. Construction Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517 5. Construction Mortgage granted from Craig Holdings LLC dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 693,880.89 | 4.35% | $ 77.91 |
| 51488 | 2022.02.03 | $ 274,043.60 | Generations on 1st, LLC | Jesse Robert Craig | $274,043.60 | Original 2022.12.31 | 1. Note dated 02/03/2022 2. Construction Loan Agreement dated 02.03.2022 3. Commercial Guaranty from Jesse Robert Craig dated 2.3.2022 4. Construction Mortgage granted from Generations on 1st, LLC dated 03.15.2021 and recorded 08.03.2021 as Doc. No. 202104517 5. Constructino Mortgage granted from Craig Holdings LLC dated 10.14.2021 and recorded 10.25.2021 as Doc. No. 202106256 | 26 1st Ave SW, Watertown, SD 57201 | Matured/Default | $ 295,735.87 | 4.35% | $ 32.66 |

**<u>EXHIBIT 3</u>**

**(Assignment(s) of Rents)**

This **ASSIGNMENT OF RENTS**
**was prepared by:**
**Charles Aarestad, Vice President**
**Red River State Bank**
**300 2nd Ave West**
**Halstad, MN 56548**
**(218) 456-2187**

---

# ASSIGNMENT OF RENTS

**RECORDATION REQUESTED BY:**
    **Red River State Bank**
    **300 2nd Ave West**
    **P.O. Box 25**
    **Halstad, MN  56548**

**WHEN RECORDED MAIL TO:**
    **Red River State Bank**
    **300 2nd Ave West**
    **P.O. Box 25**
    **Halstad, MN  56548**

**SEND TAX NOTICES TO:**
    **GENERATIONS ON 1ST, LLC**
    **1405 1ST AVE N**
    **FARGO, ND  58102**

**THIS ASSIGNMENT OF RENTS** dated _2 / 17 / 2023_, **is made and executed between GENERATIONS ON 1ST, LLC; A SOUTH DAKOTA LIMITED LIABILITY COMPANY (referred to below as "Grantor") and Red River State Bank, whose address is 300 2nd Ave West, P.O. Box 25, Halstad, MN  56548 (referred to below as "Lender").**

**ASSIGNMENT.  For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Codington County, State of South Dakota:**

    **GENERATIONS ON 1ST ADDITION TO THE CITY OF WATERTOWN, CODINGTON COUNTY, SOUTH DAKOTA**

**The Property or its address is commonly known as  26 1st Ave SW, Watertown, SD  57201. The Property tax identification number is 9580.**

**CROSS-COLLATERALIZATION.  In addition to the Note, this Assignment secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as**

## ASSIGNMENT OF RENTS
**Loan No: 51404**                          **(Continued)**                                    **Page 2**

well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**FUTURE ADVANCES.** In addition to the Note, this Assignment secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Assignment secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

**THIS ASSIGNMENT IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS. THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

   **Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

   **Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

   **No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

   **No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

   **Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

## ASSIGNMENT OF RENTS
**Loan No: 51404** (Continued) **Page 3**

===============================================================

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of South Dakota and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to

# ASSIGNMENT OF RENTS
## (Continued)

Page 4

discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property.   All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor.  All such expenses will become a part of the Indebtedness and, at Lender's option, will  (A)  be payable on demand;  (B)  be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either  (1)  the term of any applicable insurance policy; or  (2)  the remaining term of the Note; or  (C)  be treated as a balloon payment which will be due and payable at the Note's maturity.   The Assignment also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**DEFAULT.**  Each of the following, at Lender's option, shall constitute an Event of Default under this Assignment:

**Payment Default.**  Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.**   Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Assignment or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default on Other Payments.**  Failure of Grantor within the time required by this Assignment to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**False Statements.**  Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf, or made by Guarantor, or any other guarantor, endorser, surety, or accommodation party, under this Assignment or the Related Documents in connection with the obtaining of the Indebtedness evidenced by the Note or any security document directly or indirectly securing repayment of the Note is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.**  This Assignment or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.**   The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.**  Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor

# ASSIGNMENT OF RENTS
## (Continued)

Loan No: 51404                                                    Page 5

of Grantor or by any governmental agency against the Rents or any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Execution; Attachment.** Any execution or attachment is levied against the Property, and such execution or attachment is not set aside, discharged or stayed within thirty (30) days after the same is levied.

**Change in Zoning or Public Restriction.** Any change in any zoning ordinance or regulation or any other public restriction is enacted, adopted or implemented, that limits or defines the uses which may be made of the Property such that the present or intended use of the Property, as specified in the Related Documents, would be in violation of such zoning ordinance or regulation or public restriction, as changed.

**Default Under Other Lien Documents.** A default occurs under any other mortgage, deed of trust or security agreement covering all or any portion of the Property.

**Judgment.** Unless adequately covered by insurance in the opinion of Lender, the entry of a final judgment for the payment of money involving more than ten thousand dollars ($10,000.00) against Grantor and the failure by Grantor to discharge the same, or cause it to be discharged, or bonded off to Lender's satisfaction, within thirty (30) days from the date of the order, decree or process under which or pursuant to which such judgment was entered.

**Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor, or any other guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any Guarantor, or any other guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of any Event of Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Grantor shall have the right, prior to default or abandonment of the Property,

# ASSIGNMENT OF RENTS
**Loan No: 51404** (Continued) Page 6

to collect and retain the Rents as they become due and payable. The assignment of Rents contained in this Assignment shall be effective until the payment of all Indebtedness secured by this Assignment, or in the event of foreclosure, until the period of redemption expires. Regardless of the extinguishment of the Indebtedness by a foreclosure sale, this benefit shall continue for the benefit of the purchaser at the foreclosure sale.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings in this Assignment are for convenience purposes only

**ASSIGNMENT OF RENTS**
**(Continued)**

Loan No: 51404                                                                          Page 7

---

and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of **South Dakota.** In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of **Minnesota** without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of **Minnesota.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Norman County, State of Minnesota.

**Merger.** There shall be no merger of the interest or estate created by this Assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Non-Liability of Lender.** The relationship between Grantor and Lender created by this Assignment is strictly a debtor and creditor relationship and not fiduciary in nature, nor is the relationship to be construed as creating any partnership or joint venture between Lender and Grantor. Grantor is exercising Grantor's own judgment with respect to Grantor's business. All information supplied to Lender is for Lender's protection only and no other

## ASSIGNMENT OF RENTS
**(Continued)**

party is entitled to rely on such information.  There is no duty for Lender to review, inspect, supervise or inform Grantor of any matter with respect to Grantor's business.  Lender and Grantor intend that Lender may reasonably rely on all information supplied by Grantor to Lender, together with all representations and warranties given by Grantor to Lender, without investigation or confirmation by Lender and that any investigation or failure to investigate will not diminish Lender's right to so rely.

**Notices.**  Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment.  Any party may change its address for notices under this Assignment by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address.  For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address.  Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.**  The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.**  If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance.  If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable.  If the offending provision cannot be so modified, it shall be considered deleted from this Assignment.  Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Sole Discretion of Lender.**  Whenever Lender's consent or approval is required under this Assignment, the decision as to whether or not to consent or approve shall be in the sole and exclusive discretion of Lender and Lender's decision shall be final and conclusive.

**Successors and Assigns.**  Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns.  If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.**  Time is of the essence in the performance of this Assignment.

**Waiver of Homestead Exemption.**  Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of South Dakota as to all Indebtedness secured by this Assignment.

**DEFINITIONS.**  The following capitalized words and terms shall have the following meanings

# ASSIGNMENT OF RENTS
**(Continued)**

when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means GENERATIONS ON 1ST, LLC.

**Event of Default.** The words "Event of Default" mean individually, collectively, and interchangeably any of the events of default set forth in this Assignment in the default section of this Assignment.

**Grantor.** The word "Grantor" means GENERATIONS ON 1ST, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness, and, in each case, Grantor's successors, assigns, heirs, personal representatives, executors and administrators of any guarantor, surety, or accommodation party.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor, or any other guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision, together with all interest thereon and all amounts that may be indirectly secured by the Cross-Collateralization provision of this Assignment.

**Lender.** The word "Lender" means Red River State Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated September 14, 2021, in the original principal amount of $2,976,430.98 from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

## ASSIGNMENT OF RENTS
**(Continued)**

Loan No: 51404

Page 10

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

**THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON** Feb. 17th 2023 .

**GRANTOR:**

**GENERATIONS ON 1ST, LLC**

By: _____

    **JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC**

| | **ASSIGNMENT OF RENTS** | |
|---|---|---|
| Loan No: 51404 | **(Continued)** | Page 11 |

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _____*N D*_____                              )

                                                      ) SS

COUNTY OF _____*Cass*_____                            )

On this _____*17*_____ day of _____*February*_____, 20 *23*, before me, the undersigned Notary Public, personally appeared **JESSE ROBERT CRAIG, MANAGING MEMBER** of **GENERATIONS ON 1ST, LLC,** and known to me to be a member or designated agent of the limited liability company that executed the ASSIGNMENT OF RENTS and acknowledged the Assignment to be the free and voluntary act and deed of the limited liability company, by authority of statute, its articles of organization or its operating agreement, for the uses and purposes therein mentioned, and on oath stated that he or she is authorized to execute this Assignment and in fact executed the Assignment on behalf of the limited liability company.

By _____

Notary Public in and for the State of _____*N D*_____          My commission expires_____

LaserPro, Ver. 22.4.0.056 Copr. Finastra USA Corporation 1997, 2023.  All Rights Reserved.
- SD/MN  C:\HARLAND\CFI\LPL\G14.FC  TR-5771  PR-57

LUCAS LEEBY
Notary Public
State of North Dakota
My Commission Expires Oct. 5, 2025

# <u>EXHIBIT 2(A)</u>

# NOTICE(S) OF FINAL AGREEMENT FOR RRSB'S LOANS TO PLAINTIFF PARKSIDE PLACE, LLC AND TO MULINDA CRAIG

## NOTICE OF FINAL AGREEMENT

| Principal $4,200,000.00 | Loan Date 12-13-2021 | Maturity 12-01-2026 | Loan No 51438 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

**Borrower:** PARKSIDE PLACE, LLC (TIN: ▮▮▮▮▮)
1405 1ST AVE N
FARGO, ND  58102

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,   (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.**  The term "Loan" means the following described loan:  a Fixed Rate (4.150% initial rate) Nondisclosable Loan to a Limited Liability Company for $4,200,000.00 due on December 1, 2026.

**Loan Agreement.**  The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- LLC Resolution: PARKSIDE PLACE, LLC
- Promissory Note
- SD Mortgage for Real Property located at 8 2nd ST NE, Watertown, SD  57201
- APPRAISAL NOTICE - APPRAISAL NOTICE
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Disbursement Request and Authorization

- Business Loan Agreement
- MN Commercial Guaranty:  JESSE ROBERT CRAIG
- SD Assignment of Rents
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Agreement to Provide Insurance
- Notice of Insurance Requirements
- Notice of Final Agreement

**Parties.**  The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:        PARKSIDE PLACE, LLC
Grantor(s):      PARKSIDE PLACE, LLC
Guarantor 1:  JESSE ROBERT CRAIG

---

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement.  This Notice is dated December 13, 2021.

BORROWER:

PARKSIDE PLACE, LLC

By: _____
JESSE ROBERT CRAIG,  Managing  Member  of
PARKSIDE PLACE, LLC

GUARANTOR:

X_____
JESSE ROBERT CRAIG, Individually

Loan No: 51438

# NOTICE OF FINAL AGREEMENT
## (Continued)

Page 2

LENDER:

RED RIVER STATE BANK

X _____
CHARLES AARESTAD, Vice President

RRSB-Parkside 00088

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,321,100.00 | 05-27-2021 | 12-15-2022 | 41240 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** MULINDA SUE CRAIG (SSN: [redacted]
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to an Individual for $1,321,100.00 due on December 15, 2022.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Business Loan Agreement
- SD Commercial Security Agreement: Collateral owned by PARKSIDE PLACE, LLC
- National UCC Instructions 04/20/11
- National UCC Addendum Instructions 04/20/11
- Notice of Insurance Requirements
- Notice of Final Agreement
- Promissory Note
- Electronic Communications Agreement: MULINDA SUE CRAIG
- SD National UCC Financing Statement (Rev. 04/20/11): Collateral owned by PARKSIDE PLACE, LLC
- Agreement to Provide Insurance
- Disbursement Request and Authorization

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: MULINDA SUE CRAIG
Grantor(s): PARKSIDE PLACE, LLC

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated May 27, 2021.

