LexisNexis

No *Shepard's* Signal™
As of: April 2, 2025 8:29 PM Z

# Davies US Inc. v. Weston

United States District Court for the District of Delaware

March 28, 2025, Decided; March 28, 2025, Filed

No. 1:24-cv-00164-SB

**Reporter**
2025 U.S. Dist. LEXIS 58533 *

DAVIES US INC., Plaintiff, v. STEVEN C. WESTON and KATHLEEN A. WESTON, Defendants.

**Counsel:** [*1] For Plaintiff: Alessandra Glorioso, Brittany L. Garza, Gregory S. Tamkin, DORSEY & WHITNEY LLP, Wilmington, Delaware.

For Kathleen A. Weston, Defendant: Daniel A. Griffith, WHITEFORD TAYLOR PRESTON LLC, Wilmington, Delaware.

**Judges:** BIBAS, Circuit Judge.

**Opinion by:** BIBAS

## Opinion

**MEMORANDUM OPINION**

March 28, 2025

BIBAS, *Circuit Judge*, sitting by designation.

Getting divorced is not a substitute for paying your debts. Steven Weston owed around $4 million to a company called Davies that would become due immediately if he ever sold his company. Then he sold his company. But rather than pay his debt, he got divorced. Through the divorce, he allegedly diverted the money that he would have used to pay Davies to his wife Kathleen. She now asks me to dismiss the case that Davies brought against her because she was not a party to the debt contract. But Davies adequately pleaded its case, and the claims against Kathleen turn on ambiguous contractual terms that I cannot interpret on a motion to dismiss. So I deny her motion.

### I. STEVEN SELLS HIS COMPANY AND DIVORCES HIS WIFE

This case starts with a sale gone wrong. In 2021, Steven sold his stake in SK Weston & Company to a company called Davies. D.I. 25, Am. Compl. ¶ 11. Then Davies [*2] found out that Steven had lied about the company's financial statements and track record, so it sued him. *Id.* ¶¶ 13-14. They settled shortly afterward. *Id.* ¶ 16. As part of the settlement, Davies unwound the sale, returning SK Weston to Steven. *Id.* Steven gave Davies back some of what it had paid him. *Id.* Steven also had to execute a promissory note, putting himself on the hook to pay around $4 million to Davies. *Id.* And, just to be sure, the settlement agreement required that Steven's wife Kathleen also sign a document acknowledging and "consenting" to the promissory note. *Id.* ¶ 17; D.I. 16-1 at 1. The Westons were supposed to pay Davies the money over the course of ten years. Am. Compl. ¶ 20. That might have put the dispute to rest.

But it did not. Steven proceeded to sell his reacquired stake in SK Weston, triggering a clause in the promissory note that made full payment due

immediately. *Id.* ¶ 21. Complicating this situation, the Westons got divorced. *Id.* ¶ 51. As Davies tells the tale, Steven's now-ex-wife Kathleen ended up with all the money from the sale of SK Weston. *Id.* ¶ 54. Steven was left without the money but with the debt. *Id.* ¶ 55.

Davies sued both Steven and Kathleen to **[\*3]** collect on the note. Kathleen moved to dismiss, arguing that she has nothing to do with her ex-husband's debts.

## II. Kathleen s Motion to Dismiss

There is some housekeeping to do before I get to the substance of Kathleen's motion. In its original complaint, Davies argued only that Kathleen was liable for breach of contract because the consent agreement functionally made her a party to the promissory note. D.I. 1, Compl. ¶¶ 32-36. After Kathleen moved to dismiss, Davies amended its complaint, adding two more causes of action: (1) unjust enrichment and (2) fraudulent conveyance. Am. Compl. ¶¶ 37-60. The new complaint also asked for declaratory judgment, but that is a form of relief rather than an independent cause of action. *Id.* ¶¶ 61-73; *Allen v. DeBello*, 861 F.3d 433, 444 (3d Cir. 2017).

