

 Neutral

As of: April 2, 2025 8:29 PM Z

# JPMorgan Chase Bank, NA v. Martin

United States District Court for the Northern District of California

March 29, 2006, Decided; March 30, 2006, Filed

No. C05-04531 MJJ

**Reporter**
2006 U.S. Dist. LEXIS 113415 *

JPMORGAN CHASE BANK, NA., Plaintiff, v. MARTIN ET AL, Defendant.

**Counsel:** [*1] For Jpmorgan Chase Bank, N.A., Plaintiff: Brett Michael Schuman, LEAD ATTORNEY, Goodwin Procter LLP, San Francisco, CA USA; Mark Samuel Kokanovich, Ballard Spahr LLP, Phoenix, AZ USA.

For Francis A. Martin, III, Defendant: Robert Reeves Cross, LEAD ATTORNEY, Skootsky & Der LLP, San Francisco, CA USA.

For P. M. Tamkin as trustee of the Martin Family Trust, Defendant: Michael D. Celio, LEAD ATTORNEY, Gibson, Dunn & Crutcher LLP, Palo Alto, CA USA; Benedict Y. Hur, Attorney at Law, Willkie Farr & Gallagher Llp, San Francisco, CA USA.

**Judges:** MARTIN J. JENKINS, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MARTIN J. JENKINS

## Opinion

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**

### INTRODUCTION

Before the court is Defendant P.M. Tamkin's ("Defendant," "Tamkin") Motion to Dismiss First Amended Complaint. [1] This motion is opposed by Plaintiff, JP Morgan Chase Bank, N.A., ("Plaintiff," "JP Morgan"). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss.

### FACTUAL BACKGROUND

On August 20, 2001, JP Morgan loaned Francis A. Martin III ("Martin") $26,000,000 pursuant to a credit agreement. On June 7, 2005, Plaintiff issued a letter to Martin demanding [*2] that he pay the outstanding debt by June 13, 2005. Martin defaulted on the loan, and Plaintiff sued Martin in New York state court for breach of contract (the "New York Action"). Plaintiff sought damages in the amount of Martin's indebtness. Martin did not contest the suit and on October 12, 2005, the New York state court entered judgment in favor of Plaintiff in the amount of $26,901,36L47.

Subsequently, on October 13, 2005, JP Morgan filed an "Application for Entry Judgment on Sister-State Judgment" in San Francisco Superior Court, seeking to enforce the New York Judgment.

---

[1] Doc. No. 40 filed on February 21, 2006.

Pursuant to California Code of Civil Procedure § 1710.45, a judgment creditor must wait to enforce a judgment until at least 30 days after the judgment debtor has been served with the Notice of Entry. On October 19, 2005, the San Francisco Superior Court granted JP Morgan's motion.

On October 14, 2005, the day after JP Morgan served Martin with a Notice of Entry of judgment, Tamkin, who is Martin's sister and the trustee of the Martin Family Trust, filed a complaint against Martin in Los Angeles County Superior Court, seeking $8,187.504.01. Tamkin's suit was based upon a breach of contract by Martin (the "Tamkin Action", **[\*3]** the "Los Angeles Action") concerning money loaned to Martin by the Tamkin Family Trust.² The complaint in the Tamkin Action was a form complaint that did not include any factual allegations establishing the basis for the causes of action. Martin, a San Francisco resident, stipulated to venue in Los Angeles County.

On October 20, 2005, Tamkin and Martin stipulated to a Entry of Judgment against Martin in the Tamkin Action. A judgment was entered against Martin on October 27, 2005, in the amount of $8,539,347.55. The next day, on October 28, 2005, Tamkin attempted to enforce the Tamkin Judgment by filing a Notice of Judgment Lien.³ Additionally, Tamkin and Martin stipulated to a turnover order in San Francisco Superior Court ("the San Francisco Enforcement Action"), where Martin would turn over his property to the Trust. JP Morgan has intervened in the San Francisco enforcement action.

**PROCEDURAL BACKGROUND**

On November 7, 2005, Plaintiff JP Morgan, as successor in interest to Morgan Guaranty Trust Company of New York, filed this complaint against Defendants Francis A. Martin III and P.M. Tamkin,

---

² Tamkin is the trustee of the Martin Family Trust. Martin was previously a co-trustee, but resigned.

