## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>          Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>          Debtor. | Case No.:  25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>          Plaintiffs,<br><br>     vs.<br><br>Red River State Bank,<br><br>          Defendant. | Adversary No.:  25-07009 |

## DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

RRSB[1] moved to dismiss Plaintiffs' Complaint, arguing it failed to state a claim upon

which relief can be granted.  Plaintiffs oppose the motion, in part arguing that this Court cannot

---

[1]   Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in Defendant's Brief in Support of Motion to Dismiss.

consider the loan documents at issue.  Plaintiffs' arguments fail, and the Complaint fails to state a claim upon which relief can be granted.  This Court should dismiss the same.

<u>LAW AND ARGUMENT</u>

**I.    Standards of review.**

    **A.    <u>This Court can consider loan documents embraced by Plaintiffs' Complaint.</u>**

The parties generally agree on the standard for a motion to dismiss.[2]  However, Plaintiffs argue that this Court cannot consider the relevant loan documents.[3]  This is incorrect. A motion to dismiss is generally confined to the four corners of a complaint, but a court can also consider documents "necessarily embraced" by a complaint.[4]  This includes loan documents.[5]  Accordingly, this Court should consider the loan documents when determining whether Plaintiffs' allegations are plausible on their face.

    **B.    <u>Choice of law considerations.</u>**

"'A federal court sitting in diversity generally applies the substantive law of the state in which it sits, including the rules governing the choice of law.'"[6]  Under North Dakota law, when parties choose to apply a certain state's law to a transaction, the Court's will enforce that selection.[7]  Here, the parties agreed—repeatedly—that Minnesota law would govern their

---

[2]    *Compare* ECF No. 7, at 6, *with* ECF No. 8, at 11.

[3]    *See* ECF No. 8, at 28-29.

[4]    *See, e.g.*, *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

[5]    *See, e.g.*, *Cardinal Health 110, LLC v. Premiere Healthcare, LLC*, Case No. 1:18 CV 165 ACL, 2019 WL 108837, at *4 (E.D. Mo. Jan. 4, 2019).

[6]    *Sweetwater Cattle Co., L.L.C. v. Leigh Murphy (In re Leonard)*, 565 B.R. 137, 141-42 (B.A.P. 8th Cir. 2017) (citation omitted).

[7]    *See, e.g.*, *Snortland v. Larson*, 364 N.W.2d 67, 69 (N.D. 1985) ("[B]ecause the parties have chosen Minnesota as the state of the applicable law, we need not [apply the significant contacts test] and accordingly will apply the substantive law of Minnesota to this case.").

transactions.[8]  Accordingly, the North Dakota courts would apply Minnesota law without

embarking on a full choice-of-law analysis.[9]

---

[8]   *See* Case 25-30002, Claim 1, Pt. 2, at 2 ("This Note will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Case 25-30002, Claim 1, Pt. 2, at 2 (same); Case 25-30002, Claim 1, Pt. 5, at 2 (same); Case 25-30002, Claim 1, Pt. 6, at 2 (same); Case 25-30002, Claim 1, Pt. 7, at 2 (same); Case 25-30002, Claim 1, Pt. 8, at 2 (same); Case 25-30002, Claim 1, Pt. 9, at 2 (same); Case 25-30002, Claim 1, Pt. 10, at 2 (same); Case 25-30002, Claim 1, Pt. 11, at 2 (same); Case 25-30002, Claim 1, Pt. 12, at 2 (same); Case 25-30002, Claim 1, Pt. 13, at 2 (same); Case 25-30002, Claim 1, Pt. 15, at 7 ("This Agreement shall be interpreted and construed in accordance with the laws of the State of Minnesota."); Case 25-30002, Claim 1, Pt. 16, at 4 ("In all other respects, this Agreement will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Case 25-30002, Claim 1, Pt. 16, at 9 (same); Case 25-30002, Claim 1, Pt. 18, at 13 ("In all other respects, this Mortgage will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Claim 1, Pt. 20, at 4 ("This Agreement will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Case 25-30003, Claim 1, Pt. 2, at 2 ("This Note will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Case 25-30003, Claim 1, Pt. 3, at 2 (same); Case 25-30003, Claim 1, Pt. 4, at 2 (same); Case 25-30003, Claim 1, Pt. 5, at 2 (same); Case 25-30003, Claim 1, Pt. 7, at 7 ("This Agreement shall be interpreted and construed in accordance with the laws of the State of Minnesota."); Case 25-30003, Claim 1, Pt. 8, at 4 ("In all other respects, this Agreement will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Case 25-30003, Claim 1, Pt. 8, at 9 (same); Case 25-30003, Claim 1, Pt. 8, at 14 (same); Case 25-30003, Claim 1, Pt. 8, at 19 (same); Case 25-30003, Claim 1, Pt. 10, at 13 ("In all other respects, this Mortgage will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Claim 1, Pt. 11, at 6 ("In all other respects, this Assignment will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); Case 25-30004, Claim 1, at 8 ("This Note will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); *id.* at 11 (same); *id.* at 14 (same); *id.* at 19 ("In all other respects, this Agreement will be governed by federal law applicable to [RRSB] and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions."); *id.* at 25 (same); *id.* at 30 (same); *id.* at 50 ("In all other respects, this Mortgage will be governed by federal law applicable to [RRSB]

