**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 25-30002 |
| | ) | Chapter 11 |
| Generations on 1st, LLC | ) | |
| | ) | |
| Debtor, Jointly Administered. | ) | |
| | ) | |
| Parkside Place, LLC | ) | Bankruptcy No. 25-30003 |
| | ) | Chapter 11 |
| Debtor, Jointly Administered. | ) | |
| | ) | |
| The Ruins, LLC | ) | Bankruptcy No. 25-30004 |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | Adversary No. 25-7009 |
| Generations on 1st, LLC, Parkside | ) | |
| Place, LLC and The Ruins, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Red River State Bank, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

## I.    INTRODUCTION

On February 26, 2025, Debtors Generations on 1st, LLC, Parkside Place, LLC and The Ruins, LLC filed an Adversary Complaint against Defendant Red River State Bank ("RRSB").  In their Complaint, Debtors allege that the Forbearance Agreement Debtors Generations, Parkside Place and RRSB executed is void as a fraudulent transfer under both bankruptcy law and state law, RRSB defrauded or deceived Debtors and RRSB is liable for negligence per se.  Debtors seek an order avoiding the

Forbearance Agreement and finding it void, an attorney fee award, compensatory damages (costs, interest and other damages) and punitive damages, and declaratory relief granting Debtors an accounting of the payment history for their loans with RRSB. Doc. 1.  RRSB filed a Motion to Dismiss.  Doc. 8.  For the reasons that follow, the Court denies the motion in part and grants it in part.

## II.    FACTS

In the context of this motion, the Court considered the factual allegations in Debtors' Complaint, accepting them as true and construing all reasonable inferences in favor of Debtors.  Additionally, the Court considered the Forbearance Agreement dated February 17, 2023. Doc. 7, ex. 1.

## III.    ANALYSIS

### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable in this adversary proceeding under Federal Rule of Bankruptcy Procedure 7012(b), specifies that a party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in the complaint and construes all reasonable inferences in favor of the nonmoving party.  Par v. Wolfe Clinic, P.C., 70 F.4th 441, 445 (8th Cir. 2023). Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1054 (8th Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting Iqbal, 556 U.S. at 678). "'[C]onclusory statements' and 'naked assertion[s] devoid of further factual enhancement'" are insufficient to satisfy this standard. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (citation omitted).

Although courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017); see also Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) ("Because these two documents are referred to either directly (the POA) or by inference (the amended partnership agreement) in the complaint and their authenticity is not questioned, we find that the district court appropriately considered them in ruling on the motion to dismiss.").

The Complaint includes fraud allegations. Consequently, Debtors must satisfy the heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure for these fraud allegations. Although Rule 9(b) imposes a more exacting pleading standard, the "special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001). The plaintiff must allege

"circumstances constituting fraud." Id.; Fed. R. Civ. P. 9(b).  In other words, plaintiffs must "plead the 'who, what, where, when, and how.'" Ascente Bus. Consulting, LLC v. DR myCommerce, 9 F.4th 839, 845 (8th Cir. 2021) (quoting Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949 F.3d 417, 421 (8th Cir. 2020)).

### B.    Fraudulent Transfer

#### 1.    Fraudulent Transfer Under Section 548 of the Bankruptcy Code

In Count I of their Compliant, Debtors allege a cause of action for fraudulent conveyance under 11 U.S.C. § 548, seeking an order voiding the Forbearance Agreement at issue, awarding attorney fees and affording other appropriate relief. Assuming that Debtors seek relief under section 548(a)(1)(B), RRSB argues The Ruins' claims should be dismissed because it was not a party to the Forbearance Agreement; Generations and Parkside Place failed to allege they were insolvent at the time of the alleged fraudulent transfer; and Generations and Parkside Place failed to allege they received less than reasonably equivalent value for the allegedly fraudulent conveyance.

At the hearing on RRSB's motion, Debtors confirmed that they were seeking relief under section 548(a)(1)(B).

To survive RRSB's motion to dismiss their cause of action under section 548(a)(1)(B), Debtors must allege facts sufficient to draw a reasonable inference that "(1) an interest of the debtor in property; (2) was voluntarily or involuntarily transferred; (3) within [two years] of filing bankruptcy; (4) where the debtor received less than reasonably equivalent value; and (5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof." Sullivan v. Welsh (In re Lumbar), 457 B.R. 748, 753 (B.A.P. 8th Cir. 2011) (alteration in original).

