# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>          Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>          Debtor. | Case No.: 25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>          Plaintiffs,<br><br>  vs.<br><br>Red River State Bank,<br><br>          Defendant. | Adversary No.: 25-07009 |

## STIPULATION AS TO SIGNIFICANT CONTACTS

Plaintiffs and Defendant, by and through their undersigned counsel, submit the following Stipulation as to Significant Contacts for purposes of resolving the applicable state law for Plaintiff's fraud and deceit claims against Defendant:[1]

---

[1]   The Parties resolve that the stipulations contained herein are only stipulated to for purposes of resolution of the significant contacts question, and not for any other purposes.

## THE PARTIES

1.      Plaintiff Generations on 1st, LLC ("Generations") is an entity organized under the laws of the State of South Dakota beginning in 2020, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota.  The sole member of Generations is Jesse Craig ("Jesse"), a resident of the State of North Dakota. The principal place of business of Generations is in Fargo, North Dakota.

2.      Plaintiff Parkside Place, LLC ("Parkside") is an entity organized under the laws of the State of South Dakota beginning in 2020, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota.  The sole member of Generations is Jesse. The principal place of business of Parkside is in Fargo, North Dakota.

3.      Plaintiff The Ruins, LLC ("Ruins") is an entity organized under the laws of the State of South Dakota beginning in 2019, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota.  The sole member of Generations is Jesse. The principal place of business of Ruins is in Fargo, North Dakota.

4.      Defendant Red River State Bank ("RRSB") is a financial institution chartered under the laws of the State of Minnesota beginning in 1934.  RRSB maintains two physical locations: one in the City of Halstad, a second in the City of Fertile, both in the State of Minnesota.

## THE GENERATIONS LOANS

### I.      The Generations Terms Sheet.

5.      On or about November 23, 2020, RRSB provided Generations with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 72 unit apartment complex known as 'Generations on 1st' in Watertown SD" (the

"Generations Terms Sheet").  A true and correct copy of the Generations Terms Sheet is attached hereto as Exhibit A, and the same incorporated herein by reference.

6.     RRSB produced the Generations Terms Sheet in Minnesota.

7.     The contents of the Generations Terms Sheet were the result of negotiations between Martin Peterson ("Peterson"), on behalf of RRSB, and Jesse, on behalf of Generations.  Negotiation of the Generations Terms Sheet occurred through telephonic and email communications between the parties, with Peterson present in Minnesota and Jesse present in North Dakota. Jesse's recollection is that Peterson traveled to North Dakota for multiple meetings concerning the project and the terms thereof and, similarly, that on two occasions Jesse traveled to Minnesota to see RRSB's physical facilities and to meet members of the RRSB staff.

## II.     The First Generations Loan.

8.     On or about March 15, 2021, RRSB agreed to loan Generations $1,565,200.00 related to the Generations on 1st project as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Commercial Guaranty; Notice of Final Agreement; and Loan Request Summary (collectively, the "First Generations Loan Documents").  True and correct copies of the First Generations Loan Documents are attached hereto as Exhibit B, and the same incorporated herein by reference.

9.     RRSB produced the First Generations Loan Documents in Minnesota.

10.    The terms of the First Generations Loan Documents were the result of negotiations between Peterson and Jesse.  Negotiation of the First Generations Loan Documents occurred through telephonic and email communications between the parties, with

3

Peterson engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

11.    The First Generations Loan Documents were executed by Jesse in North Dakota.

12.    Any and all payments received by RRSB on the First Generations Loan were received in Minnesota.

13.    All payments on the First Generations Loan, mailed to RRSB, were mailed from North Dakota.

### III.    The Second Generations Loan.

14.    On or about September 14, 2021, RRSB agreed to loan Generations $2,976,430.98 related to the Generations on 1st project as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "Second Generations Loan Documents").  True and correct copies of the Second Generations Loan Documents are attached hereto as Exhibit C, and the same incorporated herein by reference.

15.    RRSB produced the Second Generations Loan Documents in Minnesota.

16.    The Second Generations Loan Documents were executed by Jesse on the tailgate of a pickup truck in Dunvilla, Minnesota.

