UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re:<br><br>Generations on 1st LLC,<br><br>       Debtor. | Case No.: 25-30002<br><br>Chapter 11 |
| In Re:<br><br>Parkside Place LLC,<br><br>       Debtor. | Case No.: 25-30003<br><br>Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC,<br><br>       Plaintiffs,<br><br>vs.<br><br>Red River State Bank,<br><br>       Defendant. | Adversary No.: 25-07009 |

**DEFENDANT'S POST-HEARING BRIEF RE SIGNIFICANT CONTACTS AND CHOICE OF LAW**

### INTRODUCTION

Following oral argument on RRSB's[1] Motion to Dismiss, this Court entered its Order, directing the parties to attempt to submit stipulated facts for the Court's consideration "solely

---

[1] Capitalized terms used herein, but not otherwise defined, shall have the meanings ascribed to them in Defendant's Brief in Support of Motion to Dismiss. *See generally* ECF No. 7.

to the question of which state law applies to causes of action for deceit and fraud in this case."[2] The parties submitted their stipulation on August 4, 2025.[3] RRSB now submits this supplemental brief analyzing the choice-of-law question on Plaintiffs' deceit and fraud claims in light of the parties' stipulation.

## LAW AND ARGUMENT

"'A federal court sitting in diversity generally applies the substantive law of the state in which it sits, including the rules governing the choice of law.'"[4] The North Dakota Supreme Court has adopted the significant contacts approach for deciding choice-of-law questions in tort cases with multistate contacts.[5]

> North Dakota's test is a "hybrid," two-part test. The court first determines "all of the relevant contacts which might logically influence the decision of which law to apply." Then the court applies the Leflar factors "to determine which jurisdiction has the more significant interest with the issues in the case."[6]

North Dakota's significant contacts test dictates the application of Minnesota law to Plaintiffs' claims for deceit and fraud.

---

[2] *See* ECF No. 18, at 16.

[3] *See generally* ECF No. 22.

[4] *Sweetwater Cattle Co., L.L.C. v. Leigh Murphy (In re Leonard)*, 565 B.R. 137, 141-42 (B.A.P. 8th Cir. 2017) (citation omitted).

[5] *Issendorf v. Olson*, 194 N.W.2d 750, 756 (N.D. 1972).

[6] *Brock v. Century Surety Co.*, Case No. 4:14-cv-156, 2018 WL 11605638, at *3 (D.N.D. Jan. 30, 2018) (citations omitted).

2

I.   **The multi-state contacts to be considered.**

When determining what contacts are "significant" in an action, the North Dakota Supreme Court has relied on the Restatement (Second) on Conflict of Law.[7] For torts involving fraud or misrepresentation—such as deceit and fraud, the Restatement identifies the following contacts as significant:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representation,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation[,] and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representation of the defendant.[8]

Comparing the fraud and misrepresentation contacts identified by the Restatement, with the parties' stipulated facts, Minnesota's significant contacts in this case are: (1) RRSB is a Minnesota entity with offices exclusively in Minnesota;[9] (2) the negotiations between RRSB and Plaintiffs occurred in Minnesota;[10] (3) RRSB created the term sheets and the Forbearance Agreement—the documents that Plaintiffs' allege contained misrepresentations—in

---

[7]  *See, i.e., Plante v. Columbia Paints*, 494 N.W.2d 140, 142 (N.D. 1992) (looking to the Restatement (Second) of Conflict of Laws, section 188, to determine the significant contacts for contract actions).

[8]  *Restatement (Second) of Conflict of Laws* § 148.

[9]  ECF No. 22, at ¶ 4.

[10]  *Id.* at ¶¶ 7, 10, 17, 22, 27, 32, 37, 42, 47, 52, 57, 60, 65, 68, 73, 78, 82.

3

Minnesota;[11] (4) RRSB created the subsequent loan documents in Minnesota;[12] (5) the loan documents related to the alleged fraud specified—on at least twenty (20) occasions—that they were entered into in Minnesota;[13] (6) the loan documents related to the alleged fraud specified—on at least sixty-three (63) occasions—for the application of Minnesota law;[14] (7)

---

[11]  *Id.* at ¶¶ 9, 15, 21, 26, 31, 36, 41, 46, 51, 59, 67, 72, 77.

[12]  *Id.* at ¶¶ 6, 56, 64.

[13]  ECF No. 22, Ex. B, Business Loan Agreement, at 4 ("This Agreement has been accepted by [RRSB] in the State of Minnesota."); ECF No. 22, Ex. C, Construction Loan Agreement, at 9 (same); ECF No. 22, Ex. D, Construction Loan Agreement, at 9 (same); ECF No. 22, Ex. E, Construction Loan Agreement, at 9 (same); ECF No. 22, Ex. F, Construction Loan Agreement, at 9 (same); ECF No. 22, Ex. G, Construction Loan Agreement, at 9 (same); ECF No. 22, Ex. H, Construction Loan Agreement, at 9 (same); ECF No. 22, Ex. I, Business Loan Agreement, at 4 (same); ECF No. 22, Ex. J, Business Loan Agreement, at 4 (same); ECF No. 22, Ex. L, Business Loan Agreement, at 5 (same); ECF No. 22, Ex. N, Business Loan Agreement, at 5 (same); ECF No. 22, Ex. N, Construction Loan Agreement, at 8 (same); ECF No. 22, Ex. O, Business Loan Agreement, at 5 (same); ECF No. 22, Ex. O, Construction Loan Agreement, at 8 (same); ECF No. 22, Ex. P, Business Loan Agreement, at 5 (same); *see also* ECF No. 22, Ex. B, Mortgage, at 13 ("The loan transaction that is evidence by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by [RRSB] in the State of Minnesota."); ECF No. 22, Ex. D, Mortgage, at 15 (same); ECF No. 22, Ex. L, Mortgage, at 13 (same); ECF No. 22, Ex. N, Mortgage, at 15 (same); ECF No. 22, Ex. O, Mortgage, at 15 (same).

[14]  ECF No. 22, Ex. B, Business Loan Agreement, at 4; ECF No. 22, Ex. B, Promissory Note, at 2; ECF No. 22, Ex. B, Mortgage, at 13; ECF No. 22, Ex. B, Commercial Security Agreement, at 4; ECF No. 22, Ex. B, Commercial Guaranty, at 2; ECF No. 22, Ex. C, Construction Loan Agreement, at 9; ECF No. 22, Ex. C, Promissory Note, at 2; ECF No. 22, Ex. C, Commercial Guaranty, at 2; ECF No. 22, Ex. C, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. D, Construction Loan Agreement, at 9; ECF No. 22, Ex. D, Promissory Note, at 2; ECF No. 22, Ex. D, Mortgage, at 15; ECF No. 22, Ex. D, Commercial Guaranty, at 2; ECF No. 22, Ex. D, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. E, Construction Loan Agreement, at 9; ECF No. 22, Ex. E, Promissory Note, at 2; ECF No. 22, Ex. E, Commercial Guaranty, at 2; ECF No. 22, Ex. E, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. F, Construction Loan Agreement, at 9; ECF No. 22, Ex. F, Promissory Note, at 2; ECF No. 22, Ex. F, Commercial Guaranty, at 2; ECF No. 22, Ex. F, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. G, Construction Loan Agreement, at 9; ECF No. 22, Ex. G, Promissory Note, at 2; ECF No. 22, Ex. G, Commercial Guaranty, at 2; ECF No. 22, Ex. G, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. H, Construction Loan Agreement, at 9; ECF No. 22, Ex.

the funding provided by RRSB related to the alleged fraud came from Minnesota;[15] and (8) repayments were paid by Plaintiffs to RRSB in Minnesota.[16]

Using that same comparison, North Dakota's significant contacts are: (1) Plaintiffs' sole member resides in North Dakota;[17] (2) Plaintiffs' principal place of business is North Dakota;[18] (3) the negotiations between RRSB and Plaintiffs occurred in Minnesota;[19] (4)

---

H, Promissory Note, at 2; ECF No. 22, Ex. H, Commercial Guaranty, at 2; ECF No. 22, Ex. H, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. I, Business Loan Agreement, at 4; ECF No. 22, Ex. I, Promissory Note, at 2; ECF No. 22, Ex. I, Mortgage, at 8; ECF No. 22, Ex. I, Assignment of Rents, at 4; ECF No. 22, Ex. I, Commercial Guaranty, at 2; ECF No. 22, Ex. J, Business Loan Agreement, at 4; ECF No. 22, Ex. J, Promissory Note, at 2; ECF No. 22, Ex. J, Commercial Guaranty, at 2; ECF No. 22, Ex. L, Business Loan Agreement, at 5; ECF No. 22, Ex. L, Promissory Note, at 2; ECF No. 22, Ex. L, Mortgage, at 13; ECF No. 22, Ex. L, Assignment of Rents, at 6; ECF No. 22, Ex. L, Commercial Guaranty, at 2; ECF No. 22, Ex. N, Business Loan Agreement, at 5; ECF No. 22, Ex. N, Construction Loan Agreement, at 8; ECF No. 22, Ex. N, Promissory Note, at 2; ECF No. 22, Ex. N, Mortgage, at 15; ECF No. 22, Ex. N, Commercial Security Agreement, at 3; ECF No. 22, Ex. N, Commercial Guaranty, at 3; ECF No. 22, Ex. N, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. O, Business Loan Agreement, at 5; ECF No. 22, Ex. O, Construction Loan Agreement, at 8; ECF No. 22, Ex. O, Promissory Note, at 2; ECF No. 22, Ex. O, Mortgage, at 15; ECF No. 22, Ex. O, Commercial Security Agreement, at 4; ECF No. 22, Ex. O, Assignment of Life Insurance Policy as Collateral, at 2; ECF No. 22, Ex. O, Commercial Guaranty, at 3; ECF No. 22, Ex. O, Guaranty of Completion and Performance, at 2; ECF No. 22, Ex. P, Business Loan Agreement, at 5; ECF No. 22, Ex. P, Promissory Note, at 2; ECF No. 22, Ex. P, Commercial Security Agreement, at 4; ECF No. 22, Ex. P, Assignment of Life Insurance Policy as Collateral, at 2; ECF No. 22, Ex. Q, at 7, § 12.

[15]   ECF No. 22, at ¶ 4.

[16]   *Id.* at ¶¶ 12, 18, 23, 28, 33, 38, 43, 48, 53, 61, 69, 74, 79.

[17]   *Id.* at ¶¶ 1-3.

[18]   *Id.*

[19]   *Id.* at ¶¶ 7, 10, 17, 22, 27, 32, 37, 42, 47, 52, 57, 60, 65, 68, 73, 78, 82.

Plaintiffs received the term sheets and the Forbearance Agreement in North Dakota;[20] and (5) Plaintiffs initiated any payments on their obligations to RRSB in North Dakota.[21]

Lastly, a comparison of the Restatement with the parties' stipulation shows that South Dakota's significant contacts are: (1) Plaintiffs are organized under the laws of South Dakota;[22] and (2) the funding at issue was provided to fund real property development in South Dakota.[23]

## II. Application of the relevant multi-state contacts.

Having established the relevant multi-state contacts, RRSB now turns to the application of those contacts to the factors identified by Leflar.

### A. Predictability of results favors the application of Minnesota law.

The first factor is predictability of results.[24] "Predictability of uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions."[25]

> [P]arties to a consensual transaction . . . should be able to plan their transaction as one with predictable results. Ideally, the parties to a consensual transaction should be able to know at the time they enter upon it that it will produce, by way of legal consequences, the same socioeconomic consequences . . . regardless of where litigation occurs so that forum-shopping will benefit neither party. The purpose of protecting parties' justified expectations ought to be served even when the parties do not think about choice of law.[26]

---

[20] *Id.* at ¶¶ 7, 57, 65, 83.

[21] *Id.* at ¶¶ 13, 19, 24, 29, 34, 39, 44, 49, 54, 62, 70, 75, 80.

[22] *Id.* at ¶¶ 1-3.

[23] *Id.* at ¶¶ 5, 55, 63.

[24] *Daley v. American States Preferred Ins. Co.*, 1998 ND 225, ¶ 11, 587 N.W.2d 159.

[25] *Plante*, 494 N.W.2d at 142 (citation and internal quotation omitted).

[26] *Id.* (citations and internal quotations omitted) (alteration and omissions in original).

Predictability favors the application of Minnesota law. The record clearly establishes that the parties expected, at the time of their transactions, that Minnesota law would apply because the parties agreed—on at least sixty-three (63) instances—that Minnesota law would govern the transactions Plaintiffs allege RRSB fraudulently induced.[27]

And even if this Court did not believe that objective evidence of the parties' expectations controlled, predictability of result would still favor the application of Minnesota law. As outlined above, the Restatement identifies six types of contact that are relevant for fraud and misrepresentation torts.[28] And a majority of the relevant contacts favor the application of Minnesota law. The only contact supporting the application of South Dakota law is that Plaintiffs are South Dakota entities. The contacts supporting the application of North Dakota law are: (1) Plaintiffs acted in North Dakota;[29] (2) Plaintiffs received the alleged misrepresentations in North Dakota; and (3) Plaintiffs' principal place of business is in North Dakota. The majority of the relevant contacts are with Minnesota, including: (1) RRSB produced the term sheets and Forbearance Agreement in Minnesota; (2) RRSB is a Minnesota bank transaction business in Minnesota; (3) the subject of the transaction—funding for

---

[27] *See* n.14, *supra*.

[28] *Restatement (Second) of Conflict of Laws* § 148 ("(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representation, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation[,] and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representation of the defendant.").

[29] RRSB provides Plaintiffs any benefit of the doubt that they acted in reliance on the alleged misrepresentations in North Dakota because the subsequent loan agreements that allegedly arose from the fraud specifically identify that they were entered into in Minnesota—regardless of where Plaintiffs executed the agreements. *See* n.13, *supra*.

7

Plaintiffs' South Dakota real estate development projects—was located in Minnesota at the time of the term sheets and the Forbearance Agreement; and (4) Plaintiffs were to render performance—to make repayments to RRSB—in Minnesota. Accordingly, whether by virtue of the objective expectations of the parties, or by virtue of the relevant fraud contacts, predictability of results dictates the application of Minnesota law.

      B.      <u>Maintenance of interstate order favors the application of Minnesota law.</u>

The second factor is maintenance of interstate order.[30] The North Dakota Supreme Court has summarized this factor as follows:

> Choice-of-law rules . . . should seek to further harmonious relations between states and to facilitate commercial intercourse between them. The great political interest of our states, . . . , is primarily in a need for systematization, for an orderliness that will make our federal system work with reasonable efficiency. Deliberate preference for local law and local persons, unaccompanied by independent justification, is a disregard of this interest. A state's application of its own law to a transaction whose significant contacts are primarily with another state may induce retaliation in kind, which would not further essential commercial intercourse. Choice-of-law rules should avoid such frictions.[31]

As outlined above, the significant contacts in this case are primarily with Minnesota. The application of North Dakota law, therefore, would not serve to maintain interstate order, but instead "may induce retaliation in kind, which would not further essential commercial intercourse."[32] This factor favors the application of Minnesota law.

---

[30] *Daley*, 1998 ND 225, ¶ 11.

[31] *Plante*, 494 N.W.2d at 143 (citations and internal quotations omitted) (omissions in original).

[32] *Id.*

    C.    <u>Simplification of the judicial task favors no state.</u>

The third factor is simplification of the judicial task.[33] "'It will usually be easier for the forum court to apply its own law than any other.'"[34] Nevertheless, the parties agree that this Court will have no issue applying the controlling law—whether Minnesota, North Dakota, or South Dakota.[35] As such, RRSB defers to the Court's judgment on this factor, or respectfully submits that this factor does not favor any particular state.[36]

    D.    <u>Advancement of the forum's governmental interests does not overcome Minnesota's interests.</u>

The fourth factor is the advancement of the forum's governmental interests.[37] "'In general, it is fitting that the state whose interests are most deeply affected should have its local law applied.'"[38] And "'[t]he mere fact of the domicile of a party, or of both parties, in a state will often not be enough to give rise to a real governmental interest in that state.'"[39]

As outlined above, Minnesota is the state whose interests are most deeply affected,[40] supporting application of Minnesota law.[41] Indeed, North Dakota or South Dakota's most compelling contact is that the injured parties are North Dakota and South Dakota residents.

---

[33] *Daley*, 1998 ND 225, ¶ 11.

[34] *Plante*, 494 N.W.2d at 143 (citation omitted).

[35] *See* ECF No. 8, at 17-18.

[36] *Cf. Apollo Sprinkler Co., Inc. v. Fire Sprinkler Suppliers & Desing, Inc.*, 382 N.W.2d 386, 390 (N.D. 1986) (simplification of the judicial task favored no state when court saw "no particular difficulty in applying either state's rules for construing" relevant contracts).

[37] *Daley*, 1998 ND 225, ¶ 11.

[38] *Apollo Sprinkler*, 382 N.W.2d at 390-91.

[39] *Plante*, 494 N.W.2d at 143 (citation omitted).

[40] *See* Sec. II(A), *supra*.

[41] *Apollo Sprinkler*, 382 N.W.2d at 390-91.

9

But "[p]rotecting North Dakota [or South Dakota] residents whenever North Dakota [or South Dakota] has any contacts with a controversy . . . is the kind of 'chauvinistic parochialism' sought to be avoided by modern choice-of-law analysis."[42] This factor favors the application of Minnesota law.

### E. Application of the better rule of law favors no state.

The final factor is the application of the better rule of law.[43] "By 'better,' Leflar meant the rule that made 'good socio-economic sense for the time when the court speaks.' . . . [H]owever, '[s]ometimes different laws are neither better nor worse in an objective way, just different.'"[44] Plaintiffs do not argue that one state's legal paradigm provides better socio-economic sense than the other.[45] Nor has RRSB identified any such argument. Instead, it simply appears that the respective state laws are "'neither better nor worse in an objective way, just different.'"[46] As such, RRSB defers to the Court's judgment on this factor, or respectfully submits that this factor favors no state.

### CONCLUSION

This Court is to apply North Dakota's significant contacts test to determine which state's substantive law to apply to Plaintiffs' claims for deceit and fraud. Under North Dakota's significant contacts test, not a single factor supports the application of North Dakota or South Dakota law. And while two factors are neutral, the other three factors clearly favor

---

[42] *Plante*, 494 N.W.2d at 143 (citation omitted).

[43] *Daley*, 1998 ND 225, ¶ 11.

[44] *Id.* at ¶ 34 (alteration in original) (citations omitted).

[45] ECF No. 8, at 9-11.

[46] *Daley*, 1998 ND 225, ¶ 34 (citations omitted).

the application of Minnesota law to Plaintiffs' deceit and fraud claims.  Accordingly, RRSB respectfully requests that this Court determine that Minnesota law controls Plaintiffs' claims for deceit and fraud, and, for the reasons previously set forth,[47] that the Court dismiss Plaintiffs' claims for deceit and fraud for failure to state a claim upon which relief can be granted.

Dated this 11th day of August, 2025.

**VOGEL LAW FIRM**

BY: /s/ Drew J. Hushka
Caren W. Stanley (#06100)
cstanley@vogellaw.com
Drew J. Hushka (#08230)
dhushka@vogellaw.com
Kesha L. Tanabe (#0387250)
ktanabe@vogellaw.com
218 NP Avenue
PO Box 1389
Fargo, ND  58107-1389
701.237.6983
ATTORNEYS FOR DEFENDANT

---

[47] *See generally* ECF No. 7, Def.'s Br. In Supp. of Mot. to Dismiss, at §§ IV(B) & V(B); ECF No. 13, at §§ IV(B)(1)(b) & V(B)(1)(b).

11

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In Re: <br><br> Generations on 1st LLC, <br><br> Debtor. | Case No.: 25-30002 <br><br> Chapter 11 |
| In Re: <br><br> Parkside Place LLC, <br><br> Debtor. | Case No.: 25-30003 <br><br> Chapter 11 |
| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> Red River State Bank, <br><br> Defendant. | Adversary No.: 25-07009 |

## CERTIFICATE OF SERVICE

STATE OF NORTH DAKOTA   )
                        )   SS
COUNTY OF CASS          )

Justin Schares, being first duly sworn, does depose and say: he is a resident of Cass County, North Dakota, of legal age and not a party to or interested in the above-entitled matter.

On August 11, 2025, affiant caused the following document(s):

1. **DEFENDANT'S POST-HEARING BRIEF RE SIGNIFICANT CONTACTS AND CHOICE OF LAW**

2

to be served electronically to the following:

*ALL ECF Participants.*

                     */s/ Justin Schares*
                     Justin Schares

Subscribed and sworn to before me this 11th day of August, 2025.


                     */s/ Sonie Thompson*
(SEAL)            Sonie Thompson
                     Notary Public, Cass County, North Dakota

2