IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-30002 |
| | ) | (Chapter 11) |
| GENERATIONS ON 1ST, LLC | ) | |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | Case No. 25-30003 |
| In re: | ) | (Chapter 11) |
| | ) | |
| PARKSIDE PLACE, LLC | ) | Jointly Administered |
| | ) | |
| Debtor | ) | |
| _____ | ) | |
| | ) | Adv. Case No. 25-07009 |
| GENERATIONS ON 1ST, LLC, *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RED RIVER STATE BANK | ) | |
| | ) | |
| Defendant | ) | |
| _____ | ) | |

## **SUPPLEMENT TO OPPOSITION TO MOTION TO DISMISS**

Come now Generations on 1st, LLC ("Generations"), Parkside Place, LLC ("Parkside")
and The Ruins, LLC ("Ruins") (collectively, the "Debtors" or "Plaintiffs" and each a "Debtor" or
"Plaintiff"), by and through undersigned counsel, pursuant to this Honorable Court's order of July
11, 2025, DE #25, and supplement their previously-filed opposition (the "Opposition"), DE #8, to
the Motion to Dismiss (the "Motion"), DE #7, filed by Red River State Bank ("RRSB" or the
"Defendant") and state as follows:

## I.      Introduction

When victims of internet scams seek civil justice, few (if any) are the defendants who colorably allege the laws of some foreign nation ought to control. That a document was drafted in Lagos, or that a call originated from Nigeria, matters quite little when a victim is present in Arizona. And while the frauds and deceits upon which this suit are premised are assuredly not to be conflated with those of faux princes or fictitious heirs, the same general legal principle holds: the Debtors were deceived and defrauded in North Dakota and are accordingly entitled to avail themselves of the legal protections—and civil statutory scheme—of North Dakota.

This brief follows the parties' docketing of a stipulation as to significant contacts (the "Stipulation"), DE #22, which brings into sharper relief the whereabouts of various actors at various times. What that document ultimately reveals, however, is that a North Dakota citizen and his troika of North Dakota entities were baited while in North Dakota, executed crucial documents while in North Dakota, and ultimately sought civil recourse in a federal court situated in North Dakota. Yes, a lot of the alleged conning occurred from within Minnesota. And, yes, at least one document was executed on the bed of a pickup truck in Minnesota. But the most significant actions giving rise to the victimization of the Debtors, and informing their topically pertinent claims for relief, occurred in North Dakota.

For these reasons, and as extrapolated upon *infra*, the Debtors stand by their assertion that North Dakota law ought to control the claims for deceit and fraud in this case.

## II.     Standard

Since the topic has already been thoroughly briefed, and there appears to be minimal disagreement as to the controlling legal standard, the Debtors will forbear from restating the whole of their topical legal citations herein. Suffice it to posit, however, that (i) this Honorable Court

should apply the choice-of-laws principles of North Dakota, *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 959 (8th Cir. 2017); and (ii) those principles turn on a two-part test, first considering the relevant scope of contacts and, second, addressing the forum with the most significant interest in the issues, *Nodak Mut. Ins. Co. v. Wamsley*, 687 N.W.2d 226, 231 (N.D. 2004).

Assessment of the most significant interest in the issues, in turn, invites disjunctive consideration of five criteria: "predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interests, and application of the better rule of law. . ." *Nodak*, 687 N.W.2d at 231 (citing *Issendorf v. Olson*, 194 N.W.2d 750, 756 (N.D. 1972) (citing Robert A. Leflar, *Choice-Influencing Considerations in Conflicts Law*, 41 N.Y.U.L. Rev. 267, 282 (1966)).

### III.    Argument: The Stipulation Sets Forth Facts Showing North Dakota Law Applies

Critical to the resolution of applicable law is the location of the Debtors when they were allegedly deceived and defrauded. Had they willingly sojourned to Rhode Island in search of financing, only to be duped by an unscrupulous Ocean State lender while sitting in a Providence meeting room, the Debtors' argument for application of North Dakota law would be weakened. Yet the Stipulation, coupled with the factual allegations of the complaint (the "Complaint"), DE #1, instead reveal that a Minnesota-based bank actively traveled to—and communicated into— North Dakota so as to accomplish the allegedly deceitful and fraudulent ends for which it is now being sued. And those instances of active travel and communication properly invite the application of North Dakota law.

The Stipulation establishes that all three Debtors have their principal place of business in North Dakota. *See* Stipulation, DE #22, at ¶¶ 1-3. While seemingly never a point of contention, this is important in establishing North Dakota as the Debtors' "home base," and showing that their

receipt of solicitations, false representations, and statements devoid of material facts, whilst in North Dakota, is not a geographic coincidence.

The document goes on to most pertinently address (i) the negotiation of term sheets (the "Term Sheets"); and (ii) the negotiation and execution of a forbearance agreement (the "Forbearance Agreement"). These are the actions most facially relevant to the claims for deceit and fraud in the Complaint. *See* Complaint, DE #1, at ¶¶ 120-137 (inclusive of topically-relevant preceding paragraphs incorporated therein).

Critically, while the Stipulation pays a great deal of attention to the execution of loan documents at temporal junctures between the tendering of the Term Sheets and the signing of the Forbearance Agreement, those documents do not form nearly as vital a part of the Debtors' topical claims. The loan documents are, no doubt, relevant to the claims: they are the instrumentalities through which RRSB ultimately perpetrated the Term Sheet fraud, and they are the instrumentalities subject to the Forbearance Agreement (excepting those signed by Ruins). But it is the Term Sheets to which the Debtor points in noting false representations and material omissions to have been made, just as it is the Forbearance Agreement the Debtors rely upon in furtherance of rather specific allegations of bait-and-discreetly-switch conduct.

In addressing the Term Sheets, the Stipulation makes clear that the Debtors' principal was present in North Dakota when these documents were negotiated. *See* Stipulation, DE #22, at ¶ 7. This means, in turn, that the false representations, and the material non-disclosures, were made at such a time as the Debtor's operative agent was in North Dakota. *Id.*

The foregoing should be sufficient to establish that the Debtors were deceived and defrauded whilst in North Dakota. Yet the Stipulation does, too, go one step further, noting that the Debtors' principal recollects RRSB's then-applicable executive traveling to North Dakota for

4

multiple meetings as part of the negotiation process (albeit with the Debtors' principal, in turn, venturing into Minnesota to tour bank facilities). *Id.* And this means the deceit and fraud were not merely perpetrated across state lines, from Minnesota into North Dakota, but, too, somewhat (though not entirely) also perpetrated from *within* North Dakota.

Coupled with the Complaint's allegation that RRSB actively solicited the Debtors' business, Complaint, DE #1, at ¶¶ 29-30, the picture is quite clear: A Minnesota bank elected to seek out business in North Dakota, sent (telephonically and via e-mail) false representations into North Dakota, omitted material facts when sending communications into North Dakota, and dispatched an agent to negotiate in North Dakota while making false representations—and omitting the disclosure of material information—from within North Dakota.

The Forbearance Agreement follows a similar geographic arc. The Debtors, through their principal, were present in North Dakota when the document was negotiated. Stipulation, DE #22, at ¶ 82. The Debtors' (former) counsel was, too, present in North Dakota. *Id.* The document was then physically delivered to the Debtors, in North Dakota, by the bank's agent. *Id.* at ¶ 83. The document, in turn, was executed by the Debtors in North Dakota. *Id.* The document was returned to RRSB by the Debtors, both digitally and via US Mail, from within North Dakota. *Id.* at ¶¶ 84-85.

The fraud and deceit alleged of the Forbearance Agreement concern a particularly insidious form of bait-and-switch, where RRSB presented one form of document to be reviewed by the Debtors and their (former) counsel, Complaint, DE #1, at ¶¶ 70-71, and then presented a materially different document to the Debtors for execution, *id.* It is not the negotiation of the Forbearance Agreement that gives rise to the correlative part of the claims for fraud and deceit; it is the presentation of a materially-altered document, for execution, that informs this part of the relevant

5

claims. And the Stipulation makes abundantly clear that fraudulent and deceitful presentation occurred with both the Debtors *and* RRSB physically present in North Dakota, as did the Debtors' execution of the Forbearance Agreement in detrimental reliance upon the falsities and omissions.

## IV.    Application of the *Nodak* Factors

The Debtors chiefly stand by their application of the *Nodak* factors, as set forth in the Opposition. Nor does the foregoing seem to materially alter the prior discussion of "maintenance of interstate and international order" (it is still unlikely hostilities will anytime soon break out between Bismarck and St. Paul), "simplification of the judicial task" (asking a federal court situated in Fargo to apply either North Dakota or Minnesota law is seemingly commonplace), or "application of the better rule of law" (the Debtors maintain North Dakota has the higher quality legal framework but the Debtors also remain thoroughly unwilling to demean the legal scheme of a neighboring state). Yet the Stipulation does call into sharper relief the considerations of "predictability of results" and "advancement of the forum's governmental interests."

It remains entirely predictable that an actor sending written and oral communications into North Dakota, dispatching an agent to negotiate in North Dakota, and then having a senior executive courier fraudulently-switched documents into North Dakota for signature, will be sued under the prevailing tort provisions of North Dakota law. That the victims of the tortious conduct are headquartered in North Dakota only makes this reality all the more apparent. *See McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 903 n.11 (2011) ("Even as many jurisdictions have modified the traditional rule of *lex loci delicti*, the location of injury continues to hold sway in choice-of-

6

law analysis in tort cases.") (citing Whytock, *Myth of Mess? International Choice of Law in Action*, 84 N. Y. U. L. Rev. 719 (2009)).

The predictability of results is not altered by the fact that some of the fraudulent and deceitful communications emanated from within Minnesota. The tortious communications were received in North Dakota, representations premised upon false and materially incomplete information occurred in North Dakota, and RRSB solicited the at-issue business in North Dakota. Quite simply, retreating to one's home base, mid-fraud, does not alter reasonable expectations about the legal provisions that will ultimately govern recourse for that fraud, especially when the coup de grâce—in the form of a bait-and-switch document scheme—is then physically perpetrated in North Dakota.

The forum's governmental interests are also impacted by the Stipulation. Notably, this prong does not turn on *any* state's governmental interests but, rather, merely those of the "forum" state. And this, in part, explains why it is that seemingly neither party is advocating for the application of South Dakota law, despite the three debtors' respective eponymous structures being in Watertown. Generations, Parkside, and Ruins are each headquartered in North Dakota, and each now sues for redress for tortious conduct perpetrated upon them in North Dakota; the forum state assuredly has a vested interest in protecting its corporate citizenry. And while no doubt a seemingly slighter criterion, such does still merit recognition as tipping in favor of the laws invoked in the Complaint.

## V.    Notation Concerning Amendment

Finally, the Debtors note that the order granting in part, and denying in part, the Motion dismisses two causes of action with leave to amend. DE #18 at pp. 15, 18. One of the opportunities

for amendment involves the identification of a predicate creditor; the other concerns repleading a claim originally brought as a negligence per se action.

Following entry of this Honorable Court's order, counsel for the Debtors spoke with counsel for RRSB and an informal understanding was reached that further ruling, on the issues discussed *supra*, would be sought before (i) the Debtors endeavored to amend; or (ii) RRSB endeavored to file an answer. The Debtors intend to adhere to this understanding, which promotes economy and efficiency. And they express such herein simply to explain, slightly more formally, why it is that they have not already taken the wholly predictable step of docketing an amendment that (i) identifies one of the predicate creditors already listed on the Debtors' schedules; and (ii) adjusts a negligence per se claim premised upon lending limit violations to a more "vanilla" negligence claim that speaks to a bank's duty to borrowers not to exceed responsible lending thresholds.

## VI.   Conclusion

WHEREFORE, the Plaintiffs respectfully pray this Honorable Court (i) apply North Dakota law to Counts III and IV of the Complaint, in the prism of considering the Motion; and (ii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

Respectfully Submitted,

Dated: August 11, 2025      By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com

/s/ Christianna A. Cathcart
Christianna A. Cathcart, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 970-2770
christianna@dakotabankruptcy.com

*Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig