**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 25-30002 |
| | ) | Chapter 11 |
| Generations on 1st, LLC | ) | |
| | ) | |
|      Debtor, Jointly Administered. | ) | |
| | ) | |
| Parkside Place, LLC | ) | Bankruptcy No. 25-30003 |
| | ) | Chapter 11 |
|      Debtor, Jointly Administered. | ) | |
| | ) | |
| The Ruins, LLC | ) | Bankruptcy No. 25-30004 |
| | ) | Chapter 11 |
|      Debtor. | ) | |
| | ) | |
| | ) | Adversary No. 25-7009 |
| Generations on 1st, LLC, Parkside | ) | |
| Place, LLC and The Ruins, LLC, | ) | |
| | ) | |
|      Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| Red River State Bank, | ) | |
| | ) | |
|      Defendant. | ) | |

**ORDER**

## I.    INTRODUCTION

On February 26, 2025, Debtors Generations on 1st, LLC, Parkside Place, LLC
and The Ruins, LLC filed an Adversary Complaint against Defendant Red River State
Bank ("RRSB"). In their Complaint, Debtors allege that the Forbearance Agreement
Generations, Parkside Place and RRSB executed is void as a fraudulent transfer under
both bankruptcy law and state law, RRSB defrauded or deceived Debtors and RRSB is
liable for negligence per se. Debtors seek an order avoiding the Forbearance

Agreement and finding it void, an attorney fee award, compensatory and punitive damages, and declaratory relief granting Debtors an accounting of the payment history for their loans with RRSB.  Doc. 1.  RRSB filed a Motion to Dismiss.  Doc. 8.

In July, the Court entered an order denying the motion in part and granting the motion in part.  Doc. 18.  It held RRSB's request to dismiss Debtors' fraud and deceit claims in abeyance to allow the parties to supplement the record with stipulated facts related solely to the choice of law issue raised by the parties.  The parties filed a Stipulation as to Significant Contacts and supplemental briefs supporting their arguments regarding which law should apply.  Docs. 22, 24, 25.

For the reasons that follow, the Court finds that North Dakota law applies to Debtors' fraud and deceit claims, and that Debtors alleged plausible claims for relief in Counts III and IV.  RRSB's Motion to Dismiss Debtors' fraud and deceit claims is denied.

## II.    FACTS

In the context of this motion, the Court considered the factual allegations in Debtors' Complaint, accepting them as true and construing all reasonable inferences in favor of Debtors.  Additionally, the Court considered the Forbearance Agreement dated February 17, 2023 [Doc. 7, ex. 1] and the Stipulation as to Significant Contacts [Doc. 22].

## III.    ANALYSIS

### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable in this adversary proceeding under Federal Rule of Bankruptcy Procedure 7012(b), specifies that a party

may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true the factual allegations in the complaint and construes all reasonable inferences in favor of the nonmoving party. Par v. Wolfe Clinic, P.C., 70 F.4th 441, 445 (8th Cir. 2023). Accordingly, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Norgren v. Minn. Dep't of Hum. Servs., 96 F.4th 1048, 1054 (8th Cir. 2024) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Kelly v. City of Omaha, 813 F.3d 1070, 1075 (8th Cir. 2016) (quoting Iqbal, 556 U.S. at 678). "'[C]onclusory statements' and 'naked assertion[s] devoid of further factual enhancement'" are insufficient to satisfy this standard. Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768 (8th Cir. 2012) (alteration in original) (citation omitted).

Although courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017) (quoting Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)); see also Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) ("Because

these two documents are referred to either directly (the POA) or by inference (the

amended partnership agreement) in the complaint and their authenticity is not

questioned, we find that the district court appropriately considered them in ruling on the

motion to dismiss.").

The Complaint includes fraud allegations.  Consequently, Debtors must satisfy

the heightened pleading standard under Rule 9 of the Federal Rules of Civil Procedure

for these fraud allegations.  "Because deceit is a claim grounded in fraud, it must also

meet the heightened pleading requirements." See Henry Hill Oil Servs., LLC v. Stomley

Sales & Consulting, LLC, 2021 WL 6424908, at *9 (D.N.D. July 22, 2021) (citing

Shangcheng Dev., LLC v. Norvanta, LLC, 2015 WL 11143143, at *2 (D.N.D. May 27,

2015)).

Although Rule 9(b) imposes a more exacting pleading standard, the "special

nature of fraud does not necessitate anything other than notice of the claim; it simply

necessitates a higher degree of notice."  Abels v. Farmers Commodities Corp., 259 F.3d

910, 920 (8th Cir. 2001).  The plaintiff must allege "circumstances constituting fraud."

Id.; Fed. R. Civ. P. 9(b).  In other words, plaintiffs must "plead the 'who, what, where,

when, and how.'" Ascente Bus. Consulting, LLC v. DR myCommerce, 9 F.4th 839, 845

(8th Cir. 2021) (quoting Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC, 949

F.3d 417, 421 (8th Cir. 2020)).

## B.   State Law Deceit and Fraud Causes of Action

### 1.   Choice of Law

In Count III, Debtors allege a cause of action seeking a remedy for deceit under

North Dakota law.  In Count IV, Debtors allege a cause of action seeking a remedy for

4

fraud under North Dakota law.  The parties dispute which law applies to these deceit and fraud claims and causes of action.  RRSB maintains Minnesota law applies, and Debtors claim North Dakota law applies.

The parties agree that this Court should apply the choice-of-law rules of the forum state in deciding which law to apply.  The Court concurs.  <u>See</u> <u>Wanzek v. AllState Tower, Inc.</u>, 2013 WL 3229904, at *7 (D.N.D. June 25, 2013).

North Dakota applies a hybrid two-prong test.  First, a court applying the North Dakota significant contacts test determines "all of the relevant contacts which might logically influence the decision of which law to apply." <u>Daley v. Am. States Preferred Ins. Co.</u>, 587 N.W.2d 159, 162 (N.D. 1998).  Next, the court must apply "[Robert A.] Leflar's five choice-influencing factors to determine which jurisdiction has the more significant interest with the issues in the case."  <u>Id.</u>

Under the first prong, North Dakota's significant contacts analysis mirrors the Second Restatement analysis.  <u>Id.</u>  The relevant contacts depend on whether the cause of action considered lies in tort or contract.  <u>Id.</u>  RRSB maintains that the relevant contacts in this case are those included in section 148 of the Second Restatement[1]

---

[1] Section 148 titled "Fraud and Misrepresentation" provides:

(1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum

applicable to fraud and misrepresentation rather than the tort contacts listed in section

145 of the Second Restatement.[2]   Under either analysis, the relevant contacts are the

same.

_____

will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148 (1971).

[2] Section 145 titled "The General Principle" Provides:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

In Count III - Deceit, Debtors allege RRSB suggested to Debtors it had the ability to lawfully make the loans at issue when it knew, or should have known, it could not do so.  Compl. ¶¶ 121–122.  Debtors also allege RRSB suggested to Debtors that it had— or had access to—the funds necessary to make the loans when it knew, or should have known, it lacked the necessary funds.  Additionally, Debtors allege that RRSB did not disclose to Debtors that the loans at issue violated applicable state and federal lending limit laws.  Debtors also claim, "RRSB knew that Mr. Aarestad swapped out the form of a forbearance agreement, after presenting the same to Mr. Craig for review," failed to disclose this information and never shared the Forbearance Agreement or Draft Forbearance Agreement with Ms. Craig.  The allegations in Count IV – Fraud are virtually the same.

The contacts relevant to these allegations are: Generations on 1st, Parkside Place and the Ruins are entities organized under South Dakota law, existing for the purpose of developing and operating residential apartment complexes in South Dakota. The principal place of business of each of the Debtors is Fargo, North Dakota.  Jesse Craig is the sole member of each of the Debtors.  RRSB is a financial institution chartered under Minnesota law that maintains its business locations in Minnesota.

RRSB created or produced the term sheets and loan documents.  The negotiations necessary to complete the term sheets and loan agreements took place through telephonic and email communications between the parties, with Craig in North Dakota and the bank representative in Minnesota.  To the extent in-person meetings included negotiations, the parties represent that some of these meetings took place in North Dakota and some took place in Minnesota.  Craig signed some loan agreements

7

in North Dakota and some in Minnesota. Debtors sent loan payments from North Dakota that were received in Minnesota.

Similarly, the negotiations necessary to reach the Forbearance Agreement took place through telephonic and email communications between the parties, with Craig and counsel in North Dakota and the bank representative in Minnesota. RRSB delivered the Forbearance Agreement to Craig in North Dakota where he signed it. Craig emailed and mailed the original signature page to RRSB in Minnesota.

Framing these contacts within the Restatement Second guidance: Debtors received the alleged misrepresentations in North Dakota, acted in reliance on RRSB's alleged misrepresentations in North Dakota (Debtors' principal place of business) and suffered injury in North Dakota and South Dakota; RRSB made the alleged misrepresentations in Minnesota (RRSB's principal place of business); Debtors are incorporated in South Dakota, the residential apartment complexes are in South Dakota and Debtors rendered performance under the contracts and Forbearance Agreement in North Dakota and South Dakota.

Having considered the relevant contacts, this Court then measures the relevant contacts by reference to the seven policy principles listed in section 6 of the Restatement:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

8

(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Several of these principles are the same as the factors considered in the second prong of North Dakota's conflict of laws analysis and are meant to "further define the contours" of the Leflar factors. Daley, 587 N.W.2d at 163. Accordingly, the Court begins it analysis with the Leflar factors, which are:

A. Predictability of results;

B. Maintenance of interstate and international order;

C. Simplification of the judicial task;

D. Advancement of the forum's governmental interests;

E. Application of the better rule of law.

Id. at 162 (quoting Robert A. Leflar, *Choice–Influencing Considerations in Conflicts Law,* 41 N.Y.U. L.Rev. 267, 282 (1966)).

### a.    Predictability of Results

"[T]he objective of the predictability factor is to fulfill the parties' justified expectations." Id. 587 N.W.2d at 164. RRSB argues that predictability of results favors Minnesota law because the parties agreed that Minnesota law would apply to disputes under the parties' contracts. RRSB points to 63 clauses in the loan agreements and a provision in the Forbearance Agreement it claims govern, or should govern, the choice of law issues in this case.

The choice of law provisions in the loan agreements provide that the agreements will be governed by federal law applicable to RRSB and, to the extent not preempted by

9

federal law, Minnesota law governs.  The Forbearance Agreement provides that, "This Agreement shall be interpreted and construed in accord with the laws of the State of Minnesota."  Doc. 7 at 34.  This language pertains to contractual interpretation of the parties' rights and duties under the agreements. It does not encompass torts such as fraud and deceit.  See Erickson v. Brown, 2008 ND 57, ¶ 25, 747 N.W.2d 34 ("Pioneer Fuels and our statutory provisions for deceit do not preclude tort recovery if the separate elements of deceit are established." (quoting Delzer v. United Bank of Bismarck, 527 N.W.2d 650, 653 (N.D. 1995))); WFND, LLC v. Fargo Marc, LLC, 2007 ND 67, ¶ 33, 730 N.W.2d 841 ("Fraud is a tort action."); Wanzek v. Allstate Tower, Inc., 2013 WL 3229904, at *8 (D.N.D. June 25, 2013) ("the plain language of the choice-of-law clause clearly limits its application to the provisions of the Agreement itself. Tort claims are outside the provisions of the Agreement, and are, therefore, subject to standard analysis for choice of laws." (citing Inacom Corp. v. Sears, Roebuck and Co., 254 F.3d 683, 687 (8th Cir. 2001)).

While the choice of law provisions do not compel the Court to find that Minnesota law applies to Debtors' deceit and fraud claims, these provisions are a factor the Court considers in the context of predictability of the result and the parties' justified expectations.  These provisions do not weigh heavily in this case because deceit and fraud are not conduct that parties typically anticipate, and there are no allegations that Debtors predicted these torts.  See Rostvet v. Lock City Transp. Co., Inc., 2013 WL 11941563, at *4 (D.N.D. Nov. 7, 2013) (citing Leflar, supra, § 104; Apollo Sprinkler Co. v. Fire Sprinkler Suppliers & Design, Inc., 382 N.W.2d 386, 390 (N.D. 1986)) ("Therefore, in tort cases the interest in predictability is not a major consideration when

10

"pitted against interests of some other character."); Am. Fire and Casualty Co. v. Hegel, 847 F.3d 956, 961 (8th Cir. 2017) (finding that, while predictability of results plays an important role when parties enter contracts, "'parties do not commit torts in one state rather than another because of that state's tort laws.'" (citation omitted).

Debtors counter RRSB's argument with their claims that RRSB ventured to North Dakota to solicit Debtors' business, Debtors received the allegedly fraudulent misrepresentations in North Dakota, RRSB delivered the swapped version of the Forbearance Agreement to Craig in North Dakota where he signed it, and Debtors allegedly suffered injury including financial loss and construction delays in North Dakota and South Dakota. Compl. ¶¶ 29–45, 120–37, prayer for relief in Counts III and IV. These contacts weigh more heavily. Accepting Debtors' allegations as true, the Court finds that the circumstances alleged suggest that the parties justifiably expected North Dakota law to apply.

### b.    Maintenance of Interstate and International Order

In Daley, the North Dakota Supreme Court explained that the second factor is "primarily concerned with whether the application of North Dakota law would manifest disrespect for Minnesota's sovereignty." 587 N.W.2d at 164–65. More directly, "[a] state's application of its law to a transaction whose significant contacts are primarily with another state may induce retaliation in kind." Id. at 165 (alteration in original).

Although the agreements at issue were produced in Minnesota and RRSB received payments toward the loans in Minnesota, North Dakota is the state with the more significant contacts. Debtors issued payments toward the RRSB loans in North Dakota, received the allegedly fraudulent misrepresentations in North Dakota, RRSB

11

delivered the Forbearance Agreement to Craig in North Dakota where he signed it, and Debtors allegedly suffered injury including financial loss and construction delays in North Dakota and South Dakota. Based on the allegations in the Complaint and the Stipulation as to Significant Contacts, maintenance of interstate order does not require application of Minnesota law.

### c.    Simplification of the Judicial Task

The parties agree that the third factor, simplification of the judicial task, does not influence the Court's decision.  See also Hughes v. Wal-Mart Stores, Inc., 250 F.3d 618, 620 (8th Cir. 2001) ("A federal district court is faced almost daily with the task of applying some state's law other than that of the forum state, and it is equally capable of resolving the dispute under Louisiana or Arkansas law.").  The Court agrees that this factor favors no particular state's law.

### d.    Advancement of the Forum's Governmental Interests

"This factor requires the court to examine the rationale for the state's law and decide whether the forum has a more significant interest in applying its laws."  Rostvet v. Lock City Transp. Co., 2013 WL 11941563, at *4 (D.N.D. Nov. 7, 2013) (citing Am. Family Mut. Ins. Co. v. Farmers Ins. Exch., 504 N.W.2d 307, 310–11 (N.D. 1993)).  To avoid an artificial dispute, the Court must decide if the states' interests genuinely conflict.  Although Debtors highlighted the difference between North Dakota and Minnesota law pertaining to fraud and deceit, neither party highlighted a conflict in state interests.

In Daley, the North Dakota Supreme Court explained its "concern in applying the law of the state that has significantly less contacts than another."  587 N.W.2d at 165.

12

In this case, the number of contacts highlighted by the parties in their Stipulation as to

Significant Contacts is roughly the same but, as outlined above, the more significant

contacts favor application of North Dakota law.  Accordingly, North Dakota's

governmental interests are advanced by application of North Dakota law.

### e.      Application of the Better Rule of Law

"The 'better rule of law' analysis is always one that is highly debatable."  Rostvet,

2013 WL 11941563, at *5.  "Sometimes different laws are neither better nor worse in an

objective way, just different."  Daley, 587 N.W.2d at 166 (quoting Jepson v. Gen. Cas.

Co. of Wis., 513 N.W.2d 467, 473 (Minn. 1994)).  RRSB does not argue that any state's

law is superior; rather, it maintains that the laws are "just different."  In their opposition

brief, Debtors compared North Dakota law pertaining to fraud and deceit (which is

codified) and Minnesota law pertaining to fraud and deceit (which is developed through

common law).  They suggest that the "application of clean, statute-based mandates

invites a more predictable course of litigation than does the application of ever-evolving

case law."  Doc. 8 at 19.  Neither party advocated for the application of South Dakota

law.  The Court agrees with RRSB; neither North Dakota law nor Minnesota law are

preferable.  The law pertaining to fraud and deceit in North Dakota, Minnesota and

South Dakota advance important societal interests.  This factor weighs in favor of no

particular state law.

After applying the hybrid two-prong conflict of law analysis, the Court finds that

North Dakota has the more significant contacts and interest.  Accordingly, North Dakota

law governs the analysis of Debtors' fraud and deceit claims alleged in Counts III and

IV.

2.    **Analysis of Fraud and Deceit Claims under North Dakota Law**

a.    **Release**

RRSB argues that Generations and Parkside Place released their fraud and deceit claims against RRSB when they executed the Forbearance Agreement, which includes a release provision. The language of the release provides a broad waiver of all claims and causes of action related to or arising from Generations' and Parkside Place's indebtedness to or loans from RRSB.

In response, Generations and Parkside Place argue that RRSB procured the release by fraud. They maintain that, "it would be premature to dismiss any causes of action on account of a release that appears to be subject to avoidance under federal and state law as well as recission under state law." Doc. 8 at 26.

RRSB counters with the proposition that Debtors did not allege that Generations and Parkside Place were fraudulently induced into the release. Instead, Generations and Parkside Place allege they were fraudulently induced into an increased interest rate. Maintaining that the provisions of the agreement are severable, RRSB claims only the interest rate provision is subject to revocation.

The Court is not convinced that Debtors' remedy for the allegedly fraudulent act of swapping the originally negotiated forbearance agreement for the Forbearance Agreement Debtors signed is as restricted as RRSB claims. Although Debtors argue fraud and deceit in the inducement of the release in their brief, Debtors allege fraud and deceit in the inducement of the Forbearance Agreement in their Complaint. In their Complaint, Debtors allege RRSB knew its representative swapped out the form of a

14

forbearance agreement for a document that was materially different that the document Craig reviewed.  Compl. ¶¶ 126–128, 135–137.  They also allege RRSB failed to disclose that the document RRSB asked Craig to sign was materially different than the document Craig was sent to review.  Id.  Under North Dakota law, if consent to a contract is obtained by fraud, undue influence, duress, menace or mistake, there is no contract, and the contract is subject to recission. See N.D.C.C. § 9-09-02; Mathias v. State Farmers' Mut. Hail Ins. Co., 168 N.W. 664, 665 (N.D. 1918) ("… the signing of a paper does not make a contract. Under the plain words of the statute, there can be no contract where the consent of the parties to the terms of the same is not free and mutual and consent is not free when it is obtained by fraud, undue influence, or mistake.")  Assuming the facts Debtors alleged are true and construing all reasonable inferences in their favor, the release to which RRSB refers does not compel dismissal of either Count III or IV.

### b.    Fraud and Deceit under North Dakota law

Under section 9-10-02 of the North Dakota Century Code,

A deceit within the meaning of section 9-10-03 is:

1.    The suggestion as a fact of that which is not true by one who does not believe it to be true;
2.    The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
3.    The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or
4.    A promise made without any intention of performing.

N.D.C.C. § 9-10-02.  The definition of fraud under North Dakota law is similar.

Actual fraud within the meaning of this title consists in any of the following acts committed by a party to the contract, or with the party's connivance,

with intent to deceive another party thereto or to induce the other party to
enter into the contract:

1.     The suggestion as a fact of that which is not true by one who does
not believe it to be true;
2.     The positive assertion, in a manner not warranted by the
information of the person making it, of that which is not true though
that person believes it to be true;
3.     The suppression of that which is true by one having knowledge or
belief of the fact;
4.     A promise made without any intention of performing it; or
5.     Any other act fitted to deceive.

N.D.C.C. § 9-03-08.  As the language of the statutes shows, "fraud under NDCC 9–03

applies only when there is a contract between the parties; deceit under NDCC 9–10

applies when there is no contract between the parties."  Dewey v. Lutz, 462 N.W.2d

435, 439 (N.D. 1990) (citations omitted).  "Nevertheless, as pointed out long ago in

Beare v. Wright, 103 N.W. 632, 634 (N.D. 1905), conduct can be both fraudulent and

deceitful."  Id.

In their Complaint, Debtors allege RRSB falsely represented it could afford to

provide the loans promised with plans to "participate" the subject loans to other lenders

to ensure the availability of capital and compliance with regulations.  Compl. ¶¶ 31–32,

43–46, 121–128.  Additionally, Debtors allege RRSB knew or should have known that it

could not lawfully make the loans and that it lacked the funds necessary to make the

loans at issue, but it failed to disclose this information to Debtors.  Id.  Nevertheless,

RRSB promised to loan Debtors funds for the construction of the Generations, Parkside

Place and The Ruins projects followed by "permanent" financing upon completion of the

construction.  Id. at ¶¶ 30–40.   According to Debtors, RRSB failed to provide

permanent financing and refused to provide construction loans on the promised terms

and in the promised form.  Id. at ¶¶ 46–53, 62–63.  Lastly, Debtors allege a

16

representative of RRSB swapped the original forbearance agreement for the materially different Forbearance Agreement and asked Craig to sign the revised agreement.  Id. at ¶¶ 126–127.  Debtors also claim "RRSB did not disclose to Ms. Craig that the document she was being asked to sign was materially different than the document Mr. Craig had been first sent to review, though RRSB also never shared the Forbearance Agreement or Draft Forbearance Agreement with Ms. Craig at all, instead only leaving signature pages with Mr. Craig and instructing him to have her sign the same."  Id. at ¶ 128.

RRSB maintains that these allegations are insufficient to state a claim for either deceit or fraud because an alleged representation to provide funding in the future does not concern a past or present fact.  It also argues that it fulfilled its promises by loaning money and these loans were documented in loan agreements, which would negate a deceit claim.  In Delzer v. United Bank of Bismarck, the North Dakota Supreme Court ruled that a bank's promise to loan the Delzers additional funds for the purchase of cattle when the bank did not intend to perform its promise was sufficient to state a claim for deceit under North Dakota law.  559 N.W.2d 531, 534–35 (N.D. 1997).   Similarly, Debtors allege RRSB promised to extend construction loans followed by "permanent" financing when it knew or should have known it did not have the funds, could not obtain access to the funds and could not lawfully make the permanent loans.  Although RRSB advanced funds for construction pursuant to loan agreements, it allegedly declined to provide permanent financing.  The heart of this deceit claim lies with the promise of permanent financing, i.e., "the non-existence of the loan agreements that were not presented," [Doc. 8 at 39] when it knew it could not logistically or legally extend this

17

financing.  Granting all inferences in favor of Debtors, these allegations are sufficient to allege a plausible claim for deceit under North Dakota law.

Construing all reasonable inferences in favor of Debtors, the allegations in the Complaint are also sufficient to state a claim for fraud.  Debtors' allegations that RRSB falsely represented that it had the ability to lawfully make the construction loans at issue when the loans violated applicable state and federal lending limit laws state a plausible claim for fraud. Likewise, Debtors alleged a plausible claim for fraud when they claimed RRSB swapped out the form of the original forbearance agreement for the Forbearance agreement that included materially different terms.

RRSB argues Debtors' allegations regarding the Forbearance Agreement swap fail to state a claim for relief because a party to an agreement cannot complain of the terms of the agreement when it failed to read the agreement.  In other words, RRSB maintains it had no duty to disclose material facts to Generations and Parkside Place, who were parties to the Forbearance Agreement.

The Court is not convinced.  Accepting Debtors' allegations as true, RRSB suppressed a material change in the Forbearance Agreement when it declined to advise Craig of the interest rate revision.  Construing reasonable inferences in favor of Debtors, RRSB had a duty to disclose this revision under the circumstances.  RRSB's argument is rejected.

RRSB also claims that Debtors' deceit and fraud claims fail because Debtors cannot show they reasonably relied on these promises because the loan documents they signed included a "Notice of Final Agreement."  According to RRSB, Debtors

18

expressly agreed that RRSB was not committing to additional funding when Craig signed the Notices of Final Agreement on their behalf.

In analyzing a Rule 12(b)(6) motion to dismiss for failure to state a claim, courts primarily consider the complaint and documents attached to it. As noted above, courts may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." Zean, 858 F.3d at 526 (quoting Miller, 688 F.3d at 931 n.3). While Debtors agree that it is appropriate to consider the terms of the Forbearance Agreement, they argue that incorporating all the loan agreements goes too far. The Court agrees. If the Court considers the Aarestad Declaration with the 95 pages of documents attached to it, it must convert the motion to one for summary judgment and allow Debtors to respond with evidence. Neither party suggested that this is appropriate at this time. Consequently, the Court will refrain from ruling on the reliance issue until necessary at trial or requested in another dispositive motion.

Accordingly, the Court finds that Debtors alleged a plausible claim for deceit and fraud under North Dakota law. RRSB's Motion to Dismiss Counts III and IV is denied.

## IV.    CONCLUSION

For the reasons provided above and those included in the Order entered on July 11, 2025 [Doc. 11], it is **ORDERED** that RRSB's Motion to Dismiss is granted in part and denied in part as follows:

1.  RRSB's Motion to Dismiss Count I – Fraudulent Conveyance (11 U.S.C. § 548) is denied as to claims alleged by Generations and Parkside Place. To

the extent The Ruins seeks a remedy under section 548, RRSB's motion is granted; this cause of action is dismissed.

2. RRSB's Motion to Dismiss Count II – Fraudulent Conveyance (11 U.S.C. § 544; N.D.C.C. § 13-02.1-04) is denied as to claims alleged by Generations and Parkside Place.  Debtors are granted leave to amend to specifically name a predicate creditor. Failure to promptly amend may result in dismissal of Count II in its entirety. To the extent The Ruins seeks a remedy under section 544 and N.D.C.C. § 13-02.1-04, RRSB's motion is granted; this cause of action is dismissed.

3. RRSB's Motion to Dismiss Count III – Deceit is denied.

4. RRSB's Motion to Dismiss Count IV – Fraud is denied.

5. RRSB's Motion to Dismiss Count V – Negligence per se pertaining to violations of state law is granted.  This cause of action is dismissed without prejudice.  Debtors must seek leave to amend if they elect to make a similar claim under Minnesota law.

6. RRSB's Motion to Dismiss Count VI – Negligence per se pertaining to violations of federal law is denied without prejudice.

7. RRSB's Motion to Dismiss Count VII – Declaratory Relief (Entitlement to Accounting) is denied without prejudice.

Dated: September 11, 2025.


Shon Hastings, Judge
United States Bankruptcy Court

20