# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NORTH DAKOTA

| In Re: | Case No.: 25-30002 |
|---|---|
| | Chapter 11 |
| Generations on 1st LLC, | |
| Debtor. | |

| In Re: | Case No.: 25-30003 |
|---|---|
| | Chapter 11 |
| Parkside Place LLC, | |
| Debtor. | |

| Generations on 1st, LLC, Parkside Place, LLC, and The Ruins, LLC, | |
|---|---|
| Plaintiffs, | |
| vs. | |
| Red River State Bank, | Adversary No.: 25-07009 |
| Defendant and Third-Party Plaintiff, | |
| vs. | |
| Craig Development, LLC, Craig Properties, LLC, Jesse Craig, and Jordan Horner, | |
| Third-Party Defendants. | |

## DEFENDANT'S ANSWER AND COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant Red River State Bank ("RRSB"), as and for its Answer to the First Amended

Complaint ("Complaint"), states as follows:

## GENERAL DENIAL

RRSB denies each and every allegation set forth in the Complaint except as hereinafter admitted, qualified, or otherwise answered.   To the extent RRSB states that any of the allegations in the Complaint do not require a response, state a legal conclusion, speak for themselves, or some other similar qualification, but an admission or denial is required, RRSB denies all such allegations in the Complaint.

## INTRODUCTION

1.      Paragraph 1 does not contain factual allegations to which a response is required.

2.      Paragraph 2 is admitted only to the extent it is alleged that RRSB is a bank located in Minnesota.

3.      Paragraph 3 contains legal conclusions to which no response is required.

4.      Paragraph 4 contains legal conclusions to which no response is required.

5.      Paragraph 5 is admitted only to the extent that it is alleged that RRSB loaned in excess of $19 million to Plaintiffs that Plaintiffs have failed to repay.

6.      Paragraph 6 is denied.

7.      Paragraph 7 contains legal conclusions to which no response is required.

8.      Paragraph 8 is vague and contains legal conclusions to which no response is required. To the extent a response is required, Paragraph 8 is denied.

9.      Paragraph 9 is denied.

10.      Paragraph 10 is admitted only to the extent that it is alleged that RRSB sought to participate certain loans that were made to Plaintiffs.

11.      Paragraph 11 is denied.

12.      Paragraph 12 is denied.

13.     Paragraph 13 does not contain factual allegations to which a response is required. To the extent a response is required, Paragraph 13 is denied.

14.     Paragraph 14 is vague and contains legal conclusions to which no response is required.  To the extent any response is required, Paragraph 14 is denied.

15.     Paragraph 15 is admitted only to the extent it is alleged that Plaintiffs filed for bankruptcy in January of 2025. Deny the remaining allegations of Paragraph 15.

16.     Paragraph 16 contains legal conclusions to which no response is required.

17.     Paragraph 17 is admitted only to the extent that it is alleged that Plaintiffs remain obligated to RRSB.

## PARTIES

18.     Paragraph 18 is admitted on representation of counsel.

19.     Paragraph 19 is admitted.

20.     Paragraph 20 is admitted.

## JURISDICTION AND VENUE

21.     Paragraph 21 contains legal conclusions to which no response is required.

22.     Paragraph 22 contains legal conclusions to which no response is required.

### GENERAL ALLEGATIONS: RED RIVER STATES BANK

23.     Paragraph 23 does not contain factual allegations to which a response is required.

24.     Paragraph 24 is admitted only to the extent that it is alleged that RRSB was established in or about January of 1934.

25.     Paragraph 25 is admitted to the extent that it is alleged that RRSB is not a member of the Federal Reserve System.

26.     Paragraph 26 is admitted.

27.     Paragraph 27 is vague as Plaintiffs do not identify the "reported data" on which they base their allegation, leaving RRSB without sufficient information to confirm or deny the allegations.

28.     Paragraph 28 is admitted.

**GENERAL ALLEGATIONS: LOAN SOLICITATION AND PROMISES**

29.     Paragraph 29 is admitted to the extent that it is alleged Martin Peterson was an employee of RRSB that worked with Jesse Craig on the loans RRSB ultimately extended to Plaintiffs.   RRSB is without sufficient information to confirm or deny the remaining allegations in Paragraph 29.

30.     Paragraph 30 is denied.

31.     Paragraph 31 is vague as Plaintiffs do not identify when the alleged "represent[ations]" were made; RRSB affirmatively alleges that it entered into a number of loan agreements with Plaintiffs, the terms of which speak for themselves.

32.     Paragraph 32 is admitted to the extent that it is alleged that RRSB informed Plaintiffs that RRSB planned to participate certain loans to Plaintiff.

33.     Paragraph 33 is admitted to the extent that it is alleged that RRSB provided Plaintiff Parkside Place, LLC with a loan term sheet on or about October 19, 2020.  RRSB states the term sheet speaks for itself.

34.     Paragraph 34 is admitted to the extent that it is alleged that RRSB provided Plaintiff Parkside Place, LLC with a loan term sheet on or about October 19, 2020.  RRSB states the term sheet speaks for itself.

35.     Paragraph 35 is admitted to the extent that it is alleged that RRSB provided Plaintiff Generations on 1st, LLC with a loan term sheet on or about November 23, 2020. RRSB states the term sheet speaks for itself.

36.     Paragraph 36 is admitted to the extent that it is alleged that RRSB provided Plaintiff Generations on 1st, LLC with a loan term sheet on or about November 23, 2020. RRSB states the term sheet speaks for itself.

37.     Paragraph 37 is admitted to the extent that it is alleged that RRSB provided Plaintiff The Ruins, LLC with a loan term sheet on or about January 26, 2021.  RRSB states the term sheet speaks for itself.

38.     Paragraph 38 is admitted to the extent that it is alleged that RRSB provided Plaintiff The Ruins, LLC with a loan term sheet on or about January 26, 2021.  RRSB states the term sheet speaks for itself.

39.     Paragraph 39 is admitted to the extent that it is alleged that RRSB provided Plaintiff Parkside Place, LLC with a loan term sheet on or about October 19, 2020, Plaintiff Generations on 1st, LLC with a loan term sheet on or about November 23, 2020, and Plaintiff The Ruins, LLC with a loan term sheet on or about January 26, 2021.  RRSB states the term sheets speak for themselves.

40.     Paragraph 39 is admitted to the extent that it is alleged that RRSB provided Plaintiff Parkside Place, LLC with a loan term sheet on or about October 19, 2020, Plaintiff Generations on 1st, LLC with a loan term sheet on or about November 23, 2020, and Plaintiff The Ruins, LLC with a loan term sheet on or about January 26, 2021.  RRSB states the term sheets speak for themselves.

41.     Paragraph 41 is admitted to the extent that it is alleged that RRSB's deposits totaled approximately $112,823,000.00 in late 2020 and early 2021.

42.     Paragraph 42 is denied.

43.     Paragraph 43 is admitted to the extent that it is alleged that Charles Aarestad sent an email to Jesse Craig.  RRSB states that the words of the email speak for themselves.

44.     Paragraph 44 is admitted to the extent that it is alleged that First Dakota Title, or another third party, was not retained to handle draws or lien waivers in connection with the three projects.

45.     Paragraph 45 is denied.

**GENERAL ALLEGATIONS: MULTIPLE PROMISSORY NOTES, BANK DISORGANIZATION, AND SPOLIATED EVIDENCE**

46.     Paragraph 46 is admitted to the extent it is alleged that RRSB entered into multiple promissory notes for Plaintiff Generations on 1st, LLC.

47.     Paragraph 47 is admitted only to the extent it is alleged that RRSB entered into multiple loans with Plaintiff Generations on 1st, LLC and said loans are secured by liens on real and personal property.  RRSB states that the terms of the loan documents speak for themselves.

48.     RRSB is without sufficient information to confirm or deny the allegations in Paragraph 48.

49.     Paragraph 49 is admitted to the extent it is alleged that RRSB disbursed the loan funds as requested by Plaintiffs.

50.     Paragraph 50 is admitted to the extent it is alleged that RRSB entered into multiple promissory notes for Plaintiff Parkside Place, LLC.

51.     Paragraph 51 is admitted to the extent it is alleged that RRSB disbursed the loan funds as requested by Plaintiffs.

52.     Paragraph 52 is admitted to the extent it is alleged that RRSB entered into multiple promissory notes for Plaintiff The Ruins, LLC.

53.     Paragraph 53 is denied.

54.     RRSB is without sufficient information to confirm or deny the allegations in Paragraph 54.

55.     Paragraph 55 is admitted to the extent it is alleged that RRSB provided loans to Jesse Craig.

56.     Paragraph 56 contains legal conclusions to which no response is required.

57.     Paragraph 57 is admitted to the extent that it is alleged that RRSB holds  security interests in Debtors' assets.  RRSB states that the terms of the security agreements speak for themselves.

58.     Paragraph 58 is denied.

59.     Paragraph 59 is denied.

60.     Paragraph 60 is admitted to the extent it is alleged that Mr. Aarstad provides technological support for RRSB.

61.     Paragraph 61 of Plaintiffs' Complaint is ambiguous as the term "significant" is undefined; accordingly, RRSB lacks sufficient information to admit or deny the allegations in Paragraph 61 of Plaintiffs' Complaint.  RRSB affirmatively alleges that Plaintiffs defaulted on their obligations to RRSB.

## GENERAL ALLEGATIONS: FORBEARANCE AGREEMENT AND FRAUDULENT ALTERATION

62.     Paragraph 62 is admitted.

63.     Paragraph 63 is admitted only to the extent that it is alleged that RRSB refused to provide Plaintiff Generations on 1st, LLC with additional financing due to its existing defaults in February of 2022.

64.     Paragraph 64 is denied.

65.     Paragraph 65 is admitted only to the extent that it is alleged that RRSB declared Plaintiff The Ruins, LLC to be in default.

66.     Paragraph 66 is admitted only to the extent that it is alleged that in early 2023 RRSB requested Plaintiffs Generations on 1st, LLC and Parkside Place, LLC to execute a forbearance agreement.

67.     Paragraph 67 is admitted.

68.     Paragraph 68 is admitted to the extent that it is alleged that Jesse Craig agreed to enter into the forbearance agreement for Plaintiffs Generations on 1st, LLC and Parkside Place, LLC.

69.     Paragraph 69 is admitted.

70.     Paragraph 70 of Plaintiffs' Complaint is ambiguous as it does not identify any alleged "change[]" in the forbearance agreement; accordingly, RRSB lacks sufficient information to admit or deny the allegations in Paragraph 70 of Plaintiffs' Complaint.

71.     Paragraph 71 is admitted.

72.     RRSB is without sufficient information to confirm or deny the allegations in Paragraph 72.

8

73.     Paragraph 73 is admitted only to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

74.     Paragraph 74 is admitted only to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

75.     Paragraph 75 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

76.     Paragraph 76 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

77.     Paragraph 77 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

78.     Paragraph 78 is admitted only to the extent a $600,000 loan was made to Plaintiff The Ruins, LLC (and certain other borrowers) contemporaneous with the execution of the forbearance agreement.

79.     Paragraph 79 is admitted only to the extent a $600,000 loan was made to Plaintiff The Ruins, LLC (and certain other borrowers) contemporaneous with the execution of the forbearance agreement.

80.     Paragraph 80 is admitted only to the extent a $600,000 promissory note was presented to Plaintiff The Ruins, LLC (and other borrowers) and said promissory note speaks for itself.

81.     Paragraph 81 is denied.

82.     Paragraph 82 does not contain factual allegations to which a response is required.

**GENERAL ALLEGATIONS: MR. AARESTAD TRIES TO STEAL THE DEBTORS' EQUITY**

83.     Paragraph 83 is admitted to the extent that it is alleged that RRSB was in discussion with Jesse Craig in November of 2023 regarding potential remedies to Plaintiffs' various defaults under the loan agreements.

84.     Paragraph 84 is denied.

85.     Paragraph 85 is denied.

86.     Paragraph 86 is denied.

87.     Paragraph 87 is admitted only to the extent that it is alleged that RRSB declared Plaintiffs Generations on 1st, LLC and Parkside Place, LLC in default.

88.     Paragraph 88 is admitted to the extent that it is alleged that counsel for RRSB provided Plaintiffs with a settlement offer.  RRSB states that the terms of the offer speak for themselves.

89.     Paragraph 89 is admitted to the extent that it is alleged that counsel for RRSB provided Plaintiffs with a settlement offer.  RRSB states that the terms of the offer speak for themselves.

90.     Paragraph 90 is admitted to the extent that it is alleged that counsel for RRSB provided Plaintiffs with a settlement offer.  RRSB states that the terms of the offer speak for themselves.

91.     Paragraph 91 is admitted to the extent that it is alleged that Charles Aarestad sent an email to Jesse Craig.  RRSB states that the words of the email speak for themselves.

92.     Paragraph 92 is denied.

93.     Paragraph 93 is denied.

94.     Paragraph 94 is admitted to the extent that it is alleged that counsel for RRSB provided Plaintiffs with a settlement offer.  RRSB states that the terms of the offer speak for themselves.

95.     Paragraph 95 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC were lawfully ordered into receivership by a state district court judge.

96.     RRSB is without sufficient information to confirm or deny the allegations in Paragraph 96.

97.     Paragraph 97 is admitted to the extent that it is alleged that RRSB did not pay the insurance or utilities for Plaintiffs Generations on 1st, LLC and Parkside Place, LLC.

**GENERAL ALLEGATIONS: DEFAULTS**

98.     Paragraph 98 is admitted to the extent it is alleged that Plaintiffs defaulted on their obligations to RRSB.

99.     Paragraph 99 is admitted only to the extent it is alleged that Plaintiff Parkside Place, LLC failed to timely make payment to RRSB in December of 2023.

100.    Paragraph 100 is admitted only to the extent it is alleged that Plaintiff Generations on 1st, LLC failed to timely make payment to RRSB in  December of 2023, January of 2024, and February of 2024.

101.    Paragraph 101 is admitted to the extent it is alleged that Plaintiffs defaulted on their obligations to RRSB.

## COUNT I – FRAUDULENT CONVEYANCE

102.    Paragraph 102 contains no new allegations and therefore no response is required.  To the extent any response is required, Paragraph 102 is denied.

103.    Paragraph 103 is denied.  RRSB affirmatively alleges that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC were signatories to the Forbearance Agreement.

104.    Paragraph 104 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

105.    Paragraph 105 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

106.    Paragraph 106 contains legal conclusions to which no response is required.

107.    Paragraph 107 contains legal conclusions to which no response is required.

108.    Paragraph 108 contains legal conclusions to which no response is required.

109.    Paragraph 109 is admitted.

110.    Paragraph 110 is denied.

## COUNT II – FRAUDULENT CONVEYANCE

111.    Paragraph 111 contains no new allegations and therefore no response is required.  To the extent any response is required, Paragraph 111 is denied.

112.    Paragraph 112 is denied.  RRSB affirmatively alleges that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC were signatories to the Forbearance Agreement.

113.    RRSB is without sufficient information to confirm or deny the allegations in Paragraph 113.

114.    RRSB is without sufficient information to confirm or deny the allegations in Paragraph 114.

115.    RRSB is without sufficient information to confirm or deny the allegations in Paragraph 115.

116.    Paragraph 116 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

117.    Paragraph 117 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC entered into the forbearance agreement with RRSB.  RRSB states that the terms of the forbearance agreement speak for themselves.

118.    Paragraph 118 contains legal conclusions to which no response is required.

119.    Paragraph 119 contains legal conclusions to which no response is required.

120.    Paragraph 120 contains legal conclusions to which no response is required.

121.    Paragraph 121 is admitted.

122.    Paragraph 122 is denied.

## COUNT III – DECEIT

123.   Paragraph 123 contains no new allegations and therefore no response is required.  To the extent any response is required, Paragraph 123 is denied.

124.   Paragraph 124 is admitted.

125.   Paragraph 125 contains legal conclusions to which no response is required.

126.   Paragraph 126 is admitted to the extent that it is alleged that RRSB had the means to make loans to Plaintiffs.

127.   Paragraph 127 contains legal conclusions to which no response is required.

128.   Paragraph 128 is denied.

129.   Paragraph 129 is admitted to the extent that it is alleged that RRSB increased the interest rate in the Forbearance Agreement from the initial negotiations with Jesse Craig.

130.   Paragraph 130 is admitted.   RRSB affirmatively alleges that it made no representations to Jesse Craig regarding the terms of the Forbearance Agreement when he was asked to sign the same.

131.   Paragraph 131 is admitted.   RRSB affirmatively alleges that it made no representations to Mulinda Craig regarding the terms of the Forbearance Agreement when she was asked to sign the same.

## COUNT IV – FRAUD

132.   Paragraph 132 contains no new allegations and therefore no response is required.  To the extent any response is required, Paragraph 132 is denied.

133.   Paragraph 133 is admitted.

134.   Paragraph 134 contains legal conclusions to which no response is required.

14

135.    Paragraph 135 is admitted to the extent that it is alleged that RRSB had the means to make loans to Plaintiffs.

136.    Paragraph 136 contains legal conclusions to which no response is required.

137.    Paragraph 137 is denied.

138.    Paragraph 138 is admitted to the extent that it is alleged that RRSB increased the interest rate in the Forbearance Agreement from the initial negotiations with Jesse Craig.

139.    Paragraph 139 is admitted.   RRSB affirmatively alleges that it made no representations to Jesse Craig regarding the terms of the Forbearance Agreement when he was asked to sign the same.

140.    Paragraph 140 is admitted.   RRSB affirmatively alleges that it made no representations to Mulinda Craig regarding the terms of the Forbearance Agreement when she was asked to sign the same.

### COUNT V – NEGLIGENCE PER SE

141.    Paragraph 141 alleging negligence per se was dismissed and thus no response is necessary.

### COUNT VI – NEGLIGENCE PER SE

142.    Paragraph 142 contains no new allegations and therefore no response is required.  To the extent any response is required, Paragraph 142 is denied.

143.    Paragraph 143 contains legal conclusions to which no response is required.

144.    Paragraph 144 contains legal conclusions to which no response is required.

145.    Paragraph 145 contains legal conclusions to which no response is required.

146.    Paragraph 146 is admitted.

147.    Paragraph 147 is denied.

148.   Paragraph 148 is admitted to the extent that it is alleged that Plaintiffs Generations on 1st, LLC and Parkside Place, LLC were lawfully ordered into receivership by a state district court judge.

149.   Paragraph 149 is denied.

150.   Paragraph 150 is denied.

151.   Paragraph 151 is denied.

**COUNT VII – DECLARATORY RELIEF**

152.   Paragraph 152 contains no new allegations and therefore no response is required.  To the extent any response is required, Paragraph 155 is denied.

153.   Paragraph 153 contains legal conclusions to which no response is required. RRSB affirmatively alleges that Count VII is moot by virtue of Plaintiffs' stipulation to the respective claim amounts of RRSB.

154.   Paragraph 154 contains legal conclusions to which no response is required. RRSB affirmatively alleges that Count VII is moot by virtue of Plaintiffs' stipulation to the respective claim amounts of RRSB.

155.   Paragraph 155 contains legal conclusions to which no response is required. RRSB affirmatively alleges that Count VII is moot by virtue of Plaintiffs' stipulation to the respective claim amounts of RRSB.

**AFFIRMATIVE DEFENSES**

156.   In addition to the defenses and denials set forth above, RRSB asserts the following affirmative defenses.  In pleading these defenses, nothing stated herein is intended to or shall be construed as an acknowledgement or waiver of any issue relevant to Plaintiffs' allegations.

157.    Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

158.    Plaintiffs' Complaint fails to state a claim that would support an award of damages of any kind against RRSB.

159.    Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' damages are the result of its own fault, or due to the actions of persons RRSB has no control over.

160.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

161.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands.

162.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of acquiescence.

163.    Plaintiffs' claims are barred, in whole or in part, by its failure to mitigate its damages.

164.    Plaintiffs' claims are barred, in whole or in part, by the doctrine of impossibility.

165.    RRSB, at all times, has acted reasonably and in good faith toward Plaintiffs and in full compliance with any applicable law.

166.    RRSB affirmatively alleges that the claims asserted by Plaintiffs may be barred by one or more of the affirmative defenses contemplated by Fed. R. Civ. P. 8(c).  To the extent Plaintiffs' claims may be barred by one or more of the affirmative defenses not specifically cited above, RRSB incorporates all such affirmative defenses set forth in or contemplated by Fed. R. Civ. P. 8(c).

167.    Plaintiffs' claims are barred, in whole or in part, by 11 U.S.C. § 548(c) in that RRSB took any transfers in good faith and for a reasonably equivalent value.

168.    Plaintiffs' claims are barred, in whole or in part, by N.D.C.C. § 13-02.1-08(1) in that RRSB took any transfers in good faith and for a reasonably equivalent value.

169.    Plaintiffs' claims are barred, in whole or in part, by N.D.C.C. § 13-02.1-08(2)(a)(2) in that RRSB took any transfers in good faith and for value.

170.    Plaintiffs' claims are barred, in whole or in part, by N.D.C.C. § 13-02.1-08(4)in that RRSB took any transfers in good faith and for value.

171.    RRSB affirmatively alleges that the claims asserted by Plaintiffs may be barred by one or more of the affirmative defenses contemplated by N.D.C.C. § 13-02.1-08.  To the extent Plaintiffs' claims may be barred by one or more of the affirmative defenses not specifically cited above, RRSB incorporates all such affirmative defenses set forth in or contemplated by N.D.C.C. § 13-02.1-08.

**WHEREFORE**, RRSB respectfully prays for judgment that Plaintiffs take nothing by their Complaint, that their claims be dismissed, and that judgment be entered in favor of RRSB, together with all costs, disbursements, and attorneys' fees, and such other relief as the Court deems equitable.

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

RRSB, as and for its Counterclaim and Third-Party Complaint against Plaintiffs and Third-Party Defendants, states as follows:

### PARTIES

1.    RRSB is a financial institution chartered under the laws of the State of Minnesota.

2.    Upon information and belief, Third-Party Defendant Jesse Craig ("Jesse") is a resident of the State of North Dakota.

3.    Upon information and belief, Plaintiff Generations on 1st, LLC ("Generations") is an entity organized under the laws of the State of South Dakota beginning in 2020, existing

for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota. The sole member of Generations is Jesse. The principal place of business of Generations is in Fargo, North Dakota.

4.      Upon information and belief, Plaintiff Parkside Place, LLC ("Parkside") is an entity organized under the laws of the State of South Dakota beginning in 2020, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota. The sole member of Generations is Jesse. The principal place of business of Parkside is in Fargo, North Dakota.

5.      Upon information and belief, The Ruins, LLC ("The Ruins") is an entity organized under the laws of the State of South Dakota beginning in 2019, existing for the purpose of developing and operating a residential apartment complex in Watertown, South Dakota. The sole member of The Ruins is Jesse. The principal place of business of The Ruins is in Fargo, North Dakota.

6.      Upon information and belief, Craig Development, LLC ("Craig Development") is a limited liability company formed and existing under the law of the State of North Dakota, wholly owned by Jesse.

7.      Upon information and belief, Craig Properties, LLC ("Craig Properties") is a limited liability company formed and existing under the law of the State of North Dakota, wholly owned by Jesse and his daughter Jordan Horner ("Jordan").

**JURISDICTION AND VENUE**

8.      This Court has jurisdiction over these claims under Section 1334 of Title 28 of the United States Code.

9.     Venue is properly before the Court under Section 1334 of Title 28 of the United States Code because the various claims herein arise under Title 11 of the United States Code and all claims herein are related to one or more proceedings pending before the Court.

**FACTUAL BACKGROUND**

**I.     The Parkside Loans**

10.     On or about October 19, 2020, RRSB provided Parkside with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 36-unit apartment complex known as 'Parkside Place' in Watertown SD" (the "Parkside Term Sheet"). A true and correct copy of the Parkside Term Sheet is available as Exhibit K to ECF No. 22 in this adversary action, and the same incorporated herein by reference.

**A.     Parkside Loan 40930**

11.     On or about October 30, 2020, RRSB agreed to loan Parkside $300,983.52 for the construction of a 36-unit apartment complex to be known as "Parkside Place" (the "Parkside Development"), as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "40930 Parkside Loan Documents").  True and correct copies of the 40930 Parkside Loan Documents are available as **Exhibit A**, and the same incorporated herein by reference.  The $300,983.52 loaned through the 40930 Parkside Loan Documents shall be referred to as "Parkside Loan 40930."

**B.     Parkside Loan 40953**

12.     On or about December 24, 2020, RRSB agreed to loan Parkside an additional $296,000.00 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and

Authorization (collectively, the "<u>40953 Parkside Loan Documents</u>").  True and correct copies of the 40953 Parkside Loan Documents are available as **<u>Exhibit B</u>**, and the same incorporated herein by reference.  The $296,000.00 loaned through the 40953 Parkside Loan Documents shall be referred to as "<u>Parkside Loan 40953</u>."

       C.      <u>Parkside Loan 40989</u>

       13.     On or about January 20, 2021, RRSB agreed to loan Momentum Properties, LLC (another entity owned by Jesse Craig on information and belief) an additional $829,003.51 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "<u>40989 Parkside Loan Documents</u>").  True and correct copies of the 40989 Parkside Loan Documents are available as **<u>Exhibit C</u>**, and the same incorporated herein by reference.  The $829,003.51 loaned through the 40989 Parkside Loan Documents shall be referred to as "<u>Parkside Loan 40989</u>."

       D.      <u>Parkside Loan 41063</u>

       14.     On or about February 8, 2021, RRSB agreed to loan Parkside an additional $359,509.42 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "<u>41063 Parkside Loan Documents</u>").  True and correct copies of the 41063 Parkside Loan Documents are available as **<u>Exhibit D</u>**, and the same incorporated herein by reference.  The $359,509.42 loaned through the 41063 Parkside Loan Documents shall be referred to as "<u>Parkside Loan 41063</u>."

       E.      <u>Parkside Loan 41099</u>

15.     On or about February 26, 2021, RRSB agreed to loan Parkside an additional $458,407.56 related to the Parkside Development, as evidenced by the following documents: Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "41099 Parkside Loan Documents").  True and correct copies of the 41099 Parkside Loan Documents are available as **Exhibit E**, and the same incorporated herein by reference.  The $458,407.56 loaned through the 41099 Parkside Loan Documents shall be referred to as "Parkside Loan 41099."

F.     Parkside Loan 41120

16.     On or about March 15, 2021, RRSB agreed to loan Parkside an additional $2,601,400.00 related to the Parkside Development, as evidenced by the following documents: Business Loan Agreement; Promissory Note; Commercial Security Agreement; and Disbursement Request and Authorization (collectively, the "41120 Parkside Loan Documents").  True and correct copies of the 41120 Parkside Loan Documents are available as **Exhibit F**, and the same incorporated herein by reference.  The $2,601,400.00 loaned through the 41120 Parkside Loan Documents shall be referred to as "Parkside Loan 41120."

G.     Parkside Loan 51393

17.     On or about August 26, 2021, RRSB agreed to loan Parkside an additional $940,371.80 related to the Parkside Development, as evidenced by the following documents: Business Loan Agreement; Construction Loan Agreement; Promissory Note; Disbursement Request and Authorization; and Guaranty of Completion and Performance (collectively, the "51393 Parkside Loan Documents").  True and correct copies of the 51393 Parkside Loan Documents are available as **Exhibit G**, and the same incorporated herein by reference.  The

22

$940,371.80 loaned through the 51393 Parkside Loan Documents shall be referred to as "Parkside Loan 51393."

      H.      <u>Parkside Loan 51438</u>

18.     On or about December 13, 2021, RRSB agreed to provide Parkside a consolidation loan in the amount of $4,200,000.00 related to the Parkside Development, as evidence by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Mortgage; Assignment of Rents; Commercial Guaranty; Notice of Final Agreement; and Loan Request Summary (collectively, the "<u>51438 Parkside Loan Documents</u>"). True and correct copies of the 51438 Parkside Loan Documents are available as Exhibit K to ECF No. 22 in this adversary action, and the same incorporated herein by reference. The $4,200,000.00 loaned through the 51438 Parkside Loan Documents shall be referred to as "<u>Parkside Loan 51438</u>."

19.     Parkside Loan 40930, Parkside Loan 40953, Parkside Loan 40989, Parkside Loan 41063, Parkside Loan 41099, Parkside Loan 41120, Parkside Loan 51393, and Parkside Loan 51438 shall be collectively referred to as the "<u>Parkside Loans</u>."

      I.      <u>Parkside Draw Request No. 4</u>

20.     On or about October 18, 2020, Parkside caused to be served on RRSB Parkside Draw Request No. 4, seeking $300,983.52 for materials and labor allegedly contributed to the Parkside Development. A true and correct copy of Parkside Draw Request No. 4 is available as Exhibit 4 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

21.    In part, Parkside Draw Request No. 4 sought $12,746.70 for contributions allegedly provided by Limoges Construction, Inc. to the Parkside Development as allegedly supported by Invoice No. 7687 to Parkside Draw Request No. 4.

22.    Limoges Construction Inc. did not contribute $12,746.70 to the Parkside Development as requested in Parkside Draw Request No. 4.

23.    Instead, Invoice No. 7687 submitted in support of Parkside Draw Request No. 4 had been altered.

24.    An unaltered copy of Invoice No. 7687 from Limoges Construction, Inc. is available as p. 30 of ECF No. 208-2 on the Generations bankruptcy case docket and reattached hereto alongside the corresponding Payment Application as **Exhibit H-1**, and the same incorporated herein by reference.

25.    The unaltered copy of Invoice No. 7687 establishes that Limoges Construction, Inc., through Invoice No. 7687, was instead requesting $12,746.70 for work contributed to The Lofts.

26.    In part, Parkside Draw Request No. 4 also sought $46,050.00 for contributions allegedly provided by R.L. Drywall and Insulation Inc. to the Parkside Development as allegedly supported by Invoice No. 7845-3 to Parkside Draw Request No. 4.

27.    R.L. Drywall and Insulation Inc. did not contribute $46,050.00 to the Parkside Development as requested in Parkside Draw Request No. 4.

28.    Instead, Invoice No. 7845-3 submitted in support of Parkside Draw Request No. 4 had been altered.

29.     An unaltered copy of Invoice No 7845-3 from R.L. Drywall and Insulation Inc. is available as p. 34 of ECF No. 208-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit H-2**, and the same incorporated herein by reference.

30.     The unaltered copy of Invoice No. 7845-3 establishes that R.L. Drywall and Insulation Inc., through Invoice No. 7845-3, was instead requesting $46,050.00 for work contributed to The Lofts.

31.     RRSB did not realize that Parkside Draw Request No. 4 had been falsified, and that Parkside was requesting money to pay costs not incurred in the Parkside Development.

32.     RRSB funded Parkside Draw Request No. 4 on October 30, 2020, via cashier's check 200829 for $300,983.52.

33.     Upon information and belief, Parkside transferred the $300,983.52 to Craig Development by depositing cashier's check 200829 into an account owned by Craig Development at First Community Credit Union ("FCCU").

34.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to its receipt of $300,983.52.

35.     The $300,983.52 that RRSB provided for Parkside Draw Request No. 4 was funded through Parkside Loan 40930.

J.      Parkside Draw Request No. 5

36.     On or about November 1, 2020, Parkside caused to be served on RRSB Parkside Draw Request No. 5, seeking $600,430.71 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 5 is available as Exhibit 5 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

25

37.    In part, Parkside Draw Request No. 5 sought $7,994.64 for contributions allegedly provided by Infrastructure Design Group, Inc. to the Parkside Development as allegedly supported by Invoice Nos. 10225 and 20398 to Parkside Draw Request No. 5.

38.    Infrastructure Design Group, Inc. did not contribute $7,994.64 to the Parkside Development as requested in Parkside Draw Request No. 5.

39.    Instead, Invoice Nos. 10225 and 20398 submitted in support of Parkside Draw Request No. 5 had been altered.

40.    Unaltered copies of Invoice Nos. 10225 and 20398 from Infrastructure Design Group, Inc. are available as pp. 46-48 of ECF No. 208-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit H-3**, and the same incorporated herein by reference.

41.    The unaltered copies of Invoice Nos. 10225 and 20398 establish that Infrastructure Design Group, Inc., through Invoice Nos. 10225 and 20398, was instead requesting $7,994.64 for work contributed to The Lofts.

42.    In part, Parkside Draw Request No. 5 also sought $74,500.00 for contributions allegedly provided by Watertight, Inc. to the Parkside Development as allegedly supported by Draw Request Payment Application No. 1 to Parkside Draw Request No. 5.

43.    Watertight, Inc. did not contribute $74,500.00 to the Parkside Development as requested in Parkside Draw Request No. 5.

44.    Instead, Draw Request Payment Application No. 1 submitted in support of Parkside Draw Request No. 5 had been altered.

45.    An unaltered copy of Draw Request Payment Application No. 1 from Watertight, Inc. is available as p. 52 of ECF No. 208-2 to the Generations bankruptcy case docket and reattached hereto as **Exhibit H-4**, and the same incorporated herein by reference.

46.     The unaltered copy of Draw Request Payment Application No. 1 establishes that Watertight, Inc., through Draw Request Payment Application No. 1, was instead requesting $74,500.00 for work contributed to The Lofts.

47.     In part, Parkside Draw Request No. 5 also sought $15,210.00 for contributions allegedly provided by Baete-Forseth, HVAC, LLC to the Parkside Development as allegedly supported by Draw Request Payment Application No. 1 to Parkside Draw Request No. 5.

48.     Baete-Forseth, HVAC, LLC did not contribute $15,210.00 to the Parkside Development as requested in Parkside Draw Request No. 5.

49.     Instead, Draw Request Payment Application No. 1 submitted in support of Parkside Draw Request No. 5 has been altered.

50.     Documents obtained from Baete-Forseth, HVAC, LLC establish that Baete-Forseth, HVAC, LLC only contributed $2,500.00 to the Parkside Development as requested in Parkside Draw Request No. 5.

51.     RRSB did not realize that Parkside Draw Request No. 5 had been falsified, and that Parkside was requesting money to pay costs not incurred in the Parkside Development.

52.     In part, RRSB funded Parkside Draw Request No. 5 on December 24, 2020, via cashier's check 200849 for $295,850.00.

53.     Upon information and belief, Parkside transferred the $295,850.00 to Craig Development by depositing cashier's check 200849 into an account owned by Craig Development at FCCU.

54.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $295,850.00.

55.     The $295,850.00 that RRSB provided for Parkside Draw Request No. 5 was funded through Parkside Loan 40953.

56.     In part, RRSB funded Parkside Draw Request No. 5 on January 20, 2021, via cashier's check 200867 for $267,940.45.

57.     Upon information and belief, Parkside transferred the $267,940.45 to Craig Development by depositing cashier's check 200867 into an account owned by Craig Development at FCCU.

58.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $267,940.45.

59.     The $267,940.45 that RRSB provided for Parkside Draw Request No. 5 was funded through Parkside Loan 40989

        K.      Parkside Draw Request No. 6

60.     On or about December 31, 2020, Parkside caused to be served on RRSB Parkside Draw Request No. 6, seeking $728,153.04 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 6 is available as Exhibit 6 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

61.     In part, RRSB funded Parkside Draw Request No. 6 on January 1, 2021, via cashier's check 200868 for $296,769.43.

62.     Upon information and belief, Parkside transferred the $296,769.43 to Craig Development by depositing cashier's check 200868 into an account owned by Craig Development at FCCU.

63.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $296,769.43.

64.     The $296,769.43 that RRSB provided for Parkside Draw Request No. 6 was funded through Parkside Loan 40989.

65.     In part, RRSB funded Parkside Draw Request No. 6 on February 8, 2021, via cashier's check 200897 for $359,509.42.

66.     Upon information and belief, Parkside transferred the $359,509.42 to Craig Development by depositing cashier's check 200897 into an account owned by Craig Development at FCCU.

67.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $359,509.42.

68.     The $359,509.42 that RRSB provided for Parkside Draw Request No. 6 was funded through Parkside Loan 41063.

69.     In part, RRSB funded Parkside Draw Request No. 6 on March 15, 2021, via cashier's check 200955 for $71,874.19.

70.     Upon information and belief, Parkside transferred the $71,874.19 to Craig Development by depositing cashier's check 200955 into an account owned by Craig Development at FCCU.

71.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $71,874.19.

72.     The $71,874.19 that RRSB provided for Parkside Draw Request No. 6 was funded through Parkside Loan 41120.

L.      Parkside Draw Request No. 7

73.     On or about January 1, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 7, seeking $884,021.21 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 7 is available as Exhibit 7 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

74.     In part, RRSB funded Parkside Draw Request No. 7 on March 15, 2021, via cashier's check 200956 for $319,424.33.

75.     Upon information and belief, Parkside transferred the $319,424.33 to Craig Development by depositing cashier's check 200956 into an account owned by Craig Development at FCCU.

76.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $319,424.33.

77.     The $319,424.33 that RRSB provided for Parkside Draw Request No. 7 was funded through Parkside Loan 41120.

78.     In part, RRSB funded Parkside Draw Request No. 7 on March 15, 2021, via cashier's check 200957 for $319,424.32.

79.     Upon information and belief, Parkside transferred the $319,424.32 to Craig Development by depositing cashier's check 200957 into an account owned by Craig Development at FCCU.

80.     Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $319,424.32.

81.     The $319,424.32 that RRSB provided for Parkside Draw Request No. 7 was funded through Parkside Loan 41120.

M.    Parkside Draw Request No. 8

82.    On or about February 28, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 8, seeking $390,554.50 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 8 is available as Exhibit 8 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

83.    In part, RRSB funded Parkside Draw Request No. 8 on March 15, 2021, via cashier's check 200958 for $340,531.68.

84.    Upon information and belief, Parkside transferred the $340,531.68 to Craig Development by depositing cashier's check 200958 into an account owned by Craig Development at FCCU.

85.    Upon information and belief, Craig Development did not provide materials or services to Parkside reasonably equivalent to receipt of $340,531.68.

86.    The $340,531.68 that RRSB provided for Parkside Draw Request No. 8 was funded through Parkside Loan 41120.

N.    Parkside Draw Request No. 10

87.    On or about April 30, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 10, seeking $619,483.54 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 10 is available as Exhibit 10 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

88.    In part, Parkside Draw Request No. 10 sought $5,280.76 for real estate taxes due related to the Parkside Development.

89.     The $5,280.76 sought were not related to the Parkside Development, but were instead related to The Ruins Development.[1]

90.     RRSB did not realize that Parkside Draw Request No. 10 had been falsified, and that Parkside was requesting money to pay costs not incurred in the Parkside Development.

O.     <u>Parkside Draw Request No. 11</u>

91.     On or about May 30, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 11, seeking $437,316.35 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 11 is available as Exhibit 11 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

92.     In part, Parkside Draw Request No. 11 sought $130,000.00 for contributions allegedly provided by R.L. Drywall and Insulation, Inc. to the Parkside Development.

93.     R.L. Drywall and Insulation, Inc. did not contribute $130,000.00 to the Parkside Development as requested in Parkside Draw Request No. 11.

94.     Instead, documents obtained directly from R.L. Drywall and Insulation, Inc. establish that R.L. Drywall and Insulation, Inc. had already been submitted in the Parkside Draw Request No. 10.

95.     RRSB did not realize that Parkside Draw Request No. 11 had been falsified, and that Parkside was requesting money to pay costs already paid for in Parkside Draw Request No. 10.

P.     <u>Parkside Draw Request No. 12</u>

---

[1]   The term "The Ruins Development" shall have the meaning ascribed to it in Paragraph 310.

96.     On or about June 30, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 12, seeking $523,516.85 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 12 is available as Exhibit 12 to ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

97.     In part, Parkside Draw Request No. 12 sought $266.25 for contributions allegedly provided by Infrastructure Design Group, Inc. to the Parkside Development as allegedly supported by Invoice No. 21002 to Parkside Draw Request No. 12.

98.     Infrastructure Design Group, Inc. did not contribute $266.25 to the Parkside Development as requested in Parkside Draw Request No. 12.

99.     Instead, Invoice No. 21002 submitted in support of Parkside Draw Request No. 12 had been altered.

100.     An unaltered copy of Invoice No. 21002 from Infrastructure Design Group, Inc. is available as p. 71 of ECF No. 208-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit H-5**, and the same incorporated herein by reference.

101.     The unaltered copy of Invoice No. 21002 establishes that Infrastructure Design Group, Inc., through Invoice No. 21002, was instead requesting $266.25 for work contributed to The Lofts.

102.     In part, Parkside Draw Request No. 12 also sought $3,961.83 for contributions allegedly provided by Dugan Sales & Service to the Parkside Development as allegedly supported by Invoice No. WO-38477 to Parkside Draw Request No. 12.

103.     Dugan Sales & Service did not contribute $3,961.83 to the Parkside Development as requested in Parkside Draw Request No. 12.

104.    Instead, Invoice No. WO-38477 establishes that Dugan Sales & Service contributed to The Lofts.

105.    RRSB did not realize that Parkside Draw Request No. 12 had been falsified, and that Parkside was requesting money to pay costs not incurred in the Parkside Development.

106.    RRSB funded Parkside Draw Request No. 12 on August 30, 2021, via a wire transfer of $940,371.80, $523,516.85 of which related to Parkside Draw Request No. 12.

107.    Upon information and belief, Parkside transferred the $523,516.85 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

108.    Upon information and belief, Craig Properties did not provide materials or services to Parkside reasonably equivalent to receipt of $523,516.85.

109.    The $523,516.85 that RRSB provided for Parkside Draw Request No. 12 was funded through Parkside Loan 51393.

Q.    Parkside Draw Request No. 13

110.    On or about July 31, 2021, Parkside caused to be served on RRSB Parkside Draw Request No. 13, seeking $416,854.95 for materials and labor allegedly contributed to the Parkside Development.  A true and correct copy of Parkside Draw Request No. 13 is available as Exhibit 13 of ECF No. 186 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

111.    In part, Parkside Draw Request No. 13 sought $3,600.00 for contributions allegedly provided by Xtreme Fire Protection, LLC to the Parkside Development.

112.    Xtreme Fire Protection, LLC did not contribute $3,600.00 to the Parkside Development as requested in Parkside Draw Request No. 13.

113.    Instead, Xtreme Fire Protection, LLC had contributed $3,600.00 to The Lofts.

114.    In part, Parkside Draw Request No. 13 also sought $4,776.10 for contributions allegedly provided by Clausen Construction, Inc. to the Parkside Development as allegedly supported by Invoice No. 631 to Parkside Draw Request No. 13.

115.    Clausen Construction, Inc. did not contribute $4,776.10 to the Parkside Development as requested in Parkside Draw Request No. 13.

116.    Instead, Invoice No. 631 submitted in support of Parkside Draw Request No. 13 had been altered.

117.    An unaltered copy of Invoice No. 631 from Clausen Construction, Inc. is available as p. 81 of ECF 208-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit H-6**, and the same incorporated herein by reference.

118.    The unaltered copy of Invoice No. 631 establishes that Clausen Construction, Inc., through Invoice No. 631, was instead requesting $4,776.10 for work contributed to the Generations Development.[2]

119.    RRSB did not realize that Parkside Draw Request No. 13 had been falsified, and that Parkside was requesting money to pay costs not incurred in the Parkside Development.

120.    RRSB funded Parkside Draw Request No. 13 on August 30, 2021, via a wire transfer of $940,371.80, $416,854.95 of which related to Parkside Draw Request No. 13.

121.    Upon information and belief, Parkside transferred the $416,854.95 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties.

---

[2]   The term "Generations Development" shall have the meaning ascribed to it in Paragraph 125.

122.    Upon information and belief, Craig Properties did not provide materials or services to Parkside reasonably equivalent to receipt of $416,854.95.

123.    The $416,854.95 that RRSB provided for Parkside Draw Request No. 13 was funded through Parkside Loan 51393.

**II.    The Generations Loans**

124.    On or about November 23, 2020, RRSB provided Generations with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 72-unit apartment complex known as 'Generations on 1st' in Watertown SD" (the "Generations Term Sheet").   A true and correct copy of the Generations Term Sheet is available as Exhibit A to ECF No. 22 in this adversary action, and the same incorporated herein by reference.

A.    Generations Loan 41121

125.    On or about March 15, 2021, RRSB agreed to loan Generations $1,565,200.00 for the construction of a 72-unit apartment complex to be known as "Generations on 1st" (the "Generations Development"), as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Commercial Guaranty; Notice of Final Agreement; and Loan Request Summary (collectively, the "41121 Generations Loan Documents").   True and correct copies of the 41121 Generations Loan Documents are available as Exhibit B to ECF No. 22 in this adversary action, and the same incorporated herein by reference.   The $1,565,200.00 loaned through the 41121 Generations Loan Documents shall be referred to as "Generations Loan 41121."

B.    Generations Loan 51404

126. On or about September 14, 2021, RRSB agreed to loan Generations an additional $2,976,430.98 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51404 Generations Loan Documents").  True and correct copies of the 51404 Generations Loan Documents are available as Exhibit C to ECF No. 22 in this adversary action, and the same incorporated herein by reference.  The $2,976,430.98 loaned through the 51404 Generations Loan Documents shall be referred to as "Generations Loan 51404."

C.      Generations Loan 51425

127. On or about October 14, 2021, RRSB agreed to loan Generations an additional $1,094,025.15 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51425 Generations Loan Documents").  True and correct copies of the 51425 Generations Loan Documents are available as Exhibit D to ECF No. 22 in this adversary action, and the same incorporated herein by reference.  The $1,094,025.15 loaned through the 51425 Generations Loan Documents shall be referred to as "Generations Loan 51425."

D.      Generations Loan 51437

128.    On or about November 9, 2021, RRSB agreed to loan Generations an additional $424,259.84 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51437 Generations Loan Documents").  True and correct copies of the 51437 Generations Loan Documents are available as Exhibit E to ECF No. 22 in this adversary action, and the same incorporated herein by reference.  The $424,259.84 loaned through the 51437 Generations Loan Documents shall be referred to as "Generations Loan 51437."

E.    Generations Loan 51449

129.    On or about December 8, 2021, RRSB agreed to loan Generations an additional $843,168.59 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51449 Generations Loan Documents").  True and correct copies of the 51449 Generations Loan Documents are available as Exhibit F to ECF No. 22 in this adversary action, and the same incorporated herein by reference.   The $843,168.59 loaned through the 51449 Generations Loan Documents shall be referred to as "Generations Loan 51449."

F.    Generations Loan 51471

130.    On or about January 5, 2022, RRSB agreed to loan Generations an additional $653,729.65 related to the Generations Development, as evidenced by the following

documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and Performance; and Notice of Final Agreement; (collectively, the "51471 Generations Loan Documents").   True and correct copies of the 51471 Generations Loan Documents are available as Exhibit G to ECF No. 22 in this adversary action, and the same incorporated herein by reference.   The $653,729.65 loaned through the 51471 Generations Loan Documents shall be referred to as "Generations Loan 51471."

G.      Generations Loan 51488

131.    On or about February 3, 2022, RRSB agreed to loan Generations an additional $274,043.60 related to the Generations Development, as evidenced by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51488 Generations Loan Documents").   True and correct copies of the 51488 Generations Loan Documents are available as Exhibit H to ECF No. 22 in this adversary action, and the same incorporated herein by reference.   The $274,043.60 loaned through the 51488 Generations Loan Documents shall be referred to as "Generations Loan 51488."

H.      Generations Loan 51676

132.    On or about April 17, 2023, RRSB agreed to loan Generations $8,100,000.00 related to the Generations Development, as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Mortgage; Assignment of Rents; Commercial Guaranty; and Notice of Final Agreement (collectively, the "51676 Generations Loan Documents").  True and correct copies

of the 51676 Generations Loan Documents are available as Exhibit I to ECF No. 22 in this adversary action, and the same incorporated herein by reference.  The $8,100,000.00 loaned through the 51676 Generations Loan Documents shall be referred to as "Generations Loan 51676."

       I.     Generations Loan 51677

     133.    On or about April 17, 2023, RRSB agreed to loan Generations $561,365.10 related to the Generations Development, as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Guaranty; and Notice of Final Agreement (collectively, the "51677 Generations Loan Documents").  True and correct copies of the 51677 Generations Loan Documents are available as Exhibit J to ECF No. 22 in this adversary action, and the same incorporated herein by reference.  The $561,365.10 loaned through the First Generations Loan Documents shall be referred to as "Generations Loan 51677."

     134.    Generations Loan 41121, Generations Loan 51404, Generations Loan 51425, Generations Loan 51437, Generations Loan 51449, Generations Loan Generations Loan 51471, Generations Loan 51488, Generations Loan 51676, and Generations Loan 51677 shall be collectively referred to as the "Generations Loans."

       J.     Generations Draw Request No. 4

     135.    On or about December 31, 2020, Generations caused to be served on RRSB Generations Draw Request No. 4, seeking $540,039.74 for materials and labor allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 4 is available as Exhibit 4 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

136.    In part, Generations Draw Request No. 4 sought $126,905.58 for contributions allegedly provided by Clausen Construction Inc. to the Generations Development as allegedly supported by Invoice No. 572 to Generations Draw Request No. 4.

137.    Clausen Construction Inc. did not contribute $126,905.58 to the Generations Development as requested in Generations Draw Request No. 4.

138.    Instead, Invoice No. 572 submitted in support of Generations Draw Request No. 4 had been altered.

139.    An unaltered copy of Invoice No. 572 from Clausen Construction Inc. is available as pp. 73-74 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-1**, and the same incorporated herein by reference.

140.    The unaltered copy of Invoice No. 572 establishes that Clausen Construction Inc., through Invoice No. 572, was instead requesting $126,905.58 for work contributed to the Parkside Development.

141.    In part, Generations Draw Request No. 4 also sought $58,450.00 for contributions allegedly provided by T.L. Stroh Architects, Ltd. to the Generations Development as allegedly supported by an invoice dated October 2, 2020, to Generations Draw Request No. 4.

142.    T.L. Stroh Architects, Ltd. did not contribute $58,450.00 to the Generations Development as requested in Generations Draw Request No. 4.

143.    Instead, the October 2, 2020, invoice submitted in support of Generations Draw Request No. 4 had been altered.

144.    An unaltered copy of the October 2, 2020, invoice from T.L. Stroh Architects, Ltd. is available as p. 78 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **<u>Exhibit I-2</u>**, and the same incorporated herein by reference.

145.    The unaltered copy of an October 2, 2020, invoice establishes that T.L. Stroh Architects, Ltd., through the October 2, 2020, invoice, was not requesting any amount related to the Generations Development.

146.    RRSB did not realize that Generations Draw Request No. 4 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

147.    In part, RRSB funded Generations Draw Request No. 4 on March 15, 2021, via cashier's check 200950 for $149,005.53.

148.    Upon information and belief, Generations transferred the $149,005.53 to Craig Development by depositing cashier's check 200950 into an account owned by Craig Development at FCCU.

149.    Upon information and belief, Craig Development did not provide materials or services to Generations reasonably equivalent to receipt of $149,005.53.

150.    The $149,005.53 that RRSB provided via cashier's check 200950 for Generations Draw Request No. 4 was funded by Generations Loan 41121.

K.    <u>Generations Draw Request No. 5</u>

151.    On or about January 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 5, seeking $376,020.84 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw

42

Request No. 5 is available as Exhibit 5 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

152.    In part, Generations Draw Request No. 5 sought $9,287.50 for contributions allegedly provided by Clausen Construction, Inc. to the Generations Development, as allegedly supported by Invoice No. 585 to Generations Draw Request No. 5.

153.    Clausen Construction, Inc. did not contribute $9,287.50 to the Generations Development as requested in Generations Draw Request No. 5.

154.    Instead, the Invoice No. 585 submitted in support of Generations Draw Request No. 5 had been altered.

155.    An unaltered copy of Invoice No. 585 from Clausen Construction, Inc. is available as p. 83 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-3**, and the same incorporated herein by reference.

156.    The unaltered copy of Invoice No. 585 establishes that Clausen Construction, Inc., through Invoice No. 585, was instead seeking $9,287.50 for work contributed to the Parkside Development.

157.    RRSB did not realize that Generations Draw Request No. 5 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

158.    In part, RRSB funded Generations Draw Request No. 5 on March 15, 2021, via cashier's check 200951 for $163,020.84.

159.    Upon information and belief, Generations transferred the $163,020.84 to Craig Development by depositing cashier's check 200951 into an account owned by Craig Development at FCCU.

160.    Upon information and belief, Craig Development did not provide materials or services to Generations reasonably equivalent to receipt of $163,020.84.

161.    The $163,020.84 that RRSB provided for Generations Draw Request No. 5 was funded through Generations Loan 41121.

L.    Generations Draw Request No. 10

162.    On or about June 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 10, seeking $339,580.56 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 10 is available as Exhibit 10 to ECF No. 185 on the Generations bankruptcy docket, and the same incorporated herein by reference.

163.    RRSB funded Generations Draw Request No. 10 on September 14, 2021, via a wire transfer of $339,580.56.

164.    Upon information and belief, Generations transferred the $339,580.56 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

165.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $339,580.56.

166.    The $339,580.56 that RRSB provided for Generations Draw Request No. 10 was funded through Generations Loan 51404.

M.    Generations Draw Request No. 11

167.    On or about July 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 11, seeking $1,423,600.00 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw

Request No. 11 is available as Exhibit 11 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

168.    In part, Generations Draw Request No. 11 sought $308,500.00 for contributions allegedly provided by Kloos Electric, LLC to the Generations Development as allegedly supported by Application No. 1 to Generations Draw Request No. 11.

169.    Kloos Electric, LLC did not contribute $308,500.00 to the Generations Development as requested in Generations Draw Request No. 11.

170.    Instead Application No. 1 submitted in support of Generations Draw Request No. 11 had been altered.

171.    An unaltered copy of Application No. 1 from Kloos Electric, LLC is available as p. 98 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-4**, and the same incorporated herein by reference.

172.    The unaltered copy of Application No. 1 establishes that Kloos Electric, LLC, through Application No. 1, was instead seeking $58,500.00 for work contributed to the Generations Development.

173.    In part, Generations Draw Request No. 11 also sought $12,648.95 for contributions allegedly provided by Watertown Cashway Lumber, Inc. to the Generations Development as allegedly supported by Statement No. 2107-424926 to Generations Draw Request No. 11.

174.    Watertown Cashway Lumber, Inc. did not contribute $12,648.95 to the Generations Development as requested in Generations Draw Request No. 11.

175.    Instead, the Statement No. 2107-424926 submitted in support of Generations Draw Request No. 11 had been altered.

176.    An unaltered copy of Statement No. 2107-424926 from Watertown Cashway Lumber, Inc. is available as p. 102 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-5**, and the same incorporated herein by reference.

177.    The unaltered copy of Statement No. 2107-424926 establishes that Watertown Cashway Lumber, Inc., through Statement No. 2107-424926, was instead requesting $12,648.95 for work contributed to The Lofts.

178.    In part, Generations Draw Request No. 4 also sought $12,960.00 for contributions allegedly provided by T.L. Stroh Architects, Ltd. to the Generations Development as allegedly supported by invoices dated June 3, 2021, and March 4, 2021, to Generations Draw Request No. 11.

179.    T.L. Stroh Architects, Ltd. did not contribute $12,960.00 to the Generations Development as requested in Generations Draw Request No. 11.

180.    Instead, no such invoices existed from T.L. Stroh Architects, Ltd.

181.    A copy of an Original Transaction Record from T.L. Stroh Architects, Ltd. is available as p. 108 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-6**, and the same incorporated herein by reference.

182.    The Original Transaction Record establishes that T.L. Stroh Architects, Ltd. never sought $12,690.00 for work contributed to the Generations Development as requested in Generations Draw Request No. 11.

183.    In part, Generations Drew Request No. 11 also sought $6,192.00 for contributions allegedly provided by Hebron Brick Supply Co. to the Generations Development as allegedly supported by Invoice No. S-INV00014628 and Invoice No. S-INV00014629 to Generations Draw Request No. 11.

184.    Hebron Brick Supply Co. did not contribute $6,192.00 to the Generations Development as requested in Generations Draw Request No. 11.

185.    Instead, Invoice No. S-INV00014628 and Invoice No. S-INV00014629 submitted in support of Generations Draw Request No. 11 had been altered.

186.    Unaltered copies of Invoice No. S-INV00014628 and Invoice No. S-INV00014629 from Hebron Brick Supply Co. are available as pp. 113-114 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-7**, and the same incorporated herein by reference.

187.    The unaltered copies of Invoice No. S-INV00014628 and Invoice No. S-INV00014629 establish that Hebron Brick Supply Co., through Invoice No. S-INV00014628 and Invoice No. S-INV00014629, was instead requesting $6,192.00 for work contributed to the Parkside Development.

188.    In part, Generations Draw Request No. 11 also sought $5,607.15 for contributions allegedly provided by Clausen Construction, Inc. to the Generations Development as allegedly supported by Invoice No. 634 to Generations Draw Request No. 11.

189.    Clausen Construction, Inc. did not contribute $5,607.15 to the Generations Development as requested in Generations Draw Request No. 11.

190.    Instead, Invoice No. 634 submitted in support of Generations Draw Request No. 11 had been altered.

191.    An unaltered copy of Invoice No. 634 from Clausen Construction, Inc. is available as p. 118 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-8**, and the same incorporated herein by reference.

192.    The unaltered copy of Invoice No. 634 establishes that Clausen Construction, Inc., through Invoice No. 634, was instead requesting $5,607.15 for work contributed to the Parkside Development.

193.    In part, Generations Draw Request No. 11 also sought $4,527.00 for contributions allegedly provided by East River Homes, Inc. to the Generations Development as allegedly supported by Invoice No. 001392 to Generations Draw Request No. 11.

194.    East River Homes, Inc. did not contribute $4,527.00 to the Generations Development as requested in Generations Draw Request No. 11.

195.    Instead, Invoice No. 001392 sought $4,527.00 for work contributed to The Lofts.

196.    In part, Generations Draw Request No. 11 also sought $89,552.33 for contributions allegedly provided by Innovative Wall Designs, Inc. to the Generations Development as allegedly supported by Invoice No. 1063 to Generations Draw Request No. 11.

197.    Innovative Wall Designs, Inc. did not contribute $89,552.33 to the Generations Development as requested in Generations Draw Request No. 11.

198.    Instead, Invoice No. 1063 submitted in support of Generations Draw Request No. 11 had already been paid—or should have been paid—through Generations Draw Request No. 10.

199.    RRSB did not realize that Generations Draw Request No. 11 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

200.   RRSB funded Generations Draw Request No. 11 on September 14, 2021, via a wire transfer of $1,423,600.00.

201.   Upon information and belief, Generations transferred the $1,423,600.00 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

202.   Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $1,423,600.00.

203.   The $1,423,600.00 that RRSB provided for Generations Draw Request No. 11 was funded through Generations Loan 51404.

N.    Generations Draw Request No. 12.1

204.   On or about July 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 12.1, seeking $229,896.66 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 12.1 is available as pp. 168-169 of Exhibit 12 in ECF No. 185-1, and the same incorporated herein by reference.

205.   RRSB funded Generations Draw Request No. 12.1 on September 14, 2021, via a wire transfer of $229,896.66.

206.   Upon information and belief, Generations transferred the $229,896.66 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

207.   Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $229,896.66.

49

208.    The $229,896.66 that RRSB provided for Generations Draw Request No. 12.1 was funded through Generations Loan 51404.

O.    Generations Draw Request No. 12.2

209.    On or about August 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 12.2, seeking $983,353.76 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 12.2 is available as pp. 170-194 of Exhibit 12 in ECF No. 185-1 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

210.    In part, Generations Draw Request No. 12.2 sought $10,477.56 for contributions allegedly provided by Craig Development to the Generations Development.

211.    The $10,477.56 contribution provided by Craig Development, as requested in Draw Request No. 12.2, was not contributed to the Generations Development.

212.    The $10,477.56 contribution provided by Craig Development, as requested in Draw Request No. 12.2, was instead a contribution for the Parkside Development and the office for The Lofts.

213.    In part, Generations Draw Request No. 12.2 also sought $4,561.30 for contributions allegedly provided by Infrastructure Design Group, Inc. to the Generations Development as allegedly supported by Invoice No. 21256 to Generations Draw Request No. 12.2.

214.    Infrastructure Design Group, Inc. did not contribute $4,561.30 to the Generations Development as requested in Generations Draw Request No. 12.2.

215.    Instead, Invoice No. 21256 submitted in support of Generations Draw Request No. 12.2 had been altered.

50

216.    An unaltered copy of Invoice No. 21256 from Infrastructure Design Group, Inc. is available as p. 133 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-9**, and the same incorporated herein by reference.

217.    The unaltered copy of Invoice No. 21256 establishes that Infrastructure Design Group, Inc., through Invoice No. 21256, was instead requesting $4,561.30 for work contributed to the Parkside Development.

218.    In part, Generations Draw Request No. 12.2 also sought $4,825.06 for contributions allegedly provided by Infrastructure Design Group, Inc. to the Generations Development as allegedly supported by Invoice No. 21257 to Generations Draw Request No. 12.2.

219.    Infrastructure Design Group, Inc. did not contribute $4,825.06 to the Generations Development as requested in Generations Draw Request No. 12.2.

220.    Instead, Invoice No. 21257 submitted in support of Generations Draw Request No. 12.2 had been altered.

221.    An unaltered copy of Invoice No. 21257 from Infrastructure Design Group, Inc. is available as p. 137 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-10**, and the same incorporated herein by reference.

222.    The unaltered copy of Invoice No. 21257 establishes that Infrastructure Design Group, Inc., through Invoice No. 21257, was instead requesting $4,825.06 for work contributed to The Ruins Development.[3]

---

[3]    The term "The Ruins Development" is defined herein by Paragraph 310.

223.    RRSB did not realize that Generations Draw Request No. 12.2 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

224.    RRSB funded Generations Draw Request No. 12.2 on September 14, 2021, via a wire transfer of $983,353.76.

225.    Upon information and belief, Generations transferred the $983,353.76 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

226.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $983,353.76.

227.    The $983,353.76 that RRSB provided for Generations Draw Request No. 12.2 was funded through Generations Loan 51404.

P.    Generations Draw Request No. 13

228.    On or about September 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 13, seeking $1,094,025.15 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 13 is available as Exhibit 13 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

229.    In part, Generations Draw Request No. 13 sought $8,405.00 for contributions allegedly provided by Kloos Electric LLC to the Generations Development as allegedly supported by Invoice No. 1505 to Generations Draw Request No. 13.

230.    Kloos Electric LLC did not contribute $8,405.00 to the Generations Development as requested in Generations Draw Request No. 13.

231.    Instead, a subpoena direct to Kloos Electric LLC did not return any Invoice No. 1505.

232.    In part, Generations Draw Request No. 13 also sought $13,702.22 for contributions allegedly provided by Prevail Builders to the Generations Development.

233.    The $13,702.22 contribution provided by Prevail Builders, as requested in Generations Draw Request No. 13, was not contributed to the Generations Development.

234.    Instead, $3,117.49 of the contribution provided by Prevail Builders was contributed to projects other than the Generations Development.

235.    In part, Generations Draw Request No. 13 also sought $5,521.52 for contributions allegedly provided by Burghardt Construction to the Generations Development as allegedly supported by Draw Request Payment Application No. 3 to Generations Draw Request No. 13.

236.    Burghardt Construction did not contribute $5,521.52 to the Generations Development as requested in Generations Draw Request No. 13.

237.    Instead, Draw Request Payment Application No. 3 establishes that Burghardt Construction was instead requesting $5,521.52 for work contributed to the Parkside Development.

238.    In part, Generations Draw Request No. 13 also sought $715.10 for contributions allegedly provided by Stan Houston Equipment Company, Inc. to the Generations Development as allegedly supported by Invoices Nos. 05,78313, 05-86008, 05-85381, and 0587125 to Generations Draw Request No. 13.

239.    Stan Houston Equipment Company, Inc. did not contribute $715.10 to the Generations Development as requested in Generations Draw Request No. 13.

240.    Instead, Invoices Nos. 05,78313, 05-86008, 05-85381, and 0587125 establish that Stan Houston Equipment Company, Inc. was instead requesting $715.10 for work contributed to The Lofts.

241.    In part, Generations Draw Request No. 13 also sought $187,000.00 for contributions allegedly provided by Craig Development to the Generations Development.

242.    Upon information and belief, Craig Development did not contribute $187,000.00 to the Generations Development as requested in Generations Draw Request No. 13.

243.    RRSB did not realize that Generations Draw Request No. 13 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

244.    RRSB funded Generations Draw Request No. 13 on October 14, 2021, via a wire transfer of $1,094,025.15.

245.    Upon information and belief, Generations transferred the $1,094,025.15 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

246.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $1,094,025.15.

247.    The $1,094,025.15 that RRSB provided for Generations Draw Request No. 13 was funded through Generations Loan 51425.

Q.    Generations Draw Request No. 14

248.    On or about October 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 14, seeking $424,259.84 for materials and labors allegedly

contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 14 is available as Exhibit 14 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

249.    In part, Generations Draw Request No. 14 sought $32,880.00 for contributions allegedly provided by ARS A Tecta America Company, LLC to the Generations Development as allegedly supported by Invoice No. SI87006143 to Generations Draw Request No. 14.

250.    ARS A Tecta America Company, LLC did not contribute $32,880.00 to the Generations Development as requested in Generations Draw Request No. 14.

251.    Instead, Invoice SI187006143 establishes that ARS A Tecta America Company, LLC was instead requesting $32,880.00 for work contributed to the Parkside Development.

252.    In part, Generations Draw Request No. 14 also sought $1,231.63 for contributions allegedly provided by Structural Materials, Inc. to the Generations Development as allegedly supported by Invoices Nos. 00608191 and 00607586 to Generations Draw Request No. 14.

253.    Structural Materials, Inc. did not contribute $1,231.63 to the Generations Development as requested in Generations Draw Request No. 14.

254.    Instead, Invoices Nos. 00608191 and 00607586 establish that Structural Materials, Inc. was instead requesting $1,231.63 for work contributed to an office addition.

255.    In part, Generations Draw Request No. 14 also sought $175,000.00 for contributions allegedly provided by Craig Development to the Generations Development.

256.    Upon information and belief, Craig Development did not contribute $175,000.00 to the Generations Development as requested in Generations Draw Request No. 14.

257.    RRSB did not realize that Generations Draw Request No. 14 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

258.    RRSB funded Generations Draw Request No. 14 on November 9, 2021, via a wire transfer of $424,259.84.

259.    Upon information and belief, Generations transferred the $424,259.84 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

260.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $424,259.84.

261.    The $424,259.84 that RRSB provided for Generations Draw Request No. 14 was funded through Generations Loan 51437.

R.    Generations Draw Request No. 15

262.    On or about November 30, 2021, Generations caused to be served on RRSB Generations Draw Request No. 15, seeking $843,168.59 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 15 is available as Exhibit 15 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

263.    In part, Generations Draw Request No. 15 sought $32,171.50 for contributions allegedly provided by Limoges Construction, Inc. to the Generations Development as allegedly supported by Invoice No. 7994 to Generations Draw Request No. 15.

264.    Limoges Construction, Inc. did not contribute $32,171.50 to the Generations Development as requested in Generations Draw Request No. 15.

265.    Instead, the Invoice No. 7994 submitted in support of Generations Draw Request No. 15 had been altered.

266.    An unaltered copy of Invoice No. 7994 from Limoges Construction, Inc. is available as p. 167 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-11**, and the same incorporated herein by reference.

267.    The unaltered copy of Invoice No. 7994 establishes Limoges Construction Inc., through Invoice No. 7994, was instead requesting $23,171.50 for work contributed to the Parkside Development.

268.    In part, Generations Draw Request No. 15 also sought $190.37 for contributions allegedly provided by Georges Sanitation Inc. to the Generations Development as allegedly supported by Invoice No. 209210.

269.    Georges Sanitation Inc. did not contribute $190.37 to the Generations Development as requested in Generations Draw Request No. 15.

270.    Instead, Invoice No. 209210 establishes that Georges Sanitation Inc. was instead requesting $190.37 for work contributed to the Parkside Development.

271.    In part, Generations Draw Request No. 15 also sought $178,921.03 for contributions allegedly provided by Innovative Wall Designs, Inc. to the Generations Development.

272.    Innovative Wall Designs, Inc. did not contribute $178,921.03 to the Generations Development as requested in Generations Draw Request No. 15.

273.    Instead, Draw Request Payment Application No. 4 submitted within Generations Draw Request No. 15 establishes that Innovative Wall Designs, Inc. was instead requesting only $28,921.03 for work contributed to the Generations Development.

274.    In part, Generations Draw Request No. 15 also sought $676.65 for contributions allegedly provided by Prevail Build.

275.    Prevail Build did not contribute $676.65 to the Generations Development as requested in Generations Draw Request No. 15.

276.    Instead, Prevail Build sought $676.65 for contributions made to unrelated projects.

277.    In part, Generations Draw Request No. 15 also sought $156,000.00 for contributions allegedly provided by Watertight, Inc. to the Generations Development as allegedly supported by Invoice No. 2820 to Generations Draw Request No. 15.

278.    Watertight, Inc. did not contribute $156,000.00 to the Generations Development as requested in Generations Draw Request No. 15.

279.    Instead, a subpoena direct to Watertight, Inc. did not return any Invoice No. 2820.

280.    RRSB did not realize that Generations Draw Request No. 15 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

281.    RRSB funded Generations Draw Request No. 15 on December 9, 2021, via a wire transfer of $843,168.59.

282.    Upon information and belief, Generations transferred the $843,168.59 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

283.    Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $843,168.59.

58

284.    The $843,168.59 that RRSB provided for Generations Draw Request No. 15 was funded through Generations Loan 51449.

S.    Generations Draw Request No. 16

285.    On or about December 31, 2021, Generations caused to be served on RRSB Generations Draw Request No. 16, seeking $653,729.65 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 16 is available as Exhibit 16 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

286.    In part, Generations Draw Request No. 16 sought $1,924.14 for contributions allegedly provided by Infrastructure Design Group, Inc. to the Generations Development as allegedly supported by Invoice No. 21691 to Generations Draw Request No. 16.

287.    Infrastructure Design Group, Inc. did not contribute $1,924.14 to the Generations Development as requested in Generations Draw Request No. 16.

288.    Instead, the Invoice No. 21691 submitted in support of Generations Draw Request No. 15 had been altered.

289.    An unaltered copy of Invoice No. 21691 from Infrastructure Design Group, Inc. is available as p. 210 of ECF No. 210-2 on the Generations bankruptcy case docket and reattached hereto as **Exhibit I-12**, and the same incorporated herein by reference.

290.    The unaltered copy of Invoice No. 21691 establishes that Infrastructure Design Group, Inc., through Invoice No. 21691, was instead requesting $1,924.14 for work contributed to the Parkside Development.

291.    In part, Generations Draw Request No. 16 also sought $1,909.00 for contributions allegedly provided by Levijoki Drywall to the Generations Development as allegedly supported by Invoice No. 1347 to Generations Draw Request No. 16.

292.    Levijoki Drywall did not contribute $1,909.00 to the Generations Development as requested in Generations Draw Request No. 16.

293.    Instead, Invoice No. 1347 establishes that Levijoki Drywall was instead requesting $1,909.00 for work contributed to the Parkside Development.

294.    In part, Generations Draw Request No. 16 also sought $1,464.38 for contributions allegedly provided by Commercial Cleaning Services LLC to the Generations Development as allegedly supported by Invoice No. 637 to Generations Draw Request No. 16.

295.    Commercial Cleaning Services LLC did not contribute $1,464.38 to the Generations Development as requested in Generations Draw Request No. 16.

296.    Instead, Invoice No. 637 establishes that Commercial Cleaning Services LLC was instead requesting $1,464.38 for work contributed to the Parkside Development.

297.    In part, Generations Draw Request No. 16 sought $79,900.00 for contributions allegedly made by Craig Development to the Generations Development.

298.    Upon information and belief, Craig Development did not contribute $79,900.00 to the Generations Development as requested in Generations Draw Request No. 16.

299.    RRSB did not realize that Generations Draw Request No. 16 had been falsified, and that Generations was requesting money to pay costs not incurred in the Generations Development.

300.    RRSB funded Generations Draw Request No. 16 on January 4, 2022, via a cashier's check 101723 for $653,729.65.

301.   Upon information and belief, Generations transferred the $653,729.65 to Craig Development by depositing cashier's check 101723 into an account owned by Craig Development at FCCU.

302.   Upon information and belief, Craig Development did not provide materials or services to Generations reasonably equivalent to $653,729.65.

303.   The $653,729.65 that RRSB provided for Generations Draw Request No. 16 was funded through Generations Loan 51471.

T.   Generations Draw Request No. 17

304.   On or about January 31, 2022, Generations caused to be served on RRSB Generations Draw Request No. 17, seeking $274,043.60 for materials and labors allegedly contributed to The Generations Development.  A true and correct copy of Generations Draw Request No. 17 is available as Exhibit 17 to ECF No. 185 on the Generations bankruptcy case docket, and the same incorporated herein by reference.

305.   RRSB funded Generations Draw Request No. 17 on February 3, 2022, via a wire transfer of $274,043.60.

306.   Upon information and belief, Generations transferred the $274,043.60 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

307.   Upon information and belief, Craig Properties did not provide materials or services to Generations reasonably equivalent to receipt of $274,043.60.

308.   The $274,043.60 that RRSB provided for Generations Draw Request No. 17 was funded through Generations Loan 51488.

III.    **The Ruins Loans**

309.    On or about March 9, 2022, RRSB provided The Ruins with a memorandum outlining "the terms and conditions of the construction and permanent financing of a 63-unit apartment complex known as 'The Ruins' in Watertown SD'" ("The Ruins Term Sheet"). A true and correct copy of The Ruins Term Sheet is available as Exhibit K to ECF No. 22 in this adversary action, and the same incorporated herein by reference.

A.    Ruins Loan 51500

310.    On or about March 9, 2022, RRSB agreed to loan The Ruins $7,740,000.00 for the construction of a 63-unit apartment complex to be known as "The Ruins" ("The Ruins Development"), as evidence by the following documents: Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51500 Ruins Loan Documents"). True and correct copies of the 51500 Ruins Loan Documents are available as Exhibit N to ECF No. 22 in this adversary action, and the same incorporated herein by reference. The $7,740,000.00 loaned through the 51500 Ruins Loan Documents shall be referred to as "Ruins Loan 51500."

B.    Ruins Loan 51576

311.    On or about August 1, 2022, RRSB agreed to loan The Ruins an additional $2,750,000.00 for The Ruins Development, as evidenced by the following documents: Business Loan Agreement; Construction Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Construction Mortgage; Commercial Security Agreement; Assignment of Life Insurance Policy as Collateral;

Commercial Guaranty; Guaranty of Completion and Performance; Notice of Final Agreement; and Loan Request Summary (collectively, the "51576 Ruins Loan Documents"). True and correct copies of the 51576 Ruins Loan Documents are available as Exhibit O to ECF No. 22 in this adversary action, and the same incorporated herein by reference. The $2,750,000.00 loan through the 51576 Ruins Loan Documents shall be referred to as "RRSB Loan 51576."

      C.    Ruins Loan 51658

312.    On or about February 17, 2023, RRSB agreed to loan The Ruins an additional $600,000.00 for The Ruins Development, as evidenced by the following documents: Business Loan Agreement; Amortization Schedule; Disbursement Request and Authorization; Promissory Note; Commercial Security Agreement; Assignment of Life Insurance Policy as Collateral; Notice of Final Agreement; and Loan Request Summary (collectively, the "51658 Ruins Loan Documents"). True and correct copies of the 51658 Ruins Loan Documents are available as Exhibit P to ECF No. 22 in this adversary action, and the same incorporated herein by reference. The $600,000.00 loan through the 51658 Loan Documents shall be referred to as "Ruins Loan 51658."

313.    Ruins Loan 51500, Ruins Loan 51576, and Ruins Loan 51658 shall be collectively referred to as the "Ruins Loans."

      D.    The Ruins Draw Request No. 4

314.    On or about December 31, 2021, The Ruins caused to be served on RRSB The Ruins Draw Request No. 4, seeking $919,551.65 for materials and labor allegedly contributed to The Ruins Development. A true and correct copy of Draw Request No. 4 is available as Exhibit 4 to ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

315.    In part, The Ruins Draw Request No. 4 sought $250,000.00 for contributions allegedly provided by Limoges Construction Inc. to The Ruins Development as allegedly supported by Invoice No. 102835 to The Ruins Draw Request No. 4.

316.    Limoges Construction Inc. did not contribute $250,000.00 to The Ruins Development as requested in The Ruins Draw Request No. 4.

317.    Instead, the Invoice No. 102835 submitted in support of The Ruins Draw Request No. 4 had been altered.

318.    An unaltered copy of Invoice No. 102835 from Limoges Construction Inc. is available as p. 19 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-1**, and the same incorporated herein by reference.

319.    The unaltered copy of Invoice No. 102835 establishes that Limoges Construction Inc., through Invoice No. 102835, was instead requesting $45,000.00 for work contributed to the Generations Development.[4]

320.    In part, The Ruins Draw Request No. 4 also sought $3,205.00 for contributions allegedly provided by KLJ Engineering LLC to The Ruins Development.

321.    The $3,205.00 contribution provided by KLJ Engineering LLC, as requested in The Ruins Draw Request No. 4, was not contributed to The Ruins Development.

322.    The $3,205.00 contribution provided by KLJ Engineering LLC, as requested in The Ruins Draw Request No. 4, was instead a contribution to a lake home owned at the time by Craig Holdings.

---

[4]    The term "Generations Development" is defined herein by Paragraph 125.

323.    In part, The Ruins Draw Request No. 4 also sought $135,000.00 for contributions allegedly provided by LaDue Construction Inc. to The Ruins Development.

324.    The $135,000.00 contribution provided by LaDue Construction Inc., as requested in The Ruins Draw Request No. 4, was not actually contributed to The Ruins Development.

325.    RRSB did not realize that The Ruins Draw Request No. 4 had been falsified, and that The Ruins was requesting money to pay costs not incurred in The Ruins Development.

326.    RRSB funded The Ruins Draw Request Nos. 4, 5, and 6 on March 11, 2022, via a wire transfer of $2,952,702.33.

327.    Upon information and belief, The Ruins transferred the $2,952,702.33 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

328.    Upon information and belief, Craig Properties did not provide materials or services to The Ruins reasonably equivalent to receipt of $2,952,702.33.

329.    The $2,952,702.33 that RRSB provided for The Ruins Draw Request Nos. 4, 5, and 6 was funded through Ruins Loan 51500.

E.    The Ruins Draw Request No. 5

330.    On or about January 31, 2022, The Ruins caused to be served on RRSB The Ruins Draw Request No. 5, seeking $865,456.93 for materials and labor allegedly contributed to The Ruins Development.  A true and correct copy of The Ruins Draw Request No. 5 is available as Exhibit 5 to ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

331.    In part, The Ruins Draw Request No. 5 sought $106.50 for contributions allegedly provided by KLJ Engineering LLC on The Ruins Development.

332.    The $106.50 contribution provided by KLJ Engineering LLC, as requested in The Ruins Draw Request No. 5, was not contributed to The Ruins Development.

333.    The $106.50 contribution provided by KLJ Engineering LLC, as requested in The Ruins Draw Request No. 5, was contributed to a lake home owned at the time by Craig Holdings.

334.    In part, The Ruins Draw Request No. 5 also sought $42,147.00 for contributions allegedly provided by Limoges Construction Inc. to The Ruins Development as allegedly supported by Invoice No. 102848 to The Ruins Draw Request No. 5.

335.    Limoges Construction Inc. did not contribute $42,147.00 to The Ruins Development as of The Ruins Draw Request No. 5.

336.    Instead, the Invoice No. 102848 submitted in support of The Ruins Draw Request No. 5 had been altered.

337.    An unaltered copy of Invoice No. 102848 from Limoges Construction Inc. is available as p. 33 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-2**, and the same incorporated herein by reference.

338.    The unaltered copy of Invoice No. 102848 instead shows that Limoges Construction Inc. contributed to the Generations Development.

339.    In part, The Ruins Draw Request No. 5 also sought $91,315.64 for contributions allegedly provided by D & M Industries, Inc. on The Ruins Development as allegedly supported by Invoice No. 233453.

340.    D & M Industries, Inc. did not contribute $91,315.64 to The Ruins Development as requested in The Ruins Draw Request No. 5.

341.    Instead, the Invoice No. 233453 submitted in support of The Ruins Draw Request No. 5 had been altered.

342.    An unaltered copy of Invoice No. 233453 from D & M Industries, Inc. is available as p. 37 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-3**, and the same incorporated herein by reference.

343.    The unaltered copy of Invoice No. 233453 establishes that D & M Industries, Inc., through Invoice No. 233453, was instead requesting $91,315.64 for contributions to the Generations Development.

344.    In part, The Ruins Draw Request No. 5 also sought $16,461.76 for contributions allegedly provided by Clausen Construction Inc. on The Ruins Development as allegedly supported by Invoice No. 715.

345.    Clausen Construction Inc. did not contribute $16,461.76 to The Ruins Development as requested in The Ruins Draw Request No. 5.

346.    Instead, the Invoice 715 submitted in support of The Ruins Draw Request No. 5 had been altered.

347.    An unaltered copy of Invoice No. 715 from Clausen Construction Inc. is available as p. 41 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-4**, and the same incorporated herein by reference.

348.    The unaltered copy of Invoice No. 715 establishes that Clausen Construction Inc., through Invoice No. 715, was instead requesting $17,428.04 for contributions to the Generations Development.

349.    In part, The Ruins Draw Request No. 5 also sought $9,393.93 for contributions allegedly provided by Clausen Construction Inc. on The Ruins Development as allegedly supported by Invoice No. 716.

350.    Clausen Construction Inc. did not contribute $9,393.93 to The Ruins Development as Requested in The Ruins Draw Request No. 5.

351.    Instead, the Invoice 716 submitted in support of The Ruins Draw Request No. 5 had been altered.

352.    An unaltered copy of Invoice No. 716 from Clausen Construction Inc. is available as p. 45 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-5**, and the same incorporated herein by reference.

353.    The unaltered copy of Invoice No. 716 establishes that Clausen Construction Inc., through Invoice No. 716, was instead requesting $9,393.93 for contributions to the Generations Development.

354.    In part, The Ruins Draw Request No. 5 also sought $21,447.00 for contributions allegedly provided by Duininck, Inc. to The Ruins Development.

355.    The $21,447.00 contribution provided by Duininck, Inc., as requested in The Ruins Draw Request No. 5, was not actually provided to The Ruins Development.

356.    The $21,447.00 contribution provided by Duininck, Inc., as requested in The Ruins Draw Request No. 5, was provided to the Generations Development.

357.    In part, The Ruins Draw Request No. 5 also sought $39,125.96 for contributions allegedly provided by Watertown Cashway Lumber, Inc. to The Ruins Development.

358.    The $39,125.96 contribution provided by Watertown Cashway Lumber, Inc., as requested in The Ruins Draw Request No. 5, was not provided to The Ruins Development.

359. The $39,125.96 contribution provided by Watertown Cashway Lumber, Inc., as requested in The Ruins Draw Request No. 5, was provided to the Generations Development.

360. RRSB did not realize that The Ruins Draw Request No. 5 had been falsified, and that The Ruins was requesting money to pay costs not incurred in The Ruins Development.

361. RRSB funded The Ruins Draw Request Nos. 4, 5, and 6 on March 11, 2022, via a wire transfer of $2,952,702.33.

362. Upon information and belief, The Ruins transferred the $2,952,702.33 to Craig Properties by directing the wire transfer be made to an account owned by Craig Properties at FCCU.

363. Upon information and belief, Craig Properties did not provide materials or services to The Ruins reasonably equivalent to receipt of $2,952,702.33.

364. The $2,952,702.33 that RRSB provided for The Ruins Draw Request Nos. 4, 5, and 6 was funded through Ruins Loan 51500.

F.   The Ruins Draw Request No. 6

365. On or about February 28, 2022, The Ruins caused to be served on RRSB The Ruins Draw Request No. 6, seeking $1,167,693.75 for materials and labor allegedly contributed to The Ruins Development.  A true and correct copy of The Ruins Draw Request No. 6 is available as Exhibit 6 to ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

366. In part, The Ruins Draw Request No. 6 sought $120,000.00 for contributions allegedly provided by LaDue Construction Inc. to The Ruins Development.

367. The $120,000.00 contribution provided by LaDue Construction Inc., as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

368.   The $120,000.00 contribution provided by LaDue Construction Inc., as requested in The Ruins Draw Request No. 6, was a contribution to the Generations Development.

369.   In part, The Ruins Draw Request No. 6 also sought $2,704.91 for contributions allegedly provided by United Rentals to The Ruins Development.

370.   The $2,704.91 contribution provided by United Rentals, as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

371.   The $2,704.91 contribution provided by United Rentals, as requested in The Ruins Draw Request No. 6, was a contribution to an office addition on a property owned by Craig Properties.

372.   In part, The Ruins Draw Request No. 6 also sought $746.21 for contributions allegedly provided by Structural Materials Inc. on The Ruins Development.

373.   The $746.21 contribution provided by Structural Materials Inc., as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

374.   The $746.21 contribution provided by Structural Materials Inc., as requested in The Ruins Draw Request No. 6, was a contribution to the lake home owned at the time by Craig Holdings.

375.   In part, The Ruins Draw Request No. 6 also sought $90,250.00 for contributions allegedly provided by Kloos Electric to The Ruins Development.

376.   The $90,250.00 contribution provided by Kloos Electric, as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

377.   The $90,250.00 contribution provided by Kloos Electric, as requested in The Ruins Draw Request No. 6, was a contribution to the Generations Development.

378.    In part, The Ruins Draw Request No. 6 also sought $17,330.00 for contributions allegedly provided by Don Johnson Construction LLC to The Ruins Development.

379.    The $17,330.00 contribution provided by Don Johnson Construction LLC, as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

380.    The $17,330.00 contribution provided by Don Johnson Construction LLC, as requested in The Ruins Draw Request No. 6, was a contribution to the Generations Development.

381.    In part, The Ruins Draw Request No. 6 also sought $3,600.00 for contributions allegedly provided by Baete-Forseth HVAC LLC to The Ruins Development.

382.    The $3,600.00 contribution provided by Baete-Forseth HVAC LLC, as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

383.    The $3,600.00 contribution provided by Baete-Forseth HVAC LLC, as requested in The Ruins Draw Request No. 6, was a contribution to the Generations Development.

384.    In part, The Ruins Draw Request No. 6 also sought $214,252.89 for contributions allegedly provided by Innovative Wall Designs, Inc. to The Ruins Development.

385.    The $214,252.89 contribution provided by Innovative Wall Designs, Inc., as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

386.    The $214,252.89 contribution provided by Innovative Wall Designs, Inc., as requested in The Ruins Draw Request No. 6, was a contribution to the Generations Development.

387.    In part, The Ruins Draw Request No. 6 also sought $14,882.53 for contributions allegedly provided by Burghardt Construction to The Ruins Development.

71

388.   The $14,882.53 contribution provided by Burghardt Construction, as requested in The Ruins Draw Request No. 6, was not provided to The Ruins Development.

389.   The $14,882.53 contribution provided by Burghardt Construction, as requested in The Ruins Draw Request No. 6, was a contribution to the Generations Development.

390.   RRSB did not realize that The Ruins Draw Request No. 6 had been falsified, and that The Ruins was requesting money to pay costs not incurred as part of The Ruins Development.

391.   RRSB funded The Ruins Draw Request Nos. 4, 5, and 6 on March 11, 2022, via a wire transfer of $2,952,702.33 to an account owned by Craig Properties at FCCU.

392.   Upon information and belief, Craig Properties did not provide materials or services to The Ruins reasonably equivalent to receipt of $2,952,702.33.

393.   The $2,952,702.33 provided for The Ruins Draw Request Nos. 4, 5, and 6 was funded through RRSB Loan 51500.

G.   The Ruins Draw Request No. 8

394.   On or about March 30, 2022, The Ruins caused to be served on RRSB The Ruins Draw Request No. 8, seeking $2,274,820.42 for materials and labor allegedly contributed to The Ruins Development.  A true and correct copy of The Ruins Draw Request No. 8 is available as Exhibit 8 to ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

395.   In part, The Ruins Draw Request No. 8 sought $305,000.00 for contributions allegedly provided by D & M Industries, Inc. to The Ruins Development, as allegedly supported by Invoice No. 238434.

396.    D & M Industries, Inc. did not contribute $305,000.00 to The Ruins Development as requested in The Ruins Draw Request No. 8.

397.    Instead, the Invoice No. 238434 submitted in support of The Ruins Draw Request No. 8 had been altered.

398.    An unaltered copy of Invoice No. 238434 from D & M Industries, Inc. is available as p. 80 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-6**, and the same incorporated herein by reference.

399.    The unaltered copy of Invoice No. 238434 establishes that D & M Industries, Inc., through Invoice No. 238434, was instead requesting $58,192.64 for work contributed to the Generations Development.

400.    In part, The Ruins Draw Request No. 8 also sought $30,318.10 for contributions allegedly provided by D & M Industries, Inc. to The Ruins Development, as allegedly supported by Invoice No. 237793.

401.    D & M Industries, Inc. did not contribute $30,318.10 to The Ruins Development as Requested in The Ruins Draw Request No. 8.

402.    Instead, the Invoice No. 237793 submitted in support of The Ruins Draw Request No. 8 had been altered.

403.    An unaltered copy of Invoice No. 237793 from D & M Industries, Inc. is available as p. 84 of ECF No. 137-2 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-7**, and the same incorporated herein by reference.

404.    The unaltered copy of Invoice No. 237793 establishes that D & M Industries, Inc., through Invoice No. 237793, was instead requesting $30,318.10 for work contributed to the Generations Development.

405.    In part, The Ruins Draw Request No. 8 also sought $17,910.93 for contributions allegedly provided by D & M Industries, Inc. to The Ruins Development, as allegedly supported by Invoice No. 237937.

406.    D & M Industries, Inc. did not contribute $17,910.93 to The Ruins Development as Requested in The Ruins Draw Request No. 8.

407.    Instead, the Invoice No. 237937 submitted in support of The Ruins Draw Request No. 8 had been altered.

408.    An unaltered copy of Invoice No. 237937 submitted from D & M Industries, Inc. is available as p. 88 of ECF No. 137-2 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-8**, and the same incorporated herein by reference.

409.    The unaltered copy of Invoice No. 237937 submitted establishes that D & M Industries, Inc., through Invoice No. 237937 submitted, was instead requesting $17,910.93 for work contributed to the Generations Development

410.    In part, The Ruins Draw Request No. 8 also sought $6,093.30 for contributions allegedly provided by United Rentals to The Ruins Development.

411.    United Rentals did not contribute $6,093.30 to The Ruins Development as requested in The Ruins Draw Request No. 8.

412.    United Rentals instead contributed $5,243.15 to the lake home owned by Craig Holdings, and $563.50 to the office owned by Craig Properties.

413.    In part, The Ruins Draw Request No. 8 also sought $1,352.00 for contributions allegedly provided by KLJ Engineering LLC to The Ruins Development, as allegedly supported by Invoice No. 10166297.

414.     KLJ Engineering LLC did not contribute $1,352.00 to The Ruins Development as requested in The Ruins Draw Request No. 8.

415.     Instead, the Invoice No. 10166297 submitted in support of The Ruins Draw Request No. 8 had been altered.

416.     An unaltered copy of Invoice No. 10166297 from KLJ Engineering LLC is available as p. 98 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached as **Exhibit J-9**, and the same incorporated herein by reference.

417.     The unaltered copy of Invoice No. 10166297 establishes that KLJ Engineering LLC, through Invoice No. 10166297, was instead requesting $1,352.00 for work contributed to the lake home owned by Craig Holdings.

418.     RRSB did not realize that The Ruins Draw Request No. 8 had been falsified, and that The Ruins was requesting money to pay costs not incurred as part of The Ruins Development.

419.     RRSB funded The Ruins Draw Request No. 8 on April 8, 2022, via a $2,274,820.42 deposit into a checking account owned by The Ruins at RRSB.

420.     The $2,274,820.42 provided for The Ruins Draw Request No. 8 on April 8, 2022, was funded through RRSB Loan 51500.

H.     The Ruins Draw Request No. 9

421.     On or about April 30, 2022, The Ruins caused to be served on RRSB The Ruins Draw Request No. 9, seeking $1,478,343.10 for materials and labor allegedly contributed to The Ruins Development.  A true and correct copy of The Ruins Draw Request No. 9 is available as Exhibit 9 of ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

422.    In part, The Ruins Draw Request No. 9 sought $297,783.60 for contributions allegedly provided by Limoges Construction, Inc. to The Ruins Development.

423.    Limoges Construction, Inc. did not seek $297,783.60 for contributions to The Ruins Development as part of The Ruins Draw Request No. 9.

424.    Instead, Limoges Construction, Inc. sought only $147,783.60 for contributions to The Ruins Development as part of The Ruins Draw Request No. 9.

425.    In part, The Ruins Draw Request No. 9 also sought $61,534.08 for contributions allegedly provided by D & M Industries, Inc. to The Ruins Development as allegedly supported by Invoice No. 234708.

426.    D & M Industries, Inc. did not contribute $61,534.08 to The Ruins Development as requested in The Ruins Draw Request No. 9.

427.    Instead, the Invoice No. 234708 submitted in support of The Ruins Draw Request No. 9 had been altered.

428.    An unaltered copy of Invoice No. 234708 from D & M Industries, Inc. is available as p. 115 of ECF No. 137-1 and reattached as **Exhibit J-10**, and the same incorporated herein by reference.

429.    The unaltered copy of Invoice No. 234708 establishes that D & M Industries, Inc., through Invoice No. 234708, was instead requesting $61,534.08 for work contributed to the Generations Development.

430.    In part, The Ruins Draw Request No. 9 also sought $5,433.13 for contributions allegedly provided by Watertown Cashway Lumber, Inc. to The Ruins Development as allegedly supported by Draw Request Statement No. 2204-441504.

431.     Watertown Cashway Lumber, Inc. did not contribute $5,433.13 to The Ruins development as requested in The Ruins Draw Request No. 9.

432.     Instead, Draw Request Statement No. 2204-441504 submitted in support of The Ruins Draw Request No. 9 had been altered.

433.     An unaltered copy of The Ruins Draw Request Statement No. 2204-441504 from Watertown Cashway Lumber, Inc. is available as p. 118 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-11**, and the same incorporated herein by reference.

434.     The unaltered copy of Draw Request Statement No. 2204-441504 establishes that Watertown Cashway Lumber, Inc. was instead requesting $5,433.13 for work contributed to the Parkside Development.

435.     RRSB did not realize that The Ruins Draw Request No. 9 had been falsified, and that The Ruins was requesting money to pay costs not incurred as part of The Ruins Development.

436.     RRSB funded The Ruins Draw Request No. 9 on May 10, 2022, via a $1,478,434.10 deposit into a checking account owned by The Ruins at RRSB.

437.     The $1,478,434.10 provided for The Ruins Draw Request No. 9 on May 10, 2022, was funded through RRSB Loan 51500.

I.     The Ruins Draw Request No. 10

438.     On or about May 31, 2022, The Ruins caused to be served on RRSB The Ruins Draw Request No. 10, seeking $1,114,085.39 for materials and labor allegedly contributed to The Ruins Development.   A true and correct copy of The Ruins Draw Request No. 10 is

available as Exhibit 10 to ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

439.    In part, Draw Request No. 10 sought $155,880.20 for contributions allegedly provided by Watertight, Inc. to The Ruins Development as allegedly supported by The Ruins Draw Request Payment Application No. 1 to Draw Request No. 10.

440.    Watertight, Inc. did not contribute $155,880.20 to The Ruins Development as requested in The Ruins Draw Request No. 10.

441.    Instead, the Draw Request Payment Application No. 1 submitted in support of The Ruins Draw Request No. 10 had been altered.

442.    An unaltered copy of Draw Request Payment Application No. 1 is available as p. 112 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-12**, and the same incorporated herein by reference.

443.    The unaltered copy of Draw Request Payment Application No. 1 establishes that Watertight, Inc., through Draw Request Payment Application No. 1, was instead requesting $67,521.15 for work contributed to The Ruins Development.

444.    In part, The Ruins Draw Request No. 10 also sought $7,129.99 for contributions allegedly provided by Clausen Construction, Inc. to The Ruins Development as allegedly supported by Invoice No. 745.

445.    Clausen Construction, Inc. did not contribute $7,129.99 to The Ruins Development as requested in The Ruins Draw Request No. 10.

446.    Instead, the Invoice No. 745 submitted in support of The Ruins Draw Request No. 10 had been altered.

447.     An unaltered copy of Invoice No. 745 from Clausen Construction, Inc. is available as p. 126 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached as **Exhibit J-13**, and the same incorporated herein by reference.

448.     The unaltered copy of Invoice No. 745 establishes that Clausen Construction, through Invoice No. 745, was instead requesting $7,129.99 for work contributed to the Generations Development.

449.     In part, The Ruins Draw Request No. 10 also sought $205,346.30 for contributions allegedly provided by Limoges Construction, Inc. to The Ruins Development as allegedly supported by Invoice No. 102864.

450.     Limoges Construction, Inc. did not contribute $205,346.30 to The Ruins Development as requested in The Ruins Draw Request No. 10.

451.     Instead, the Invoice No. 102864 submitted in support of The Ruins Draw Request No. 10 had been altered.

452.     An unaltered copy of Invoice No. 102864 from Limoges Construction, Inc. is available as p. 130 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached as **Exhibit J-14**, and the same incorporated herein by reference.

453.     The unaltered copy of Invoice No. 102864 establishes that Limoges Construction, Inc., through Invoice No. 102864, was instead requesting $900.00 for work contributed to the Generations Development.

454.     In part, The Ruins Draw Request No. 10 also sought $39,197.08 for contributions allegedly provided by Hebron Brick Supply Co. to The Ruins Development as allegedly supported by Invoice No. S-INV00046075.

455.   Hebron Brick Supply Co. did not contribute $39,197.08 to The Ruins Development as requested in The Ruins Draw Request No. 10.

456.   Instead, the Invoice No. S-INV00046075 submitted in support of The Ruins Draw Request No. 10 had been altered.

457.   An unaltered copy of Invoice No. S-INV00046075 from Hebron Brick Supply Co. is available as p. 134 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-15**, and the same incorporated herein by reference.

458.   The unaltered copy of Invoice No. S-INV00046075 establishes that Hebron Bric Supply Co., through Invoice No. S-INV00046075, was instead requesting $39,197.08 for work contributed to the lake home owned by Craig Holdings.

459.   RRSB did not realize that The Ruins Draw Request No. 10 had been falsified, and that The Ruins was requesting money to pay costs not incurred as part of The Ruins Development.

460.   RRSB funded The Ruins Draw Request No. 10 on June 10, 2022, via a $852,095.36 deposit into a checking account owned by The Ruins at RRSB.

461.   The $852,095.36 provided for The Ruins Draw Request No. 10 on June 10, 2022, was funded through RRSB Loan 51500.

J.     The Ruins Draw Request No. 11

462.   On or about June 30, 2022, The Ruins caused to be served on RRSB The Ruins Draw Request No. 11, seeking $1,268,944.90 for materials and labor allegedly contributed to The Ruins Development.  A true and correct copy of The Ruins Draw Request No. 11 is available as Exhibit 11 of ECF No. 102 on The Ruins bankruptcy case docket, and the same incorporated herein by reference.

463.    In part, The Ruins Draw Request No. 11 sought $95,000.00 as part of a $511,000.00 fixed-fee arrangement with T.L. Stroh Architects Ltd. for contributions allegedly provided to The Ruins Development.

464.    The Ruins' agreement with T.L. Stroh Architects Ltd. was for a fixed-fee amount of $431,000.00.

465.    In part, The Ruins Draw Request No. 11 also sought $275,023.50 for contributions allegedly provided by Watertight, Inc. to The Ruins Development, allegedly supported by Invoice No. 2956.

466.    Watertight, Inc. did not contribute $275,023.50 to The Ruins Development as requested in The Ruins Draw Request No. 11.

467.    Instead, the Invoice No. 2956 submitted in support of The Ruins Draw Request No. 11 had been altered.

468.    An unaltered copy of Invoice No. 2956 from Watertight, Inc. is available as pp. 147-148 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-16**, and the same incorporated herein by reference.

469.    The unaltered copy of Invoice No. 2956 establishes that Watertight, Inc., through Invoice No. 2956, was instead seeking $67,521.15 for work contributed to The Ruins Development.

470.    The $67,521.15 for work contributed by Watertight, Inc. as requested in Invoice No. 2956 had already been paid, or should have been paid, through The Ruins Draw Request No. 11.

471. In part, The Ruins Draw Request No. 11 also sought $17,155.84 for contributions allegedly provided by D & M Industries, Inc. to The Ruins Development as allegedly supported by Invoice No. 243729.

472. D & M Industries, Inc. did not contribute $17,155.84 to The Ruins Development as requested in The Ruins Draw Request No. 11.

473. Instead, the Invoice No. 243729 submitted in support of The Ruins Draw Request No. 11 had been altered.

474. An unaltered copy of Invoice No. 243729 from D & M Industries, Inc. is available as p. 152 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-17**, and the same incorporated herein by reference.

475. The unaltered copy of Invoice No. 243729 establishes that D & M Industries, Inc., through Invoice No. 243729, was instead requesting $17,155.84 for work contributed to the lake home owned by Craig Holdings.

476. In part, The Ruins Draw Request No. 11 also sought $48,026.70 for contributions allegedly provided by D & M Industries, Inc. to The Ruins Development as allegedly supported by Invoice No. 242252.

477. D & M Industries, Inc. did not contribute $48,026.70 to The Ruins Development as requested in The Ruins Draw Request No. 11.

478. Instead, the Invoice No. 242252 submitted in support of The Ruins Draw Request No. 11 had been altered.

479. An unaltered copy of Invoice No. 242252 from D & M Industries, Inc. is available as p. 156 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-18**, and the same incorporated herein by reference.

480.    The unaltered copy of Invoice No. 242252 establishes that D & M Industries, Inc., through Invoice No. 242252, was instead requesting $48,026.70 for work contributed to the lake home owned by Craig Holdings.

481.    In part, The Ruins Draw Request No. 11 also sought $22,605.86 for contributions allegedly provided by Hebron Brick Supply Co. to The Ruins Development as allegedly supported by Invoice No. S-INV00051182.

482.    Hebron Brick Supply Co. did not contribute $22,605.86 to The Ruins Development as requested in The Ruins Draw Request No. 11.

483.    Instead, the Invoice No. S-INV00051182 submitted in support of The Ruins Draw Request No. 11 had been altered.

484.    An unaltered copy of Invoice No. S-INV00051182 from Hebron Brick Supply Co. is available as p. 160 of ECF No. 137-1 on The Ruins bankruptcy case docket and reattached hereto as **Exhibit J-19**, and the same incorporated herein by reference.

485.    The unaltered copy of Invoice No. S-INV00051182 establishes that Hebron Brick Supply Co., through Invoice No. S-INV00051182, was instead requesting $22,605.86 for work contributed to the lake home owned by Craig Holdings.

486.    In part, The Ruins Draw Request No. 11 also sought $3,874.36 for contributions allegedly provided by Infrastructure Design Group, Inc. to The Ruins Development.

487.    Infrastructure Design Group, Inc. did not seek $3,874.36 for contributions to The Ruins Development as requested in The Ruins Draw Request No. 11.

488.    Instead, Infrastructure Design Group, Inc. sought $3,874.36 for contributions to The Ruins Development as part of The Ruins Draw Request No. 11.

489.    RRSB did not realize that The Ruins Draw Request No. 11 had been falsified, and that The Ruins was requesting money to pay costs not incurred as part of The Ruins Development.

490.    RRSB funded The Ruins Draw Request No. 11 on August 2, 2022, via a $1,268,944.90 deposit into a checking account owned by The Ruins at RRSB.

491.    The $1,268,944.90 provided for The Ruins Draw Request No. 11 on August 2, 2022, was funded through RRSB Loan 51576.

### COUNT 1: FRAUD
### (AGAINST PARKSIDE)

492.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

493.    Parkside represented to RRSB that Parkside Loans would only be used to fund the Parkside Development.

494.    Parkside knew, or reasonably should have known, that RRSB relied on the representation that Parkside Loans would only be used to fund the Parkside Development.

495.    RRSB relied on the representation that Parkside Loans would only be used to fund the Parkside Development.

496.    Parkside did not apply the entirety of the Parkside Loans to the Parkside Development, to RRSB's detriment.

497.    RRSB is entitled to judgment against Parkside in an amount to be proven at trial.

### COUNT 2: DECEIT
### (AGAINST PARKSIDE)

498.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

499.   Parkside represented to RRSB that Parkside Loans would only be used to fund the Parkside Development.

500.   Parkside knew, or reasonably should have known, that RRSB relied on the representation that Parkside Loans would only be used to fund the Parkside Development.

501.   RRSB relied on the representation that Parkside Loans would only be used to fund the Parkside Development.

502.   Parkside did not apply the entirety of the Parkside Loans to the Parkside Development, to RRSB's detriment.

503.   RRSB is entitled to judgment against Parkside in an amount to be proven at trial.

### COUNT 3: FRAUD
**(AGAINST GENERATIONS)**

504.   RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

505.   Generations represented to RRSB that Generations Loans would only be used to fund the Generations Development.

506.   Generations knew, or reasonably should have known, that RRSB relied on the representation that Generations Loans would only be used to fund the Generations Development.

507.   RRSB relied on the representation that Generations Loans would only be used to fund the Generations Development.

508.   Generations did not apply the entirety of the Generations Loans to the Generations Development, to RRSB's detriment.

509.   RRSB is entitled to judgment against Generations in an amount to be proven at trial.

## COUNT 4: DECEIT
### (AGAINST GENERATIONS)

510.   RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

511.   Generations represented to RRSB that Generations Loans would only be used to fund the Generations Development.

512.   Generations knew, or reasonably should have known, that RRSB relied on the representation that Generations Loans would only be used to fund the Generations Development.

513.   RRSB relied on the representation that Generations Loans would only be used to fund the Generations Development.

514.   Generations did not apply the entirety of the Generations Loans to the Generations Development, to RRSB's detriment.

515.   RRSB is entitled to judgment against Generations in an amount to be proven at trial.

## COUNT 5: FRAUD
### (AGAINST THE RUINS)

516.   RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

517.   The Ruins RRSB that The Ruins Loans would only be used to fund The Ruins Development.

518.    The Ruins knew, or reasonably should have known, that RRSB relied on the representation that The Ruins Loans would only be used to fund The Ruins Development.

519.    RRSB relied on the representation that The Ruins Loans would only be used to fund The Ruins Development.

520.    The Ruins did not apply the entirety of The Ruins Loans to The Ruins Development, to RRSB's detriment.

521.    RRSB is entitled to judgment against The Ruins in an amount to be proven at trial.

## COUNT 6: DECEIT
### (AGAINST THE RUINS)

522.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

523.    The Ruins represented to RRSB that The Ruins Loans would only be used to fund The Ruins Development.

524.    The Ruins knew, or reasonably should have known, that RRSB relied on the representation that The Ruins Loans would only be used to fund The Ruins Development.

525.    RRSB relied on the representation that The Ruins Loans would only be used to fund The Ruins Development.

526.    The Ruins did not apply the entirety of The Ruins Loans to The Ruins Development, to RRSB's detriment.

527.    RRSB is entitled to judgment against The Ruins in an amount to be proven at trial.

### COUNT 7: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-04(1)(b)
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

528.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

529.    Parkside was and is a "debtor" of RRSB, who was and is a "creditor" of Parkside, as such terms are used under N.D.C.C. ch. 13-02.1.

530.    Parkside transferred a portion of the proceeds from the Parkside Loans to Craig Development and Craig Properties without receiving reasonably equivalent value.

531.    At the time of the transfers to Craig Development and Craig Properties, Parkside's remaining assets were unreasonably small in relation to Parkside's business.

532.    At the time of the transfers to Craig Development and Craig Properties, Parkside believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

533.    Pursuant to N.D.C.C. § 13-02.1-04(1)(b), RRSB is entitled to judgment against Craig Development and Craig Properties in an amount to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 8: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-05
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

534.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

535.    Parkside was and is a "debtor" of RRSB, who was and is a "creditor" of Parkside, as such terms are used under N.D.C.C. ch. 13-02.1.

536.   Parkside transferred a portion of the Generations Loans proceeds to Craig Development and Craig Properties without receiving reasonably equivalent value.

537.   At the time of the transfers to Craig Development and Craig Properties, Parkside was insolvent as such term is used under N.D.C.C. ch. 13-02.1.

538.   Pursuant to N.D.C.C. § 13-02.1-05, RRSB is entitled to judgment against Craig Development and Craig Properties in an amount to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 9: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-04(1)(b)
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

539.   RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

540.   Generations was and is a "debtor" of RRSB, who was and is a "creditor" of Generations, as such terms are used under N.D.C.C. ch. 13-02.1.

541.   Generations transferred a portion of the proceeds from the Generations Loans to Craig Development and Craig Properties without receiving reasonably equivalent value.

542.   At the time of the transfers to Craig Development and Craig Properties, Generations's remaining assets were unreasonably small in relation to Generations's business.

543.   At the time of the transfers to Craig Development and Craig Properties, Generations believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

544.   Pursuant to N.D.C.C. § 13-02.1-04(1)(b), RRSB is entitled to judgment against Craig Development and Craig Properties in an amount to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 10: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-05
### (AGAINST CRAIG DEVELOPMENT AND CRAIG PROPERTIES)

545.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

546.    Generations was and is a "debtor" of RRSB, who was and is a "creditor" of Generations, as such terms are used under N.D.C.C. ch. 13-02.1.

547.    Generations transferred a portion of the proceeds from the Generations Loans to Craig Development and Craig Properties without receiving reasonably equivalent value.

548.    At the time of the transfers to Craig Development and Craig Properties, Generations was insolvent as such term is used under N.D.C.C. ch. 13-02.1.

549.    Pursuant to N.D.C.C. § 13-02.1-05, RRSB is entitled to judgment against Craig Development and Craig Properties in an amount to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 11: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-04(1)(b)
### (AGAINST CRAIG PROPERTIES)

550.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

551.    The Ruins was and is a "debtor" of RRSB, who was and is a "creditor" of The Ruins, as such terms are used under N.D.C.C. ch. 13-02.1.

552.    The Ruins transferred a portion of the proceeds from The Ruins Loans to Craig Properties without receiving reasonably equivalent value.

553.    At the time of the transfers to Craig Properties, The Ruins's remaining assets were unreasonably small in relation to The Ruins's business.

554.    At the time of the transfers to Craig Properties, The Ruins believed, or reasonably should have believed, that it would incur debts beyond its ability to pay as they became due.

555.    Pursuant to N.D.C.C. § 13-02.1-04(1)(b), RRSB is entitled to judgment against Craig Properties in an amount to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 12: FRAUDULENT TRANSFER
### N.D.C.C. § 13-02.1-05
### (AGAINST CRAIG PROPERTIES)

556.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

557.    The Ruins was and is a "debtor" of RRSB, who was and is a "creditor" of The Ruins, as such terms are used under N.D.C.C. ch. 13-02.1.

558.    The Ruins transferred a portion of the proceeds from The Ruins Loans to Craig Properties without receiving reasonably equivalent value.

559.    At the time of the transfers to Craig Properties, The Ruins was insolvent as such term is used under N.D.C.C. ch. 13-02.1.

560.    Pursuant to N.D.C.C. § 13-02.1-05, RRSB is entitled to judgment against Craig Properties in an amount to be proven at trial, plus any or all remedies afforded a creditor under N.D.C.C. § 13-02.1-07.

### COUNT 13: PIERCING THE CORPORATE VEIL
### (AGAINST JESSE)

561.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

562.    Craig Development was insufficiently capitalized for purposes of its corporate undertakings.

563.    Craig Development failed to observe corporate formalities.

564.    Craig Development failed to pay dividends.

565.    Craig Development was insolvent at the time of the transactions at issue.

566.    Jesse Craig siphoned funds from Craig Development.

567.    At all times relevant hereto, Jesse Craig was the sole functioning officer or director of Craig Development.

568.    Craig Development failed to create and maintain adequate corporate records.

569.    Craig Development existed as a mere façade for Jesse Craig's individual dealings.

570.    Absent a piercing of Craig Development's corporate veil, an injustice, inequity, or unfairness would occur.

### COUNT 14: PIERCING THE CORPORATE VEIL
### (AGAINST JESSE AND JORDAN)

571.    RRSB restates and re-alleges the preceding paragraphs as if fully set forth herein.

572.    Craig Properties was insufficiently capitalized for purposes of its corporate undertakings.

573.    Craig Properties failed to observe corporate formalities.

574.    Craig Properties failed to pay dividends.

575.    Craig Properties was insolvent at the time of the transactions at issue.

576.    Jesse and Jordan siphoned funds from Craig Properties.

577.    At all times relevant hereto, Jesse and Jordan were the sole functioning officers or directors of Craig Properties.

578.    Craig Properties failed to create and maintain adequate corporate records.

579.    Craig Properties existed as a mere façade for Jesse and Jordan's individual dealings.

580.    Absent a piercing of Craig Properties's corporate veil, an injustice, inequity, or unfairness would occur.

WHEREFORE, RRSB respectfully requests that the Court grant the following relief:

1.    For a money judgment against Parkside in an amount to be determined at trial.

2.    For a money judgment against Generations in an amount to be determined at trial.

3.    For a money judgment against The Ruins in an amount to be determined at trial.

4.    For a money judgment against Craig Development in an amount to be determined at trial.

5.    For Jesse to be held personally liable for any money judgment entered against Craig Development.

6.    For a money judgment against Craig Properties in an amount to be determined at trial.

7.    For Jesse and Jordan to be held personally liable for any money judgment entered against Craig Properties.

8.    For its costs, disbursements, and reasonable attorneys' fees incurred herein if permitted by law.

9.    For such other and further relief as this Court deems just and equitable.

Dated this 10th day of December, 2025.

**VOGEL LAW FIRM**

BY:*/s/  Drew J. Hushka* _____
    Caren W. Stanley (#06100)
    cstanley@vogellaw.com
    Drew J. Hushka (#08230)
    dhushka@vogellaw.com
    218 NP Avenue
    PO Box 1389
    Fargo, ND  58107-1389
    701.237.6983
    ATTORNEYS FOR DEFENDANT AND
    THIRD PARTY PLAINTIFF RED RIVER
    STATE BANK