BORROWER:

X ______________________________
MULINDA SUE CRAIG, Individually

GRANTOR:

PARKSIDE PLACE, LLC

By: ______________________________
JESSE ROBERT CRAIG, Managing Member of PARKSIDE PLACE, LLC

GENERATIONS ON 1ST, LLC, Member of PARKSIDE PLACE, LLC

By: ______________________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

## NOTICE OF FINAL AGREEMENT
### (Continued)

Loan No: 41240                                                                                           Page 2

LENDER:

RED RIVER STATE BANK

X _____
  **MARTIN PETERSON, Loan Officer**

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D21.FC  TR-5551  PR-5

RRSB-Mulinda 00594

## NOTICE OF FINAL AGREEMENT

| Principal<br>$1,477,500.00 | Loan Date<br>04-26-2021 | Maturity<br>12-15-2022 | Loan No<br>41206 | Call / Coll<br>JR | Account | Officer<br>* * * | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing " * * * " has been omitted due to text length limitations.

**Borrower:** MULINDA SUE CRAIG (SSN: ▮▮▮▮▮)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to an Individual for $1,477,500.00 due on December 15, 2022.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- Promissory Note
- Electronic Communications Agreement: MULINDA SUE CRAIG
- National UCC Instructions 04/20/11
- National UCC Addendum Instructions 04/20/11
- Notice of Insurance Requirements
- Notice of Final Agreement

- SD Commercial Security Agreement: Collateral owned by PARKSIDE PLACE, LLC
- SD National UCC Financing Statement (Rev. 04/20/11): Collateral owned by PARKSIDE PLACE, LLC
- Agreement to Provide Insurance
- Disbursement Request and Authorization

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:    MULINDA SUE CRAIG
Grantor(s):  PARKSIDE PLACE, LLC

---

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated April 26, 2021.

**BORROWER:**

X _____
MULINDA SUE CRAIG, Individually

**GRANTOR:**

PARKSIDE PLACE, LLC

By: _____
JESSE ROBERT CRAIG, Managing Member of
PARKSIDE PLACE, LLC

GENERATIONS ON 1ST, LLC, Member of PARKSIDE PLACE, LLC

By: _____
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

Loan No: 41206

## NOTICE OF FINAL AGREEMENT
### (Continued)

Page 2

LENDER:

RED RIVER STATE BANK

X _____

   MARTIN PETERSON, Loan Officer

RRSB-Mulinda 02745

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,652,500.00 | 06-22-2021 | 12-15-2024 | 41258 | JR | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower: MULINDA SUE CRAIG (SSN: [redacted])
1405 1ST AVE N
FARGO, ND 58102

Lender: Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to an Individual for $1,652,500.00 due on December 15, 2024.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Business Loan Agreement
- SD Commercial Security Agreement: Collateral owned by PARKSIDE PLACE, LLC
- National UCC Instructions 04/20/11
- National UCC Addendum Instructions 04/20/11
- Notice of Insurance Requirements
- Notice of Final Agreement
- Promissory Note
- Electronic Communications Agreement: MULINDA SUE CRAIG
- SD National UCC Financing Statement (Rev. 04/20/11): Collateral owned by PARKSIDE PLACE, LLC
- Agreement to Provide Insurance
- Disbursement Request and Authorization

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: MULINDA SUE CRAIG
Grantor(s): PARKSIDE PLACE, LLC

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated June 22, 2021.

BORROWER:

X ______________________
MULINDA SUE CRAIG, Individually

GRANTOR:

PARKSIDE PLACE, LLC

By: ______________________
JESSE ROBERT CRAIG, Managing Member of PARKSIDE PLACE, LLC

GENERATIONS ON 1ST, LLC, Member of PARKSIDE PLACE, LLC

By: ______________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

## NOTICE OF FINAL AGREEMENT
### (Continued)

Loan No: 41258                                                                                     Page 2

LENDER:

RED RIVER STATE BANK

X _____
    MARTIN PETERSON, Loan Officer

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\F21.FC  TR-5587  PR-5

RRSB-Mulinda 04506

# **EXHIBIT 2(B)**

# **NOTICE(S) OF FINAL AGREEMENT FOR RRSB'S LOANS TO PLAINTIFF GENERATIONS ON 1ST, LLC**

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,565,200.00 | 03-15-2021 | 03-15-2023 | 41121 | JL | | *** | CBA 7/30/21 |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Fertile
114 N Mill St
PO Box 98
Fertile, MN 56540

---

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $1,565,200.00 due on March 15, 2023.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: GENERATIONS ON 1ST, LLC
- Promissory Note
- SD Commercial Security Agreement: Collateral owned by GENERATIONS ON 1ST, LLC
- SD National UCC Financing Statement (Rev. 04/20/11): Collateral owned by GENERATIONS ON 1ST, LLC
- Agreement to Provide Insurance
- Disbursement Request and Authorization
- Business Loan Agreement
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- SD Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD 57201
- National UCC Instructions 04/20/11
- National UCC Addendum Instructions 04/20/11
- Notice of Insurance Requirements
- Notice of Final Agreement

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: GENERATIONS ON 1ST, LLC
Grantor(s): GENERATIONS ON 1ST, LLC
Guarantor 1: JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated March 15, 2021.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: ______________________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

**GUARANTOR:**

X ______________________________
JESSE ROBERT CRAIG, Individually

**NOTICE OF FINAL AGREEMENT**
**(Continued)**

Loan No: 41121                                                                                                Page 2

LENDER:

RED RIVER STATE BANK

X ~~_____~~
    MARTIN PETERSON, Loan Officer

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\G21.FC  TR-5362  PR-61

RRSB GO1st 00334

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,976,430.98 | 09-14-2021 | 03-31-2022 | 51404 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

Loan. The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $2,976,430.98 due on March 31, 2022.

Loan Agreement. The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Construction Loan Agreement
- Promissory Note
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- APPRAISAL NOTICE - APPRAISAL NOTICE
- Notice of Final Agreement
- Guaranty of Completion and Performance
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Disbursement Request and Authorization

Parties. The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: GENERATIONS ON 1ST, LLC
Guarantor 1: JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated September 14, 2021.

BORROWER:

GENERATIONS ON 1ST, LLC

By: ______________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

GUARANTOR:

X ______________________
JESSE ROBERT CRAIG, Individually

LENDER:

RED RIVER STATE BANK

X ______________________
CHARLES AARESTAD, Vice President

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2021. All Rights Reserved. - MN C:\HARLAND\CFI\LPL\I21.FC TR-5559 PR-57

## NOTICE OF FINAL AGREEMENT

| Principal<br>$1,094,025.15 | Loan Date<br>10-14-2021 | Maturity<br>03-31-2022 | Loan No<br>51425 | Call / Coll | Account | Officer<br>* * * | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "* * * *" has been omitted due to text length limitations.

Borrower:  GENERATIONS ON 1ST, LLC (TIN: █████6148)      Lender:      Red River State Bank
1405 1ST AVE N                                                                300 2nd Ave West
FARGO, ND  58102                                                             P.O. Box 25
                                                                                          Halstad, MN  56548

---

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,  (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND  (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.**  The term "Loan" means the following described loan:  a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $1,094,025.15 due on March 31, 2022.

**Loan Agreement.**  The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- Construction Loan Agreement
- Promissory Note
- SD Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD  57201
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Disbursement Request and Authorization
- Guaranty of Completion and Performance
- MN Commercial Guaranty:  JESSE ROBERT CRAIG
- APPRAISAL NOTICE - APPRAISAL NOTICE
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT  - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Agreement to Provide Insurance
- Notice of Insurance Requirements
- Notice of Final Agreement

**Parties.**  The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:       GENERATIONS ON 1ST, LLC
Grantor(s):      CRAIG HOLDINGS LLC
Guarantor 1:    JESSE ROBERT CRAIG

---

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement.  This Notice is dated October 14, 2021.

BORROWER:

GENERATIONS ON 1ST, LLC

By: _____
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

GRANTOR:

CRAIG HOLDINGS LLC

By: _____
JESSE ROBERT CRAIG, Managing Member of
CRAIG HOLDINGS LLC

GUARANTOR:

X _____
JESSE ROBERT CRAIG, Individually

RRSB GO1st 01242

## NOTICE OF FINAL AGREEMENT
(Continued)

Loan No: 51425                                                                                          Page 2

LENDER:

RED RIVER STATE BANK

X _____
CHARLES AARESTAD, Vice President

LaserPro, Ver. 20.4.0.038 Copr. Finastra USA Corporation 1997, 2021   All Rights Reserved   - MN   C:\HARLAND\CFI\LPL\I21.FC  TR-5563  PR-57

RRSB GO1st 01243

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $424,259.84 | 11-09-2021 | 03-31-2022 | 51437 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $424,259.84 due on March 31, 2022.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Construction Loan Agreement
- Promissory Note
- SD Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD 57201
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Disbursement Request and Authorization
- Guaranty of Completion and Performance
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- APPRAISAL NOTICE - APPRAISAL NOTICE
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Agreement to Provide Insurance
- Notice of Insurance Requirements
- Notice of Final Agreement

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: GENERATIONS ON 1ST, LLC
Grantor(s): CRAIG HOLDINGS LLC
Guarantor 1: JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated November 9, 2021.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: ______________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

**GRANTOR:**

**CRAIG HOLDINGS LLC**

By: ______________________
JESSE ROBERT CRAIG, Managing Member of CRAIG HOLDINGS LLC

**GUARANTOR:**

X ______________________
JESSE ROBERT CRAIG, Individually

RRSB GO1st 01337

## NOTICE OF FINAL AGREEMENT
### (Continued)

Loan No: 51437                                                                            Page 2

LENDER:

RED RIVER STATE BANK

X _____

CHARLES AARESTAD, Vice President

LaserPro, Ver. 20.4.0.034  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\D21.FC  TR-1698  PR-57

# NOTICE OF FINAL AGREEMENT

| Principal $843,168.59 | Loan Date 12-08-2021 | Maturity 03-31-2022 | Loan No 51449 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ████6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

---

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $843,168.59 due on March 31, 2022.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Construction Loan Agreement
- Promissory Note
- SD Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD 57201
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Disbursement Request and Authorization
- Errors and Omissions Agreement: CRAIG HOLDINGS LLC

- Guaranty of Completion and Performance
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- APPRAISAL NOTICE - APPRAISAL NOTICE
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Agreement to Provide Insurance
- Notice of Insurance Requirements
- Notice of Final Agreement
- Errors and Omissions Agreement: GENERATIONS ON 1ST, LLC

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: GENERATIONS ON 1ST, LLC
Grantor(s): CRAIG HOLDINGS LLC
Guarantor 1: JESSE ROBERT CRAIG

---

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated December 8, 2021.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: _____  Signed.
Dec 08, 2021
8:12 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

**GRANTOR:**

**CRAIG HOLDINGS LLC**

By: _____  Signed.
Dec 08, 2021
8:12 PM UTC
JESSE ROBERT CRAIG, Managing Member of
CRAIG HOLDINGS LLC

# NOTICE OF FINAL AGREEMENT
## (Continued)

Loan No: 51449                                                                                   Page 2

---

**GUARANTOR:**

X _____                          Signed:
                                                   Dec 08, 2021
**JESSE ROBERT CRAIG, Individually**               8:12 PM UTC

**LENDER:**

**RED RIVER STATE BANK**

X _____                          Signed:
                                                   Dec 08, 2021
**CHARLES AARESTAD, Vice President**               3:36 PM UTC

---

LaserPro, Ver. 20.4.0.036  Copr. Finastra USA Corporation 1997, 2021.  All Rights Reserved  - MN  C:\HARLAND\CFI\LPL\I21.FC  TR-3722  PR-57

RRSB GO1st 01444

# NOTICE OF FINAL AGREEMENT

| Principal<br>$653,729.65 | Loan Date<br>01-05-2022 | Maturity<br>12-31-2022 | Loan No<br>51471 | Call / Coll | Account | Officer<br>*** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ▆6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $653,729.65 due on December 31, 2022.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: GENERATIONS ON 1ST, LLC
- Guaranty of Completion and Performance
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- APPRAISAL NOTICE - APPRAISAL NOTICE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Notice of Insurance Requirements
- Notice of Final Agreement

- Construction Loan Agreement
- Promissory Note
- SD Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD 57201
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Agreement to Provide Insurance
- Disbursement Request and Authorization

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:     GENERATIONS ON 1ST, LLC
Grantor(s):   CRAIG HOLDINGS LLC
Guarantor 1:  JESSE ROBERT CRAIG

---

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated January 5, 2022.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: _____   Signed Jan 04, 2022 6:06 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

**GRANTOR:**

**CRAIG HOLDINGS LLC**

By: _____   Signed Jan 04, 2022 6:06 PM UTC
JESSE ROBERT CRAIG, Managing Member of CRAIG HOLDINGS LLC

**GUARANTOR:**

X _____   Signed Jan 04, 2022 6:06 PM UTC
JESSE ROBERT CRAIG, Individually

RRSB GO1st 01927

# NOTICE OF FINAL AGREEMENT
## (Continued)

**Loan No: 51471**                                                                    **Page 2**

---

**LENDER:**

**RED RIVER STATE BANK**

X _~~Charles Aarestad~~_ _____          Signed:
Jan 04, 2022
6:37 PM UTC

**CHARLES AARESTAD, Vice President**

---

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\21.FC  TR-5746  PR-57

RRSB GO1st 01928

# NOTICE OF FINAL AGREEMENT

| Principal $274,043.60 | Loan Date 02-03-2022 | Maturity 12-31-2022 | Loan No 51488 | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: ▇▇▇6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
300 2nd Ave West
P.O. Box 25
Halstad, MN 56548

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,   (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND   (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan:  a Fixed Rate (4.350%) Nondisclosable Loan to a Limited Liability Company for $274,043.60 due on December 31, 2022.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: GENERATIONS ON 1ST, LLC
- Guaranty of Completion and Performance
- MN Commercial Guaranty:  JESSE ROBERT CRAIG
- APPRAISAL NOTICE - APPRAISAL NOTICE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL -
DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN
APPRAISAL - DISCLOSURE
- Notice of Insurance Requirements
- Notice of Final Agreement

- Construction Loan Agreement
- Promissory Note
- SD Mortgage for Real Property located at 26 1st Ave SW,
Watertown, SD 57201
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT  - YOUR
RIGHT TO POSSESSION OF YOUR ABSTRACT
- Agreement to Provide Insurance
- Disbursement Request and Authorization

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower:    GENERATIONS ON 1ST, LLC
Grantor(s):  CRAIG HOLDINGS LLC
Guarantor 1:  JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement.  This Notice is dated February 3, 2022.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: _____   Signed
Feb 02, 2022
9.51 PM UTC
JESSE ROBERT CRAIG, MANAGING MEMBER of
GENERATIONS ON 1ST, LLC

**GRANTOR:**

**CRAIG HOLDINGS LLC**

By: _____   Signed
Feb 02, 2022
9.51 PM UTC
JESSE ROBERT CRAIG, Managing Member of
CRAIG HOLDINGS LLC

**GUARANTOR:**

X _____   Signed
Feb 02, 2022
9.51 PM UTC
JESSE ROBERT CRAIG, Individually

## NOTICE OF FINAL AGREEMENT
### (Continued)

**Loan No: 51488**                                                                 **Page 2**

LENDER:

**RED RIVER STATE BANK**

x _Charles Aarestad_                    Signed
                                        Feb 02, 2022
                                        6:49 PM UTC
**CHARLES AARESTAD, Vice President**

LaserPro, Ver. 20.4.0.038  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - MN  C:\VIARLAND\CFI\LPL\I21.FC  TR-3771  PR-57

RRSB GO1st 02227

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $8,100,000.00 | 04-17-2023 | 12-01-2026 | 51676 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (6.750%) Nondisclosable Loan to a Limited Liability Company for $8,100,000.00 due on December 1, 2026.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Business Loan Agreement
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- MN Assignment of Rents
- APPRAISAL NOTICE - APPRAISAL NOTICE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Errors and Omissions Agreement: GENERATIONS ON 1ST, LLC
- Promissory Note
- MN Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD 57201
- ABSTRACT NOTICE - ABSTRACT NOTICE
- Agreement to Provide Insurance
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: GENERATIONS ON 1ST, LLC
Grantor(s): GENERATIONS ON 1ST, LLC
Guarantor 1: JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated April 17, 2023.

BORROWER:

GENERATIONS ON 1ST, LLC

By: ______________________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

GUARANTOR:

X ______________________________
JESSE ROBERT CRAIG, Individually

| | NOTICE OF FINAL AGREEMENT | |
|---|---|---|
| Loan No: 51676 | (Continued) | Page 2 |

LENDER:

RED RIVER STATE BANK

X_____

CHARLES AARESTAD, Executive Vice President

LaserPro, Ver. 22.4.0.056  Copr. Finastra USA Corporation 1997, 2023.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\G21.FC  TR-6155  PR-57

RRSB GO1st 02445

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $561,365.10 | 04-17-2023 | 05-31-2023 | 451677 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

Borrower: GENERATIONS ON 1ST, LLC (TIN: [redacted]6148)
1405 1ST AVE N
FARGO, ND 58102

Lender: Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

---

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (2.000%) Nondisclosable Loan to a Limited Liability Company for $561,365.10 due on May 31, 2023.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- Business Loan Agreement
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- MN Assignment of Rents
- APPRAISAL NOTICE - APPRAISAL NOTICE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- Errors and Omissions Agreement: GENERATIONS ON 1ST, LLC
- Promissory Note
- MN Mortgage for Real Property located at 26 1st Ave SW, Watertown, SD 57201
- ABSTRACT NOTICE - ABSTRACT NOTICE
- Agreement to Provide Insurance
- Disbursement Request and Authorization
- Notice of Final Agreement

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

Borrower: GENERATIONS ON 1ST, LLC
Grantor(s): GENERATIONS ON 1ST, LLC
Guarantor 1: JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated April 17, 2023.

**BORROWER:**

**GENERATIONS ON 1ST, LLC**

By: ______________________________
JESSE ROBERT CRAIG, MANAGING MEMBER of GENERATIONS ON 1ST, LLC

**GUARANTOR:**

X ______________________________
JESSE ROBERT CRAIG, Individually

Loan No: 451677

**NOTICE OF FINAL AGREEMENT**
**(Continued)**

Page 2

---

LENDER:

RED RIVER STATE BANK

X _____

CHARLES AARESTAD, Executive Vice President

---

LaserPro, Ver. 22.4.0.056  Copr. Finastra USA Corporation 1997, 2023.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\G21.FC  TR-6116  PR-57

RRSB GO1st 02484

# <u>EXHIBIT 2(C)</u>

# NOTICE(S) OF FINAL AGREEMENT FOR RRSB'S LOANS TO PLAINTIFF THE RUINS, LLC, AMONG OTHERS

## NOTICE OF FINAL AGREEMENT

| Principal $7,740,000.00 | Loan Date 03-09-2022 | Maturity 03-15-2027 | Loan No | Call / Coll | Account | Officer *** | Initials |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE RUINS, LLC (TIN:        )
PO BOX 426
FARGO, ND  58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN  56548-0025

BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT:  (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES,  (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND  (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.

As used in this Notice, the following terms have the following meanings:

**Loan.**  The term "Loan" means the following described loan:  a Fixed Rate (4.250% initial rate) Nondisclosable Loan to a Limited Liability Company for $7,740,000.00 due on March 15, 2027.

**Loan Agreement.**  The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

### LOAN DOCUMENTS

- LLC Resolution: THE RUINS, LLC
- Business Loan Agreement
- Construction Loan Agreement
- Promissory Note
- SD Commercial Security Agreement: Collateral owned by THE RUINS, LLC
- ND National UCC Financing Statement (Rev. 04/20/11): Collateral owned by THE RUINS, LLC
- National UCC Instructions 04/20/11
- APPRAISAL NOTICE - APPRAISAL NOTICE
- Joint Application Acknowledgment - JOINT APPLICATION ACKNOWLEDGMENT
- Agreement to Provide Insurance
- Notice of Insurance Requirements
- Notice of Final Agreement

- Verification of Registration and Good Standing:  THE RUINS, LLC
- Guaranty of Completion and Performance
- MN Commercial Guaranty:  JESSE ROBERT CRAIG
- SD Mortgage for Real Property located at 315 EAST KEMP AVENUE, WATERTOWN, SD  57201
- SD National UCC Financing Statement (Rev. 04/20/11): Collateral owned by THE RUINS, LLC
- National UCC Addendum Instructions 04/20/11
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT  - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Disbursement Request and Authorization
- Errors and Omissions Agreement:  THE RUINS, LLC

**Parties.**  The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

    Borrower:      THE RUINS, LLC
    Grantor(s):   THE RUINS, LLC
    Guarantor 1:  JESSE ROBERT CRAIG

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement.  This Notice is dated March 9, 2022.

**BORROWER:**

**THE RUINS, LLC**

By: _____
   **JESSE ROBERT CRAIG, Member of THE RUINS, LLC**

**GUARANTOR:**

X _____
   **JESSE ROBERT CRAIG, Individually**

DocuSign Envelope ID: A0E5A931-4B58-4F91-B250-C32D25E0459A

## NOTICE OF FINAL AGREEMENT
### (Continued)

Loan No: ▮▮▮▮                                                              Page 2

---

LENDER:

**RED RIVER STATE BANK**

X _____
   **CHARLES AARESTAD, Executive Vice President**

---

LaserPro, Ver. 20.4.0.036  Copr. Finastra USA Corporation 1997, 2022.  All Rights Reserved.  - MN  C:\HARLAND\CFI\LPL\I21.FC  TR-5768  PR-5

RRSB Ruins 01206

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $2,750,000.00 | 08-01-2022 | 03-15-2027 | 51576 | | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** THE RUINS, LLC (TIN: [redacted])
PO BOX 426
FARGO, ND 58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (4.650% initial rate) Nondisclosable Loan to a Limited Liability Company for $2,750,000.00 due on March 15, 2027.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: THE RUINS, LLC
- Business Loan Agreement
- Construction Loan Agreement
- Promissory Note
- SD Commercial Security Agreement: Collateral owned by THE RUINS, LLC and JESSE ROBERT CRAIG
- SD National UCC Financing Statement (Rev. 04/20/11): Collateral owned by THE RUINS, LLC and JESSE ROBERT CRAIG
- National UCC Instructions 04/20/11
- RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE - RIGHT TO RECEIVE A COPY OF AN APPRAISAL - DISCLOSURE
- YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT - YOUR RIGHT TO POSSESSION OF YOUR ABSTRACT
- Notice of Insurance Requirements
- Notice of Final Agreement
- Errors and Omissions Agreement: JESSE ROBERT CRAIG
- Verification of Registration and Good Standing: THE RUINS, LLC
- Guaranty of Completion and Performance
- MN Commercial Guaranty: JESSE ROBERT CRAIG
- Assignment of Life Insurance Policy: Policy No. H358265
- SD Mortgage for Real Property located at 315 EAST KEMP AVENUE, WATERTOWN, SD 57201
- ND National UCC Financing Statement (Rev. 04/20/11): Collateral owned by THE RUINS, LLC and JESSE ROBERT CRAIG
- National UCC Addendum Instructions 04/20/11
- Joint Application Acknowledgment - JOINT APPLICATION ACKNOWLEDGMENT
- APPRAISAL NOTICE - APPRAISAL NOTICE
- Agreement to Provide Insurance
- Agreement to Provide Insurance
- Disbursement Request and Authorization
- Errors and Omissions Agreement: THE RUINS, LLC

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

| | |
|---|---|
| Borrower: | THE RUINS, LLC |
| Grantor(s): | THE RUINS, LLC |
| Grantor(s): | THE RUINS, LLC; and JESSE ROBERT CRAIG |
| Grantor(s): | JESSE ROBERT CRAIG |
| Guarantor 1: | JESSE ROBERT CRAIG |

**Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated August 1, 2022.**

**BORROWER:**

**THE RUINS, LLC**

**By:** ______________________________
**JESSE ROBERT CRAIG, Member of THE RUINS, LLC**

## NOTICE OF FINAL AGREEMENT
### (Continued)

Loan No: 51576                                                                                    Page 2

---

**GRANTOR:**

**THE RUINS, LLC**

By: _____
   **JESSE ROBERT CRAIG, Member of THE RUINS, LLC**

X _____
   **JESSE ROBERT CRAIG, Individually**

**GRANTOR:**

X _____
   **JESSE ROBERT CRAIG, Individually**

**GUARANTOR:**

X _____
   **JESSE ROBERT CRAIG, Individually**

**LENDER:**

**RED RIVER STATE BANK**

X _____
   **CHARLES AARESTAD, Executive Vice President**

---

RRSB Ruins 00174

# NOTICE OF FINAL AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $600,000.00 | 02-17-2023 | 12-30-2023 | 51658 | JN | | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** JESSE ROBERT CRAIG (SSN: [redacted]); CRAIG DEVELOPMENT, LLC (TIN: [redacted]); CRAIG HOLDINGS LLC (TIN: [redacted]); CRAIG PROPERTIES LLC (TIN: [redacted]); and THE RUINS LLC (TIN: [redacted])
PO BOX 426
FARGO, ND 58107-0426

**Lender:** Red River State Bank
Halstad
300 2nd Ave West
PO Box 25
Halstad, MN 56548-0025

**BY SIGNING THIS DOCUMENT EACH PARTY REPRESENTS AND AGREES THAT: (A) THE WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES, (B) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES, AND (C) THE WRITTEN LOAN AGREEMENT MAY NOT BE CONTRADICTED BY EVIDENCE OF ANY PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OR UNDERSTANDINGS OF THE PARTIES.**

As used in this Notice, the following terms have the following meanings:

**Loan.** The term "Loan" means the following described loan: a Fixed Rate (7.750% initial rate) Nondisclosable Loan to an Individual and four Limited Liability Companies for $600,000.00 due on December 30, 2023.

**Loan Agreement.** The term "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, relating to the Loan, including without limitation the following:

## LOAN DOCUMENTS

- LLC Resolution: CRAIG PROPERTIES LLC
- LLC Resolution: CRAIG DEVELOPMENT, LLC
- Verification of Registration and Good Standing: THE RUINS LLC
- Promissory Note
- Assignment of Life Insurance Policy: Policy No. H358265
- Electronic Communications Agreement: JESSE ROBERT CRAIG
- National UCC Instructions 04/20/11
- National UCC Addendum Instructions 04/20/11
- Agreement to Provide Insurance
- Disbursement Request and Authorization
- Errors and Omissions Agreement: CRAIG DEVELOPMENT, LLC
- Errors and Omissions Agreement: JESSE ROBERT CRAIG
- LLC Resolution: CRAIG HOLDINGS LLC
- Verification of Registration and Good Standing: CRAIG PROPERTIES LLC
- Business Loan Agreement
- ND Commercial Security Agreement: Collateral owned by JESSE ROBERT CRAIG and CRAIG DEVELOPMENT, LLC
- ND National UCC Financing Statement (Rev. 04/20/11): Collateral owned by JESSE ROBERT CRAIG and CRAIG DEVELOPMENT, LLC
- Joint Application Acknowledgment - JOINT APPLICATION ACKNOWLEDGMENT
- Notice of Final Agreement
- Errors and Omissions Agreement: CRAIG HOLDINGS LLC
- Errors and Omissions Agreement: CRAIG PROPERTIES LLC
- Errors and Omissions Agreement: THE RUINS LLC

**Parties.** The term "Parties" means Red River State Bank and any and all entities or individuals who are obligated to repay the loan or have pledged property as security for the Loan, including without limitation the following:

| | |
|---|---|
| Borrower: | JESSE ROBERT CRAIG; CRAIG DEVELOPMENT, LLC; CRAIG HOLDINGS LLC; CRAIG PROPERTIES LLC; and THE RUINS LLC |
| Grantor(s): | JESSE ROBERT CRAIG; and CRAIG DEVELOPMENT, LLC |
| Grantor(s): | JESSE ROBERT CRAIG; CRAIG DEVELOPMENT, LLC; CRAIG HOLDINGS LLC; CRAIG PROPERTIES LLC; and THE RUINS LLC |

Loan No: 51658

## NOTICE OF FINAL AGREEMENT
## (Continued)

Page 2

---

Each Party who signs below, other than Red River State Bank, acknowledges, represents, and warrants to Red River State Bank that it has received, read and understood this Notice of Final Agreement. This Notice is dated February 17, 2023.

**BORROWER:**

X _____
    JESSE ROBERT CRAIG, Individually

**CRAIG DEVELOPMENT, LLC**

By: _____
    JESSE ROBERT CRAIG, Member of CRAIG
    DEVELOPMENT, LLC

**CRAIG HOLDINGS LLC**

By: _____
    JESSE ROBERT CRAIG, Managing Member of
    CRAIG HOLDINGS LLC

**CRAIG PROPERTIES LLC**

By: _____
    JESSE ROBERT CRAIG

**THE RUINS LLC**

By: _____
    JESSE ROBERT CRAIG, Member of THE RUINS LLC

**LENDER:**

**RED RIVER STATE BANK**

X _____
    CHARLES AARESTAD, Executive Vice President

RRSB Ruins 00067

# **EXHIBIT 3**

# ORDER AND MEMORANDUM DENYING TEMPORARY INJUNCTION ENTERED ON DECEMBER 9, 2024

Electronically Served
12/10/2024 11:55 AM
Otter Tail County, MN

56-CV-24-2532

Case 25-07009    Doc 7    Filed 03/28/25    Entered 03/28/25 14:09:44    Desc Main
Document      Page 90 of 122

Filed in District Court
State of Minnesota
12/09/2024

**STATE OF MINNESOTA**                          **IN DISTRICT COURT**

**COUNTY OF OTTER TAIL**                 **SEVENTH JUDICIAL DISTRICT**

---

Craig Holdings LLC,

                    Plaintiff,               **ORDER AND MEMORANDUM**
                                        **DENYING TEMPORARY**
           vs.                          **INJUNCTION**

Charles Aarestad, Randall Aarestad, and
Red River State Bank,

                    Defendants.        Court File No.: 56-CV-24-2532.

---

On November 25, 2024, the above-entitled matter came before the undersigned Judge of

District Court remotely via Zoom for a Motion Hearing following the Court's issuance of an *Ex*

*Parte* Temporary Restraining Order (TRO) dated November 4, 2024. Plaintiff was represented

by attorney Katrina Turman Lang. Jesse Craig also appeared as representative of Plaintiff.

Defendants were represented by attorney Drew Hushka. Defendants Charles and Randall

Aarestad appeared personally and as representatives for Defendant Red River State Bank. Prior

to the hearing, Plaintiff made submissions requesting that the TRO be converted into a

Temporary Injunction, and Defendants made submissions requesting that the TRO be dissolved.

Plaintiff also moves for expedited contempt proceedings.

Based on the motions, the memoranda, the verified complaint, the affidavits and

attachments, the arguments of counsel, and the applicable law, and having been advised in the

premises, the Court now makes the following:

1

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

## ORDER

IT IS ORDERED THAT:

1. Plaintiff's request for a preliminary injunction is **DENIED**. The Temporary Restraining

   Order issued November 4, 2024, is **DISSOLVED**.

2. Plaintiff's expedited motion for contempt is **DENIED**.

3. The attached memorandum is incorporated by reference herein.


Dated this 9 day of December 2024.                    BY THE COURT:


Court File No. 56-CV-24-2532          _____
                                      Honorable Johnathan R. Judd
                                      Judge of District Court

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

## <u>MEMORANDUM</u>

Plaintiff-mortgagor obtained an *Ex Parte* Temporary Restraining Order (TRO) preventing Defendant-mortgagees from executing a foreclosure by advertisement. Plaintiff seeks to convert the TRO into a preliminary injunction, while Defendants seek to dissolve the TRO. Upon the record now before it, the Court finds (1) that Plaintiff was not shown a likelihood of success on the merits, and (2) that equity does not favor an injunction. As such, the Court denies Plaintiff's request and dissolves the TRO. The Court also denies Plaintiff's contempt motion.

### Facts

### 1. Parties

From the preliminary record, the Court understands the facts as follows. This suit arises from a series of financial transactions in which a lake home was repeatedly used as collateral to finance business loans for the construction of separate properties. Jesse Craig (hereinafter "Craig") is the owner of Craig Holdings, LLC (hereinafter "Plaintiff" or "Craig Holdings"), a single-member LLC that owns a lake home located on Pelican Lake. That lake home (hereinafter "the Subject Property") is legally described as Lot 2 of Haugen's Knollwood, Otter Tail County. Craig is also the sole owner of several other entities operating in the construction industry, including Craig Development, LLC, and Craig Properties (collectively "the Craig Entities"). The context for the events of this suit includes that Craig is also an owner or an actor associated with various entities formed in relation to particular construction projects, including Ruins, LLC; Generations on 1st, LLC; and Parkside Place, LLC.

The Craig Entities, as well as some of these construction-project entities, obtained financing originated by Defendant Red River State Bank (hereinafter "Red River"). Red River is

3

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

a bank located in Halstad, Minnesota. Defendant Randall Aarestad (hereinafter "Randall") is the

bank's president. One of the bank's Vice Presidents is Defendant Charles Aarestad (hereinafter

"Charles"). Charles is the son of Randall. Based on the current record, it appears that Charles and

Randall also have ownership interests in the bank. The Court collectively refers to Red River,

Charles, and Randall as "Defendants." Vice Presidents Danielle Harless and Jake Aakre are other

bank officers tangentially involved in approving or witnessing transactions relevant to the case.

Based on the current record, it appears they are, respectively, Randall's daughter and son-in-law.

## 2. The First and Second Notes

On July 14, 2022, the relevant parties executed documents associated with a $400,000

loan transaction. Craig granted Red River a mortgage (hereinafter the "First Mortgage") on the

Subject Property for $400,000. (Compl., Ex. 1) That mortgage secured a Promissory Note

(hereinafter the "First Note") in the principal amount of $400,000, in which Red River was

defined as the lender, and in which Craig, Craig Holdings, and the Craig Entities were defined as

the borrowers. (Harless Decl., Ex. A) The relevant parties also signed a Business Loan

Agreement and Notice of Final Agreement memorializing all transaction components. (Harless

Decl., Exs. B-C) Payment on the First Note was due January 15, 2023.

On December 9, 2022, the relevant parties executed documents associated with a

subsequent $700,000 loan transaction. (Compl., Ex. 4) Craig granted Red River a mortgage

(hereinafter the "Second Mortgage") on the Subject Property for $700,000. That mortgage

secured a Promissory Note (hereinafter the "Second Note") in the principal amount of $700,000,

in which Red River was defined as the lender and Craig Holdings was defined as the borrower.

(Harless Decl., Ex. D) The relevant parties also signed a Notice of Final Agreement

Craig Holdings v. Aarestad, *et al*.
56-CV-24-2532

memorializing all transaction components. (Harless Decl., Ex. E) Payment on the Second Note

was due January 31, 2023.

There is some evidence tending to show that, following the issuance of these loans,

Charles and Randall purchased the obligations of Craig and Craig Holdings under the First and

Second Notes and held them personally, off the books of Red River. In particular, there are

references in emails between Craig and Charles to Craig's default on these loans, and to Charles

and Randall needing to be repaid to make personal tax payments. The evidence also shows that

the First Mortgage was assigned to Charles soon after it was executed. However, the record is

unclear when and whether the First and Second Notes were ever formally transferred, or whether

an assignment to Charles and Randall was only ever truly effective upon subsequent refinancing

transactions.

### 3. The Refinance Note

Sometime in or about April 2023, the relevant parties executed a series of instruments

meant to provide additional financing to Craig while also refinancing the First and Second Notes

so that they would not be held directly by Red River. Craig granted Red River a mortgage

(hereinafter the "Refinance Mortgage") on the Subject Property for $2,000,000. (Compl., Ex. 7)

And that mortgage secured a Promissory Note (hereinafter the "Refinance Note") in the principal

amount of $2,000,000, in which Red River was defined as the lender, and in which Craig and

Craig Holdings were defined as the borrowers. (Harless Decl., G) The relevant parties also

signed a Business Loan Agreement and Notice of Final Agreement memorializing all transaction

components between the Craig Entities and Red River. (Harless Decl., H-I) From the money

disbursed under the Refinance Note, $419,489.76 was used to retire the First Note, and

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

$713,235.75 was used to retire the Second Note. (Harless Decl. ¶ 11) The remaining $66,626.35
was paid out directly via lender's check. (Id.)

As part of these same events, Craig and the Craig Entities refinanced the First and Second
Notes by personally taking out loans from Charles and Randall. Craig and the Craig Entities
entered into a loan agreement (the "First Note Refinance") with Charles, and Charles provided
$400,000 to Craig and the Craig Entities via a personal check. (Harless Decl. Exs. J-K) Red
River issued an assignment of the First Mortgage to Charles, and Charles executed a
subordination agreement giving priority to the Refinance Mortgage. (Compl., Exs. 2-3)
Similarly, Craig and the Craig Entities entered into a loan agreement (the "Second Note
Refinance") with Randall, and Randall provided $600,000 to Craig and the Craig Entities via a
cashier's check. (Harless Decl. Ex. L-M) Red River issued an assignment of the Second
Mortgage to Randall, and Randall executed a subordination agreement giving priority to the
Refinance Mortgage. (Compl., Exs. 5-6) The loan agreements specifically recited that the
security underlying them would be the assigned First and Second Mortgages, based on the future
advances clauses contained within those mortgages. The record tends to show a likelihood that
Charles and Randall were able to make personal loans to Craig and the Craig Entities because
they, themselves, took out loans from Red River (or some other bank) in their names.

The parties dispute the exact timing of these events. The Defendants assert, based on a
declaration of Ms. Harness, that all of these transactions took place together on April 17, 2023.
However, Plaintiff notes that while the signatures on the First and Second Note Refinance
agreements are dated April 17, 2023, the Refinance Mortgage, Refinance Note, and
accompanying documents were drafted with a date of March 31, 2023, and no dates appear on

6

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

the signature blocks. Plaintiff postulates that these documents were executed notwithstanding

Ms. Harness's sworn statement, and payment was made under them before April 17, 2023.

### 4. Foreclosure Proceedings

Craig and Craig Holdings are now in default under the First and Second Refinance Note

Agreements. Although Craig quickly defaulted on the debts owed to them, Charles and Randall

did initially forebear from trying to collect, in an apparent effort to obtain long-term financing

for Craig's projects first. They eventually took action, however. On September 16, 2024, they

provided Craig and the Craig Entities with Preforeclosure Notices and provided notice to a

foreclosure prevention agency. (Stanley Decl., Exs. A-B, F-G) They recorded Notices of

Pendency of Proceedings and Power of Attorney to Foreclose Mortgage instruments the next

day. (Stanley Decl., Ex. C, H) On October 5, 2024, they served the requisite foreclosure

documents on Craig. (Stanley Decl., Exs. E, J; Compl. Exs. 20, 22) They published Notices of

Foreclosure Sales for six consecutive weeks between September 21, 2024, and October 26, 2024.

(Stanley Decl., Exs. D, I) The notices gave a date of November 14, 2024, for the Sheriff's Sale.

On October 31, 2024, Craig Holdings commenced this lawsuit against Red River,

Charles, and Randall, alleging: (1) breach of implied covenant of good faith and fair dealing and

(2) fraudulent misrepresentation. (Compl. Counts I, II) The Complaint sought: (i) a declaration

that the First and Second Note Refinances, as well as the First and Second Mortgages, were null

and void, (ii) a temporary or permanent injunction against foreclosure of the mortgages, (iii) an

accounting, and (iv) an otherwise unspecified judgment. (Compl. ¶¶ 81, 86, 87-89) Craig

Holdings also sought an *Ex Parte* TRO restraining Defendants from foreclosing by

advertisement, which was granted on November 4, 2024. (Doc. 30) The Defendants made

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

submissions opposing injunctive relief, while Craig Holdings made submissions in favor of converting the TRO into a preliminary injunction. Pursuant to statute, the Defendants published a notice postponing the previously advertised foreclosure sales from November 14, 2024, until December 12, 2024 — after the November 25, 2024, hearing on the requests regarding a preliminary injunction. *See* Minn. Stat. § 580.07. Plaintiff requested an Order to Show Cause why the postponement, rather than a cancelation, of the sale was not a violation of the TRO.

### 5.  Additional Background

Plaintiff has supplied the Court with an incomplete and spotty record of the context in which the First, Second, and Refinance Notes occurred. From what the Court can glean, it appears that Craig and the Craig Entities were involved in ongoing construction in one or more projects associated with Ruins, LLC, Generations on 1st, LLC, or Parkside Place, LLC. At least a portion of the financing on one or more of these projects was originated by Red River, held by Red River, or both. However, at least one of these projects — Ruins, LLC — ran into liquidity problems. At some point, the payments Craig needed to make to contractors exceeded the draws available from existing financing. The difficulty in making payments to contractors itself precipitated delays and cost increases. This put a further squeeze on Craig's liquidity and creditworthiness. Craig needed additional financing, which led him to take out the loans associated with the First and Second Notes.

The record of the origin of Craig's initial liquidity problem is unclear. Emails exchanged between Craig and Charles show that, due to the actions of another bank employee, Red River committed a lending limit violation by lending too much money to Craig. Red River attempted to correct this lending limit violation by various means, including offloading loans to other banks.

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

However, the liquidity problems Craig's project was experiencing led to him being delinquent on loans to different banks, which was an obstacle to offloading the loans. There is an implication in the pleadings that the fact that Red River was over its lending limit caused it to default on promises to Craig and that this was a cause of Craig's liquidity problems. However, the pleadings fail to identify an actual binding promise on which Red River defaulted. The information provided to the Court makes it appear likely that Red River honored its contracts. However, Craig was frustrated when Red River could not originate new loans to make up for unanticipated cost overruns, even though Red River never promised it would do so.

It is clear that whatever events caused Craig's liquidity problems, they occurred before the date of the Refinance and likely well before February 2023. Those dates are important because, on February 17, 2023, Red River entered into a Forbearance Agreement with Craig, Craig Holdings, and various related entities to extend the maturity of various construction loans involving Generations on 1st, LLC for five months. (Harness Decl., Ex. F) Craig and Craig Holdings released all claims against Red River and its officers in that Forbearance Agreement. Specifically, they agreed to:

> waive, abandon, relinquish, and discharge any and all claims, causes of action, suits, and demands for payment of money and performance, including those related to personal injury or property damage, against Lender [*viz.* Red River], its affiliates, subsidiaries, shareholders, directors, officers, attorneys, employees, agents, assigns, predecessors and/or successors and without regard to whether said claims, causes of action, suits, and demands for payment of money or performance, relate to or arise from the Indebtedness [*viz.* the loans to Generations on 1st, LLC] and/or the Loan Documents.

(Harness Decl., Ex. F, ¶ 10) The First and Second Note Refinance agreements that Craig, Craig Holdings, and the Craig Entities executed with Charles and Randall likewise contained this same language with respect to Charles and Randall as lenders. (Harness Decl., Exs. J, L)

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

## Legal Analysis

### I.    Foreclosure by Advertisement

Before addressing the parties' motions, the Court begins by discussing the principles governing foreclosures by advertisement. A mortgage foreclosure is the process by which the holder of a mortgage may "enforce the security" provided by the mortgage, by "hav[ing] the property [subject to the mortgage] applied to the satisfaction of the debt or other obligation secured thereby." *Fredin v. Cascade Realty Co.*, 285 N.W. 615, 618 (Minn. 1939); *Ruiz v. 1st Fid. Loan Servicing, LLC*, 829 N.W.2d 53, 57 (Minn. 2013). "A mortgage may be foreclosed either by advertisement or by action." *JPMorgan Chase Bank, N.A. v. Erlandson*, 821 N.W.2d 600, 606 (Minn. App. 2012).

"A foreclosure by advertisement is a foreclosure conducted by a particular means — that is, pursuant to a power of sale clause in a mortgage and pursuant to state statute." *Ruiz*, 829 at 57. "Foreclosure by advertisement was developed as a non-judicial form of foreclosure designed 'to avoid the delay and expense of judicial proceedings.'" *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 494 (Minn. 2009) (quoting *Soufal v. Griffith*, 198 N.W. 807, 809 (Minn. 1924)). Because it does not require judicial supervision, the statutory provisions governing a foreclosure by advertisement must be "strictly compl[ied with]." *Ruiz*, 829 at 59.

The foreclosure by advertisement statutes requires, among other things, that there be a default in the underlying debt secured by the mortgage, and that the foreclosure sale be advertised for six weeks. Minn. Stat. § 580.02; Minn. Stat. §§ 580.033-.04. A sheriff's sale may occur thereafter. Minn. Stat. § 580.06. And costs may be taxed out of the proceeds. Minn. Stat. § 580.10; Minn. Stat. 580.17. A lawsuit may be brought to set aside that sale, based on defects in

10

the foreclosure or the underlying mortgage. Minn. Stat. § 580.20; Minn. Stat. § 580.28. Or, the mortgager may redeem the property and cancel the foreclosure sale by making payment within six months. Minn. Stat. § 580.23; Minn. Stat. § 580.27. In the case where a mortgager wishes to challenge the foreclosure, but also preserve the right of redemption, the mortgager must deposit the relevant sum, together with a bond guaranteeing the interest thereon, "before the time of redemption expires." Minn. Stat. § 580.28. Although the foreclosure statutes do not reference the possibility of injunctive relief, it has long been held that various stages in the foreclosure process may be enjoined in certain circumstances. *See, e.g., O'Brien v. Oswald*, 47 N.W. 316, 317 (Minn. 1890). Considering this background, the Court turns to the parties' motions.

## II.    Temporary Injunction

The first issue before the Court arises (1) from Plaintiff's request to extend the current TRO, converting it into a preliminary injunction, also known as a temporary injunction, and (2) from Defendants' competing request to dissolve the TRO and deny temporary injunctive relief. A temporary injunction may be granted prior to a trial on the merits if it appears from the entirety of the record that sufficient grounds exist. Minn. R. Civ. P. 65.02. "A temporary injunction is an extraordinary equitable remedy," the purpose of which is "to preserve the *status quo* until adjudication of the case on its merits." *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn. 1982). Because it is preliminary, "the granting or denying of a temporary injunction" is not equivalent to a "determination of the merits." *State v. N. Pac. Ry. Co.*, 22 N.W.2d 569, 575 (Minn. 1946). The burden of proof to show eligibility for an injunction rests with the moving party. *AMF Pinspotters, Inc. v. Harkins Bowling, Inc.*, 110 N.W.2d 348, 351 (Minn. 1961). Whether to grant a temporary injunction lies largely within the discretion of a trial court. *Carl Bolander & Sons Co. v. City of Minneapolis*, 502 N.W.2d 203, 209 (Minn. 1993).

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

An applicant seeking preliminary injunctive relief must meet several elements. First, the applicant must show that it is likely to suffer an "irreparable injury" that cannot be adequately redressed without an injunction. *Medtronic, Inc. v. Advanced Bionics Corp.*, 630 N.W.2d 438, 451 (Minn. App. 2001); *Cherne Indus.*, 278 N.W.2d at 92. Second, the applicant must establish a reasonable likelihood of success on the merits of the action. *Haley v. Forcelle*, 669 N.W.2d 48, 58 (Minn. App. 2003); *Jannetta v. Jannetta*, 285 N.W. 619, 621 (Minn. 1939). Some showing on these two elements is mandatory, although even an indirect inference of harm or a doubtful showing on the merits may be sufficient where the equities strongly favor relief. *Metro. Sports Facilities Comm'n v. Minnesota Twins P'ship*, 638 N.W.2d 214, 222, 226 (Minn. App. 2002).

Finally, the applicant must show that the balance of equities, including the public interests at stake, favors temporary relief. *Dahlberg Bros. v. Ford Motor Co.*, 137 N.W.2d 314, 321 (Minn. 1965); *Edin v. Josten's, Inc.*, 343 N.W.2d 691, 693 (Minn. App. 1984). In weighing the equities, a court considers: (i) the preexisting relationship between the parties; (ii) the balance of harms to the parties from granting or denying the injunction; (iii) the strength of the parties' showings on the merits; (iv) any public policy concerns; and (v) any administrative burdens that may arise from supervising and enforcing the injunction. *Dahlberg*, 137 N.W.2d at 321; *Edina Cmty. Lutheran Church v. State*, 673 N.W.2d 517, 523 (Minn. App. 2004).

Here, the Court assumes, without deciding, that Plaintiff has shown the threat of an irreparable injury. *See Strangis v. Metro. Bank*, 385 N.W.2d 47, 48 (Minn. App. 1986) (foreclosure); *compare Shaughnessy v. Eidsmo*, 23 N.W.2d 362, 368 (Minn. 1946) (loss of real property as irreparable injury); *Mellin v. Woolley*, 115 N.W. 654, 655 (Minn. 1908) (same), *with Hilton v. Nelsen*, 283 N.W.2d 877, 881 (Minn. 1979) (not always relevant); *see also First & First, LLC v. Chadco of Duluth, LLC*, 999 N.W.2d 553, 561 (Minn. App. 2023) (same). For the

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

reasons explained below, it concludes that Plaintiff has not shown a reasonable likelihood of success on the merits and that the balance of the equities does not favor an injunction.

### a.  Likelihood of Success on the Merits

An applicant for injunctive relief bears the burden of showing some likelihood of success on the merits. The strength and nature of that showing can depend on the circumstances. *Chalfen v. Med. Inv. Corp.*, 210 N.W.2d 216, 219 (Minn. 1973); *Metro. Sports Facilities Comm'n*, 638 N.W.2d at 226. But it typically involves making a credible showing as to the elements of a particular cause of action. *See, e.g., Vill. of Blaine v. Indep. Sch. Dist. No. 12, Anoka Cnty.*, 121 N.W.2d 183, 193 (Minn. 1963). That cause of action may be one that would support a permanent injunction of the same type sought on a preliminary basis. *State ex rel. Goff v. O'Neil*, 286 N.W. 316, 320 (Minn. 1939); *see also Chamberlin v. Twin Ports Dev. Co.*, 261 N.W. 577, 578 (Minn. 1935) (permanent injunction against foreclosure). Or it may be a cause of action which requires the Court to freeze the *status quo* so that its ability to grant relief will not be "impaired by the acts of the parties." *Pickerign v. Pasco Mktg., Inc.*, 228 N.W.2d 562, 565 (Minn. 1975).

In the context of a mortgage foreclosure, a likelihood of success on the merits is most often shown by evidence that tends to show (1) that the mortgagee has failed to strictly comply with the statute governing foreclosures by advertisement, or (2) that the underlying mortgage is not enforceable. *Ekeberg v. Mackay*, 131 N.W. 787, 788 (Minn. 1911); *see also First Nat. Bank v. Schunk*, 276 N.W. 290, 292 (Minn. 1937); *Mathwig v. Olson*, 251 N.W. 518, 518 (Minn. 1933); 5 Tiffany Real Prop. § 1549 (3d ed.). In some cases, however, relief may be available upon a showing that (3) the mortgager has a defense to performance of the debt secured by the mortgage, or (4) a claim against the mortgagee that would offset any obligation under the

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

mortgage. 55 Am. Jur. 2d Mortgages § 517; *cf. Durgin v. Mercantile Acceptance Co.*, 209 N.W.
5, 6 (Minn. 1926); *but see Lindberg v. Gebo*, 381 N.W.2d 905 (Minn. App. 1986) (Randall, J.).

"[I]n a practical sense, it is appropriate to deny injunction against a foreclosure sale
where there is no showing of a reasonable probability of success on the merits, even though the
foreclosure will create irreparable harm, as there is no justification in delaying that harm where,
although irreparable, it is also inevitable." 55 Am. Jur. 2d Mortgages § 514.

### i.   There Were No Procedural Defects in the Foreclosure

Plaintiff first argued in its principle brief that Defendants cannot effect valid foreclosures
by advertisement because they have not met the statutory requirements of such foreclosures.
Specifically, Plaintiff represented, based on information and belief, that Defendants had not
provided the six weeks of published notice required. Defendants have subsequently provided
proof of publication. Plaintiff does not contest this evidence. Accordingly, the Court discerns no
procedural deficiency that should prevent Defendants from foreclosing by advertisement.

### ii.   The Mortgages Were Not Extinguished

In its reply brief, Plaintiff argues that Defendants cannot foreclose because the underlying
mortgages are no longer valid, and they never secured the debts at issue. In support of this
contention, Plaintiff postulates that because the date on the documents underlying the Refinance
Note is earlier than the date on the documents underlying the First and Second Note Refinance
documents, the First and Second Notes must have been paid off with disbursements from the
Refinance Note *prior to* the signing of the First and Second Note Refinance agreements. Plaintiff
argues that the payment of the original notes secured by the mortgages caused them to be

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

"completely extinguished" — even without a satisfaction being provided — because they were "mere incident[s] of the debt[s]." *Hendricks v. Hess*, 127 N.W. 995, 997 (Minn. 1910) (payment, together with return of note); *Quevli Farms v. Conner*, 224 N.W. 264, 266 (Minn. 1929) (payment, together with satisfaction); *Hatlestad v. Mut. Tr. Life Ins. Co.*, 268 N.W. 665, 668 (Minn. 1936) (saying, in *dicta*, that the satisfaction occurs by operation of law). Thus, Plaintiff argues if the mortgages were extinguished before the notes in this case were signed, those notes were never secured by mortgages. There are several problems with this theory.

First, notwithstanding the discrepancy in the dates, there is no evidence that the First and Second Notes were paid off before signing the First and Second Note Refinance agreements. The only evidence that the First and Second Notes were paid off comes from Ms. Harness's declaration. She gives no date for these transactions. And what dates she does give indicate that the entirety of the refinancing transactions occurred on the same day. As a factual matter, the Court sees no reasonable likelihood that Ms. Harness is wrong about those dates.

Second, even if the First and Second Notes were paid off from the Refinance Note prior to signing the First and Second Note Refinance agreements, that would not mean that the First and Second Mortgages were extinguished. Where a promissory note secured by a mortgage is refinanced, such that the original balance is paid only with the proceeds of the new note, the underlying mortgage is not satisfied unless that was the intention of the parties. *Holden v. Farwell, Ozmun, Kirk & Co.*, 27 N.W.2d 641, 644 (Minn. 1947) ("A note taken in renewal of a prior note secured by a mortgage is presumed to have been accepted as conditional payment only, and the burden is upon one who claims that it discharged and extinguished the original note to prove an express or implied agreement to that effect."). The documents here evidence that

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

satisfaction of the mortgages was not intended, as they explicitly contemplate that the First and

Second Mortgages would provide security for the First and Second Note Refinance debts.

Third, even if the First and Second Mortgages were satisfied before signing the First and

Second Note Refinance agreements, that would not prevent an explicit written agreement from

bringing the new debts within the prior mortgages. This is not a case of a lender trying to use a

party's silence to shoehorn a subsequent debt into a generic future-advances clause, relying on

surprise about the import of the future-advances clause. This is a case where the subsequent debt

agreements *explicitly stated* that the future-advance clauses of the prior mortgages were the

intended form of security backing the new debts. It is undoubtedly the case that "the parties to a

mortgage … may, by written agreement, extend the security of the same to cover additional

indebtedness as between themselves." 76 A.L.R. 574; 54A Am. Jur. 2d Mortgages § 53; 5

Tiffany Real Prop. § 1409 (3d ed); *see, e.g., Weller v. Summers*, 84 N.W. 1022, 1022 (Minn.

1901) ("subsequently, by agreement of the parties, [an additional] sum … was added [to the

mortgage], and included within the indebtedness secured").

Where there is an explicit written agreement to bring a new debt within the protection of

an existing mortgage, there is no requirement that the agreement predate the satisfaction of the

original debt. *Kapalczynski v. Sitniski*, 91 N.J. Eq. 524 (1920) ("[A] mortgage which has been

either partly or wholly satisfied may be made security by the mortgagor for a further or other

debt than that for which it was originally given."); *Craig v. Ponderosa Dev., LP*, 392 B.R. 683,

690 (E.D. Tex. 2007) (Future-advance "clauses will be given effect even as to indebtedness

created after the debt originally underlying a [mortgage] has been paid in full.").

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

Fourth, even if by some mere technicality, the parties failed to accomplish their goal of bringing the First and Second Note Refinance debts within the protection of the First and Second Mortgages, Plaintiff is not entitled to stand on such a technicality when seeking equitable relief. "[H]e who seeks equity must do equity." *Hruska v. Chandler Assocs., Inc.*, 372 N.W.2d 709, 715 (Minn. 1985). Equity seeks to "carry into effect the real intention of the parties and to enforce it according to the sense in which it was understood by them." *Garrey v. Nelson*, 242 N.W. 12, 13 (Minn. 1932). As such, it "regards that as done which ought to have been done." *Brown v. Agin*, 109 N.W.2d 147, 150 (Minn. 1961). For this reason, technical defects in a mortgage transaction may be reformed by a court of equity. *Wilson v. Geiss*, 190 N.W. 61, 63 (Minn. 1922); *Lebanon Sav. Bank v. Hallenbeck*, 13 N.W. 145, 146 (Minn. 1882). If the real intentions of an agreement were thwarted only by "a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party," then the real intentions will be honored. *Nichols v. Shelard Nat. Bank*, 294 N.W.2d 730, 734 (Minn. 1980). Based on the documents here, it is clear that the parties intended for the First and Second Mortgages to continue to be effective. Plaintiff cannot ask a court of equity to allow him to escape from the parties' intended result based on an allegedly unappreciated technicality.

For all these reasons, there is no reasonable likelihood that the relevant mortgages do not secure the debts at issue.

### iii.  Plaintiff Lacks Standing to Assert that the Mortgages are Void

Relatedly, Plaintiff appears to argue that Defendants cannot foreclose because either the notes or the mortgages are invalid due to being infected with fraud. Plaintiff raises two possibilities in connection with this argument: (1) that Defendants may have been fraudulently

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

engaged in "nominee lending" — a form of misappropriation or conversion of bank assets —

and (2) that Charles or Randall may have exceeded the authority granted by Red River's board of

directors when executing some portion of the transactions. Under either of these circumstances,

Plaintiff argues that some aspect of the transaction was void and cannot sustain a foreclosure.

The fundamental problem with both versions of this argument is that Plaintiff lacks

standing to complain that Charles or Randall may have wronged Red River by engaging in self-

dealing. *Friederick v. Skellet Co.*, 231 N.W. 7, 9 (Minn. 1930) (self-dealing of officers,

acquiesced to by company, "cannot be questioned" by one not "interested in that company");

*accord Pankonin v. Neill*, 1991 WL 59825 (Minn. App. Apr. 23, 1991) (unpublished). A debtor

may not defend against the collection of a debt held by a bank officer by arguing that the officer

was wrong to assign some instrument of the debt to himself at the expense of the bank. *See Klein

v. Funk*, 84 N.W. 460, 461 (Minn. 1900) ("It is no concern of the [debtor under a promissory

note] whether the transfer of the legal title of the note [from a bank to the bank's officers] is or is

not voidable at the election of the [bank], or its creditors, or its receiver, or whether the [officers]

hold it in trust for any of them."); *Elmquist v. Markoe*, 47 N.W. 970, 970 (Minn. 1891)

("[debtors] have no interest in the equities between [a creditor] and his assignor"). It does not

matter if there was some misconduct on the part of Charles or Randall; Plaintiff is not entitled to

invalidate its obligations as the result of any such misconduct.

Moreover, even if Plaintiff did have standing to challenge the transactions here, it has not

shown that either of the debts at issue in this case is infected with fraud. Plaintiff first suggests

that there was an unlawful nominee loan. A nominee loan occurs "when a bank officer grants a

loan to a named debtor with knowledge that the proceeds will be turned over to a third person."

*United States v. Krepps*, 605 F.2d 101, 102 (3d Cir. 1979). Such a loan violates federal law

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

against the misapplication or conversion of bank funds by a bank officer if (1) the officer "knows that the named debtor lacks either the ability or the intent to repay the loan" or (2) "the bank officer himself is the intended beneficiary of the funds." *Id.*; *see also United States v. Marx*, 991 F.2d 1369, 1373 (8th Cir. 1993); *United States v. Austin*, 823 F.2d 257, 259 (8th Cir. 1987).

Plaintiff has not clearly identified why a loan here could have been a nominee loan. Its arguments sometimes stress that the loans secured by Craig's alter ego, Craig Holdings, were actually used by *other* of Craig's alter-ego business entities. However, that does not make them nominee loans; it is standard practice for loans to be structured this way.

Plaintiff's arguments also posit that loans delivered to him ended up in the hands of Charles and Randall. This seems to be an argument that, when Red River issued the Refinance Note, this constituted nominee lending because some of the funds at issue were used to repay the First and Second Notes, and Charles and Randall held those notes. The Court is not convinced this was a misapplication or conversion of funds. Under this theory, Charles and Randall were not engaged in a sham transaction to funnel loan proceeds to themselves. Instead, the Refinance transaction served a legitimate purpose: to extend construction refinancing to Craig and Plaintiff. It just so happened that doing this allowed Craig and Plaintiff to pay off the legitimate construction debts owed to Charles and Randall. Moreover, even if this loan were suspect, that loan still is not the loan in this case. So, invalidating that loan has no effect.

Finally, Plaintiff's arguments seem to posit that Charles and Randall engaged in nominee lending because they took out loans from Red River in their names, then turned around and lent that money to Craig and Craig Holdings under the First and Second Note Refinance agreements. Under this theory, Charles and Randall were the named debtors, but they knew that the proceeds

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

would be turned over to a third person (Craig), so they were engaging in nominee lending. There are two problems with this theory. First, such a nominee loan would not be unlawful if Charles and Randall had the ability and intent to pay the loans. It is obvious that they did have this ability and intent — they are able to, and in the process of, repaying the loans by foreclosing on the mortgages held against Plaintiff. Second, even if there were unlawful nominee loans, those loans were loans from Red River to Charles and Randall. The loans that would be voidable for fraud would not be the loans at issue here — *i.e.,* the loans from Charles and Randall to Craig and Craig Holdings.

Similarly, Plaintiff argues that Charles or Randall may have exceeded the authority that Red River's board of directors granted when executing some of the transactions in this case. *See* Minn. Stat. § 48.17; Minn. Stat. § 48.20. Again, Plaintiff is not clear on what transaction it is challenging. If Plaintiff is challenging the issuance of the First and Second Notes or the Refinance Note, those are not the notes at issue in this case. If Plaintiff is challenging the First and Second Note Refinance obligations, then Plaintiff's problem is that these instruments were not issued by the bank at all; they were issued by Charles and Randall personally. Charles and Randall could not have exceeded their authority as bank officers by lending this money to Craig and Plaintiff because they did not act as bank officers when doing so. Similarly, if Plaintiff is challenging some loan issued to Charles and Randall, which allowed them to make loans to Craig and Plaintiff, those still are not the loans at issue in this case. Plaintiff gains nothing from nullifying those loans; its obligations remain.

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

### iv.  Plaintiff's Claims do not Establish a Defense against Performance

Next, Plaintiff appears to argue that Defendants should be restrained from foreclosing on the mortgages because Plaintiff has raised legal claims that offer either a defense to performance or else an offset to liability for the debt. In its Complaint, Plaintiff pleads two substantive causes of action: (1) one claim of breach of the covenant of good faith and fair dealing and (2) one claim of fraudulent misrepresentation. Although Plaintiff's pleadings and submissions are not entirely clear, it appears that the gravamen of both claims is the following: (i) Defendants represented to Craig and Plaintiff that they would help Craig obtain the financing needed to keep progressing on the construction project associated with Ruins, LLC; but (ii) they failed to find a funding source; (iii) such that the project experienced financial distress; and (iv) that this is what caused Craig to be unable to perform on the loans secured by Plaintiff's mortgage. The primary problem with these arguments is that the claims that Plaintiff has pleaded are narrow, and the facts alleged do not support those claims.

### 1.  Covenant of Good Faith and Fair Dealing

The Court begins with the claim of bad faith. "Under Minnesota law, every contract includes an implied covenant of good faith and fair dealing requiring that one party not 'unjustifiably hinder' the other party's performance of the contract." *In re Hennepin Cnty. 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 502 (Minn. 1995). Stated differently, "contract performance is excused when it is hindered or rendered impossible by the other party." *Zobel & Dahl Const. v. Crotty*, 356 N.W.2d 42, 45 (Minn. 1984). But "the implied covenant of good faith and fair dealing does not extend to actions beyond the scope of the underlying contract." *Recycling Bond Litig.*, 540 N.W.2d at 503. In other words, "Minnesota does not recognize a

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

cause of action for breach of the implied covenant of good faith and fair dealing based on terms not included in the contract." *Metro. Transportation Network, Inc. v. Collaborative Student Transportation of Minnesota, LLC*, 6 N.W.3d 771, 782 (Minn. App. 2024).

Plaintiff has provided no reason to conclude that any of the Defendants had a contractual obligation to ensure that Craig or Plaintiff would obtain as much financing as needed to complete the construction project associated with Ruins, LLC. None of the written instruments contain such an open-ended commitment. Each of them includes integration clauses, providing that there are no additional terms to the contract. Moreover, Plaintiff provides no evidence that Defendants did not provide financing up to the terms of their written commitments. Indeed, the evidence appears to show that Defendants provided financing *beyond* their initial written commitments, hoping that this would prevent Craig from defaulting. Defendants simply failed to find additional lenders who would lend money to Craig when increases in costs meant that he needed funds beyond the amounts that Defendants could provide.

Courts have repeatedly held that a lender has no obligation to provide additional financing to a borrower beyond that required by the explicit terms of their written contract. *Minnwest Bank Cent. v. Flagship Properties LLC*, 689 N.W.2d 295, 299 (Minn. App. 2004); *451 Corp. v. Pension Sys. for Policemen & Firemen*, 310 N.W.2d 922, 924 (Minn. 1981). As such, the lender may foreclose even when the borrower's default was triggered, directly or indirectly, by a failure of the borrower to obtain additional financing. *Id.* In other words, a failure to provide additional funds does not count as a "hindrance" to the borrower's ability to perform. And, even if it did, hindrance is not *unjustified* — and therefore not in bad faith — if it is based on the financial condition of the borrower. *Minnwest Bank Cent.*, 689 N.W.2d at 300. The law does not

22

Craig Holdings v. Aarestad, *et al*.
56-CV-24-2532

imply an unwritten duty that a lender must obtain additional credit for a borrower who is not

creditworthy. Such a duty would undermine the basic functions of the banking system.

Obviously, the Defendants would have preferred that Craig and Plaintiff not default on

their debts to Defendants and that they, therefore, made efforts to find Craig the funding that

would help him avoid such a default. Perhaps they did their best to accomplish this; perhaps they

did not. But that is neither here nor there. Plaintiff has not pointed to any material evidence that

Defendants had any contractual duty to find such funding. And no covenant of good faith and

fair dealing could have created such a duty where it did not exist. As such, it is not a defense to

performance by Craig or Plaintiff that the Defendants might have represented that they would

help secure financing for Craig's construction projects, but failed to secure it.

## 2. Fraudulent Misrepresentation

A similar analysis applies to Plaintiff's claim of fraudulent misrepresentation. In order to

avoid a contractual obligation based on fraud in the inducement, a claimant must first show (1)

that there was "a false representation … of a past or existing material fact susceptible of

knowledge;" and (2) that the representation was "made with knowledge of the falsity of the

representation or made without knowing whether it was true or false." *Valspar Refinish, Inc. v.

Gaylord's, Inc.*, 764 N.W.2d 359, 368 (Minn. 2009) (additional elements omitted). To avoid a

contract on the basis of fraud in the inducement, "the alleged fraud must be established by clear

and convincing evidence." *Bolander v. Bolander*, 703 N.W.2d 529, 541 (Minn. App. 2005).

Plaintiff's theory appears to be that Craig was induced to take out the debts in this case

by representations that Defendant would secure additional financing for him. This seems to be a

claim of promissory fraud — whether the Defendants would, in the future, succeed in obtaining

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

the necessary funding for Craig and Plaintiff from some other source was not a "past or existing" fact "susceptible of knowledge" at the time any of the financial instruments in this case were executed. *Id.* At most, any such representation showed only the speaker's present intent.

"[N]either opinions nor statements that are 'general and indefinite' are representations of fact." *Martens v. Minnesota Min. & Mfg. Co.*, 616 N.W.2d 732, 747 (Minn. 2000). As such, "[a] misrepresentation claim cannot be predicated on a representation of future act unless the record affirmatively shows that, at the time the promisor made the promise, he did not intend to perform." *M.N. v. D.S.*, 616 N.W.2d 284, 288 (Minn. App. 2000). In other words, "fraud cannot be predicated upon the mere fact that a promise has been broken." *McCreight v. Davey Tree Expert Co.*, 254 N.W. 623, 625 (Minn. 1934). "There must be evidence … that, *when the promise was made*, there was no intention of performing it." *Id.* (emphasis added); *Belisle v. Southdale Realty Co.*, 168 N.W.2d 361, 363 (Minn. 1969). And this evidence must be "affirmative evidence." *Benson v. Rostad*, 384 N.W.2d 190, 194 (Minn. App. 1986).

Here, Plaintiff has not pointed to specific evidence to show that any of the Defendants fraudulently induced Craig or Plaintiff into contracting the debts in this case by promising to obtain additional funding, while also intending that no such funding would be obtained. First, Plaintiff does not identify a specific statement in which any Defendant made an unqualified promise to ensure all the funding Craig and Plaintiff required. Second, Plaintiff does not identify any reason to believe that any Defendant knew or intended that such a promise would not be fulfilled when it was made. Instead, the evidence seems consistent with the conclusion that this was an ordinary construction project that experienced cost overruns, and the parties failed to salvage it despite their best efforts. There is no reasonable likelihood shown that Plaintiff could prove a promissory fraud claim in the inducement by clear and convincing evidence.

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

### 3. Release Agreements

Moreover, even if Plaintiff had a claim for breach of contract or fraudulent misrepresentation, such a claim was likely waived by the releases Plaintiff executed as part of either the Forbearance Agreement or the First and Second Note Refinance agreements. Those agreements released Defendants from liability for "all claims" against Defendants, their officers, and their assigns, "without regard to whether said claims … relate[d] to or ar[o]se from" any given transaction.

"A valid release is a defense to any action on a claim released." *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 737 (Minn. App. 1995); *Wallner v. Schmitz*, 57 N.W.2d 821, 823-24 (Minn. 1953). Such a release may be general, and it may cover all claims, known or unknown. *Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 902 (Minn. 2012); *Myers v. Fecker Co.*, 252 N.W.2d 595, 599 (Minn. 1977). "Unambiguous language in [a] settlement agreement is to be given its plain and ordinary meaning." *State ex rel. Humphrey v. Philip Morris USA, Inc.*, 713 N.W.2d 350, 355 (Minn. 2006). Here, the release is abundantly clear in that it covers Plaintiff's claims against Defendants.

In order to avoid a clear release, a claimant must demonstrate either (1) "circumstances showing [that] the release was not intended" or else (2) a lack of "sufficient consideration." *Sorensen v. Coast-to-Coast Stores, Inc.*, 353 N.W.2d 666, 669 (Minn. App. 1984). Plaintiff has not demonstrated a likelihood that it can show either of these. It alleges that the release was not intended because of the same fraud it alleges. But for a release to be avoided on the basis of fraud, "the fraud or misrepresentation must touch execution of the release." *Id.* at 670. It is not

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

enough that the claimant "did not fully understand [the] implications [of the release]." *Id.* There is no allegation that Defendants misrepresented the terms of the releases in this case.

Plaintiff also appears to challenge whether the releases were supported by consideration. Forbearance from collection of a debt for an insignificant period of time may be insufficient consideration for some contracts. *See Baker v. Citizens State Bank of St. Louis Park*, 349 N.W.2d 552, 559 (Minn. 1984). But the Forbearance Agreement here did provide a significant period of time — five months. The First and Second Note Refinance agreements provided thousands of dollars of entirely new loans — certainly sufficient consideration for a waiver.

### v.   Plaintiff does not Show Cause to Rely upon Undiscovered Claims

Finally, in its initial brief, Plaintiff appears to argue that the Court should enjoin Defendants from foreclosing because it should have the ability to conduct discovery to determine whether such a foreclosure would be valid. The argument that an undiscovered claim may emerge in discovery is one of the weakest possible showings with respect to the merits. But the strength of the showing required is context dependent. *Metro. Sports Facilities Comm'n v. Minnesota Twins P'ship*, 638 N.W.2d 214, 222, 226 (Minn. App. 2002); *see, e.g., Chalfen v. Med. Inv. Corp.*, 210 N.W.2d 216, 219 (Minn. 1973).

In certain cases, it is enough that a plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205-06 (2d Cir. 1970); *Lynch Corp. v. Omaha Nat. Bank*, 666 F.2d 1208, 1212 (8th Cir. 1981). This may occur when further investigation is needed to fully understand a suspicious transaction. *Cf. Resol. Tr. Corp. v. Cruce*, 972 F.2d 1195, 1200 (10th Cir. 1992); *Int'l Controls Corp. v.*

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

*Vesco*, 490 F.2d 1334, 1347 (2d Cir. 1974). In other words, there are rare cases where the

possibility of fruitful discovery is so great that it establishes some likelihood of success on the

merits, at least for the very short term.

The argument that Plaintiff should receive an injunction simply so that it can conduct

discovery is one that had considerably more force when Plaintiff first made it. Plaintiff first

raised this argument in its principal brief, in which it was seeking a temporary restraining order.

At that time, Plaintiff had requested copies of the promissory notes in this case, but had not

received them. Counsel was unclear even about what promissory notes were at issue. It was,

therefore, understandable if counsel had suspicion and uncertainty about the validity of the

transactions in question. But the record is now much clearer. Defendants have supplied copies of

the financial instruments in question. As such, it is now fairly clear what the central facts of the

case are. The result is that this is no longer the rare case where the questions about what occurred

are so substantial and serious that they demand a more deliberate investigation. Plaintiff's

showing of a likelihood of success on the merits now rises and falls with the actual claims and

arguments it has advanced. For the reasons discussed above, the facts in the record affirmatively

show that it is unlikely that Plaintiff will succeed on the merits of these claims.

### vi.  Summation

In conclusion, the Court finds that Plaintiff has not made any substantial showing of a

likelihood that it will succeed on the merits of a claim that would stop or invalidate Defendants'

attempts to engage in a foreclosure by advertisement based on the mortgages on the Subject

Property. The record does not support the claim that the Defendants have failed to follow the

proper procedural steps. The parties intended that the mortgages would back the debts that are in

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

default in this case, and neither the record nor the law support that this intent was ineffective. Plaintiff does not have standing to challenge the propriety of any alleged self-dealing by Defendants. The Plaintiff also has not alleged facts necessary to support claims of bad faith or fraud. Additionally, Plaintiff also waived all claims that accrued during the relevant period. The result is that the record shows no reasonable likelihood of success on the merits.

### b. Balance of Equities

An applicant for a temporary injunction also must show that the balance of the equities favors granting injunctive relief. Equity begins with the nature of the preexisting relationship between the parties. *Dahlberg*, 137 N.W.2d at 321. Here, the parties' relationship was primarily contractual between the mortgagor and the mortgagee. That generally favors permitting the mortgagee to exercise its contractual right to foreclose. *Lindberg*, 381 N.W.2d at 907. Moreover, this is not a case where Defendants rushed to foreclose. They participated in a refinance of the underlying debts, and they did forbear from foreclosing immediately when the current debts came due. That generally disfavors injunctive relief. *Krueger v. Washington Fed. Sav. Bank of Montevideo*, 406 N.W.2d 543, 546 (Minn. App. 1987).

Equity also accounts for the balance between the harm that would arise from granting the injunction if the Defendants were to prevail in the end against the harm that would arise from denying the injunction if Plaintiff were to prevail in the end. *Dahlberg*, 137 N.W.2d at 321. Granting the injunction would immediately harm Defendants by delaying a foreclosure. This harm is generally offset by the payment of interest, so long as the mortgage provides adequate security for the loan and interest. *Conkey v. Dike*, 17 Minn. 457, 466 (1871). However, this is a case where the foreclosures are being brought by junior creditors. It is unclear whether the equity

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

in the Subject Property is great enough to cover additional interest. Thus, delay may deprive

Defendants of a full recovery. *Krueger*, 406 N.W.2d at 546. Conversely, denying the injunction

would require Plaintiff to amend its complaint to state a claim to set aside the foreclosure, and it

could eventually require Plaintiff to post a deposit in an amount set by statute if that claim could

not be resolved within a six-month redemption period. Minn. Stat. § 580.28 (action to set aside,

deposit); Minn. Stat. § 580.23 (redemption period). To some extent, these harms are both

somewhat remote and speculative, but Defendants' harm is closer. On net, the balance between

these competing harms weighs somewhat against injunctive relief.

Equity also accounts for values contained in public policy and for the burdens of judicial

administration. *Dahlberg*, 137 N.W.2d at 321. The expression of public policy most relevant to

this case is the statutes governing foreclosure by advertisement. Those statutes provide

procedural rules, as well as a process for challenging a foreclosure by advertisement and a

process for redeeming a property following foreclosure. Minn. Stat. § 580.01, *et seq.* Those

processes balance the rights of debtors and creditors by giving debtors a period of time to come

up with payment, but by requiring that this payment must be posted eventually in order to

preserve the debtors' rights indefinitely. Minn. Stat. § 580.23; Minn. Stat. § 580.28. "Equity

follows the law, and a court of equity will not disregard statutory law" when crafting equitable

relief. *Kingery v. Kingery*, 241 N.W. 583, 584 (Minn. 1932). While a court of equity may craft

relief in extraordinary circumstances, its role is not to re-weigh policy determinations that the

Legislature has already made and apply its own legislative judgment to ordinary, mundane

circumstances already provided for. Here, Plaintiff's fundamental goal in obtaining a temporary

injunction is to avoid posting money in compliance with the procedures found in statute. When

that is the goal, public policy does not weigh in favor of granting equitable relief.

Craig Holdings v. Aarestad, *et al.*
56-CV-24-2532

Finally, before granting injunctive relief, equity balances these factors along with the strength of the applicant's showing on the merits. *Dahlberg*, 137 N.W.2d at 321. While strength in one factor may outweigh weaknesses in other factors, Plaintiff has not shown strength in *any* factor. Plaintiff has not reasonably shown that it is likely to prevail on the merits. And none of the equitable factors in this case bolster that showing. The balance of the equities tips against granting temporary injunctive relief. Accordingly, the Court denies such relief.

## III.    Contempt

In addition to its motion to convert the TRO into a preliminary injunction, Plaintiff moves to hold Defendants in contempt of the TRO. Specifically, Plaintiff argues that Defendants violated the TRO by merely postponing the scheduled sheriff's sale rather than canceling it. A violation is not a contempt unless the violator acted "contumaciously, in bad faith, and out of disrespect for the judicial process." *Minnesota State Bar Association v. Divorce Assistance Association, Inc.*, 248 N.W.2d 733, 740 (Minn. 1976). Defendant could have concluded, reasonably and in good faith, that merely postponing the foreclosure would comply with the terms of the TRO. The Court, therefore, declines to initiate contempt proceedings.

In addition, "[c]ivil contempt proceedings are designed to induce future performance of a valid court order, not to punish for past failure to perform." *Meyer v. Meyer*, 492 N.W.2d 272, 273-74 (Minn. App. 1992). As such, "[a] court cannot impose a coercive civil contempt sanction if the underlying injunction is no longer in effect." *Klett v. Pim*, 965 F.2d 587, 590 (8th Cir. 1992). Because the Court is dissolving the TRO, no future performance is left to induce. As such, given that Plaintiff suffered no harm from Defendants' alleged contempt, the contempt motion is now effectively moot.

Electronically Served
12/10/2024 11:55 AM
Otter Tail County, MN

56-CV-24-2532

Case 25-07009   Doc 7   Filed 03/28/25   Entered 03/28/25 14:09:44   Filed in District Court
Document   Page 120 of 122   State of Minnesota
12/10/2024

State of Minnesota
Otter Tail County

District Court
Seventh Judicial District

| Court File Number: **56-CV-24-2532** |
| --- |

Case Type: Civil Other/Misc.

**Notice of Filing of Order**

FILE COPY

---

**Craig Holdings, LLC vs Charles Aarstad, Randall Aarestad, RED RIVER STATE BANK**

You are notified that an order was filed on this date.

Dated: December 10, 2024

Trisha Mernitz
Court Administrator
Otter Tail County District Court
121 W. Junius Ave.
Fergus Falls MN  56537
218-560-7045

cc:   KATRINA ANNETTE TURMAN LANG
DREW JAMES HUSHKA

A true and correct copy of this notice has been served pursuant to Minnesota Rules of Civil Procedure, Rule 77.04.

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>Debtor. | Case No.:  25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>Red River State Bank,<br><br>Defendant. | Adversary No.:  25-07009 |

## CERTIFICATE OF SERVICE

STATE OF NORTH DAKOTA  )
                        )   SS
COUNTY OF CASS          )

Sonie Thompson, being first duly sworn, does depose and say:  she is a resident of Cass County, North Dakota, of legal age and not a party to or interested in the above-entitled matter.

On March 28, 2025, affiant caused the following document(s):

1. NOTICE OF MOTION TO DISMISS;

2. MOTION TO DISMISS;

3. DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT; AND

**4. DECLARATION OF CHARLES AARESTAD IN SUPPORT OF MOTION TO DISMISS ADVERSARY COMPLAINT**

to be served electronically to the following:

*ALL ECF Participants.*

_____
        */s/ Sonie Thompson*
        Sonie Thompson

Subscribed and sworn to before me this 28th day of March, 2025.

_____
        */s/ Jill Nona*

(SEAL)          Notary Public, Cass County, North Dakota

4930-5709-3901 v.1

2