Kathleen moved to dismiss the amended complaint 25 days later. D.I. 28. Davies now argues that I must disregard her motion under Rule 15(a) because it was not filed within 14 days of the amended complaint. Fed. R. Civ. P. 15(a)(3). If I do not consider her new motion to dismiss, her first motion would remain operative. 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476 (3d ed. 2024) ("If some of the defects raised in the original motion remain in the new pleading, **[\*4]** the court simply may consider the motion as being addressed to the amended pleading."). That means that I would consider her responses only to the breach-of-contract claim, but not to the unjust-enrichment or fraudulent-conveyance claims.

But I will not disregard her second motion. "[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47, 136 S. Ct. 1885, 195 L. Ed. 2d 161 (2016). Here, those concerns favor considering all of Kathleen's arguments. Otherwise, I might let some meritless claims proceed, wasting more time and resources down the line.

Still, it makes no difference for Kathleen. Even considering her updated motion and briefing, all her arguments fail.

## III. All of Davies s Claims May Proceed

In deciding Kathleen's motion to dismiss, I accept all allegations in the amended complaint as true and draw all inferences for Davies. *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 154 n.1 (3d Cir. 2014). If the complaint still does not "state a claim to relief that is plausible on its face," I must dismiss it. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). That is not the case here.

### A. The breach of contract claim may proceed

Davies's first claim is that Kathleen is functionally a party to the promissory note because she signed an agreement **[\*5]** "consenting" to it. Am. Compl. ¶ 17. Kathleen's marriage to Steven does not automatically make her a guarantor of any debt that he incurred, so I must look to the note itself. *See Schweizer v. Schweizer*, 301 Md. 626, 484 A.2d 267, 272 (Md. 1984). The note's choice-of-law provision chooses Delaware law and neither party contests it. D.I. 25-1 at 3; *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 464 (Del. 2017). So I apply Delaware law.

Kathleen signed a document that allegedly puts her

on the hook for paying Steven's debts. Whether Kathleen's refusal to pay is a breach depends on what the contract says. On a motion to dismiss, I may decide questions of contract interpretation when the contract's language is clear. *Ram Constr. Co. v. Am. States Ins.*, 749 F.2d 1049, 1052 (3d Cir. 1984). But when it is ambiguous, the meaning is a question of fact to be left to a jury. *Id.* ("[A]mbiguous terms are interpreted by the jury, unambiguous ones by the court.").

The relevant language reads: "As Steven's spouse, I have discussed the Settlement Agreement and the Note with Steven and hereby consent to the transactions contemplated by the Settlement Agreement and the Note and to Steven entering into the Settlement Agreement and the Note." D.I. 16-1 at 1.

The parties disagree about how I should interpret this language. Davies insists that "[t]he core purpose of the Spousal Consent was ... to bind **[*6]** Ms. Weston to the Note and ensure that Mr. Weston's death, divorce, or other change of life circumstances would not deprive Davies of the right to be paid." D.I. 30 at 13. By contrast, Kathleen maintains that she "merely acknowledged the Settlement Agreement and Promissory Note and consented to Mr. Steven entering into such agreements." D.I. 29 at 7.

But I see ambiguity. Contrary to Kathleen's argument, the language of the agreement contemplates *her* "consent to the transactions" as well as her consent to Steven entering the transaction. D.I. 16-1 at 1. And the settlement agreement appears to have required Kathleen's consent as a condition. *Id.* But that does not entirely answer the question because the agreement does not explicitly make Kathleen a guarantor of Steven's debts. The answer to this question likely turns on the surrounding context. This is a quintessential example of ambiguous contract language that should go to a factfinder. Davies's claim may proceed.

**B. The fraudulent-conveyance claim may proceed**

Unlike the prior claim, Davies's fraudulent-conveyance claim is not subject to the Delaware choice-of-law provision. That provision's language is narrow. It specifies only that **[*7]** "[t]his Note shall be governed by and construed under the laws of the State of Delaware." D.I. 25-1 at 3. The parties agreed that Delaware law covers disputes about the interpretation of the Note. Yet they made no agreement about how to govern disputes related to, but not directly arising from, the Note. So the choice-of-law provision does not cover a tort claim for fraudulent conveyance that exists outside the contract. *See Huffington v. T.C. Grp., LLC*, No. N11C-01-030JR, 2012 Del. Super. LEXIS 176, 2012 WL 1415930 (Del. Super. Ct. Apr. 18, 2012) ("The choice of law provision, without language such as 'arising out of or relates to,' only requires the Court to apply Delaware law to claims challenging the terms and provisions of the [contract].").

Ordinarily, I would decide whether there is an actual conflict among the laws of the relevant states—here, Maryland,Delaware, and perhaps even Tennessee. The parties did not brief this issue, and they cite Maryland and Delaware law seemingly at random. Ultimately, it does not matter: if there were no conflict all three states would give me the same rule to apply. So, instead of analyzing that unbriefed issue, I move to the next step by deciding which state's law applies. That state is the one with the "most significant relationship" to the claim under factors set **[*8]** out in the Sec-ond Restatement of Conflict of Laws. *Chemtura*, 160 A.3d at 464; Restatement (Second) of Conflict of Laws § 145. These factors include: "the place where the injury occurred, ... the place where the conduct causing the injury occurred, ... the domicil[e] ... of the parties, and ... the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2).

Two factors strongly favor Maryland: (1) the Westons live in Maryland, so that was the location of the harmful conduct; and (2) the promissory note was executed in Maryland, so that was where the relationship between the parties was based. Am. Compl. ¶¶ 3-4; 25-1 at 1; Restatement (Second) of Conflict of Laws § 145(2)(b), (d). One factor favors Tennessee because that is Davies's principal place of business and so where it felt the injury. Am. Compl. ¶ 3; Restatement (Second) of Conflict of Laws § 145. And the remaining factor is split because Steven and Kathleen live in Maryland, while Davies in incorporated in Delaware. *Id.* ¶¶ 3-5. On balance, the Restatement factors favor Maryland.

Applying Maryland law, fraudulent conveyance includes insolvent conveyance. An insolvent conveyance is: (1) a conveyance that (2) is "incurred by a person who ... will be rendered insolvent by it," (3) without fair consideration, with (4) a debtor-creditor relationship involved. Md. Code Ann., Com. Law § 15-204 (West 1975); *see also Greystone Operations, LLC v. Steinberg*, No. 454, 2017 Md. App. LEXIS 387, 2017 WL 1365365, *3 (Md. Ct. Spec. App. Apr. 12, 2017). I **[*9]** analyze this claim under the pleading requirements of Rule 8 instead of the heightened requirements of Rule 9(b) because the statutory provision applies "without regard to [the defendant's] actual intent." Md. Code Ann., Com. Law § 15-204; Fed R. Civ. P. 8, 9(b). Davies adequately pleads an insolvent conveyance under Maryland's Uniform Fraudulent Conveyance Act.

First, the transfer through divorce is a "conveyance" because it is a "payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property." Md. Code Ann., Com. Law § 15-201(c) (West 1975); *see Cruickshank-Wallace v. Cnty. Banking & Tr. Co.*, 165 Md. App. 300, 885 A.2d 403, 423 (Md. 2005) ("There is nothing in the [Fraudulent Conveyance Act] that makes a transaction that otherwise is a conveyance not a conveyance merely because it is a transfer from one spouse to the other.").

Second, Davies adequately pleads that "the transfer of the proceeds from the sale of SKW to Mr. Weston rendered Mr. Weston insolvent" and that he "did not have funds available to pay ... and, as a result, he had no intention of paying this initial payment." Am. Compl. ¶¶ 30, 58.

Third, Davies adequately pleads a lack of fair consideration. Fair consideration requires "good faith." Md. Code Ann., Com. Law § 15-203(1) (West 1975). Davies alleges that the transfer was not made in good faith because it was a transfer of "marital proceeds without **[*10]** a proportionate share of marital debt." Am. Compl. ¶ 57. So "[t]o the extent that Ms. Weston is not bound to repay the Note, she received the proceeds from the sale ... without paying fair consideration." *Id.* ¶ 56. If Kathleen received more than she was due in the divorce because of a scheme to evade Steven's creditors, then consideration could not have been in good faith or been fair.

Finally, Davies adequately pleads that it is Steven's creditor by attaching the debt contract to its complaint. D.I. 25-1.

Kathleen objects that she did not *do* the conveying, so she cannot be sued for fraudulent conveyance. Not so. When "the subject of the fraudulent conveyance has been disposed of or cannot be reached, the person defrauded should be able to recover from the person to whom the transfer was wrongfully made." *Molovinsky v. Fair Emp. Council of Greater Washington*, 154 Md. App. 262, 839 A.2d 755, 767 (Md. Ct. Spec. App. 2003). Davies alleges that it cannot recover what it is owed from Steven because the money was transferred to Kathleen. So, if its allegations are true, it should be able to recover from her instead. Thus, Davies's fraudulent-conveyance claim may proceed.

**C. The unjust-enrichment claim may proceed**

Just as Maryland law governs Davies's fraudulent-conveyance claim, so too does it govern the **[*11]** unjust-enrichment one. But the path to that destination differs. I analyzed Davies's fraudulent-conveyance claim under § 145 of the Second Restatement because it resembles a tort. But a claim for unjust enrichment is intertwined with its matching remedy of restitution. *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 936 A.2d 343, 351-52 (Md. 2007). And the conflicts-of-laws analysis for restitution is governed by § 221 of the Second Restatement of Conflicts. Restatement (Second) of Conflict of Laws § 221.

Under Section 221, I must ask where the contract was signed, the benefit was received, the divorce occurred, the parties are domiciled, and the money is kept. *See id.* Of the five factors, three favor Maryland: (1) the contract was signed in Maryland, so (2) the benefit was received there, and (3) the couple resides in that state, so the divorce likely happened there. D.I. 25-1 at 2; Am. Compl. ¶¶3-4. One factor is split: the parties are domiciled in Maryland and Delaware. Am. Compl. ¶¶ 3-5. And the fifth is not relevant because no information is pleaded about the physical location of the transferred money. So I apply Maryland law.

To succeed on an unjust-enrichment claim under Maryland law, a plaintiff must show: (1) the defendant got a benefit from the plaintiff, (2) the defendant knew about the benefit, and (3) accepting or continuing to enjoy the benefit without payment would be inequitable. **[*12]** *Hill*, 936 A.2d at 351. Davies pleads all three.

The second and third factors are easily met. Davies pleads that the sale of the company came after the note was already signed and Kathleen had acknowledged it. Am. Compl. ¶¶ 19, 38. It requires no leap to infer that Kathleen knew where the money she got in the divorce came from. Nor did she decline it. If she knowingly received the money as part of a fraudulent scheme, then continuing to hold onto it would be plainly inequitable. So these two factors are not an issue.

Kathleen contests the first factor: whether she got a benefit from Davies. If she got a benefit, she says, it was from her ex-husband. D.I. 31 at 13. But that makes no difference. Under Maryland law, "it is immaterial how the money may have come into the defendant's hands, and the fact that it was received from a third person will not affect [her] liability, if, in equity and good conscience, [s]he is not entitled to hold it against the true owner. *Plitt v. Greenberg*, 242 Md. 359, 219 A.2d 237, 241 (Md. 1966); *see also Hill*, 936 A.2d at 353 ("[W]e have not required always that a benefit conferred in an unjust enrichment action come necessarily and directly to the defendant."). Davies has adequately pleaded all three factors for unjust enrichment.

\* \* \* \*

Kathleen may well be **[*13]** the unwitting beneficiary of a huge windfall. But that is a question of fact to be decided later. For now, Davies has sufficiently pleaded its claims to withstand a motion to dismiss.

**End of Document**