³ Plaintiff alleges that Martin is otherwise insolvent Doc. No. 36 filed on February 6, 2006 at 5:15.

as trustee of the Martin Family Trust, (collectively "Defendants"). Plaintiff alleges that Defendants' **[\*4]** stipulation in the Tamkin Action constituted a fraudulent transfer, and that the purpose of the stipulation was to transfer funds which were rightfully due to Plaintiff from Martin to Tamkin. Plaintiff concurrently filed an Ex Parte Application for a Temporary Restraining Order ("TRO") against Defendants to prevent Defendants from taking any action to enforce or satisfy the Ta.mkin Judgment. The Court denied the TRO, finding that Plaintiff failed to demonstrate irreparable injury.

On November 21, 2005, Tamkin filed a Motion to Dismiss. This Court granted the Motion, without prejudice and with leave to amend, allowing JP Morgan to clarify the legal basis for the fraudulent transfer claim. On February 6, 2006, Plaintiff filed its First Amended Complaint, which included six counts of fraudulent transfer based on state and common law. Subsequently, on February 21, 2006, Defendant filed this Motion to Dismiss the First Amended Complaint.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face **[\*5]** of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Further, dismissal is appropriate only if it appears beyond a doubt that

the plaintiff can prove no set of facts in support of a claim. *See Abramson v. Brownstein*, 897 F.2d 389, 391 (9th Cir. 1990). In considering a 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## A. Request for Judicial Notice Pursuant Federal Rules of Evidence 201

In addition to the Motion to Dismiss the First Amended Complaint, Defendant has filed a Request for Judicial Notice, asking the Court to take notice a number of documents. Plaintiff has not filed an Opposition to Defendant's Request for Judicial Notice. Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Although a court generally decides motions to dismiss on the pleadings alone, a court may consider certain materials - documents attached or explicitly referenced **[\*6]** in the complaint, or documents on which allegations in the complaint implicitly rely - without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

Defendant requests the Court to notice the following documents: (1) Martin's August 12, 2005, Answer to the Verified Complaint, the New York Action; (2) excerpts from the September 21, 2005 deposition of Martin taken by JP Morgan in the New York Action; (3) the caption page to JP Morgan's Verified Petition for Court Order filed in *JP Morgan v. Martin, et. al.*, San Francisco Superior Court Case No. 05-505740; (4) the February 14, 2006, transcript of JP Morgan's motion to assign certain of Martin's assets, heard in Department 610 of the San Francisco Superior Court; (5) the January 14, 2006, transcript of Martin's debtor exam in JP Morgan v. Martin, *et. al.*, San Francisco Superior Court Case No. 05-505740; (6) JP Morgan's ex parte application to intervene in *Tamkin v. Martin*, San Francisco Superior Court Case No. 05-505803; (7) the San Francisco Superior Court's Order granting JP Morgan's ex parte application to intervene in San Francisco Superior Court Case No. 05-505803; and (8) JP Morgan's Notice of Motion and Motion to **[\*7]** Consolidate *Tamkin v. Martin*, San Francisco Superior Court Case No. 05-505803 and *JP Morgan v. Martin, et. al.*, San Francisco Superior Court Case No. 05-505740, into one action.

## Prior Court Proceedings

Under Federal Rule of Evidence 201, judicially noticed facts often consist of matters of public records, such as prior court proceedings. *See, e.g., Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of a filed complaint as a public record); *Del Puerto Water District v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1232 (ED. Cal. 2003) (taking judicial notice of matters of public record including pleadings, orders, and other papers). Accordingly, the Court takes judicial notice of the requested documents.

However, as Plaintiff correctly contends in their Opposition, district courts may not consider declarations or deposition testimony that introduce disputed factual matters in motions to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-689 (9th Cir. 2001). Furthermore, in *Cooper v. Pickett*, 137 F.3d 616, 623 (9th Cir. 1997), the Ninth Circuit reversed an order granting a motion to dismiss where defendant relied on declarations, transcripts and other extrinsic materials in support of its motion. The Court may not, as the Ninth Circuit in *Cooper* stated, "test the evidence at this stage." *Id.* at 627. Thus, to the extent Defendant requests the Court to recognize factual allegations within the

transcripts and depositions and relies on the content in her **[\*8]** Motion to Dismiss, the Court denies Defendant's request. The Court, by taking judicial notice, only recognizes the existence of the documents and not any factual allegations asserted within the following documents: the September 21, 2005, deposition of Martin taken by JP Morgan in the New York Action; the February 14, 2006, transcript of JP Morgan's motion to assign certain of Martin's assets, heard in Department 610 of the San Francisco Superior Court; and the January 14, 2006, transcript of Martin's debtor exam in JP Morgan v. Martin, *et al.*, San Francisco Superior Court Case No. 05-505740.

## ANALYSIS

### A. The Anti-Injunction Act Does Not Bar Plaintiff's Suit

Defendant first argues that Plaintiff's action, through its request for injunctive relief, violates the Federal Anti-Injunction Act, 28 U.S.C. § 2283, and should be dismissed. Defendant claims:

> JP Morgan's prayer for relief makes plain exactly what it seeks: other than a boilerplate request for 'damages according to proof,' every form of relief JP Morgan seeks would require this court to enjoin California state courts from further proceedings in the Trust's action against Martin.

(Doc. No. 40, February 21, 2006 at 2.) Plaintiff contends that Defendant mischaracterizes **[\*9]** what Plaintiff is seeking, and insists that Plaintiff's request for damages are a substantial portion of Plaintiff's request for relief.

As a starting point, the Court agrees with Defendant that Plaintiff's action implicates the Anti-Injunction Act. The Anti-Injunction Act provides:

> A Court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

Specifically, Plaintiff's FAC, besides requesting damages, prays for relief as follows:

> A. *Avoidance and invalidation of the judgment in the Tamkin Action* and any and all liens obtained by Tamkin pursuant to that judgment;
>
> B. *Preliminary, and Permanent injunctive relief against* any action by Tamkin or the Martin Family Trust to enforce the judgment in the Tamkin Action;
>
> C. *Preliminary and Permanent injunctive relief against* Martin, prohibiting him from taking any action to satisfy the judgment in the Tamkin Action, or from taking any other acts intended to hinder, delay, or defraud JP Morgan of its rights under its judgments against Martin.

(Complaint at 7:21-27). The Supreme Court **[\*10]** has held "that any injunction against state court proceedings otherwise proper under general equitable principles must be based on one of the specific statutory exceptions to § 2283." *Atlantic C.L.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 286, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970). The Anti-Injunction Act also applies to orders prohibiting the utilization of the results of a final state proceeding. *Id.* at 287.

By granting the injunctive relief requested by Plaintiff, the Court would effectively be preventing the Los Angeles Superior Court's judgment in the Tamkin Action from taking effect, and would violate the Anti-Injunction act on its face. Having determined that the Anti-Injunction Act applies, the Court next turns to whether the instant case fits one of its exceptions.

### 1. The "Stranger" Exception to the Anti-Injunction Act Applies

Plaintiff asserts that, even if the Anti-Injunction Act applies, JP Morgan is a "stranger" to the Tamkin Action and may pursue injunctive relief under the "stranger" exception to the Act.[4] *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 879 (9th Cir. 2000). Defendant disagrees, arguing that Plaintiff is not a stranger because it successfully intervened in the San Francisco Enforcement Action. Defendant contends:

> The relevant dispute is about which of Martin's two creditors should be awarded priority to Martin's limited (and shrinking) pool **[*11]** of assets. For the purposes of this case, the underlying "action" that matters is the dispute between those creditors - and JP Morgan is anything but a "stranger" to that dispute.

(Reply at 6:6-9).

The Ninth Circuit has held that the Anti-Injunction Act does not bar one who was not a party or in privity with a party to the state proceeding whose judgment is sought to be enjoined.[5] *Id.* In *Prudential* the Ninth Circuit stated:

> Binding Supreme Court and Ninth Circuit decisions...support the continued vitality of the "strangers" exception to the Anti-Injunction Act. One who is not a party to state proceedings, nor in privity with a party may seek a federal injunction against enforcement of an injunction obtained in those proceedings...one who is not bound directly by virtue of a sufficiently close relationship with a party to state proceedings is not bound indirectly by the Anti-Injunction Act.

*Id.*

Plaintiff also cites *Munoz v. Imperial County*, 667 F.2d 811, 814-815 (9th Cir. 1982), and *Hale v. Bimco*, 306 U.S. 375, 59 S. Ct. 526, 83 L. Ed. 771 (U.S. 1939), for the proposition that unless plaintiffs are parties or privies they are strangers. In light of these decisions, the Court agrees with Plaintiff that an insufficient relationship existed between Tamkin and JP Morgan to bind JP Morgan to the state Tamkin Action. **[*12]** JP Morgan was not a party to that action, was not represented in that action, nor did JP Morgan have a say in that action's outcome. JP Morgan was not even aware that Tamkin had initiated an action against Martin. The Court agrees, therefore, that Plaintiff was a stranger to the Tamkin action for the purposes of the Anti-Injunction Act.

The Court finds Defendant's argument unavailing that JP Morgan became a "party" to the underlying Tamkin Action when it intervened in the San Francisco Enforcement Action. The fact that JP Morgan, by intervening in the San Francisco action, is asserting its interests as a *creditor*, does not change the fact that JP Morgan did not participate in the proceedings which led to a judgment on the merits in the Tamkin Action. Defendants fail to cite any cases that support the contention that the ability to raise an issue as a creditor, during enforcement proceedings after a judgment on the merits has been rendered, makes a party a non-stranger to the underlying action pursuant to the Anti-Injunction Act.

As the Supreme Court stated in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146, 108 S. Ct. 1684, 100 L. Ed. 2d 127 (U.S. 1988), the Anti-Injunction Act's arose from Congress' decision in the 18th Century to implement a dual system of federal and state **[*13]** courts; the purpose of the act is to balance the tensions inherent in such a dual system by preventing aggrieved parties in state actions

---

[4] Plaintiff does not address the Anti-Injunction Act's three enumerated statutory exceptions, which provide that the act applies: "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." 28 U.S.C. § 2283.

[5] In *Prudential* an employee brought an action against PPR Realty seeking to acquire a large share of PPR Realty stock against the managing shareholders' objections and received a favorable judgment in Pennsylvania state court. Prudential, PPR's franchisor, then sued in California federal court to enjoin the stock transfer based on Prudential's alleged rights of first refusal. The Ninth Circuit confirmed the district court's preliminary injunction was not in error, and found, despite the franchisor/franchisee relationship, Prudential was not in privity with any party represented in the Pennsylvania proceedings.

from seeking favorable relief in federal court. The stranger exception arose to prevent non-parties in state actions from being unwittingly barred by the Anti-Injunction Act. *Hale v. Bimco Trading, Co.*, 306 U.S. 375, 377-78, 59 S. Ct. 526, 83 L. Ed. 771 (U.S. 1939). JP Morgan's presence in the San Francisco satisfaction action does not suddenly transform JP Morgan into a party to the LA Action. By appearing in the San Francisco enforcement action, JP Morgan is acting as a creditor, and in that capacity is no different from any other creditor that might be vying for assets in a satisfaction action. Even if JP Morgan successfully blocks the satisfaction, this would not change the fact that JP Morgan never weighed in on the merits of the Los Angeles action. Under the rationale of the Anti-Injunction Act, JP Morgan would still not be a party to the underlying action.

Moreover, the Court finds Defendant's argument unavailing that JP Morgan will be able to raise a fraudulent transfer-like argument in opposing satisfaction in the San Francisco action. That forum would not provide a substitute for Plaintiff's claims in the instant action. Here, **[*14]** Plaintiff is asserting fraudulent transfer, a stand-alone tort. JP Morgan will not be able to litigate this cause of action on the merits during the satisfaction portion of the state proceedings, nor would the relief available to Plaintiff at that stage necessarily be comparable to the relief available to Plaintiff here. Accordingly, given that Plaintiff was not a party to the Los Angeles action, the Court finds that Plaintiff falls under the "stranger" exception to the Anti-Injunction Act, and therefore, that Plaintiff's request for injunctive relief is not barred by that act.

**B. Claims based on New York State Law Are Improper**.

Plaintiff has pleaded statutory fraudulent transfer claims under both the New York and the California fraudulent transfer statutes. Defendant argues that Plaintiff cannot maintain causes of action for fraudulent transfer under both New York and California law, arguing that, under California law, Plaintiff can only maintain his California fraudulent transfer action. Moreover,

District courts sitting in diversity must apply the choice of law provisions of the forum state. *Waggoner v. Snow*, 991 F.2d 1501, 1506 (9th Cir. 1993). In California, a court applies the "governmental interest" test, which requires the following **[*15]** three part analysis: (1) are the laws of the different states materially different; (2) if materially similar, the Court applies the law of the forum state; and (3) if materially different, the Court determines which state has a legitimate interest in having its laws apply. *In re TITLE U.S.A. Ins. Corp.*, 36 Cal. App. 4th 363, 372, 42 Cal. Rptr. 2d 498 (1995). The Court agrees with Defendant - the New York and California fraudulent transfer laws are materially similar, so California law should apply, as California is the forum state.[6]

---

[6] The text of the California and New York claims are substantially similar; both essentially adopt UFTA § 4(a)(1) and UFTA § 4(a)(2). The second claim for relief under California Civil Code § 3439.04(a) and the fifth claim for relief pursuant to NY CLS Dr. & Cr. § 275 are similar. The third claim for relief under California Civil Code § 3439.05 and the fourth claim for relief pursuant to NY CLS Dr. & Cr. § 273 are similar.

The second claim for relief under California Civil Code § 3439.04(a) states, in relevant part:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows. . . Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor. . . *Intended to incur, or believed or* **[*16]** *reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due*. (emphasis added).

The fifth claim for relief pursuant to NY CLS Dr. & Cr. § 275 says essentially the same thing:

Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation *intends or believes that he will incur debts beyond his ability to pay as they mature*, is fraudulent as to both present and future creditors. (emphasis added).

The third claim for relief under California Civil Code § 3439.05 states:

However, even if the laws were materially different, California maintains a legitimate interest in applying its laws because: (1) Martin and Tamkin are California residents; (2) JP Morgan, although not a citizen, does business in California; and (3) this a tort case in which all of the alleged tortious conduct took place in California.

Plaintiff contends that both the New [*17] York and California claims are proper. Plaintiff argues that Tamkin contractually consented, through the Credit Agreement, to be bound by the laws of New York. Plaintiff maintains that even if a choice of law was necessary, California law strongly favors the enforcement of contractual choice-of-law clauses. Furthermore, Plaintiff argues that because it is seeking to enforce a judgment obtained under New York law and entered by a New York court that Defendants' scheme to defraud JP Morgan constitutes fraudulent transfer under both California and New York law.

The Court finds Plaintiff's contractual choice-of-law argument unavailing. Fraudulent transfer is a tort cause of action, and does not arise due to breach of contract. Plaintiff's arguments concerning contractual choice of law provisions are of no moment, as the alleged fraudulent transfer tort is independent and unrelated to the contract between Martin and JP Morgan. Since the alleged tortious conduct took place in California, the Court finds that Plaintiff can only maintain its fraudulent transfer claims under California law; Plaintiff's New York state law claims (Fourth and Fifth Claims for Relief) are hereby **DISMISSED**.

## C. Plaintiff [*18] has Plead Fraudulent Transfer under California Civil Code § 3439.04(a)(1) with Sufficient Particularity.

Defendant also moves to dismiss Plaintiff's First Claim for fraudulent transfer, on the grounds that Plaintiff has failed to plead this claim with the requisite particularity required by Fed R. Civ. P. Rule 9(b). This claim, which is based upon California Civil Code § 3439.04(a)(1), requires a plaintiff to show that a defendant acted with "an actual intent to hinder, delay, or defraud." Defendant argues that Plaintiff must comply with the heightened pleading requirements of Fed R. Civ. P. Rule 9(b). Rule 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." However, Plaintiff contends that Rule 9(b) does not necessarily apply to fraudulent transfer, especially in instances where actual fraud is not an element of the of the claim. Plaintiff insists that contrary to Defendant's argument, the first claim for relief does not plead actual fraud.

The Court agrees with Defendant. Since an element of § 3439.04(a)(1) is "actual intent", the heightened pleading standards under Rule 9(b) apply. *See, e.g. In re: Turner*, 335 B.R. 140, 145 (Bankr. D. Cal. 2005)(California law defines an "actually fraudulent" transfer as one that is made with 'actual intent to hinder, delay or defraud a creditor'); *Bratek v. Beyond Juice LLC*, 2005 U.S. Dist. LEXIS 28137, 2005 WL 3071750, at *6 (E.D. Pa. 2005)(plaintiff correctly noted that [*19] only the portion of the fraudulent conveyance claim alleging actual fraud is subject to standards of 9(b)); *In re White Metal Rolling & Stamping Corp.*, 222 B.R. 417, 428 (S.D.N.Y. 1998)(well-settled that Rule 9(b) applies to claims of intentional fraudulent transfer); *Eastern Poultry Distrib. Inc. v. Puez*, 2001 U.S. Dist. LEXIS 27007, 2001 WL 34664163

---

A transfer made or obligation incurred by a debtor *is fraudulent as* to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation *without receiving a reasonably equivalent value* in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation. (emphasis added).

The fourth claim for relief pursuant to NY CLS Dr. & Cr. § 273 similarly states:

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is *fraudulent* as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred *without a fair consideration*. (emphasis added).

at *2 (N.D. Tex. 2001)(If the fraudulent transfer statute requires intent to defraud, heighten pleading requirements apply); *China Resource Prods. v. Fayda Int 'I.*, 788 F.Supp. 815, 818 (D. Del. 1992)(finding the portion of Delaware's UFTA that requires actual intent to defraud must be plead with particularity). Therefore, the Court finds that Plaintiff must plead his § 3439.04(a)(1) claim with particularity under Fed. R. Civ. P. 9(b).

Nonetheless, the Court finds that Plaintiff has met this pleading requirement. Plaintiff has alleged five of the "badges of fraud" in their pleading, which the Court finds sufficient to comply with the Federal Rules of Civil Procedure heightened pleadings standards of 9(b).[7] Plaintiff contends:

> A. Martin was insolvent or became insolvent shortly after the obligation was made;
> B. The obligations was made to an insider, a trustee of the Martin Family Trust;
> C. Martin incurred this obligation shortly after a judgment was obtained against him in the New York Action prosecuted by JP Morgan;
>
> D. Martin incurred this obligation in an expediated manner and during a period of time in which JP Morgan was unable to execute [*20] on its Judgment pursuant to CCP 1710.25; and
> E. Upon information and belief, the stipulated judgment is for substantially all of Martin's assets.

(Complaint at 5:23-28, 6:1-2). The Court agrees that Plaintiff satisfied the "who, what, where, when and how" pursuant to 9(b). Accordingly, the Court denies Defendant's request to dismiss Plaintiff's first claim of relief on this basis.

### D. Sixth Claim for Relief for Common Law Fraudulent Conveyance is Adequate.

Finally, Defendant argues that Plaintiff's sixth claim for relief, which alleges common law fraudulent conveyance, is too ambiguous and fails to put Defendant on notice as to the grounds on which it rests. Defendant asserts that it is unclear whether the claim refers to New York or California common law because the complaint asserts claims under both New York and California state law.

The Court agrees and finds that Plaintiff's common law claim is sufficiently clear. For the same reasons that Plaintiff's statutory fraudulent conveyance claims must be asserted under California law, so must Plaintiff's common law cause of action for fraudulent conveyance. Because the Court finds that Plaintiff has sufficiently stated a cause of action for [*21] common fraudulent conveyance under California law, the Court denies Defendant's request to dismiss Plaintiff's sixth claim for relief,

### CONCLUSION

For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss. Specifically, the Court **GRANTS** Defendant's motion, dismissing Plaintiff's Fourth and Fifth for Relief and **DENIES** Defendant's Motion to Dismiss as to the First, Second, Third and Sixth Claims for Relief.

### IT IS SO ORDERED.

Dated: March 29, 2006

/s/ Martin J. Jenkins

MARTIN J. JENKINS

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[7] Defendant disputes the merits of Plaintiffs "badges of fraud" allegations; however, these arguments are inappropriate for a 12(b)(6) motion.