And even if a choice-of-law analysis was required, Minnesota law would still apply. North Dakota courts employ the "significant contacts test" for choice-of-law determinations.[10] Under the test, a court first identifies all "significant contacts" "by looking at all of the relevant contacts which might logically influence the decision of which law to apply."[11]  A court then "appl[ies] Leflar's five-choice influencing factors to the relevant contacts to determine which jurisdiction has more significant interest with reference to a particular issue."[12]  Because different state laws can apply to different aspects of a case,[13] RRSB will perform the significant contacts test, as necessary, for each relevant claim.

## II.   Generations and Parkside lack claims under Section 548 because RRSB's forbearance provided reasonably equivalent value (Count I).

With respect to Generations and Parkside,[14] Plaintiffs argue RRSB's motion fails because reasonable equivalent value is a question of fact.[15]  While reasonable equivalent value

---

and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions.").  Plaintiffs have explicitly argued that this Court may take judicial notice of creditors' proofs of claim and related documents.  *See* ECF No. 8, at 32-33.

[9]   *Snortland*, 364 N.W.2d at 69.

[10]   *See Daley v. American States Preferred Ins. Co.*, 1998 ND 225, ¶ 13, 587 N.W.2d 159.

[11]   *Id.* at ¶ 15.

[12]   *Id.*  Leflar's five factors are: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law.  *Id.* at ¶ 11.

[13]   *See Anderson v. Sullivan*, No 4:04-cv-052, 2007 WL 952032, at 23 (D.N.D. Mar. 28, 2007).

[14]   Plaintiffs now concede that Ruins lacks a valid Section 548 claim.  *See* ECF No. 8, at 29 n.5.

[15]   *See generally* ECF No. 8, at 26-27.

is generally a question of fact,[16] a court may still determine on a motion to dismiss that a lender's forbearance provided reasonably equivalent value.

In *The Official Committee of Unsecured Creditors of Propex Inc. v. BNP Paribas (In re Propex Inc.)*,[17] following the debtor's default, the debtor and the lenders entered into an amended credit agreement whereby the lenders granted forbearance in exchange for an interest rate increase and principal reduction.[18]  When the debtor later filed for bankruptcy, the unsecured creditors committee filed an adversary action seeking to avoid the amendment as constructively fraudulent.[19]  Relevant to this case, the court held that the lenders' forbearance provided reasonably equivalent value, even though considered on a motion to dismiss, explaining:

> the lenders could have declared [the debtor] in default, demanded immediate payment on all its obligations, and pursued all the remedies available to them by virtue of the default.  By agreeing to forbear and to relax the financial covenants, the lenders gave [the debtor] "'breathing room'—an opportunity to avoid default, to facilitate its rehabilitation, and to avoid bankruptcy."  The court holds that that opportunity constitutes reasonably equivalent value for the interest rate increase as a matter of law, irrespective of the fact that "[t]he 'breathing room' turned out to be short-lived."[20]

Here, Plaintiffs argue RRSB's forbearance did not provide reasonably equivalent value because Generations and Parkside incurred approximately half-a-million dollars of additional interest after defaulting under the Forbearance Agreement.[21]  Plaintiffs' argument is a legal

---

[16]  *See, e.g.*, *Doeling v. O'Neill (In re O'Neill)*, 550 B.R. 482, 509 (Bankr. D.N.D. 2016).

[17]  415 B.R. 321 (Bankr. E.D. Tenn. 2009).

[18]  *Id.* at 323-24.

[19]  *Id.* at 324.

[20]  *Id.* at 325 (citation omitted).

[21]  *See* ECF No. 8, at 28-29.

sleight of hand because any increase in interest rate would be "unreasonable" because interest is infinite over an infinite event horizon.[22]  The relevant question is, instead, whether a 2.15% interest rate increase to 6.50%—an rate still 1.25% below the at-the-time prime rate of 7.75%[23]—was reasonably equivalent to the forbearance granted.  In other words, was a 2.15% increase in interest rate reasonably equivalent to RRSB agreeing to not declare Generations and Parkside in default, demand immediate payment on all of their obligations, and pursue all the remedies available to it by virtue of the defaults.  It was because, by agreeing to forbear and to relax the financial covenants, RRSB gave Generations and Parkside "breathing room"— an opportunity to avoid default, to facilitate their rehabilitation, and to avoid bankruptcy.  As such, this Court should hold that that opportunity constituted reasonably equivalent value for the legal release and the interest rate increase as a matter of law, irrespective of the fact that the "breathing room" turned out to be short-lived.[24]

## III.  Generations and Parkside lack claims under Section 544 because RRSB's forbearance provided reasonably equivalent value (Count II).

With respect to Generations and Parkside,[25] no matter the applicable law,[26] their claims for constructive fraud under Section 544 require them to have made a transfer without receipt

---

[22]   The Forbearance Agreement, executed on February 17, 2023, contemplating Generations and Parkside paying off the subject loans by May 31, 2023.  Had Plaintiffs complied with the Forbearance Agreement, the additional interest incurred would have been de minimis.

[23]   A court may take judicial notice of the prime rate.  *See, e.g.*, *Havens Steel Co. v Randolph Engineering Co.*, 813 F.2d 186, 189 (8th Cir. 1987).

[24]   *BNP Paribas*, 415 B.R. at 325.

[25]   Plaintiffs now concede that Ruins lacks a valid Section 544 claim.  *See* ECF No. 8, at 29 n.5.

[26]   RRSB agrees that both Minnesota and North Dakota have adopted the Uniform Voidable Transactions Act.  *See* Minn. Stat. § 513.41, *et seq.*; N.D.C.C. § 13-02.1-01, *et seq.*  As such,

of reasonably equivalent value.[27]  As outlined above, and incorporated herein by reference,

RRSB's forbearance provided reasonably equivalent value.[28]

**IV.    Plaintiffs fail to allege claims for deceit upon which relief can be granted.**

        A.    <u>Minnesota law controls Plaintiffs' deceit claims.</u>

The parties disagree as to whether Minnesota or North Dakota law controls Plaintiffs'

deceit claims.  Accordingly, to the extent it does not apply Minnesota law outright,[29] this Court

must undertake North Dakota's significant contacts test.  Minnesota's significant contacts are:

(1) RRSB is a Minnesota entity; (2) RRSB negotiated the various loan agreements with

Plaintiffs, and entered into the same, in Minnesota; (3) Minnesota real property, in part,[30]

secures the debts owing to RRSB; (4) Plaintiffs made repayments to RRSB in Minnesota; and

(5) the various loan agreements between the parties specify that Minnesota law applies.  North

Dakota's significant contacts are: (1) Jesse Craig, Plaintiffs' owner, is a resident of North

Dakota, and (2) he negotiated the various loan agreements with RRSB for Plaintiffs while in

North Dakota.  This Court must weigh these contacts through Leflar's five-factor rubric.

The first factor is predictability of results.[31]

> "Predictability of results includes the ideal that parties to a consensual
> transaction should be able to know at the time they enter upon it that it will
> produce, by way of legal consequences, the same socioeconomic consequences

---

RRSB agrees that, at this time, resolution of the conflict of laws for Count II is largely
"academic," and is unnecessary for the resolution of RRSB's motion to dismiss.

[27]  *See* Minn. Stat. § 513.44(a)(2); N.D.C.C. § 13-02.1-04(1)(b).

[28]  *See* Sec. II, *supra*.

[29]  *Cf. Snortland*, 364 N.W.2d at 69 (applying Minnesota law when agreed to by the parties).

[30]  Specifically, the lake property owned by Craig Holdings, LLC collateralizes Ruins's debt
to RRSB, as outlined in the decision by the Minnesota state district court previously provided
to this Court.

[31]  *Daley*, 1998 ND 225, ¶ 11.

. . . regardless of where the litigation occurs[.]"  Simply stated, the objective of the predictability factor is to fulfill the parties' justified expectations.[32]

Plaintiffs argue this factor favors the application of North Dakota law because RRSB "approach[ed] a prominent Fargo developer[.]"[33]  That argument is a *non sequitur*.  Jesse Craig—the "prominent Fargo developer"—is not a party.  Instead, Plaintiffs are Generations, Parkside, and Ruins—all entities organized in South Dakota "that exist for purposes of developing and operating residential apartment buildings in Watertown, South Dakota."[34]  A non-party's state of residence does not make it predictable that North Dakota law would apply.

Rather, at its core, this case is about the various loan agreements between the parties.  For all such loans, the parties specifically agreed that Minnesota law applies.[35]  When RRSB—a Minnesota bank—contracted in Minnesota with South Dakota entities to provide funding to develop real property in South Dakota, RRSB could not have predicted the application of North Dakota law to potential disputes.  Instead, RRSB's justifiable expectations were that Minnesota law would apply when the parties expressly agreed to the same.  Predictability of results strongly favors the application of Minnesota law.

The second factor is maintenance of interstate order.[36]  Under this factor, the Court should be—

> primarily concerned with whether the application of North Dakota law would manifest a disrespect for [a sister state]'s sovereignty.  An aspect of this concern is to maintain a coherent legal system where the courts of different states strive

---

[32]  *Id.* at ¶ 24 (alteration and omission in original) (internal citation omitted).

[33]  ECF No. 8, at 17.

[34]  ECF No. 1, at ¶ 18.

[35]  *See* n.8, *supra*.

[36]  *Daley*, 1998 ND 225, ¶ 11.

to sustain, rather than subvert, each other's interests in areas where their own interests are less strong.[37]

"'Deference to sister state law in situations in which the sister state's substantial contacts with a problem give it a real interest in having its law applied, even though the forum state also has an identifiable interest,' will further the goal of harmonious relations between the states."[38] Absent this deference, "[a] state's application of its law to a transaction whose significant contacts are primarily with another state may induce retaliation in kind, which would not further harmonious relations and commercial intercourse."[39]

Plaintiffs argue this factor favors the application of North Dakota law because "[i]t seems highly unlikely that hostilities" will break out because "[n]othing about holding a Minnesota bank accountable for the actions it undertakes in North Dakota is likely to offend a neighboring state or evidence any disrespect for a neighboring state."[40] Plaintiffs obfuscate the issue. Plaintiffs seek the application of North Dakota law because they lack a viable claim for deceit under Minnesota law.[41] Respectfully, it could foster enmity should North Dakota law be applied against a Minnesota entity, with respect to three entities formed in South Dakota "that exist for purposes of developing and operating residential apartment buildings in Watertown, South Dakota."[42] This is particularly true when the parties agreed that Minnesota

---

[37] *Id.* at ¶ 27 (citation omitted).

[38] *Id.* at ¶ 28 (citation omitted).

[39] *Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Design, Inc.*, 382 N.W.2d 386, 390 (N.D. 1986).

[40] ECF No. 8, at 17.

[41] *Cf.* ECF No. 8, at 36-40 (arguing that the claim is viable under Section 9-10-02 of the North Dakota Century, but not arguing Minnesota law).

[42] ECF No. 1, at ¶ 18.

law applies.  Application of North Dakota law, when North Dakota has the fewest significant contacts with the transactions at issue, would not further interstate order.  This factor favors the application of Minnesota law.

The third factor is simplification of the judicial task.[43]  In a rare moment of agreement, the parties agree that this Court can aptly apply Minnesota or North Dakota law without issue.[44] As such, this factor favors neither state.[45]

The fourth factor is the advancement of the forum's governmental interests.[46]

> A state's governmental interest in a choice-of-law case is discoverable by (a) identifying the factual contacts which the litigated transaction had with the state, then (b) determining whether those contacts give rise to real reasons (socioeconomic or political justifications) for applying the state's law to litigated issues in the case.[47]

Plaintiffs conceded that, at most, this factor is "something of a wash . . . ."[48]

The final factor is the application of the better rule of law.[49]  "By 'better,' Leflar meant the rule that made 'good socio-economic sense for the time when the court speaks.' . . . [H]owever, '[s]ometimes different laws are neither better nor worse in an objective way, just

---

[43]   *Daley*, 1998 ND 225, ¶ 11.

[44]   *See* ECF No. 8, at 17-18.

[45]   *Cf. Nodak Mut. Ins. Co. v. Wamsley*, 2004 ND 174, ¶ 21, 687 N.W.2d 226 ("It will usually be easier for the forum court to apply its own law than any other.  However, simplification of the judicial task is not a relevant factor in this case because the . . . law of either state could be applied without difficulty." (omission in original) (alteration, citations, and internal quotation omitted)).

[46]   *Daley*, 1998 ND 225, ¶ 11.

[47]   *Id.* at ¶ 31 (citation omitted).

[48]   ECF No. 8, at 18.

[49]   *Daley*, 1998 ND 225, ¶ 11.

different.'"[50]  Plaintiffs do not argue that one state's legal paradigm provides better socio-economic sense than the other.[51]  Nor has RRSB identified any such argument.  Instead, it simply appears that the respective state laws are "'neither better nor worse in an objective way, just different.'"[52]  This factor favors neither state.

With respect to Plaintiffs' deceit claims, the balance of the Leflar factors favors the application of Minnesota law.  Those factors, coupled with Minnesota's significant contacts, require application of Minnesota substantive law.

B.    No matter the controlling law, Plaintiffs fail to allege claims for deceit.

1.    *Plaintiffs fail to allege claims for deceit under Minnesota law.*

a.    Generations and Parkside released any deceit claims against RRSB through the Forbearance Agreement.

Plaintiffs do not deny that any alleged deceit preceded the execution of the Forbearance Agreement, that the language of the Forbearance Agreement would encompass such claims, or that Minnesota law enforces broad legal releases.[53]  Instead, Plaintiffs argue that the release contained in Forbearance Agreement is void due to fraud in the inducement.[54]  It is not.

While a release "may be set aside if obtained by . . . fraud[,]"  to set aside a release, a complaint must state facts "which, under the law, constitute" fraud.[55]  A material representation by a party to a contract renders it voidable to the party who justifiably relied on the

---

[50]   *Id.* at ¶ 34 (alteration in original) (citations omitted).

[51]   ECF No. 8, at 9-11.

[52]   *Daley*, 1998 ND 225, ¶ 34 (citations omitted).

[53]   *See* ECF No. 8, at 34-35.

[54]   *Id.*  While advanced under North Dakota law, RRSB assumes—*arguendo*—that Plaintiffs would advance the same argument should this Court apply Minnesota law.

[55]   *Wallner v. Schmitz*, 57 N.W.2d 821, 824 (Minn. 1953) (citation omitted).

misrepresentation.[56]  Plaintiffs only allege that the interest rate term was not as agreed to.[57]
Even accepting, for purposes of Rule 12(b)(6), that this is true, by its terms, the Forbearance
Agreement is severable.[58]  So even if Generations and Parkside were fraudulently induced into
the increased interest rate, the remedy would be to modify or strike that severable provision
while upholding the remaining provisions—*i.e.*, the legal release.[59]

Plaintiffs do not allege that Generations or Parkside did not realize that they were
providing RRSB a broad release.  To the contrary, Plaintiffs read and understood the broad
release, and still agreed to provide it.[60]  Generations and Parkside cannot now ignore the
bargain that they struck.  Because of the legal release contained in the Forbearance Agreement,
Generations and Parkside released any deceit claim against RRSB under Minnesota law.

<blockquote>

b.    The alleged misrepresentations do not support a claim for deceit under Minnesota law.

</blockquote>

Release notwithstanding, Plaintiffs still lack a deceit claim upon which relief can be
granted under Minnesota law.  Indeed, Plaintiffs do not contend otherwise.[61]  Therefore, for

---

[56]  *Carpenter v. Vreeman*, 409 N.W.2d 258, 260–61 (Minn. App. Ct. 1987).

[57]  *See* ECF No. 1, at ¶¶ 70-71.

[58]  *See* ECF No. 7, at 34, ¶ 13 ("If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstances, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances.  If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.").

[59]  *Id.*

[60]  *See* ECF No. 1, at ¶ 68 ("Mr. Craig reviewed the Draft Forbearance Agreement, and though he found it unpalatable, he recognized that he had no real choice in the matter, so he agreed to sign the same.").

[61]  *See generally* ECF No. 8.

the reasons originally stated,[62] Plaintiffs failed to state a claim for deceit upon which relief can be granted under Minnesota law.

        2.   *Plaintiffs fail to allege claims for deceit under North Dakota law.*

            a.   Generations and Parkside released any deceit claims against RRSB.

Plaintiffs do not deny that any alleged deceit preceded the execution of the Forbearance Agreement, that the language of the Forbearance Agreement would release such claims, or that North Dakota law enforces such legal releases.[63]  Instead, RRSB argues that the release is void due to fraud in the inducement.[64]  It is not.

As cited by Plaintiffs, under North Dakota law, if a "'release was procured by misrepresentation and fraud, it may be ignored[.]'"[65]  While Plaintiffs argue the release was fraudulently induced, they specifically identify that "'[f]raud in the inducement occurs when a misrepresentation relates to the contents of the release and induces a party to execute the release.'"[66]  Plaintiffs do not allege that Generations and Parkside were fraudulently induced into the release.  Plaintiffs instead allege they were fraudulently induced into an increased interest rate.[67]  Again, the terms of the Forbearance Agreement are severable, so even if, *arguendo*, the interest rate increase was fraudulently induced, that provision is severable from the release provision.

---

[62]  *See* ECF No. 7, at 18-19.

[63]  *See* ECF No. 8, at 34-35.

[64]  *Id.*

[65]  *Id.* at 35 (citation omitted).

[66]  *Id.* (citation omitted).

[67]  *See* ECF No. 1, at ¶¶ 70-71.

13

    b.  Plaintiffs failed to allege claims for deceit because any claim—to the extent one were to exist—would be for fraud under North Dakota law.

Release notwithstanding, Plaintiffs primarily rely on the North Dakota Supreme Court's decision in *Delzer v. United Bank*,[68] also known as "*Delzer IV*," as supportive of their deceit claim.[69]  But, in the North Dakota Supreme Court's preceding decision, "*Delzer III*,"[70] the court explained the difference between claims for deceit and fraud under North Dakota law: "a promise made without any intention of performing it, can constitute either deceit if there is no contract between the parties, or fraud if there is a contract and one party's apparent consent to the contract is obtained as a result of that promise."[71]  In other words, if the promise did not result in a contract between the parties, then the claim is one of deceit, but if a contract resulted, then the claim is one of fraud.[72]  Here, Plaintiffs admit the existence of contracts between the parties.[73]  As such, to the extent Plaintiffs allege that RRSB made a promise without any intention of performing, the claim would be one of fraud, not of deceit.[74]

---

[68] 1997 ND 3, 559 N.W.2d 531.

[69] *See* ECF No. 8, at 36-37.

[70] *Delzer v. United Bank*, 527 N.W.2d 650 (N.D. 1995).

[71] *Id.* at 656 n.4.

[72] *Id.*

[73] *See* ECF No. 1, at ¶ 46 (alleging seven promissory notes between RRSB and Generations); *id.* at ¶ 50 (alleging three promissory notes between RRSB and Parkside).

[74] *Delzer*, 527 N.W.2d at 656 n.4.

**V.    Plaintiffs fail to allege claims for fraud.**

    A.    <u>Minnesota law controls Plaintiffs' fraud claims</u>.

The parties also disagree as to whether Minnesota or North Dakota law controls Plaintiffs' fraud claim, again requiring analysis of the significant contacts through the Leflar factors if the Court does not outright apply Minnesota law.

As to the first factor, predictability of results, this factor again favors Minnesota because predictability favors the application of the law the parties agreed to.

As to the second factor, maintenance of interstate order, this factor again favors Minnesota because, unlike Minnesota, North Dakota does not have an interest in a Minnesota bank's funding for real estate development deals in South Dakota.

The third, fourth, and fifth factors—simplification of the judicial task, advancement of the forum's governmental interests, and the better rule of law—do not favor either state.[75]

With respect to Plaintiffs' fraud claims, the balance of the Leflar factors favors the application of Minnesota law. Those factors, coupled with Minnesota's significant contacts, require application of Minnesota substantive law.

    B.    <u>No matter the controlling law, Plaintiffs fail to allege claims for fraud.</u>

        1.    *Plaintiffs fail to allege claims for fraud under Minnesota law.*

            a.    Generations and Parkside released any fraud claim against RRSB.

Again, as a threshold issue, the alleged claims of Generations and Parkside fail because they released the same against RRSB through the Forbearance Agreement. Because the

---

[75]    *See* Sec. IV(A), *supra.*

analysis on this point coincides with the deceit claims, RRSB restates and incorporates herein by reference the same.[76]

b.    The alleged misrepresentations do not support a claim for fraud under Minnesota law**.**

The release from Generations and Parkside notwithstanding, Plaintiffs still lack a claim upon which relief can be granted for fraud under Minnesota law.  Indeed, Plaintiffs do not contend otherwise.[77]  Therefore, for the reasons originally stated in support of RRSB's motion,[78] Plaintiffs failed to state a claim for fraud upon which relief can be granted under Minnesota law.

2.    *Plaintiffs fail to allege a claim for fraud under North Dakota law.*

a.    Generations and Parkside released any fraud claim against RRSB.

Again, as a threshold issue, the alleged claims of Generations and Parkside fail because they released the same against RRSB through the Forbearance Agreement.  Because the analysis on this point coincides with the deceit claims, RRSB restates and incorporates herein by reference the same.[79]

b.    The alleged misrepresentations do not support a claim for fraud under Minnesota law.

The release from Generations and Parkside notwithstanding, Plaintiffs still lack claims upon which relief can be granted for fraud under North Dakota law.  Relying on *Delzer IV*, Plaintiffs argue they possess viable fraud claims, but the crux of *Delzer IV* was that a claim for

---

[76]    *See* Sec. IV(B)(1)(a), *supra*.

[77]    *Cf.* ECF No. 8 (arguing the viability of a fraud claim under North Dakota law, but not analyzing the claim under Minnesota law).

[78]    *See* ECF No. 7, at 18-19.

[79]    *See* Sec. IV(B)(2)(a), *supra*.

fraud could exist when a lender promised a loan "with no intention of performing it[.]"[80] Plaintiffs' own allegations show that RRSB intended to provide them with loans: (1) RRSB term sheet with Generations contemplated $8,340,000.00 in loans,[81] and RRSB provided these loans;[82] (2) RRSB term sheet with Parkside contemplated $3,862,148.00 in loans,[83] and RRSB provided more;[84] and (3) RRSB term sheet with Ruins contemplated $7,200,000.00 in loans,[85] and RRSB provided more.[86]  In other words, even if the term sheets could support claims for fraud, Plaintiffs have not plausibly alleged that RRSB did not intend to provide them loans.

## VI.    Plaintiffs are not members of a particular class intended to be protected by relevant Minnesota banking law.

With respect to Count V, Plaintiffs acknowledge that they have not identified a statute giving rise to their claim, and that discovery is necessary to ascertain what statute(s) may have been violated.[87]  In other words, Plaintiffs confess that they have not alleged—nor formulated in their own minds—a plausible claim, and that a fishing expedition is necessary to ascertain whether they possess a viable claim.

---

[80]   1997 ND 3, ¶ 9.

[81]   ECF No. 1, at ¶ 35.

[82]   Case 25-30002, ECF No. 1, at 19.

[83]   ECF No. 1, at ¶ 33.

[84]   Case No. 25-30003, ECF No. 1, at 19.

[85]   ECF No. 1, at ¶ 37.

[86]   Case No. 25-30004, ECF No. 1, at 20-21.

[87]   *See* ECF No. 8, at 42.

Plaintiffs alternatively proffer that RRSB may have violated Section 48.24 of the Minnesota Statutes to support their negligence per se claim.[88]  Under Minnesota law,[89] "'[f]or a statutory violation to satisfy the duty and breach elements [for negligence per se], the person harmed by the violation must be among those the legislature intended to protect, and the harm must be of the type the legislature intended to prevent by enacting the statute.'"[90]

With respect to Section 48.24, Plaintiffs admit that the purpose of the statute was to protect depositors in the event of a bank failure.[91]  Plaintiffs are not depositors.[92]  Plaintiffs fail to identify any case law supporting their proposition that a violation of Section 48.24—or another Minnesota Banking statute—provides a basis for a negligence per se claim.  Count V fails to state a claim upon which relief can be granted.

**VII.    The Bank Bribery Act does not provide a basis for negligence per se relief.**

With respect to Count VI, relying on *Hometowne Builders v. Atlantic National Bank*,[93] Plaintiffs argue a violation of the Bank Bribery Act supports a claim for negligence per se.[94] It does not.  *Hometowne Builders* did not hold that a violation of the Bank Bribery Act allowed for a claim of negligence per se.  The holding of *Hometowne Builders* was that Section 503 of

---

[88]   *See* ECF No. 8, at 42-43.

[89]   Plaintiffs agree that Minnesota applies to their negligence per se claims.  *See* ECF No. 8, at 20-21.

[90]   *Dunnigan v. Fed. Home Loan Mortgage Corp.*, 184 F. Supp. 3d 726, 738 (D. Minn. 2016) (citation omitted).

[91]   *See* ECF No. 8, at 34.

[92]   A "depositor" is "[o]ne who makes a deposit."  *Black's Law Dictionary* 505 (9th ed. 2009). Plaintiffs' own schedules confirm that they are not "depositors" of RRSB.

[93]   477 F. Supp. 717 (E.D. Va. 1979).

[94]   *See* ECF No. 8, at 45-46.

Title 12 created a private right of action for persons harmed by a violation of Section 215 of the Bank Bribery Act.[95]  But, in reaching this holding, the court found that the purpose of the statute was to protect bank depositors, and the public at large[96]—purposes that would weigh against supporting a claim for negligence per se.  Therefore, neither the holding, nor the reasoning, of *Hometowne Builders* supports Plaintiffs' negligence per se claims.

And to the extent that Plaintiffs rely on Section 503 of Title 12 to support their claims, the provision is unavailable to Plaintiffs.  Section 503 of Title 12 applies to "member bank[s,]"[97] defined as "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks."[98]  Plaintiffs affirmatively alleged that RRSB is not a "member bank,"[99] and Section 503 does not create a private right of action against nonmember banks.[100]  Count VI does not state a claim upon which relief can be granted.

## VIII.   Plaintiffs fail to allege claims for declaratory relief in Count VII.

Finally, Plaintiffs have clarified that, in Count VII, they seek declaratory relief under the Declaratory Judgment Act.[101]  Plaintiffs' lack a viable claim.

---

[95]   *See* 477 F. Supp. at 722.

[96]   *See id.* ("This Court agrees that 18 U.S.C. s 215 was designed "to protect the deposits of banks" from dissipation through unwise lending practices[.]"); *id.* ("[T]he statute is a criminal one and in and of itself protects the public in general.").

[97]   12 U.S.C. § 503.

[98]   12 U.S.C. § 221.

[99]   ECF No. 1, at ¶ 25 (RRSB "is not now, and never has been, a member of the Federal Reserve System[.]").

[100]   *See, e.g.*, *Lode v. Leonardo*, 557 F. Supp. 675 (N.D. Ill. 1982) (Section 503 did not provide private right of action against banks which were not members of Federal Reserve System and to which loan limitations were applicable only because they were insured under Federal Deposit Insurance Act).

[101]   *See generally* Doc. #8, at 47-48.

The Declaratory Judgment Act allows a court to "declare the rights and other legal relations of any interested party" to "a case of actual controversy[.]"[102]  The phrase "case of actual controversy" refers to "Cases" and "Controversies" that are justiciable under Article III.[103]  To be justiciable, "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[104]  Although the case-or-controversy requirement encompasses several legal doctrines, the doctrine of standing is most relevant here.  The primary element of standing is that the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'"[105]  Plaintiffs do not allege an "injury in fact."

Here, Plaintiffs concede that they are seeking equitable relief—an accounting—through the Declaratory Judgment Act without alleging a justiciable issue between the parties.  While the Declaratory Judgment Act allows for equitable relief, the Act limits such relief to situations where a plaintiff has already prevailed on a declaratory relief claim.[106]  In other words, like the Declaratory Judgment Act itself, the equitable relief provision does not confer subject matter jurisdiction, it only provides a remedy if jurisdiction exists independently.[107]

---

[102]  28 U.S.C. § 2201(a).

[103]  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, (2007) (citation omitted).

[104]  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

[105]  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[106]  28 U.S.C. § 2202 (emphasis added).

[107]  *Id.*; *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72, (1950).

Here, it is undisputed that RRSB loaned Plaintiffs money, and that Plaintiffs have not repaid those loans. There is no actual controversy—no alleged injury—between the parties. Instead, Plaintiffs seek to exploit the Declaratory Judgment Act to seek discovery for potential objections to RRSB's proofs of claim. But the law does not allow such a gambit. Indeed, to hold otherwise would open the door to all bankruptcy debtors to initiate adversary actions against claimants to "assess—for their own benefit as well as that of other creditors—the veracity, *vel non*, of [the claimants'] proofs of claim."[108] Respectfully, that is not the purpose of the Declaratory Judgment Act. Simply stated, if Plaintiffs want to contest RRSB's proofs of claims, they can avail themselves of the procedures provided by the Bankruptcy Code. But Plaintiffs have failed to allege a cause of action upon which relief can be granted in Count VII.

<u>CONCLUSION</u>

For the reasons outlined above and previously, none of Plaintiffs' claims state a cause of action upon which relief can be granted. This Court should dismiss Plaintiffs' Complaint.

Dated this 14th day of April, 2025.

**VOGEL LAW FIRM**

BY:/s/ *Drew J. Hushka*
_____
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR DEFENDANT

---

[108]  ECF No. 8, at 47.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>    Debtor. | Case No.:  25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>    Debtor. | Case No.:  25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>    Plaintiffs,<br><br>  vs.<br><br>Red River State Bank,<br><br>    Defendant. | Adversary No.:  25-07009 |

**CERTIFICATE OF SERVICE**

STATE OF NORTH DAKOTA  )
             ) SS
COUNTY OF CASS      )

  Sonie Thompson, being first duly sworn, does depose and say:  she is a resident of Cass County, North Dakota, of legal age and not a party to or interested in the above-entitled matter.

  On April 14, 2025, affiant caused the following document(s):

1. **DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

to be served electronically to the following:

*ALL ECF Participants.*

*/s/ Sonie Thompson*
_____
Sonie Thompson

Subscribed and sworn to before me this 14th day of April, 2025.

*/s/ Justin Schares*
_____
(SEAL)                    Justin Schares
                          Notary Public, Cass County, North Dakota

2