4

### i. The Ruins fails to state a claim for relief under 11 U.S.C. § 548.

In Count I of the Complaint, Debtors allege that each Debtor is a signatory to the Forbearance Agreement that fraudulently conveyed rights and remedies they seek to void. RRSB argues that The Ruins failed to state a claim for relief under section 548 because The Ruins was not a party to the Forbearance Agreement and, consequently, "did not transfer anything to RRSB in the Forbearance Agreement." Doc. 7 at 8-9. In support of this assertion, RRSB attached a copy of the Forbearance Agreement dated February 17, 2023, showing that only Generations, Parkside Place and RRSB are signatories to the agreement. The Ruins asserted no opposition to this argument. Accordingly, the Court finds that The Ruins failed to allege a plausible claim for relief under section 548. Its claim and cause of action under Count I is dismissed.

### ii. Generations and Parkside Place allege a plausible claim for relief under 11 U.S.C. § 548(a)(1)(B).

RRSB argues that Count 1 of the Complaint should be dismissed because Debtors "failed to allege they were insolvent at the time of the transfer." Doc. 7 at 5. Section 548(a)(1)(B) does not demand that Debtors plead or establish insolvency on the date of the allegedly fraudulent transfer to prevail on a cause of action under this statute. Section 548(a)(1)(B) authorizes a trustee to avoid a transfer if the debtor:

(B)    (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)    (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

5

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).  While a debtor/plaintiff may state a plausible claim under 548(a)(1)(B) by alleging it was insolvent on the date of the transfer, it is not required to do so.  The conditions under 11 U.S.C. § 548(a)(1)(B)(ii)(I)-(IV) are listed in the disjunctive.  Accordingly, a debtor/plaintiff may also allege a plausible claim for relief under this statute by alleging facts showing unreasonably small capital or insufficient cash flow.  See 11 U.S.C. § 548(a)(1)(B)(ii)(II)-(II); see also Tianjin Dinghui Hongjun Equity Inv. P'ship v. Pac. Links U.S. Holdings, Inc. (In re Pac. Links U.S. Holdings, Inc.), 2023 WL 4586476, at *4 (B.A.P. 9th Cir. July 18, 2023) ("The bankruptcy court did not clearly err in finding that Debtors were insolvent under the adequate capital and cash flow tests."); Stone v. Citizens Equity First Credit Union (In re Int'l Supply Co.), 2022 WL 962296, at *15 (Bankr. C.D. Ill. Mar. 30, 2022) (explaining that the "balance sheet test, the cash flow test, and the adequate capital test" are "regularly relied on by courts deciding issues of insolvency under both the Code and [state law]"); In re Pac. Links U.S. Holdings, Inc., 2023 WL 4586476, at *5 (The adequate capital test is "aimed at transferees that leave the transferor technically solvent but doomed to fail" (quoting MFS/Sun-Life Tr.-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 944 (S.D.N.Y. 1995))).

In their Complaint, Debtors allege that the "increased interest obligation set forth in the Forbearance Agreement left each Debtor with unreasonably small capital."  Doc.

6

1 at ¶ 119.  Granting all inferences in favor of Generations and Parkside Place, this allegation together with the context provided by other allegations in the Complaint (Doc. 1 at ¶¶ 33-36, 53, 62-63, 73) are sufficient to allege a plausible claim for relief under the unreasonably small capital test or condition.  11 U.S.C. § 548(a)(1)(B)(ii)(II).

Debtors also allege that, in 2020, RRSB provided Generations with term sheets promising a construction loan of over $8,000,000, that would become subject to a long-term 5-7 year loan amortized over a 25-year period.  In 2020, RRSB also provided Parkside Place a loan term sheet promising a construction loan to Parkside of over $3,800,000, that would become subject to a long-term 10-year loan at the conclusion of construction amortized over a 20-year period.  Debtors claim that as part of these promises, RRSB agreed to 18 months of interest-only payments on the construction loans.  Id. at ¶¶ 33-36.

Construction on the Generations project was completed in 2022.  Debtors expected RRSB to convert the construction loan to a long-term repayment commitment, but RRSB refused. Id. at ¶ 63.  RRSB allegedly declared that all three Debtors were in default on payment obligations in February 2023 and demanded that Debtors sign a forbearance agreement.  Id. at ¶ 66.  The promissory notes RRSB listed in the Forbearance Agreement totaled $7,830,857.86.  According to Debtors, the Forbearance Agreement "suggest[ed] the various Generations and Parkside loans to be in default because of maturity dates having occurred without payment being made, failing to recognize that RRSB itself expressly promised—on the term sheets—to provide long-term financing upon the completion of construction."  Id. at ¶ 73.  Under the terms of the Forbearance Agreement, RRSB granted Generations and Parkside Place only 103 days

to repay their debt in full.  Doc. 1 at ¶ 104.  Granting Generations and Parkside Place the reasonable inference that neither Debtor could afford to repay their debts to RRSB in full in less than three months given the context provided in the Complaint as a whole, Generations and Parkside Place also alleged facts sufficient to allege a plausible claim for relief under the cash flow test or condition.  11 U.S.C. § 548(a)(1)(B)(ii)(III).  Accordingly, Debtors alleged facts sufficient to plead a plausible claim under 11 U.S.C. § 548(a)(1)(B)(ii)(II) and (III).  RRSB's motion to dismiss based on failure to plead insolvency under section 548 is denied.

RRSB also argues that, as a matter of law, Debtors conclusively received reasonably equivalent value in exchange for a few months of forbearance from RRSB. Whether a debtor received reasonably equivalent value under section 548(a)(1)(B) is a question of fact.  In re Kendall, 440 B.R. 526, 532 (B.A.P. 8th Cir. 2010) (citing Jacoway v. Anderson (In re Ozark Rest. Equip. Co.), 850 F.2d 342, 344 (8th Cir. 1988)); see also In re Trib. Co. Fraudulent Conv. Litig., 10 F.4th 147, 174 (2d Cir. 2021) ("[T]he question of 'reasonably equivalent value' and 'fair equivalent' is fact intensive, and usually cannot be determined on the pleadings." (alteration in original) (quoting Silverman v. Actrade Cap. Inc. (In re Actrade Fin. Techs. Ltd.), 337 B.R. 791, 804 (Bankr. S.D.N.Y. 2005))). While acknowledging that reasonably equivalent value is typically a question of fact, RRSB maintains the Court may still determine a lender's forbearance provided reasonably equivalent value in the context of a motion to dismiss.  Doc. 13 at 4-5.

RRSB cites to a Tennessee bankruptcy court that granted a defendant's motion to dismiss based on the court's holding that the debtor received reasonably equivalent value as a matter of law.  See Off. Comm. of Unsecured Creditors v. BNP Paribas (In re

Propex, Inc.), 415 B.R. 321, 324 (Bankr. E.D. Tenn. 2009).  Contrary to RRSB's

suggestion and the court's holding in In re Propex, this Court is not convinced that

forbearance equates to reasonably equivalent value as a matter of law in every case in

which a plaintiff pleads a cause of action under section 548(a)(1)(B).  In fact, several

courts rejected the proposition that forbearance alone serves as reasonably equivalent

value.  See Harrison v. N.J. Cmty. Bank (In re Jesup & Lamont, Inc.), 507 B.R. 452, 472

(Bankr. S.D.N.Y. 2014) ("Defendants appear to argue that there was reasonably

equivalent value merely because JLSC and JLI were able to continue in business. That

is not the law. The opportunity to avoid a default or bankruptcy may not necessarily

constitute 'reasonably equivalent value.'" (citation omitted) (citing Senior Transeastern

Lenders v. Off. Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298,

1311-12 (11th Cir. 2012))); Feltman v. Wells Fargo Bank, N.A. (In re TS Emp., Inc.), 597

B.R. 494, 528 (Bankr. S.D.N.Y. 2019) ("Putting aside CRS's eventual chapter 11

bankruptcy, the law does not support Wells Fargo's argument. The opportunity to avoid

a default or bankruptcy may not necessarily constitute 'reasonably equivalent value.'").

   "There is no bright line rule used to determine when reasonably equivalent value

is given." Doeling v. O'Neill (In re O'Neill), 550 B.R. 482, 510 (Bankr. D.N.D. 2016)

(quoting Lindquist v. JNG Corp. (In re Lindell), 334 B.R. 249, 255 (Bankr. D. Minn.

2005)).  "Rather, courts consider the entire situation and base their analysis on the

totality of circumstances."  Id.  "The inquiry is 'fundamentally one of common sense,

measured against market reality.'"  In re Kendall 440 B.R. at 533 (quoting Leonard v.

Mylex Corp. (In re Northgate Comput. Sys., Inc.), 240 B.R. 328, 365 (Bankr. D. Minn.

1999)).  Courts assess factors such as "the good faith of the parties and whether the

transaction was an arm's length transaction between a willing buyer and a willing seller."
Id.

While there may be circumstances so clear of doubt and disputed fact that a court may find that forbearance provided reasonably equivalent value in the context of a section 548 constructively fraudulent transfer, as In re Propex and other cases cited by RRSB demonstrate, this is not one of those cases.  In this case, Debtors allege that RRSB fraudulently and deceitfully obtained the Forbearance Agreement, by switching a proposed forbearance agreement for the one it requested Generations and Parkside Place to sign.  Debtors also plead lack of reasonably equivalent value alleging that a 103-day forbearance period was not the equivalent value of a release of all claims and causes of action against RRSB, a significant interest rate adjustment, an assignment of rents from Generations, and acknowledgement of the enforceability of loan documents required by the Forbearance Agreement.  See Doc.1 at ¶¶ 62-82, 106.  Assuming the facts included in the Complaint are true and construing all reasonable inferences in favor of Debtors, Generations and Parkside Place plausibly alleged lack of reasonably equivalent value under section 548(a)(1)(B).  RRSB's motion to dismiss Debtors' claim for fraudulent transfer under the Bankruptcy Code based on this reason is denied.

### 2.    State Law Fraudulent Transfer Cause of Action

In Count II of their Compliant, Debtors allege a cause of action for fraudulent conveyance under 11 U.S.C. § 544 and N.D.C.C. § 13-02.1-04, seeking an order voiding a forbearance agreement, awarding attorney fees and affording other appropriate relief. Doc. 1 at ¶ 119.  RRSB argues that Minnesota law applies due to the choice of law provision in the Forbearance Agreement; The Ruins' claims should be

dismissed because it was not a party to the Forbearance Agreement at issue;
Generations and Parkside Place failed to allege they received less than reasonably
equivalent value for the allegedly fraudulent conveyance; and Debtors failed to plead
the identity of a predicate creditor as required by section 544(b).

Section 544 allows the trustee (or debtor in possession) to avoid any transfer or
obligation "that is voidable under applicable law by a creditor holding an unsecured
claim that is allowable under section 502." 11 U.S.C. § 544(b)(1). North Dakota, South
Dakota and Minnesota enacted identical fraudulent transfer statutes. See N.D.C.C. §
13-02.1-04; Minn. Stat. § 513.44; S.D.C.L. § 54-8A-4. These statutes provide that a
transfer or obligation is "voidable as to a creditor, whether the creditor's claim arose
before or after the transfer was made" if the debtor did not receive reasonably
equivalent value and fulfills one of the insolvency tests. Id. The North Dakota and
Minnesota statutes provide that a claim is governed by the local law where the debtor is
located when the transfer is made. N.D.C.C. § 13-02.1-11(2); Minn. Stat. § 513.485(b).
The South Dakota fraudulent transfer statute does not contain a choice of law provision.
See generally S.D.C.L. § 54-8A.

For organizations like Generations and Parkside Place that have more than one
place of business, the Minnesota and North Dakota statutes provide that the debtor is
located at its chief executive office. N.D.C.C. § 13-02.1-11(1)(c); Minn. Stat. §
513.485(a)(3). In their Complaint, Debtors allege that Generations, Parkside Place and
the Ruins are companies wholly owned by a bona fide domiciliary and resident of North
Dakota that are based in North Dakota. Doc. 1 at ¶¶ 5, 6, 18. Accordingly, Debtors
argue that their chief executive office is in North Dakota and maintain that North Dakota

law applies to this cause of action.  At the hearing on its Motion to Dismiss, RRSB did not dispute that Debtors' chief executive office is in North Dakota.

To support its argument that Minnesota law applies to Debtors' claim, RRSB points to the choice of law provision in the Forbearance Agreement, which provides that the "Agreement shall be interpreted and construed in accord with the laws of the State of Minnesota."  Doc. 7 at 34.

It is not necessary to decide whether North Dakota law or Minnesota law applies to the Court's analysis of Debtors' section 544 cause of action because the pertinent language of the statutes is the same.

#### i.   The Ruins failed to state a claim for relief under N.D.C.C. § 13-02.1-04 and Minn. Stat. § 513.44(a)(2).

In Count II of the Complaint, Debtors allege that each Debtor is a signatory to the Forbearance Agreement that fraudulently conveyed rights and remedies they seek to void. Doc. 1 at ¶ 112.  RRSB argues that The Ruins failed to state a claim for relief under state law because The Ruins was not a party to the Forbearance Agreement and, consequently, "did not transfer anything to RRSB in the Forbearance Agreement."  Doc. 7 at 15.  In support of this assertion, RRSB attached a copy of the Forbearance Agreement dated February 17, 2023, showing that only Generations, Parkside Place and RRSB are signatories to the agreement.  The Ruins asserted no opposition to this argument.  Accordingly, the Court finds that The Ruins failed to allege a plausible claim for relief under 11 U.S.C. § 544(b) and N.D.C.C. § 13-02.1-04 or Minn. Stat. § 513.44(a)(2).  Its claim and cause of action under Count II is dismissed.

ii.    **Generations and Parkside Place plausibly allege lack of
reasonably equivalent value under N.D.C.C. § 13-02.1-04
and Minn. Stat. § 513.44(a)(2).**

RRSB argues that Count II of the Complaint should be dismissed, as a matter of

law, because Debtors conclusively received reasonably equivalent value in exchange

for a few months of forbearance from RRSB.  Whether a debtor received reasonably

equivalent value is a question of fact.  PHI Fin. Servs., Inc. v. Johnston Law Office,

P.C., 2016 ND 20, ¶ 22, 874 N.W.2d 910; Anderson v. Koch, 2019 WL 1233700, at *6

(Minn. Ct. App. Mar. 18, 2019) ("The parties dispute whether Koch Group received

'reasonably equivalent value' for the debt it incurred. The Act does not define

'reasonably equivalent value.' But the term is derived from bankruptcy law, and 'largely

[presents] a question of fact, as to which considerable latitude must be allowed to the

trier of facts.'" (citations and footnote omitted)).  While there may be circumstances so

clear of doubt and disputed fact that a court may find that forbearance provided

reasonably equivalent value as a matter of law in the context of a section 13-02.1-04

constructively fraudulent transfer, this is not one of those cases.  As explained above,

Debtors allege that RRSB fraudulently and deceitfully obtained the Forbearance

Agreement, by switching a proposed forbearance agreement for the one it requested

Generations and Parkside Place to sign.  Debtors also plead lack of reasonably

equivalent value alleging that a 103-day forbearance period was not the equivalent

value of a release of all claims and causes of action against RRSB, a significant interest

rate adjustment, an assignment of rents from Generations, and acknowledgement of the

enforceability of loan documents required by the Forbearance Agreement.  See Doc.1

at ¶¶ 62-82, 106.  Assuming the facts included in the Complaint are true and construing

all reasonable inferences in favor of Debtors, Generations and Parkside Place plausibly alleged lack of reasonably equivalent value.  RRSB's motion to dismiss Debtors' claim for fraudulent transfer under North Dakota or Minnesota law based on this reason is denied.

### iii.    Debtors' failed to name a Predicate Creditor.

RRSB argues that Debtors failed to state a claim upon which relief can be granted because they did not specifically identify in the Complaint an unsecured creditor that could avoid the Forbearance Agreement.

To establish a prima facie case under section 544(b), Eighth Circuit courts require a plaintiff to "(1) identify an existing creditor; (2) with an allowable claim; (3) who under non-bankruptcy law could avoid the transfer, at least in part."  Kelley v. Boosalis, 974 F.3d 884, 899 (8th Cir. 2020).  Courts are divided on whether the plaintiff must identify a specific creditor in the complaint.  Compare In re David Cutler Indus., Ltd. v. Pa. Dep't of Revenue (In re David Cutler Indus., Ltd.), 471 B.R. 110, 114 n.8 (Bankr. E.D. Pa. 2012) ("Naming a specific creditor is not necessary to state a cause of action under § 544(b)." (citing Leibowitz v. Parkway Bank & Tr. Co. (In re Image Worldwide), 139 F.3d 574, 577 (7th Cir. 1998))), and Mendelsohn v. Dalton Sch., Inc. (In re Molina), 657 B.R. 172, 190 (Bankr. E.D.N.Y. 2023) ("While a § 544(b) claim survives a motion to dismiss even if a trustee does not identify, in the complaint, a specific creditor holding an allowable unsecured claim at the time of the transfer and the filing of the complaint, a trustee must nevertheless plead 'facts from which it can be plausibly concluded that there is at least one legitimate creditor of the estate.'"), with In re Petters Co., 495 B.R. 887, 900-01 (Bankr. D. Minn. 2013) ("To plead his standing to sue to set aside a

transfer to any defendant as fraudulent under Minnesota law, the Trustee must identify by name, in his complaint, at least one unsecured creditor with a claim allowable against the estate whose standing he uses to sue that defendant, which creditor would have had the right to sue to avoid that transfer on the date that that Debtor filed for bankruptcy relief.").

The plain language of the statute requires Debtors to identify a creditor. While Debtors alleged that their outside property manager paid Debtors' insurance and utilities obligations giving rise to claims against two Debtors' estates, they did not specifically name this creditor in the Complaint or include the identity of this creditor in Count II. Consequently, Count II does not state a claim for relief. See In re Petters Co., 495 B.R. at 900 ("To defend early on the issue of standing or even on the merits, defendants have a right to notice via pleading, of the identity of the predicate creditor."). Debtors are granted leave to amend to specifically name a predicate creditor. Failure to promptly amend may result in dismissal of Count II.

### C.    State Law Deceit and Fraud Causes of Action

In Count III, Debtors allege a cause of action seeking a remedy for deceit under North Dakota law. In count IV, Debtors allege a cause of action seeking a remedy for fraud under North Dakota law. The parties dispute which law applies to these deceit and fraud claims and causes of action. RRSB maintains Minnesota law applies, and Debtors claim North Dakota law applies.

During oral argument on the Motion to Dismiss and in their memoranda of law, both parties cited to facts that were not included in the Complaint as support for their

choice of law arguments. Consequently, at the hearing, the Court expressed reluctance to determine the choice of law question based on the Complaint alone.

Expressing their interest in a prompt determination of this issue, the parties agreed to prepare a list of stipulated facts the Court may consider in analyzing the choice of law issue. Accordingly, the parties are granted 21 days to prepare and file a list of stipulated facts that relate solely to the question of which state law applies to causes of action for deceit and fraud in this case. The parties are also granted 7 days after the stipulated facts are filed to supplement their argument on this issue. The Court will hold its ruling on RRSB's Motion to Dismiss Counts III and IV in abeyance until the briefing is complete.

### D.    Negligence Per Se

In Count V, Debtors allege that Minnesota laws govern the conduct of depository institutions and RRSB had a duty to comply with these laws which RRSB allegedly breached during its lending relationship with Debtors. Similarly, in Count VI, Debtors allege that Mr. Aarestad, an officer, director, employee and agent of RRSB, violated 18 U.S.C. § 215, which prohibits him from corruptly soliciting or demanding "anything of value from any person, intending to be influenced or rewarded in connection with any business or transaction of [a financial] institution." Debtors seek a remedy for these alleged violations by employing negligence per se under Minnesota law.

"A per se negligence rule substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach." Roach v. County of Becker, 962 N.W.2d 313, 323 n.12 (Minn. 2021). Not

every violation of a statute or regulation results in negligence per se liability, however. Plaintiffs must satisfy the "well-established two-part test" under Minnesota law.  Perry v. Bay & Bay Transp. Servs., Inc., 650 F. Supp. 3d 743, 755 (D. Minn. 2023).  "A defendant may face liability for negligence per se when [1] 'the persons harmed by the violation are within the intended protection of the code and [2] if the harm suffered is of the type the code was intended to prevent.'"  Staub v. Myrtle Lake Resorts, LLC, 964 N.W.2d 613, 624 n.10 (Minn. 2021) (quoting Gradjelick v. Hance, 646 N.W.2d 225, 231 (Minn. 2002)); Anderson v. State, 693 N.W.2d 181, 190 (Minn. 2005).

### 1.    Violations of Minnesota Law Governing the Conduct of Depository Institutions

In Count V of their Complaint, Debtors allege Minnesota laws govern the conduct of depository institutions and that RRSB violated these laws, but they do not cite a specific Minnesota statute that RRSB allegedly violated.  See Doc. 1 at ¶ 139.  Instead, Debtors allege they "are all intended beneficiaries of applicable lending limit laws" and these lending limits are designed to protect borrowers from the risks associated with a financial institution being overly concentrated on one transaction.  See id. at ¶ 141.  These allegations are insufficient to plead a cause of action.  To allege a plausible claim, Debtors must cite the statute or regulation that supplies the standard of care.  See Daulton v. TMS Treatment Ctr., Inc., 2 N.W.3d 331, 340 n.4 (Minn. Ct. App. 2024) ("First, as the district court acknowledged, appellant failed to assert violations of the statute in his complaint."); ADT Sec. Servs., Inc. v. Swenson, 687 F. Supp. 2d 884, 893 (D. Minn. 2009) ("In short, the requirement that a party plead the violated statute or rule in her complaint is not an onerous one, and the specifics of such a violation are reasonably within the grasp of lawyers unaided by experts. Accordingly, the trustee and

17

children's claim for negligence per se is dismissed."); <u>In re Minn. Breast Implant Litig.</u>, 36 F. Supp. 2d 863, 878 (D. Minn. 1998) (dismissing the plaintiff's negligence per se claim because "Plaintiffs have cited no specific consumer protection statute which was allegedly violated by 3M").  Accordingly, Count V of the Debtors' Complaint is dismissed without prejudice.  If Debtors discover facts sufficient to plead a plausible cause of action, they may seek leave to amend their Complaint at that time, and the Court will apply the applicable standard to such a motion.

### 2.    Violation of Federal Law

In Count VI of their Complaint, Debtors rely on a federal criminal statute,[1] 18 U.S.C. § 215, to establish the duty at the heart of their claim. Doc. 1 at ¶ 146.  Section 215 prohibits agents of a financial institution from soliciting bribes in relation to lending transactions.  18 U.S.C. § 215.  Debtors allege Mr. Aarestad (who was, at all relevant times, an officer, director, employee and agent of RRSB) "offered—repeatedly—to have certain obligations of Parkside and Generations forgiven if the two entities would sell their assets (or if their equity holder would sell the entities themselves) to Mr. Aarestad or his nominee(s) for a sum of money well below market value." Doc. 1 at ¶ 150. Debtors claim this conduct violated section 215, which establishes duty and breach of duty under Minnesota negligence per se.  Additionally, Debtors allege that they suffered damages as a proximate cause of the conduct and are entitled to judgment in their favor.

---

[1] "Negligence per se claims may arise for violations of penal statutes that otherwise do not provide for a civil action under Minnesota law."  <u>Minnesota v. Fleet Farm LLC</u>, 2024 WL 22102, at *6 (D. Minn. Jan. 2, 2024).

RRSB argues that Count VI must be dismissed because an alleged violation of section 215 does not create a private cause of action.  Debtors do not allege a statutory cause of action under 18 U.S.C. § 215.[2]  Rather, Debtors allege that section 215 imposes a common law duty under a Minnesota negligence per se theory.  While certain statutes do not provide for a private right of action, this restriction does not necessarily bar a common law negligence per se cause of action.  See Engvall v. Soo Line R.R. Co., 632 N.W.2d 560, 568 (Minn. 2001); Perry, 650 F. Supp. 3d at 754-55 ("Minnesota law permits negligence per se claims premised on statutes like the FTCA that do not explicitly confer a private right of action if the well-established two-part test is satisfied." (citing Alderman's Inc. v. Shanks, 536 N.W.2d 4, 8 (Minn. 1995))).  Accordingly, the issue is not whether section 215 creates a private right of action.  The issue is whether Debtors properly employed Minnesota negligence per se standards to establish that 18 U.S.C. § 215 imposes a duty of care and whether they allege facts sufficient to show a plausible claim for relief.  Debtors met this burden.

Debtors allege that section 215 "is designed to protect members of the public from the deleterious actions of corrupt bank officers."  Doc. 1 at ¶ 147.  They claim these deleterious actions include "disproportionate collection efforts on the part of a bank, for failing to abide by the solicitation of the bank executive."  Id. at ¶ 148. After

---

[2] In their response brief, Debtors allege that 12 U.S.C. § 503 permits Debtors to pursue a private cause of action for violations of 18 U.S.C. § 215.  In their Complaint, Debtors do not plead a private cause of action under section 503.  Consequently, this issue is not currently before this Court.

Additionally, reference to a claim under 12 U.S.C. § 503 does not further Debtors' claims because this statute is limited to directors or officers of FDIC member banks. Debtors allege that RRSB is not a member bank. Doc. 1 at ¶ 25.

Debtors refused to sell their assets (or the entities) to Mr. Aarestad for allegedly below market value, they allege that RRSB subjected Generations and Parkside Place to an assignment of rents and, eventually, a receivership, causing them to suffer by paying "disproportionately expensive sums to a receiver" and "being without sufficient funds to pay operating expenses." Id. at ¶¶ 151-52. Debtors are borrowers and members of the public who were allegedly harmed by the bank employee's conduct. They are within the class that Congress sought to protect.

Debtors establish that the harm the statute seeks to prevent is bribery from a director, employee, agent or attorney of a financial institution in connection with the business or a transaction with the financial institution. "[T]here can be no doubt that Congress' intent by enacting section 215 was to remove from the path of bank officials the temptation of self enrichment at the expense of the borrower or bank." United States v. Jumper, 838 F.2d 755, 758 (5th Cir. 1988) (emphasis omitted). RRSB's allegedly "disproportionate collection efforts" in subjecting Debtors to an assignment of rents and placing them in receivership after they refused to sell their assets (or the entities) to a bank employee for less than market value appear to be the type of harm that Congress sought to prevent by enacting the statute. Granting all reasonable inferences to Debtors, they allege sufficient facts to create a reasonable inference that they satisfy the two-part test for asserting negligence per se liability.

RRSB maintains that negligence per se should be employed sparingly, and no Court has permitted a plaintiff to use 18 U.S.C. § 215 to establish the standard of care under negligence per se. Without more, this argument is not persuasive. Debtors offered facts sufficient to plausibly show they met the Minnesota negligence per se test.

20

There appears to be no bar, at this time, to Debtors using section 215 to establish the duty and breach elements for their negligence claim under Minnesota law.  They also alleged sufficient facts to create a reasonable inference that RRSB's collection efforts proximately caused their cash flow issues and expenses incurred due to the receivership.  These allegations are sufficient to establish a plausible claim for relief under Count VI.

RRSB's motion to dismiss Count VI is denied without prejudice.

### E.    Declaratory Relief (Entitlement to Accounting)

In Count VII, Debtors seek relief under the Declaratory Judgment Act for an accounting of all payments made, the application of those payments to specific loans and balances remaining on RRSB's loans to Debtors.  Doc. 1 at ¶ 158.  Debtors allege that RRSB has "refused to do so for multiple years and having notably failed to furnish one as part of the proofs of claims filed in the Debtors' bankruptcy cases."  Id. at ¶ 157.

RRSB argues that Debtors lack standing to bring a cause of action under the Declaratory Judgment Act because they did not plead injury in fact.  "[T]he law is clear in the Eighth Circuit that bankruptcy courts have 'the power to issue declaratory judgments' under the Declaratory Judgment Act 'when the matter in controversy regards the administration of a pending bankruptcy estate.'"  Oakley Grain, Inc. v. Rice (In re Turner Grain Merch., Inc.), 2019 WL 5106362, at *9 (Bankr. E.D. Ark. Oct. 11, 2019) (quoting Sears, Rosebuck & Co. v. O'Brien, 178 F.3d 962, 964 (8th Cir. 1999)); see also Baroni v. Nationstar Mortgage, LLC (In re Baroni), 2015 WL 6956664, at *7 (B.A.P. 9th Cir. Nov. 10, 2015) ("The potential impact of Nationstar's proof of claim on [debtor's]

plan distributions amply satisfies the core constitutional standing components of injury in fact, causation and redressability.").

In their Complaint and in their Objection to RRSB's proofs of claim, Debtors allege that RRSB has not provided an accounting of all payments Debtors made to RRSB. These allegations relate to the administration of the bankruptcy estate.

While it is apparent that the Court has subject matter jurisdiction over the claim disputes between the parties, the question is whether resolving these disputes in the context of this adversary action is proper. During the July 8, 2025, hearing on the Motion to Dismiss and scheduling conference related to Debtors' objections to RRSB's claims, the Court scheduled a hearing on all issues related to distribution of loan proceeds from RRSB to Debtor and related entities and an accounting for historic payments made—by the Debtors and others (including tenants, through an assignment of rents and an ensuing receivership)—to RRSB, together with an accounting of how RRSB applied these payment to the debt owed to RRSB. Count VII of the Complaint falls within the scope of this hearing. The resolution, whether provided by Court ruling or settlement, will moot this claim. Until this time arrives, Debtors' claim survives. Accordingly, RRSB's motion to dismiss Count VII seeking declaratory relief is denied without prejudice.

## IV.    CONCLUSION

For the reasons provided above, it is **ORDERED** that Defendant's Motion to Dismiss is **DENIED** in part and **GRANTED** in part.

The parties are granted 21 days to prepare and file a list of stipulated facts that relate solely to the question of which state law applies to causes of action for deceit and fraud in this case.

The parties are also granted 7 dates after the stipulated facts are filed to supplement their argument on this issue.

The Court will hold its ruling on RRSB's Motion to Dismiss in abeyance until the briefing is complete.

Dated: July 11, 2025.

Shon Hastings, Judge
United States Bankruptcy Court