17.    The terms of the Second Generations Loan Documents were the result of negotiations between Charles Aarestad ("Charles") for RRSB and Jesse.  Negotiation of the Second Generations Loan Documents occurred through telephonic and email communications

4

between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

18.    Any and all payments received by RRSB on the Second Generations Loan were received in Minnesota.

19.    All payments on the Second Generations Loan, mailed to RRSB, were mailed from North Dakota.

**IV.    The Third Generations Loan.**

20.    On or about October 14, 2021, RRSB agreed to loan Generations $1,094,025.15 related to the Generations on 1st project as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "Third Generations Loan Documents").  True and correct copies of the Third Generations Loan Documents are attached hereto as Exhibit D, and the same incorporated herein by reference.

21.    RRSB produced the Third Generations Loan Documents in Minnesota.

22.    The terms of the Third Generations Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the Third Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

23.    Any and all payments received by RRSB on the Third Generations Loan were received in Minnesota.

24. All payments on the Third Generations Loan, mailed to RRSB, were mailed from North Dakota.

## V. The Fourth Generations Loan.

25. On or about November 9, 2021, RRSB agreed to loan Generations $424,259.84 related to the Generations on 1st project as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "Fourth Generations Loan Documents"). True and correct copies of the Fourth Generations Loan Documents are attached hereto as Exhibit E, and the same incorporated herein by reference.

26. RRSB produced the Fourth Generations Loan Documents in Minnesota.

27. The terms of the Fourth Generations Loan Documents were the result of negotiations between Jesse and Charles. Negotiation of the Fourth Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

28. Any and all payments received by RRSB on the Fourth Generations Loan were received in Minnesota.

29. All payments on the Fourth Generations Loan, mailed to RRSB, were mailed from North Dakota.

**VI.    The Fifth Generations Loan.**

30.    On or about December 8, 2021, RRSB agreed to loan Generations $843,168.59 related to the Generations on 1st project as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "Fifth Generations Loan Documents").   True and correct copies of the Fifth Generations Loan Documents are attached hereto as Exhibit F, and the same incorporated herein by reference.

31.    RRSB produced the Fifth Generations Loan Documents in Minnesota.

32.    The terms of the Fifth Generations Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the Fifth Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

33.    Any and all payments received by RRSB on the Fifth Generations Loan were received in Minnesota.

34.    All payments on the Second Generations Loan, mailed to RRSB, were mailed from North Dakota.

**VII.    The Sixth Generations Loan.**

35.    On or about January 5, 2022, RRSB agreed to loan Generations $653,729.65 related to the Generations on 1st project as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and

7

Performance; and Notice of Final Agreement; (collectively, the "Sixth Generations Loan Documents"). True and correct copies of the Sixth Generations Loan Documents are attached hereto as Exhibit G, and the same incorporated herein by reference.

36.    RRSB produced the Sixth Generations Loan Documents in Minnesota.

37.    The terms of the Sixth Generations Loan Documents were the result of negotiations between Jesse and Charles. Negotiation of the Sixth Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

38.    Any and all payments received by RRSB on the Sixth Generations Loan were received in Minnesota.

39.    All payments on the Sixth Generations Loan, mailed to RRSB, were mailed from North Dakota.

**VIII.  The Seventh Generations Loan.**

40.    On or about February 3, 2022, RRSB agreed to loan Generations $274,043.60 related to the Generations on 1st project as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "Seventh Generations Loan Documents"). True and correct copies of the Seventh Generations Loan Documents are attached hereto as Exhibit H, and the same incorporated herein by reference.

41.    RRSB produced the Seventh Generations Loan Documents in Minnesota.

42.    The terms of the Seventh Generations Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the Seventh Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

43.    Any and all payments received by RRSB on the Seventh Generations Loan were received in Minnesota.

44.    All payments on the Seventh Generations Loan, mailed to RRSB, were mailed from North Dakota.

**IX.    The Eighth Generations Loan.**

45.    On or about April 17, 2023, RRSB agreed to loan Generations $8,100,000.00 related to the Generations on 1st project as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Mortgage; Assignment of Rents; Commercial Guaranty; and Notice of Final Agreement (collectively, the "Eighth Generations Loan Documents").  True and correct copies of the Eighth Generations Loan Documents are attached hereto as Exhibit I, and the same incorporated herein by reference.

46.    RRSB produced the Eighth Generations Loan Documents in Minnesota.

47.    The terms of the Eighth Generations Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the Eighth Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

48.     Any and all payments received by RRSB on the Eighth Generations Loan were received in Minnesota.

49.     All payments on the Eighth Generations Loan, mailed to RRSB, were mailed from North Dakota.

**X.      The Ninth Generations Loan.**

50.     On or about April 17, 2023, RRSB agreed to loan Generations $561,365.10 related to the Generations on 1st project as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; and Notice of Final Agreement (collectively, the "Ninth Generations Loan Documents").  True and correct copies of the Ninth Generations Loan Documents are attached hereto as Exhibit J, and the same incorporated herein by reference.

51.     RRSB produced the Ninth Generations Loan Documents in Minnesota.

52.     The terms of the Ninth Generations Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the Ninth Generations Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

53.     Any and all payments received by RRSB on the Ninth Generations Loan were received in Minnesota.

54.     All payments on the Ninth Generations Loan, mailed to RRSB, were mailed from North Dakota.

**THE PARKSIDE LOANS**

**XI.     The Parkside Terms Sheet.**

55.     On or about October 19, 2020, RRSB provided Parkside with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 36 unit apartment complex known as 'Parkside Place' in Watertown SD" (the "Parkside Terms Sheet").  A true and correct copy of the Parkside Terms Sheet is attached hereto as Exhibit K, and the same incorporated herein by reference.

56.     RRSB produced the Parkside Terms Sheet in Minnesota.

57.     The contents of the Parkside Terms Sheet were the result of negotiations between Peterson, on behalf of RRSB, and Jesse, on behalf of Parkside.  Negotiation of the Parkside Terms Sheet occurred through telephonic and email communications between the parties, with Peterson present in Minnesota and Jesse engaging in the negotiations in North Dakota. Jesse's recollection is that Peterson traveled to North Dakota for multiple meetings concerning the project and the terms thereof and, similarly, that on two occasions Jesse traveled to Minnesota to see RRSB's physical facilities and to meet members of the RRSB staff.

**XII.    The Parkside Loan.**

58.     On or about December 13, 2021, RRSB agreed to loan Parkside $4,200,000.00 related to the Parkside Place project as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Mortgage; Assignment of Rents; Commercial Guaranty; Notice of Final Agreement; and Loan Request Summary (collectively, the "Parkside Loan Documents").  True and correct

copies of the Parkside Loan Documents are attached hereto as <u>Exhibit L</u>, and the same incorporated herein by reference.

59.    RRSB produced the Parkside Loan Documents in Minnesota.

60.    The terms of the Parkside Loan Documents were the result of negotiation between Jesse and Charles.  Negotiation of the Parkside Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

61.    Any and all payments received by RRSB on the Parkside Loan were received in Minnesota.

62.    All payments on the Parkside Loan, mailed to RRSB, were mailed from North Dakota.

THE RUINS LOANS

### XIII.  The Ruins Terms Sheet

63.    On or about January 26, 2021, RRSB provided Ruins with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 63 unit apartment complex known as 'The Ruins' in Watertown SD'" (the "<u>Ruins Terms Sheet</u>").  A true and correct copy of the Ruins Terms Sheet is attached hereto as <u>Exhibit M</u>, and the same incorporated herein by reference.

64.    RRSB produced the Ruins Terms Sheet in Minnesota.

65.    The contents of the Ruins Terms Sheet were the result of negotiations between Peterson, on behalf of RRSB, and Jesse, on behalf of Ruins.  Negotiation of the Ruins Terms Sheet occurred through telephonic and email communications between the parties, with Peterson present in Minnesota and Jesse present in North Dakota. Jesse's recollection is that

12

Peterson traveled to North Dakota for multiple meetings concerning the project and the terms thereof and, similarly, that on two occasions Jesse traveled to Minnesota to see RRSB's physical facilities and to meet members of the RRSB staff.

## XIV.  The First Ruins Loan.

66.     On or about March 9, 2022, RRSB agreed to loan Ruins $7,740,000.00 related to The Ruins project as evidenced by the following documents: Business Loan Agreement; Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "First Ruins Loan Documents").  True and correct copies of the First Ruins Loan Documents are attached hereto as Exhibit N, and the same incorporated herein by reference.

67.     RRSB produced the First Ruins Loan Documents in Minnesota.

68.     The terms of the First Ruins Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the First Ruins Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

69.     Any and all payments received by RRSB on the First Ruins Loan Documents were received in Minnesota.

70.     All payments on the First Ruins Loan, mailed to RRSB, were mailed from North Dakota.

**XV.   The Second Ruins Loan.**

71.     On or about August 1, 2022, RRSB agreed to loan Ruins $2,750,000.00 related to The Ruins project as evidenced by the following documents: Business Loan Agreement; Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Assignment of Life Insurance Policy as Collateral; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "Second Ruins Loan Documents").  True and correct copies of the Second Ruins Loan Documents are attached hereto as Exhibit O, and the same incorporated herein by reference.

72.     RRSB produced the Second Ruins Loan Documents in Minnesota.

73.     The terms of the Second Ruins Loan Documents were the result of negotiations between Jesse and Charles.  Negotiation of the Second Ruins Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

74.     Any and all payments received by RRSB on the Second Ruins Loan Documents were received in Minnesota.

75.     All payments on the Second Ruins Loan, mailed to RRSB, were mailed from North Dakota.

**XVI.   The Third Ruins Loan.**

76.     On or about February 17, 2023, RRSB agreed to loan Ruins $600,000.00 related to The Ruins project as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note;

14

Commercial Security Agreement; Assignment of Life Insurance Policy as Collateral; Notice of Final Agreement; and Loan Request Summary (collectively, the "Third Ruins Loan Documents"). True and correct copies of the Third Ruins Loan Documents are attached hereto as Exhibit P, and the same incorporated herein by reference.

77.     RRSB produced the Third Ruins Loan Documents in Minnesota.

78.     The terms of the Third Ruins Loan Documents were the result of negotiations between Jesse and Charles. Negotiation of the Third Ruins Loan Documents occurred through telephonic and email communications between the parties, with Charles engaging in the negotiations in Minnesota and Jesse engaging in the negotiations in North Dakota.

79.     Any and all payments received by RRSB on the Third Ruins Loan Documents were received in Minnesota.

80.     All payments on the Third Ruins Loan, mailed to RRSB, were mailed from North Dakota..

THE FORBEARANCE AGREEMENT

81.     On or about February 17, 2023, RRSB entered into a Forbearance Agreement with Generations and Parkside[2] (the "Forbearance Agreement"). A true and correct copy of the Forbearance Agreement is attached hereto as Exhibit Q, and the same incorporated herein by reference.

82.     Charles negotiated the Forbearance Agreement for RRSB. Negotiations with Generations and Parkside took place via email and phone with Charles located in Minnesota

---

[2]   Mulinda Sue Craig, Craig Holdings, LLC, and Jesse were also signatories to the Forbearance Agreement.

and Jesse and his counsel (who is not general reorganization counsel for the debtors) located in North Dakota.

83.     Charles delivered the Forbearance Agreement to Jesse, in North Dakota, where Jesse executed the same whilst remaining in North Dakota.

84.     Jesse subsequently e-mailed the signature page of the Forbearance Agreement to Charles, with the e-mail being sent from North Dakota and received in Minnesota.[3]

85.     Jesse subsequently mailed the original signature page of the Forbearance Agreement to Charles, with the mailing being made from North Dakota and received in Minnesota.

### LOAN DOCUMENT EXECUTION

86.     The parties agree that certain loan documents were executed in North Dakota and certain loan documents were executed in Minnesota. The parties are not able to agree upon where other loan documents were executed.

Dated this 4th day of August, 2025.

**The Dakota Bankruptcy Firm**          **Vogel Law Firm**

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
Counsel for the Debtors/Plaintiffs

/s/ Drew J. Hushka (signed w/ express permission)
Drew J. Hushka, Esq. (#08230)
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
dhushka@vogellaw.com
Counsel for the Defendant

---

[3]     The parties agree that the location of e-mail servers is immaterial to the choice of laws issues in this case; where an e-mail is referenced as being "sent" or "received," such is a reference to where the individual sending or receiving was located and not to where the servers were located. The parties do not feign knowledge of the location of e-mail servers.

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 4th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig
